UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

ALLSTATE INSURANCE COMPANY,
ALLSTATE INDEMNITY COMPANY,
ALLSTATE PROPERTY AND CASUALTY INSURANCE
COMPANY, AND
ALLSTATE FIRE AND CASUALTY INSURANCE COMPANY,

           Plaintiffs,

vs.

BETTER HANDS PHYSICAL THERAPY P.C.,
HANDS OF HOPE P.T., P.C.,
JULY PT, P.C.,
MMA PHYSICAL THERAPY, P.C.,
PYRAMID CARE PT, P.C.,
COMFORT PHYSICAL THERAPY, PLLC,
ATLAS PT, P.C.,
AXIS PT, P.C.,
MT PHYSICAL THERAPY P.C.,
LIFE CARE PHYSICAL THERAPY P.C.,
JA PHYSICAL THERAPY P.C.,
RAINE M. PESIDAS PHYSICAL THERAPY P.C.,
WELLNESS PHYSICAL THERAPY REHABILITATION PLLC,
HAND BY HAND PT, P.C.,
MC PHYSICAL THERAPY, P.C.,
GO FLEX REHAB PHYSICAL THERAPY, P.C.,
JEVA PHYSICAL THERAPY P.C.,
FINESSE CARE PHYSICAL THERAPY P.C.,
MAHMOUD ELSAYED ELSANAA, P.T.,
JOSEPH EDWIN VILLACORTE ABRENICA, P.T.,
RAINEGALE MARIE MENDIOLA PESIDAS, P.T.,
MILENA REZENDE, P.T.
        a/k/a MILENA REYES,
MAZEN MOHAMED AHMED ALI ABDEL MAGID, P.T.,
KRISTINE MAY BITANGA PARCON, P.T.,
MOTAZ MAHMOUD EBEIDO, P.T.,
MELISSA C. CADET, P.T.,
MADONNA PARUNGO TANDINGAN, P.T.,
MOHAMED AWAD AWAD, P.T.,
AHMED HAMDY EMARA, P.T.,
MOHAMED HABLAS, P.T.,
MICHELLE NESAS CUADRA, P.T.,

C.A. No._____

LYN JONSON BALLENER, P.T.,
VLADIMIR GEYKHMAN,
ALEXANDER GULKAROV,
ARTUR SATTAROV, AND
JASUR RAHMATOV,

                    Defendants.

## PLAINTIFFS' COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiffs Allstate Insurance Company, Allstate Indemnity Company, Allstate Property and Casualty Insurance Company, and Allstate Fire and Casualty Insurance Company (collectively "Allstate" and/or "Plaintiffs") by their attorneys, King, Tilden, McEttrick & Brink, P.C., allege as follows:

**I.     INTRODUCTION**

1.     This case is about a fraud scheme that was carried out through a network of fraudulently incorporated professional corporations ("PCs") named Better Hands Physical Therapy, P.C., Hands of Hope, P.T., P.C., July PT, P.C., MMA Physical Therapy, P.C., Pyramid Care PT, P.C., Comfort Physical Therapy, PLLC, Atlas PT, P.C., Axis PT, P.C., MT Physical Therapy P.C., Life Care Physical Therapy P.C., JA Physical Therapy P.C., Raine M. Pesidas Physical Therapy P.C., Wellness Physical Therapy Rehabilitation, PLLC, Hand by Hand PT, P.C., MC Physical Therapy, P.C., Go Flex Physical Therapy, P.C., JEVA Physical Therapy P.C., and Finesse Care Physical Therapy P.C. (collectively, the "PC Defendants").

2.     The PC Defendants billed for medically unnecessary physical therapy services, including range of motion and muscle strength testing.

3.     The PC Defendants were nominally owned by licensed physical therapists Mahmoud Elsayed Elsanaa, P.T., Joseph Edwin Villacorte Abrenica, P.T., Rainegal Marie Mendiola Pesidas, P.T., Milena Rezende, P.T. a/k/a Milena Reyes, Mazen Mohamed Ahmed Ali

Abdel Magid, P.T., Kristine May Bitanga Parcon, P.T., Motaz Mahmoud Ebeido, P.T., Melissa C. Cadet, P.T., Madonna Parungo Tandingan, P.T., Mohamed Awad Awad, P.T., Ahmed Hamdy Emara, P.T., Mohamed Hablas, P.T., Michelle Nesas Cuadra, P.T., and Lyn Jonson Ballener, P.T. (collectively, "Nominal Owner Defendants").

4.     However, in reality, the PC Defendants were actually owned and controlled by non-licensed individuals in violation of New York law.

5.     The PC Defendants were part of a massive scheme that preyed on Allstate by collecting payments on fraudulent No-Fault claims.

6.     The PC Defendants operated from several locations, including No-Fault clinics located at 105-10 Flatlands Ave, Brooklyn, NY, 1767 Southern Blvd, Bronx, NY, 204-12 Hillside Ave, Hollis, NY, and 409 Rockaway Ave, Brooklyn, NY.  These clinics were at the heart of one of the largest No-Fault schemes in New York history.  *United States v. Gulkarov*, No. 1:22-cr-00020-PGG (S.D.N.Y.).

7.     The No-Fault clinics and their providers were controlled by non-licensed laypersons, including Alexander Gulkarov ("Gulkarov") and Vladimir Geykhman ("Geykhman") (collectively, the "Management Defendants").  The Management Defendants controlled the operation of the PC Defendants and their professional fees, which is against New York law.

8.     The Management Defendants worked with Artur Sattarov ("Sattarov") and Jasur Rahmatov ("Rahmatov") to facilitate this scheme.  As detailed below, the Management Defendants conspired with Sattarov and Rahmatov to launder the proceeds of this scheme, which were comprised of professional fees paid to the PC Defendants on No-Fault claims.

9.     The Defendants used numerous shell companies to conceal the unlawful operation and control of the PC Defendants.  The sham entities were created to look like transportation,

3

collection, administrative, and advertising companies, but they did not provide any legitimate services.  Rather, the companies existed solely to launder money—the PC Defendants paid checks to the shell companies, and the proceeds were converted to cash or transferred to another account.

10.     The payments to the shell companies were part of the Management Defendants' scheme to control the PC Defendants' professional fees, but the transactions were disguised as legitimate payments to further the PC Defendant enterprises.  The Management Defendants also used the shell companies to facilitate an unlawful patient referral scheme involving orders for medically unnecessary physical therapy services.

11.     The Management Defendants stripped control of the PC Defendants from the Nominal Owner Defendants, and then used the PC Defendants to carry-out this scheme, which was designed to exploit New York's No-Fault laws—a system that provides insurance coverage to persons ("claimants") involved in automobile accidents.

12.     New York is an ideal venue for this scheme because every claimant is eligible for at least $50,000.00 in coverage for necessary medical expenses under New York's No-Fault laws.

13.     Claimants may assign their No-Fault benefits to healthcare providers, who may then seek payment directly from the claimant's insurer.

14.     However, healthcare providers are not eligible to collect No-Fault payments if they fail to comply with applicable licensing laws in any respect.

15.     The ownership of PCs by unlicensed persons is strictly prohibited under New York law.

16.     PCs are also prohibited from sharing professional fees with unlicensed persons.

17.     PCs are further forbidden from billing for medically unnecessary services, and from collecting No-Fault payments for services provided by independent contractors.

4

18.     Overall, the Defendants conspired to operate and control the PC Defendants in violation of New York law.

19.     The Defendants' scheme endangered the health, safety, and well-being of claimants because patients were subjected to bogus services for the sake of the Management Defendants' profits.

20.     The PC Defendants submitted hundreds of fraudulent bills to Allstate seeking No-Fault payments for physical therapy services.  The PC Defendants' bills are fraudulent and non-compensable because (a) the billed-for services were not medically necessary, (b) the PC Defendants were owned and controlled in violation of New York law, (c) the billed-for services were the result of unlawful referral and kickback arrangements with referring providers, (d) the billed-for services were not actually performed as represented, and (e) the billed-for services were delivered by an independent contractor, if at all.

21.     The Defendants created and submitted statutory claim forms (i.e., NF-3 bills) that falsely certified the PC Defendants' eligibility to collect No-Fault payments under New York law even though they knew that the PC Defendants were illegally operated and controlled, and ineligible to collect No-Fault payments.

22.     The PC Defendants' bills also falsely identified the treating providers as "employees" of PC Defendants when the providers were actually independent contractors.

23.     The Defendants knew that the PC Defendants' No-Fault claims were false and fraudulent because the bills and documents submitted to Allstate in support of the claims misrepresented or omitted material facts about the PC Defendants' rights to be paid under New York's No-Fault laws.

24.     The success of the Defendants' scheme to defraud relied on the transmission to Allstate, through the U.S. Mail, of invoices, bills, and other No-Fault claim documents warranting the PC Defendants' eligibility to collect No-Fault payments under New York law.

25.     Allstate reasonably relied on the facial validity of PC Defendants' documents—and the representations contained therein—when paying No-Fault claims.

26.     Allstate was damaged by the fraudulent No-Fault claims submitted by the PC Defendants.

27.     Allstate brings this action against the Defendants for: (a) violations of the federal Racketeer Influenced and Corrupt Organizations (RICO) Act, 18 U.S.C. § 1961, *et seq.*; (b) common-law fraud; and (c) unjust enrichment.

28.     This action seeks actual damages in excess of $1,606,792.15, which represent No-Fault payments that Allstate was wrongfully induced to make to the PC Defendants during the course of this scheme.

29.     Allstate also seeks a declaration pursuant to 28 U.S.C. § 2201 that it is not legally obligated to make any further payments to the PC Defendants (or their agents) in connection with any No-Fault claims submitted to Allstate.

30.     All of the acts and omissions of the Defendants described throughout this Complaint were undertaken purposely, knowingly, and intentionally.

31.     The Defendants purposely designed and executed this fraudulent scheme to elicit payment of automobile insurance contract proceeds from Allstate to, or for the benefit of, the Defendants.  The Defendants knew that the patients identified in this Complaint were eligible for insurance coverage pursuant to automobile insurance policies issued by Allstate.

32.     In each claim detailed throughout this Complaint and in the accompanying Exhibits, an Allstate automobile insurance contract was the platform upon which the Defendants sought—and in many instances obtained—payment for services that were not compensable under New York's No-Fault laws.  Allstate estimates that the Defendants, in furtherance of this scheme, purposely and knowingly submitted hundreds of bills on behalf of the PC Defendants knowing that the bills were not compensable under New York's No-Fault laws.

## II.     THE PARTIES

### A.     PLAINTIFFS

33.     Allstate Insurance Company, Allstate Indemnity Company, Allstate Property and Casualty Insurance Company, and Allstate Fire and Casualty Insurance Company are corporations duly organized and existing under the laws of the State of Illinois.

34.     Allstate Insurance Company, Allstate Indemnity Company, Allstate Property and Casualty Insurance Company, and Allstate Fire and Casualty Insurance Company each have their principal place of business in Northbrook, Illinois.

35.     At all relevant times, Allstate Insurance Company, Allstate Indemnity Company, Allstate Property and Casualty Insurance Company, and Allstate Fire and Casualty Insurance Company were each authorized to conduct business in New York.

### B.     DEFENDANTS

#### 1.     Better Hands Physical Therapy P.C. ("Better Hands") and Kristine May Bitanga Parcon, P.T. ("Parcon")

36.     Better Hands is organized as a professional service corporation under New York law with a principal place of business located at 90-14 179th Place, Jamaica, NY 11432.  Better Hands was nominally owned by Parcon.

37.     Parcon resides in and is a citizen of the State of New York.

7

38.     Parcon was a licensed physical therapist in the State of New York during the relevant period.

39.     Parcon participated in this scheme by: billing for services through Better Hands; falsely holding herself out to the public and to Allstate as the sole officer, director, and shareholder of Better Hands; and allowing the Management Defendants to operate and control Better Hands and siphon-off its professional fees.

40.     Parcon further participated in the operation of the Better Hands enterprise by signing—or lending her name to—Better Hands' corporate and ownership documents, as well as Better Hands' treatment records and invoices; therefore, Parcon is responsible for the fraudulent and non-compensable healthcare services that were purportedly rendered to patients of Better Hands and billed to Allstate under New York's No-Fault laws.

### 2.     **Hands of Hope, P.T., P.C. ("Hands of Hope") and Motaz Mahmoud Ebeido, P.T. ("Ebeido")**

41.     Hands of Hope is organized as a professional service corporation under New York law with a principal place of business located at 1423 Bedford Avenue, Brooklyn, NY 11216. Hands of Hope was nominally owned by Ebeido.

42.     Ebeido resides in and is a citizen of the State of New Jersey.

43.     Ebeido was a licensed physical therapist in the State of New York during the relevant period.

44.     Ebeido participated in this scheme by: billing for services through Hands of Hope; falsely holding himself out to the public and to Allstate as the sole officer, director, and shareholder of Hands of Hope; and allowing the Management Defendants to operate and control Hands of Hope and siphon-off its professional fees.

45.     Ebeido further participated in the operation of the Hands of Hope enterprise by signing—or lending his name to—Hands of Hope's corporate and ownership documents, as well as Hands of Hope's treatment records and invoices; therefore, Ebeido is responsible for the fraudulent and non-compensable healthcare services that were purportedly rendered to patients of Hands of Hope and billed to Allstate under New York's No-Fault laws.

**3.      July PT, P.C. ("July PT"), Hand by Hand PT, P.C. ("Hand by Hand"), and Mahmoud Elsayed Elsanaa, P.T. ("Elsanaa")**

46.     July PT is organized as a professional service corporation under New York law with a principal place of business is located at 63 73rd Street, Brooklyn, NY 11209.  July PT was nominally owned by Elsanaa.

47.     Hand by Hand is organized as a domestic professional service corporation under New York law with a principal place of business located at 63 73rd Street, Brooklyn, NY 11209. Hand by Hand was nominally owned by Elsanaa.

48.     Elsanaa resides in and is a citizen of the State of New Jersey.

49.     Elsanaa was a licensed physical therapist in the State of New York during the relevant period.

50.     Elsanaa participated in this scheme by: billing for services through July PT and Hand by Hand; falsely holding himself out to the public and to Allstate as the sole officer, director, and shareholder of July PT and Hand by Hand; and allowing the Management Defendants to operate and control July PT and Hand by Hand, and siphon-off their professional fees.

51.     Elsanaa further participated in the operation of the July PT and Hand by Hand enterprises by signing—or lending his name to—July PT and Hand by Hand's corporate and ownership documents, as well as July PT and Hand by Hand's treatment records and invoices; therefore, Elsanaa is responsible for the fraudulent and non-compensable healthcare services that

were purportedly rendered to patients of July PT and Hand by Hand and billed to Allstate under New York's No-Fault laws.

4.    **MMA Physical Therapy, P.C. ("MMA") and Mazen Mohamed Ahmed Ali Abdel Magid, P.T. ("Magid")**

52.    MMA is organized as a professional service corporation under New York law with a principal place of business located at 1247 74th Street, Floor 2, Brooklyn, NY 11228. MMA was nominally owned by Magid.

53.    Magid resides in and is a citizen of the State of New York.

54.    Magid was a licensed physical therapist in the State of New York during the relevant period.

55.    Magid participated in this scheme by: billing for services through MMA; falsely holding himself out to the public and to Allstate as the sole officer, director, and shareholder of MMA; and allowing the Management Defendants to operate and control MMA and siphon-off its professional fees.

56.    Magid further participated in the operation of the MMA enterprise by signing—or lending his name to—MMA's corporate and ownership documents, as well as MMA's treatment records and invoices; therefore, Magid is responsible for the fraudulent and non-compensable healthcare services that were purportedly rendered to patients of MMA and billed to Allstate under New York's No-Fault laws.

5.    **Pyramid Care PT, P.C. ("Pyramid") and Mohamed Hablas, P.T. ("Hablas")**

57.    Pyramid is organized as a professional service corporation under New York law with a principal place of business located at 10 Vista Avenue, Staten Island, NY 10304. Pyramid was nominally owned by Hablas.

10

58.     Hablas resides in and is a citizen of the State of New York.

59.     Hablas was a licensed physical therapist in the State of New York during the relevant period.

60.     Hablas participated in this scheme by: billing for services through Pyramid; falsely holding himself out to the public and to Allstate as the sole officer, director, and shareholder of Pyramid; and allowing the Management Defendants to operate and control Pyramid and siphon-off its professional fees.

61.     Hablas further participated in the operation of the Pyramid enterprise by signing— or lending his name to—Pyramid's corporate and ownership documents, as well as Pyramid's treatment records and invoices; therefore, Hablas is responsible for the fraudulent and non-compensable healthcare services that were purportedly rendered to patients of Pyramid and billed to Allstate under New York's No-Fault laws.

**6.      Comfort Physical Therapy, PLLC ("Comfort") and Melissa C. Cadet, P.T. ("Cadet")**

62.     Comfort is organized as a domestic professional service limited liability company under New York law with a principal place of business located at 240-15 Caney Road, Apt. 2, Rosedale, NY 11422.  Comfort was nominally owned by Cadet.

63.     Cadet resides in and is a citizen of the State of New York.

64.     Cadet was a licensed physical therapist in the State of New York during the relevant period.

65.     Cadet participated in this scheme by: billing for services through Comfort; falsely holding herself out to the public and to Allstate as the sole officer, director, and shareholder of Comfort; and allowing the Management Defendants to operate and control Comfort and siphon-off its professional fees.

11

66.     Cadet further participated in the operation of the Comfort enterprise by signing—or lending her name to—Comfort's corporate and ownership documents, as well as Comfort's treatment records and invoices; therefore, Cadet is responsible for the fraudulent and non-compensable healthcare services that were purportedly rendered to patients of Comfort and billed to Allstate under New York's No-Fault laws.

**7.      Atlas PT, P.C. ("Atlas"), Axis PT, P.C. ("Axis") and Mohamed Awad Awad, P.T. ("Awad")**

67.     Atlas is organized as a professional service corporation under New York law with a principal place of business located at 1505 Emmons Avenue, Brooklyn, NY 11235.  Atlas was nominally owned by Awad.

68.     Axis is organized as a professional service corporation under New York law with a principal place of business located at 1119 Coney Island Avenue, Apartment 2R, Brooklyn, NY 11230.  Axis was nominally owned by Awad.

69.     Awad resides in and is a citizen of the State of New Jersey.

70.     Awad was a licensed physical therapist in the State of New York during the relevant period.

71.     Awad participated in this scheme by: billing for services through Atlas and Axis; falsely holding himself out to the public and to Allstate as the sole officer, director, and shareholder of Atlas and Axis; and allowing the Management Defendants to operate and control Atlas and Axis, and siphon-off their professional fees.

72.     Awad further participated in the operation of the Atlas and Axis enterprises by signing—or lending his name to—Atlas's and Axis's corporate and ownership documents, as well as Atlas's and Axis's treatment records and invoices; therefore, Awad is responsible for the

fraudulent and non-compensable healthcare services that were purportedly rendered to patients of Atlas and Axis and billed to Allstate under New York's No-Fault laws.

### 8. MT Physical Therapy P.C. ("MT") and Madonna Parungo Tandingan, P.T. ("Tandingan")

73.     MT is organized as a professional service corporation under New York law with a principal place of business located at 1142 44th Drive, Suite 11, Long Island City, NY 11101.  MT was nominally owned by Tandingan.

74.     Tandingan resides in and is a citizen of the State of New Jersey.

75.     Tandingan was a licensed physical therapist in the State of New York during the relevant period.

76.     Tandingan participated in this scheme by: billing for services through MT; falsely holding herself out to the public and to Allstate as the sole officer, director, and shareholder of MT; and allowing the Management Defendants to operate and control MT and siphon-off its professional fees.

77.     Tandingan further participated in the operation of the MT enterprise by signing— or lending her name to—MT's corporate and ownership documents, as well as MT's treatment records and invoices; therefore, Tandingan is responsible for the fraudulent and non-compensable healthcare services that were purportedly rendered to patients of MT and billed to Allstate under New York's No-Fault laws.

### 9. Life Care Physical Therapy P.C. ("Life Care"), Finesse Care Physical Therapy P.C. ("Finesse Care"), and Ahmed Hamdy Emara, P.T. ("Emara")

78.     Life Care is organized as a professional service corporation under New York law with a principal place of business located at 3228 68th Street, 3rd Floor, Woodside, NY 11377. Life Care was nominally owned by Emara.

79.     Finesse Care is organized as a professional service corporation under New York law with a principal place of business located at 3228 68th Street, 3rd Floor, Woodside, NY 11377. Finesse Care was nominally owned by Emara.

80.     Emara resides in and is a citizen of the State of New York.

81.     Emara was a licensed physical therapist in the State of New York during the relevant period.

82.     Emara participated in this scheme by: billing for services through Life Care and Finesse Care; falsely holding himself out to the public and to Allstate as the sole officer, director, and shareholder of Life Care and Finesse Care; and allowing the Management Defendants to operate and control Life Care and Finesse Care, and siphon-off their professional fees.

83.     Emara further participated in the operation of the Life Care and Finesse Care enterprises by signing—or lending his name to—Life Care and Finesse Care's corporate and ownership documents, as well as Life Care and Finesse Care's treatment records and invoices; therefore, Emara is responsible for the fraudulent and non-compensable healthcare services that were purportedly rendered to patients of Life Care and Finesse Care and billed to Allstate under New York's No-Fault laws.

**10.    JA Physical Therapy P.C. ("JA"), JEVA Physical Therapy P.C. ("JEVA"), and Joseph Edwin Villacorte Abrenica, P.T. ("Abrenica")**

84.     JA is organized as a professional service corporation under New York law with a principal place of business located at 5741 157th Street, Floor 1, Flushing, NY 11355.  JA was nominally owned by Abrenica.

85.     JEVA is organized as a professional service corporation under New York law with a principal place of business located at 221-64 59th Avenue, 1st Floor, Oakland Gardens, NY 11364.  JEVA was nominally owned by Abrenica.

86.     Abrenica was a licensed physical therapist in the State of New York during the relevant period.

87.     Abrenica participated in this scheme by: billing for services through JA and JEVA; falsely holding himself out to the public and to Allstate as the sole officer, director, and shareholder of JA and JEVA; and allowing the Management Defendants to operate and control JA and JEVA, and siphon-off their professional fees.

88.     Abrenica further participated in the operation of the JA and JEVA enterprises by signing—or lending his name to—JA and JEVA's corporate and ownership documents, as well as JA and JEVA's treatment records and invoices; therefore, Abrenica is responsible for the fraudulent and non-compensable healthcare services that were purportedly rendered to patients of JA and JEVA and billed to Allstate under New York's No-Fault laws.

**11.    Raine M. Pesidas Physical Therapy P.C. ("Pesidas PT") and Rainegale Marie Mendiola Pesidas, P.T. ("Pesidas")**

89.     Pesidas PT is organized as a professional service corporation under New York law with a principal place of business located at 4150 76th Street, Apartment 728, Elmhurst, NY 11373.

90.     Pesidas was a licensed physical therapist in the State of New York during the relevant period.

91.     Pesidas participated in this scheme by: billing for services through Pesidas PT; falsely holding herself out to the public and to Allstate as the sole officer, director, and shareholder of Pesidas PT; and allowing the Management Defendants to operate and control Pesidas PT and siphon-off its professional fees.

92.     Pesidas further participated in the operation of the Pesidas PT enterprise by signing—or lending her name to—Pesidas PT's corporate and ownership documents, as well as

Pesidas PT's treatment records and invoices; therefore, Pesidas is responsible for the fraudulent and non-compensable healthcare services that were purportedly rendered to patients of Pesidas PT and billed to Allstate under New York's No-Fault laws.

**12.     Wellness Physical Therapy Rehabilitation P.L.L.C. ("Wellness PT") and Milena Rezende, P.T. a/k/a Milena Reyes ("Rezende")**

93.     Wellness PT is organized as a domestic professional limited liability company under New York law with a principal place of business located in the State of New York.  Wellness PT was nominally owned by Rezende.

94.     Rezende was a licensed physical therapist in the State of New York during the relevant period.

95.     Rezende participated in this scheme by: billing for services through Wellness PT; falsely holding herself out to the public and to Allstate as the sole officer, director, and shareholder of Wellness PT; and allowing the Management Defendants to operate and control Wellness PT and siphon-off its professional fees.

96.     Rezende further participated in the operation of the Wellness PT enterprise by signing—or lending her name to—Wellness PT's corporate and ownership documents, as well as Wellness PT's treatment records and invoices; therefore, Rezende is responsible for the fraudulent and non-compensable healthcare services that were purportedly rendered to patients of Wellness PT and billed to Allstate under New York's No-Fault laws.

**13.     MC Physical Therapy, P.C. ("MC") and Michelle Nesas Cuadra, P.T. ("Cuadra")**

97.     MC is organized as a professional service corporation under New York law with a principal place of business located at 75-10 Yellowstone Boulevard, Apartment 4F, Rego Park, NY 11374.  MC was nominally owned by Cuadra.

98.     Cuadra was a licensed physical therapist in the State of New York during the relevant period.

99.     Cuadra participated in this scheme by: billing for services through MC; falsely holding herself out to the public and to Allstate as the sole officer, director, and shareholder of MC; and allowing the Management Defendants to operate and control MC and siphon-off its professional fees.

100.     Cuadra further participated in the operation of the MC enterprise by signing—or lending her name to—MC's corporate and ownership documents, as well as MC's treatment records and invoices; therefore, Cuadra is responsible for the fraudulent and non-compensable healthcare services that were purportedly rendered to patients of MC and billed to Allstate under New York's No-Fault laws.

### 14.     Go Flex Rehab Physical Therapy, P.C. ("Go Flex") and Lyn Jonson Ballener, P.T. ("Ballener")

101.     Go Flex is organized as a professional service corporation under New York law with a principal place of business located at 53-19 92nd Street, #2A, Elmhurst, NY 11373.  Go Flex was nominally owned by Ballener.

102.     Ballener was a licensed physical therapist in the State of New York during the relevant period.

103.     Ballener participated in this scheme by: billing for services through Go Flex; falsely holding herself out to the public and to Allstate as the sole officer, director, and shareholder of Go Flex; and allowing the Management Defendants to operate and control Go Flex and siphon-off its professional fees.

104.     Ballener further participated in the operation of the Go Flex enterprise by signing— or lending her name to—Go Flex's corporate and ownership documents, as well as Go Flex's

treatment records and invoices; therefore, Ballener is responsible for the fraudulent and non-compensable healthcare services that were purportedly rendered to patients of Go Flex and billed to Allstate under New York's No-Fault laws.

### 15. Vladimir Geykhman

105. Vladimir Geykhman ("Geykhman") resides in and is a citizen of the State of New York.

106. Geykhman does not hold a medical license or a physical therapy license, and is not authorized to practice medicine or physical therapy in the State of New York.

107. Geykhman also is not authorized or permitted to own, control, or profit from a professional corporation organized to provide healthcare services in New York.

108. At all relevant times, Geykhman participated in the operation and management of the PC Defendants by exerting unlawful control over the PC Defendants, including the PC Defendants' professional fees and profits.

109. As part of this scheme, Geykhman caused the PC Defendants to aggressively seek and collect payments from Allstate under New York's No-Fault laws even though the PC Defendants were not eligible to collect No-Fault payments.

110. Geykhman participated in the operation and management of the PC Defendant enterprises by, among other things, (a) controlling and conducting the PC Defendants' affairs, (b) causing the PC Defendants to seek and collect payments for non-compensable healthcare services, and (c) siphoning-off the PC Defendants' professional fees and profits; therefore, Geykhman is responsible for the fraudulent and non-compensable services that were purportedly rendered to patients of the PC Defendants and billed to Allstate under New York's No-Fault law.

### 16.    **Alexander Gulkarov**

111.    Alexander Gulkarov ("Gulkarov") resides in and is a citizen of the State of New York.

112.    Gulkarov does not hold a medical license or physical therapy license, and is not authorized to practice medicine or physical therapy in the State of New York.

113.    Gulkarov also is not authorized or permitted to own, control, or profit from a professional corporation organized to provide healthcare services in New York.

114.    At all relevant times, Gulkarov participated in the operation and management of the PC Defendants by exerting unlawful control over the PC Defendants, including the PC Defendants' professional fees and profits.

115.    As part of this scheme, Gulkarov caused the PC Defendants to aggressively seek and collect payments from Allstate under New York's No-Fault laws even though the PC Defendants were not eligible to collect No-Fault payments.

116.    Gulkarov participated in the operation and management of the PC Defendant enterprises by, among other things, (a) controlling and conducting the PC Defendants' affairs, (b) causing the PC Defendants to seek and collect payments for non-compensable healthcare services, and (c) siphoning-off the PC Defendants' professional fees and profits; therefore, Gulkarov is responsible for the fraudulent and non-compensable services that were purportedly rendered to patients of the PC Defendants and billed to Allstate under New York's No-Fault law.

### 17.    **Artur Sattarov**

117.    Artur Sattarov ("Sattarov") resides in and is a citizen of the State of New York.

118.    Sattarov does not hold a medical license or physical therapy license, and is not authorized to practice medicine or physical therapy in the State of New York.

119.     Sattarov also is not authorized or permitted to own, control, or profit from a professional corporation organized to provide healthcare services in New York.

120.     Sattarov participated in the operation and management of the PC Defendants by controlling and laundering their professional fees in furtherance of this scheme.

121.     Sattarov owned or controlled several different shell companies, which engaged in transactions with the PC Defendants.  The transactions were part of the Management Defendants' scheme to siphon professional fees from the PC Defendants and then launder the proceeds.

122.     Sattarov participated in the operation and management of the PC Defendant enterprises by, among other things, (a) controlling and conducting the PC Defendants' affairs, (b) causing the PC Defendants to seek and collect payments for non-compensable healthcare services, and (c) siphoning-off the PC Defendants' professional fees and profits; therefore, Sattarov is responsible for the fraudulent and non-compensable services that were purportedly rendered to patients of the PC Defendants and billed to Allstate under New York's No-Fault law.

### 18.     **Jasur Rahmatov**

123.     Jasur Rahmatov ("Rahmatov") resides in and is a citizen of the State of New York.

124.     Rahmatov does not hold a medical license or physical therapy license, and is not authorized to practice medicine or physical therapy in the State of New York.

125.     Rahmatov also is not authorized or permitted under New York law to own, control, or profit from a professional corporation organized to provide healthcare services in New York.

126.     Rahmatov participated in the operation and management of the PC Defendants by controlling and laundering their professional fees in furtherance of this scheme.

127.     Rahmatov owned or controlled several different shell companies, which engaged in transactions with the PC Defendants.   The transactions were part of the Management

Defendants' scheme to siphon professional fees from the PC Defendants and then launder the proceeds.

128.    Rahmatov participated in the operation and management of the PC Defendant enterprises by, among other things, (a) controlling and conducting the PC Defendants' affairs, (b) causing the PC Defendants to seek and collect payments for non-compensable healthcare services, and (c) siphoning-off the PC Defendants' professional fees and profits; therefore, Rahmatov is responsible for the fraudulent and non-compensable services that were purportedly rendered to patients of the PC Defendants and billed to Allstate under New York's No-Fault law.

## III.   <u>JURISDICTION AND VENUE</u>

129.    Subject matter jurisdiction over this action is conferred upon this Court by 28 U.S.C. §§ 1331 and 1332.

130.    Supplemental jurisdiction over Allstate's state law claims is proper pursuant to 28 U.S.C. § 1367.

131.    Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) whereas the vast majority of the acts known to Allstate alleged herein were carried out within the Eastern District of New York.

132.    At all relevant times, the Defendants have engaged in purposeful activities in New York by seeking and submitting payment demands for claims made under New York's No-Fault laws, as detailed, *infra*.

133.    The Defendants' activities in and contacts with New York were purposefully sought and transacted to take advantage of the benefits available under New York's No-Fault laws.

134.    As the allegations and causes of action in the within Complaint arise from (a) the Defendants' unlawful acts committed in the State of New York, and (b) the fraudulent and non-compensable billing that the Defendants generated and submitted from within the State of New

York seeking payment under New York's No-Fault laws, there is no question that there exists a substantial relationship or connection between the State of New York, the transactions at issue, and Allstate's causes of action.

## IV.   APPLICABLE NO-FAULT LAWS AND LICENSING STATUTES

### A.   GENERAL OVERVIEW OF NEW YORK'S NO-FAULT LAWS

135.   Allstate underwrites automobile insurance in the State of New York.

136.   New York's No-Fault laws are designed to ensure that injured victims of motor vehicle accidents have an efficient mechanism to pay reasonable fees for necessary healthcare services.

137.   Under New York's Comprehensive Motor Vehicle Insurance Reparations Act (N.Y. Ins. Law § 5101, *et seq.*), and the regulations promulgated pursuant thereto (11 N.Y.C.R.R. § 65, *et seq.*) (collectively, "No-Fault laws"), automobile insurers are required to provide Personal Injury Protection Benefits (hereinafter, "No-Fault benefits") to Allstate claimants.

138.   Under New York's No-Fault laws, individuals are entitled to be compensated for "basic economic loss" resulting from injuries caused by the operation of a motor vehicle.

139.   "Basic economic loss" is defined to include "all necessary expenses" for medical services.  N.Y. Ins. Law § 5102(a)(1); 11 N.Y.C.R.R. § 65-1.1.

140.   No-Fault benefits include at least $50,000.00 per eligible person for reasonable expenses that are incurred for necessary healthcare goods and services.

### B.   ELIGIBILITY REQUIREMENTS UNDER NEW YORK'S NO-FAULT LAWS

141.   Healthcare providers are not eligible to collect payment under New York's No-Fault laws if they fail to meet ***any*** applicable New York State or local licensing requirements necessary to perform those services in New York.  *See* 11 N.Y.C.R.R. § 65-3.16(a)(12).

22

142.   An insurer may withhold No-Fault payments to a healthcare provider when there is a willful and material failure by the provider to abide by licensing and incorporation statutes.  *State Farm Mut. Auto. Ins. Co. v. Mallela*, 827 N.E.2d 758 (N.Y. 2005); 11 N.Y.C.R.R. § 65-3.16(a)(12).

143.   Parties may "look beyond the face of licensing documents" to demonstrate illegal ownership and control.  *Mallela*, 827 N.E.2d at 761.  Numerous factors may be considered when determining actual control of a medical provider, such as one-sided agreements, control of assets, profit sharing, and the extent of the nominal owner's role in the entity's business.  *See Andrew Carothers, M.D., P.C. v. Progressive Ins. Co.*, 979 N.Y.S.2d 439 (App. Term 2d Dep't 2013).

144.   If shown, a provider's illegal corporate practice "may support a finding that the provider is not an eligible recipient of reimbursement under 11 N.Y.C.R.R. § 65-3.16(a)(12) without meeting the traditional elements of common-law fraud."  *See Andrew Carothers, M.D., P.C. v. Progressive Ins. Co.*, 128 N.E.3d 153, 163 (N.Y. 2019).

### 1.   Unlawful Control of PCs

145.   Fraudulently incorporated medical providers are not entitled to collect No-Fault payments, and a provider commits fraud by submitting No-Fault claims when it is owned or controlled by an unlicensed person.  *Allstate Ins. Co. v. Lyons*, 843 F. Supp. 2d 358, 371 (E.D.N.Y. 2012).

146.   Lay ownership of medical providers is forbidden in New York because it compromises patient care and leads to other types of fraud such as billing for medically unnecessary services and billing at inflated rates.  *See State Farm Mut. Auto. Ins. Co. v. Mallela*, 372 F.3d 500, 503-504, 507 (2d Cir. 2004).

147.    The term "fraudulently incorporated" has been interpreted to mean any "corporate practice that shows willful and material failure to abide by licensing and incorporation statutes." *See Carothers*, 128 N.E.3d at 163.

148.    New York Business Corporation Law § 1507 prohibits a professional service corporation from issuing shares to individuals unless they are "engaged in the practice of such profession in such a corporation."  It also prohibits such shareholder(s) from entering into any agreement, granting proxies, or transferring control to individuals who are not authorized by law to practice the profession for which the professional corporation is authorized to practice.

149.    Pursuant to New York Business Corporation Law § 1508, no individual may be a director or officer of a professional service corporation unless he is authorized by law to practice in this state a profession that such corporation is authorized to practice.

150.    New York law prohibits anyone from engaging in the practice of physical therapy unless they are licensed to practice physical therapy.  *See* N.Y. Educ. Law §§ 6731-6732.

151.    The practice of physical therapy includes rendering treatment pursuant to a referral from "a licensed physician, dentist, podiatrist, nurse practitioner or licensed midwife" who is acting within their own lawful scope of practice and in accordance with their own diagnosis.  *See* N.Y. Educ. Law § 6731(c).

152.    Additionally, physical therapists are generally prohibited from dividing or sharing professional fees with non-licensees.  *See* N.Y. Educ. Law § 6509-a.

### 2.    <u>Unlawful Use of Independent Contractors</u>

153.    Medical providers, including physical therapy providers, are prohibited from collecting No-Fault payments for services rendered by independent contractors.  *See* 11 N.Y.C.R.R. § 65-3.11.

154.     If a PC uses independent contractors, instead of employees, to provide services, then the PC is not eligible to seek or collect payment under New York's No-Fault laws.  *See* Opinion Letters, New York State Department of Financial Services f/k/a the Department of Insurance ("DOI"), annexed hereto as Exhibit 1.

### 3.     <u>Unlawful Referral Arrangements</u>

155.     New York law prohibits unprofessional conduct in the practice of medicine and physical therapy, which includes exploiting patients for financial gain.  8 N.Y.C.R.R. § 29.1(b)(2) (prohibiting medical and physical therapy professionals from "exercising undue influence on the patient or client, including the promotion of the sale of services, goods, appliances or drugs in such manner as to exploit the patient or client for the financial gain of the practitioner or of a third party").

156.     In New York, physical therapists engage in unprofessional conduct by "directly or indirectly offering, giving, soliciting, or receiving or agreeing to receive, any fee or other consideration to or from a third party for the referral of a patient or client or in connection with the performance of professional services.").  *See* 8 N.Y.C.R.R. § 29.1(b)(3).

157.     Under New York Public Health Law § 238-a(1)(a), a practitioner authorized to order physical therapy services may not make a referral to another provider in which the ordering practitioner has a financial relationship.  Prohibited financial relationships include compensation agreements, contracts that exceed fair market value, and agreements in which compensation is variable based on the volume of referrals.

158.     Physical therapists are not allowed to bill for services furnished pursuant to a prohibited referral relationship.  *See* N.Y. Pub. Health Law § 238-a(1)(b).

C.    CLAIMING REIMBURSEMENT UNDER NEW YORK'S NO-FAULT LAWS

159.    Claimants can assign their No-Fault benefits to healthcare providers.

160.    Under a duly executed assignment, a claimant's healthcare provider may submit claims directly to an insurance company and receive payment for necessary healthcare services rendered.

161.    Healthcare providers can submit claims for No-Fault payments by using the claim form required by the DOI (known as "Verification of Treatment by Attending Physician or Other Provider of Health Service" or more commonly as an "NF-3 form").

162.    NF-3 forms are important because they certify that the provider's request for payment is not materially false, misleading, or fraudulent.  11 N.Y.C.R.R. § 65.3-11(a); N.Y. Ins. Law § 403(d).

163.    Under New York law, healthcare providers must verify their NF-3 submissions subject to the following warning:

> "Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime."

N.Y. Ins. Law § 403(d).

164.    Providers make material misrepresentations when they submit NF-3 forms that either omit or present false information bearing upon their eligibility for No-Fault payments. These omissions and misrepresentations can take many forms, such as false and misleading information about (a) the ownership of a PC seeking payment, (b) the necessity of the service, (c) the identity of the actual provider of the service, and (d) compliance with the requirements of the applicable fee schedule.

26

165.     Representations about PC ownership and control are material because New York law requires that all professional healthcare service corporations be owned and controlled by appropriately licensed healthcare professionals.  *See* N.Y. Bus. Corp. Law §§ 1503, 1507.

166.     Representations concerning medical necessity are material because providers are only eligible for payment if the billed-for services are necessary.  *See* N.Y. Ins. Law § 5102(a)(1); 11 N.Y.C.R.R. § 65-1.1.

167.     And, representations about the treating providers (i.e., the persons who actually deliver the services) are material because PCs can only collect No-Fault payments for services furnished by an owner or employee of the PC—if a provider uses independent contractors instead of employees to deliver services, then the provider is not eligible for No-Fault payments.

168.     Finally, a healthcare provider's misrepresentations regarding compliance with the applicable fee schedule is material because the New York Workers' Compensation Board has established a schedule of fees known commonly as the "Workers' Compensation Fee Schedule" ("Fee Schedule").

169.     The Fee Schedule is used by healthcare providers and insurers to determine the level of reimbursement payable on legitimate claims.

170.     Providers are prohibited from submitting charges that exceed the amounts set forth in the Fee Schedule.

171.     Overall, if a provider fails to meet any applicable licensing requirements, then they are not entitled to collect No-Fault payment under New York law.

## V.     FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS

172.     The PC Defendants failed to comply with applicable licensing requirements during the course of this scheme, and were never eligible to seek or collect No-Fault payments from

Allstate. Indeed, the PC Defendants engaged in prohibited conduct by (a) billing for unnecessary physical therapy treatments, tests, and services as part of a predetermined protocol, (b) billing for services that were not rendered as represented, (c) participating in prohibited referral relationships, (d) engaging in fee splitting with the Management Defendants through transactions with shell companies, (e) billing for independent contractor services, and (f) submitting false or inflated bills in support of No-Fault claims.

A.     **BACKGROUND OF SCHEME**

1.     **Related Criminal Actions**

173.     Numerous Defendants have been charged criminally in connection with this scheme; several of them have confessed to crimes arising from the unlawful operation and control of physical therapy providers and PCs.

a.     *Geykhman's Guilty Plea*

174.     Geykhman pleaded guilty to criminal allegations of conspiracy to commit healthcare fraud in connection with a No-Fault scheme to defraud through physical therapy providers. *See United States v. Geykhman*, No. 1:20-cr-00371-AMD (E.D.N.Y.).[1]

175.     Geykhman labeled himself "the facilitator for the physical therapists' participation in the fraud." *See* Geykhman Sentencing Memo., at pp. 11-12. Geykhman admitted that he illegally conspired to cause the submission of false and fraudulent No-Fault claims for physical therapy services that had never actually been performed. *Id.*

176.     According to Geykhman, the scheme caused patients to undergo a predetermined protocol of physical therapy treatments, including ROM and functional mobility testing. *Id.* at p.

---

[1] Geykhman's sentencing memorandum from *United States v. Geykhman* is annexed hereto as Exhibit 57 (hereinafter, "Geykhman Sentencing Memo.").

28

18.   Geyhkman confessed that the unnecessary services were performed by "technicians and not physical therapists." *Id.* at p. 19.

177.   Geykhman further admitted that he shared in the professional fees paid to the physical therapists on No-Fault claims.

178.   Geykhman also explained his relationship with Elsanaa.  According to Geykhman, Elsanaa agreed to falsely sign his name on test forms as the medical provider in exchange for compensation. *Id.* at pp. 18-19.

179.   Elsanna recruited other physical therapists to participate in the scheme, who were introduced to Geykhman. *Id.* at pp. 21-22.

180.   Geykhman detailed how the scheme operated pursuant to a "pattern." *Id.* at p. 19.

181.   First, Geykhman met with the PC's nominal owner who, at Geykhman's direction, provided him with access to a bank account or P.O. Box where the PC's insurance payment checks were deposited or received.  *Id.* at p. 19.  In certain instances, the PC's nominal owner, at Geykhman's direction, provided blank checks on the PC's bank account to Geykhman.  *Id.*

182.   Next, a technician would complete the testing records for the PC's patients pursuant to a predetermined treatment protocol, which records Geykhman caused to be fraudulently signed by the PC's nominal owner as if they had performed the service (they had not).  *Id.*

183.   Geykhman knew that the false and fraudulent testing records would be submitted to insurance companies, including Allstate, in support of non-compensable charges under New York's No-Fault laws.  *See id.*

184.   Geykhman caused the PC's nominal owner to write checks representing the PC's professional fees and profits made payable to certain shell companies controlled by unlicensed laypersons.  *Id.*

185.    Geykhman then advised the nominal owner of the PC of the portion that they could retain as compensation for the use of their professional license to incorporate the PC and bill for medically unnecessary physical therapy treatments, tests, and services.  *Id.*

### b.    *Gulkarov's Guilty Plea*

186.    Gulkarov was indicted as a leader of a massive healthcare fraud, money laundering, and bribery scheme that targeted No-Fault insurers.  *See United States v. Gulkarov*, No. 1:22-cr-00020-PGG (S.D.N.Y.).[2]

187.    Gulkarov pleaded guilty to charges of conspiracy to commit bribery, conspiracy to commit healthcare fraud, and aggravated identity theft.

188.    Gulkarov's guilty plea was accompanied by a statement of facts,[3] which described how Gulkarov acted as a "clinic controller" and agreed to "unlawfully own, run, and profit from medical clinics in the New York area."  *See* Exhibit 58.

189.    Gulkarov admitted that he knew that the clinics could not bill under New York's No-Fault laws because they were controlled by unlicensed laypersons, but still agreed to submit No-Fault claims to insurance companies that falsely represented that the clinics were eligible for reimbursement.

190.    Gulkarov further admitted that he used several tactics to inflate the amounts billed to insurance companies on behalf of providers operating at the unlawfully operated clinics, including directing providers to prescribe medically unnecessary treatments, paying bribes in exchange for patient referrals, and using a billing company that he owned to submit charges in excess of what was permitted under the No-Fault laws.

---

[2] Relevant pleadings from *United States v. Gulkarov* are annexed hereto as Exhibit 58.
[3] Gulkarov agreed to a statement of facts appended to his plea agreement, which was read into the record by the Court at his change of plea hearing. Gulkarov agreed under oath to the contents of the statement of facts.

191.    Gulkarov also admitted that he funneled the scheme's proceeds to his personal accounts using blank checks signed by the medical providers and other means to pay for vacations, luxury items, and home renovations.

192.    Gulkarov also laundered the scheme's proceeds through an elaborate check cashing system that involved shell companies controlled by Gulkarov or his co-conspirators.

### c.    *Parcon's Guilty Plea*

193.    Parcon was indicted on charges stemming from her involvement in a scheme.  *See United States v. Parcon*, No. 1:22-cr-00543-AMD (E.D.N.Y.).[4]  Parcon pleaded guilty to conspiracy to commit healthcare fraud.

194.    Parcon admitted that she relinquished control of a PC to person named "Alex" in furtherance of the scheme.  Parcon's PC—Better Hands, upon information and belief—was then used to submit claims for ROM testing.

195.    Parcon admitted that records bearing her name were false—she was not involved in the treatment and could not tell whether an actual patient had been present.

### d.    *Elsanaa's Guilty Plea*

196.    Elsanaa was indicted on charges stemming from his participation in this scheme. *United States v. Elsanaa*, No. 1:20-cr-00373-LDH (E.D.N.Y.).[5]  Elsanaa was accused of falsifying and fabricating medical records to conceal the scheme to defraud.  *Id*.  Elsanaa also "routinely falsified medical records to reflect that particular licensed professionals had provided the services, when in fact, those individuals were not present at the medical clinic, and, in some instances, were

---

[4] Relevant pleadings from *United States v. Parcon* are annexed hereto as Exhibit 59.
[5] Relevant pleadings from *United States v. Elsanaa* are annexed hereto as Exhibit 60.

traveling overseas." *Id*.[6]  Elsanaa was also responsible for recruiting other physical therapists into the scheme, and received cash commission payments for his recruitment efforts.

197.    Elsanaa ultimately pleaded guilty to charges of conspiracy to commit healthcare fraud and conspiracy to make false statements.  Elsanaa also testified pursuant to a cooperation agreement in the matter *United States v. Popovych*, No. 1:20-cr-373-LDG (E.D.N.Y.).  *See* Exhibit 60.  Elsanaa was recruited into the scheme by Geykhman.  Elsanaa's role was to sign the range of motion tests without actually seeing patients, supervising the provision of the testing, or even reading the tests.  Elsanaa also split professional fees with Geykhman, which was illegal because Geykhman is an unlicensed person.

198.    Elsanaa also recruited other physical therapists to participate in the scheme, including Magid, Cadet, Reyes, and Abrenica.  These providers used their professional credentials to open a PC.  Elsanaa was paid a referral bonus by Geykhman for each provider recruited into the scheme.  The other providers recruited into the scheme—including Magid, Cadet, Reyes, and Abrenica—were caused to split professional fees paid to the PCs.

### e.    *Magid's Guilty Plea*

199.    Magid was charged in connection with this scheme.  *See United States v. Magid*, No. 1:20-mj-00812 (E.D.N.Y.).  Magid ultimately pleaded guilty, and also testified pursuant to a cooperation agreement.  *See* Exhibit 61.

200.    According to Magid, Elsanaa—who was Magid's long-time friend and business partner— recruited Magid to participate in a No-Fault fraud scheme and introduced him to "Vlad" (i.e., Geykhman).

---

[6] According to co-Defendant Geykhman, Elsanaa agreed to falsely sign his name on test forms as the physical therapy provider even though he never actually provided or supervised the services.  *See* Exhibit 57 (Geykhman Sentencing Memo.), at p. 18.

201.    Magid testified that he agreed with "Vlad" to participate in No-Fault insurance fraud.

202.    Magid explained that, as part of the scheme, he was sent range of motion tests to sign:

```
 6   Q    And your role in the fraud was to sign the tests as if
 7   you had supervised them, correct?
 8   A    Yeah, that's right.
 9   Q    Even though you did not supervise these tests.
10   A    That's right.
```

203.    In fact, Magid did not know if the range of motion tests had actually been performed or if the patient even existed:

```
16   Q    Did you know that every completed test you had received
17   had actually been performed?
18   A    No, no.
19   Q    And you didn't know if the patient on the testing
20   paperwork was even real, did you?
21   A    No.
22   Q    When you signed the range of motion tests saying that you
23   supervised them, you were lying, correct?
24   A    Yes.
```

204.    According to Magid, he received 15% of the proceeds from the range of motion tests that he signed:

```
25   Q    And you got paid for those lies, didn't you?
```

33

```
1   A      Yes.
2   Q      You got to keep 15 percent of the proceeds from the range
3   of motion tests, correct?
4   A      Yes.
```

### f.   *Cadet's Guilty Plea*

205.   Cadet was charged with conspiracy to commit healthcare fraud stemming from her involvement in this scheme.  *See United States v. Cadet*, No. 1:21-cr-00348-LDH (E.D.N.Y).[7]  The indictment alleged that Cadet was the record owner of a company that "purported to provide medical services, including physical therapy and diagnostic testing, to individuals within the Eastern District of New York."

206.   Cadet agreed to submit No-Fault claims for services that were not medically necessary and not provided as billed.  Cadet agreed to submit documents "reflecting that diagnostic testing had been provided to No-Fault Insurance beneficiaries, when in fact the testing had not been conducted."  Cadet also agreed to submit claims for services where she was falsely represented as the billing or supervising provider, when in fact no such services were provided or supervised by her."  Documents submitted by Cadet's company identified Cadet as the treating provider even though Cadet "had not evaluated or even met the No-Fault Insurance beneficiaries on whose behalf such claims were submitted."  Cadet also submitted claims for patients procured by kickbacks.

---

[7] Relevant pleadings from *United States v. Cadet* are annexed hereto as Exhibit 62.

### g.    *Abrenica's Guilty Plea*

207.    Abrenica was charged in connection with this scheme.  *United States v. Abrenica*, No. 1:21-cr-00338-LDH-1 (E.D.N.Y.).[8]   Abrenica eventually pleaded guilty to one count of conspiracy to commit healthcare fraud.

208.    Abrenica was accused of owning PCs "that purported to provide medical services, including physical therapy and diagnostic testing, to individuals within the Eastern District of New York." *Id.*

209.    Notably, JA and JEVA were the only entities owned by Abrenica during the relevant period:

Corporation Information for the following Licensee(s):

**Joseph Edwin Villacorte Abrenica**
**Physical Therapy License # 039896**

**Joseph Edwin Villacorte Abrenica** is listed as a shareholder, officer and/or director of the following entities:

| PSC # | Corporate Name | Joined | Left |
|-------|----------------|--------|------|
| 123086 | JEVA PHYSICAL THERAPY PC | 08/19/19 | |
| 120374 | JA PHYSICAL THERAPY PC | 02/01/19 | |
| | | | |
| | | | |
| | | | |

210.    Abrenica agreed to submit No-Fault claims "for physical therapy and diagnostic testing, even though such services were not medically necessary, not provided as billed, were procured by kickbacks and otherwise did not qualify for reimbursement."  Abrenica also agreed to submit claims for services that were not actually rendered.

---

[8] Relevant pleadings from *United States v. Abrenica* are annexed hereto as Exhibit 63.

### h. *Reyes' Non-Prosecution Agreement*

211.   Reyes entered into a non-prosecution agreement in connection with this scheme.
Reyes later testified for the government in the matter of *United States v. Popovych*, No. 1:20-cr-
373-LDG (E.D.N.Y.).  *See* Exhibit 64.

212.   According to Reyes, Elsanaa recruited her to participate in a No-Fault fraud
scheme, which involved signing range of motion tests in exchange for "10% of the amount billed."
Elsanaa also introduced Reyes to "Vlad" (i.e., Geykhman) in connection with the scheme.

213.   Reyes explained that she opened a bank account under Wellness PT for use in the
No-Fault fraud scheme because "[t]hey were using my company and credentials…to submit claims
as if [she] was treating those patients."  However, she did not treat these patients or supervise the
treatment of those patients:

```
                 Reyes - Direct - Ms. Glaser Dauermann        851

1   credentials for?

2   A    They were using my credentials to treat -- not treat, but

3   to submit claims as if I was treating those patients.

4   Q    Were you, in fact, treating those patients?

5   A    No.

6   Q    Did you ever supervise the treatment of those patients?

7   A    I never supervised.
```

## 2. <u>Connections Through Other Fraud Actions</u>

214. Numerous Defendants have also been accused of participating in similar schemes to defraud through the submission of false and fraudulent claims for No-Fault reimbursement, including the following:

| Fraud Action | Relevant Allegations |
|---|---|
| *Liberty Mut. Ins. Co. v. MC Physical Therapy P.C., et al.*, No. 2:21-cv-06805-MKB-SIL (E.D.N.Y.) | • Better Hands, Pesidas PT, MC and Go Flex were run by layperson owners, including Geykhman, Sattarov, and Rahmatov, and engaged in unlawful fee splitting;<br>• Better Hands, Pesidas PT, MC and Go Flex billed for medically unnecessary physical therapy services including MMT, ROM and ALM measurements;<br>• Better Hands, Pesidas PT, MC and Go Flex participated in unlawful referral relationships;<br>• Better Hands, Pesidas PT, MC and Go Flex billed for services provided by independent contractors. |
| *State Farm Mut. Auto. Ins. Co. v. Tandingan P.T. P.C., et al.*, No. 1:22-cv-01582-NRM-CLP (E.D.N.Y.) | • MMA, Comfort, Atlas, MT, Pesidas PT, Wellness PT, MC, and Axis were run by layperson owners, including Geykhman, Sattarov, and Rahmatov, and engaged in unlawful fee splitting;<br>• MMA, Comfort, Atlas, MT, Pesidas PT, Wellness PT, MC, and Axis billed for medically unnecessary physical therapy services including MMT, ROM and ALM measurements;<br>• MMA, Comfort, Atlas, MT, Pesidas PT, Wellness PT, MC, and Axis participated in unlawful referral relationships;<br>• MMA, Comfort, Atlas, MT, Pesidas PT, Wellness PT, MC, and Axis billed for services provided by independent contractors. |

| Fraud Action | Relevant Allegations |
|---|---|
| *Gov't Empls. Ins. Co. v. East Flatbush Medical, P.C. et al.*, No. 1:20-cv-01695-MKB-TAM (E.D.N.Y.) | • Tandingan ceded true beneficial control of her physical therapy license to unlicensed individuals who caused Tandingan to bill under personal TIN for medically unnecessary and excessive physical therapy services, including ROM/MMT. |
| *Gov't Empls. Ins. Co. v. MC Physical Therapy, P.C. et al.*, No. 1:23-cv-03536 (E.D.N.Y.) | • Pesidas PT, MC, Go Flex, JA, JEVA, and Better Hands were run by layperson owners and engaged in unlawful fee splitting;<br>• Pesidas PT, MC, Go Flex, JA, JEVA, and Better Hands billed for medically unnecessary physical therapy services including MMT, ROM and ALM measurements;<br>• Pesidas PT, MC, Go Flex, JA, JEVA, and Better Hands participated in unlawful referral relationships;<br>• Pesidas PT, MC, Go Flex, JA, JEVA, and Better Hands billed for services provided by independent contractors. |

**B.    UNLAWFUL CONTROL AND OPERATION OF THE PC DEFENDANTS**

215.    The PC Defendants were operated and controlled by the Management Defendants in violation of New York law, and were never eligible to collect No-Fault payments.

216.    The Nominal Owner Defendants used their physical therapy licenses to create the false appearance that the PC Defendants were owned and operated in compliance with applicable licensing requirements.

217.    The PC Defendants billed for services that were ordered because of fraudulent predetermined protocols, which were instituted at clinics controlled by the Management Defendants.

218.    The PC Defendants also engaged in transactions with shell companies controlled by the Management Defendants or their associates.  The transactions enabled the Management Defendants to siphon off the PC Defendants' professional fees.

219.    The Nominal Owner Defendants exercised no influence over the treatment of patients and were rarely, if ever, the actual treating provider despite being represented as such on the NF-3 bills submitted to Allstate.

220.    Services billed by the PC Defendants were actually performed by independent contractors, which is against New York's No-Fault laws.  Independent contractors actually performed the services purportedly rendered by the Nominal Owner Defendants, which rendered the bills non-compensable under New York law.

221.    The PC Defendants also submitted No-Fault claims for patients that were obtained through a bribery and kickback scheme.

1.    **The Illegal Ownership and Control of the PC Defendants**

222.    The Management Defendants are not authorized to practice physical therapy in the State of New York, and were not allowed to own or control a PC organized to provide physical therapy services.

223.    The Management Defendants used shell companies to siphon professional fees from the PC Defendants.

224.    The PC Defendants were caused to pay substantial sums to the shell companies. The checks were drawn to create the appearance that the PC Defendants were making payments for legitimate business-related expenses such as transportation, janitorial, advertising, billing, management, and administrative services:

**GO FLEX REHAB PHYSICAL THERAPY, P.C.**

1068

1-32/210 NY
19050

DATE 10.19.20

PAY TO THE
ORDER OF _Billing & collection, Inc_ $ 9,771

_Nine thousand seven hundred seventy one_ DOLLARS

BANK OF AMERICA
ACH R/T 021000322

FOR _____   _Gallener_

⑈001068⑈

---

**GO FLEX REHAB PHYSICAL THERAPY, P.C.**

1087

1-32/210 NY
19050

DATE 10.22.20

PAY TO THE
ORDER OF _Safe Transport Services Corp_ $ 8,426 00

_Eight thousand four hundred twenty six_ no/100 DOLLARS

BANK OF AMERICA
ACH R/T 021000322

FOR _____   _Gallener_

⑈001087⑈

---

**MC PHYSICAL THERAPY, P.C.**

1073

1-8/210

DATE 5-20-20

PAY TO THE
ORDER OF _Express Janitorial Services_ $ 8073 49

_Eight Thousand Seventy-three_ 00/100 DOLLARS

citibank
CITIBANK, N.A.

FOR _____   _WmCrowder_

⑈0000l073⑈

225.   Several of the PC Defendants made payments to the same shell companies:

41

| Shell Company | PC Defendants |
|---|---|
| Billings and Collection Srv Corp. | Go Flex; MC |
| Express Janitorial Services Inc. | MC; JEVA; Better Hands; Go Flex |
| Prompt Process Examination Inc. | Go Flex; MC; Better Hands; Pesidas PT |
| NY Statewide Employment Services Inc. | Better Hands; MT; JEVA; Go Flex; Pesidas PT |
| New York Collection & Billing Services Inc. | JEVA; Go Flex; MC; Pesidas PT |
| Quick Global Advertising Inc. | Go Flex; Pesidas PT; MC |
| Top Global Billing Services Inc. | Better Hands; MC; Go Flex |

226. However, the transactions were bogus because the shell companies did not provide any legitimate services to the PC Defendants.

227. In reality, the checks were deposited into the shell companies' bank accounts, where the proceeds were either withdrawn in cash or transferred to the account of a different shell company controlled by the Management Defendants.

228. The Management Defendants worked with Sattarov and Rahmatov to launder the proceeds collected by the PC Defendants.

229. Both Sattarov and Rahmatov have pleaded guilty to charges stemming from their involvement in a money laundering scheme. *See United States v. Sattarov*, No. 1:20-cr-00653-RA (S.D.N.Y.); *United States v. Rahmatov*, No. 1:20-cr-00653-RA (S.D.N.Y.).

230. Sattarov testified as a government witness in the matter *United States v. Rahmankulov*, No. 1:20-cr-00653-RA (S.D.N.Y.), in which he admitted that the shell companies were formed specifically for the purpose of check cashing. *See* Exhibit 65.

231. Sattarov named the companies to look like legitimate service providers—the shell companies ostensibly performed various services for "wholesale business to transportation, advertising, management, all kinds of stuff." *Id.* at p. 151.

232. In reality, however, the shell companies did not provide any legitimate services. *Id.* at p. 156.

233.     Sattarov opened the shell companies in the names of friends or relatives to conceal that he was controlling all of the shell companies.  *Id.* at pp. 158-159.  Sattarov identified non-party Arkadiy Khaimov ("Khaimov") as "the guy who used to give me checks for cashing."  *Id.* at p. 142.  Khaimov is a known associate of Gulkarov.  *See Allstate Ins. Co. v. Hollis Novel Comprehensive Medical, P.C.*, No. 1:20-cv-06108-ENV-RER (E.D.N.Y.) (alleging that Khaimov and Gulkarov, among others, participated together in a common scheme to defraud involving unlawfully controlled and operated PCs and pharmacies).  Khaimov has pleaded guilty to conspiracy to commit money laundering to conceal the proceeds of illegal activities.  *See United States v. Khaimov*, No. 1:20-cr-00580-AMD (E.D.N.Y.)

234.     Khaimov issued checks to shell companies based on a list of entities supplied by Sattarov.  Afterwards, Sattarov deposited the checks and returned the cash proceeds, minus a 5% fee.  Exhibit 65 at p. 145, 149-151, 155.

235.     Sattarov admitted that none of the checks reflected any legitimate business activity.  *Id.* at pp. 155-156.

236.     Rahmatov was Sattarov's business partner in the check cashing scheme.  *United States v. Rahmankulov*, No. 1:20-cr-00653-RA (S.D.N.Y.), Dkt. No. 203, at p. 142.

237.     Rahmatov has admitted that he cashed checks that he knew represented "the proceeds of the healthcare fraud" in furtherance of, and to conceal, a healthcare fraud scheme.  *United States v. Rahmatov*, No. 1:20-cr-00653-RA (S.D.N.Y.), Dkt. No. 260 at pp. 26-27.

238.     Gulkarov unlawfully controlled the clinic locations where the PC Defendants billed from during the scheme.  Gulkarov also unlawfully controlled medical PCs that generated orders for physical therapy, which orders were funneled to the PCs.

239.    Gulkarov has admitted to laundering the proceeds of a healthcare fraud scheme by cashing checks from clinics at shell companies under his or his co-conspirator's control.  *United States v. Gulkarov*, No. 1:22-cr-00020-PGG (S.D.N.Y.).

240.    For example, several of the PC Defendants issued checks to the shell companies involved in the money laundering operation:

| **Shell Company** | **PC Defendant(s)** |
|---|---|
| Med Supply Professionals Inc. | Pyramid |
| Prompt Process Serving & Investigation Inc. | JEVA |
| Best Human Resources Inc. | Life Care |
| Data Storage & Filing Preparation Inc. | JEVA; Pyramid |
| Enda Medi Warehouse Corp. | Go Flex |
| Global Pharma Supply Inc. | JEVA |
| HQ Transportation Inc. | Life Care |

241.    The money laundering enabled the Management Defendants to take control of the PC Defendants' professional fees while also generating cash for kickback and referral payments. The transactions also concealed the Management Defendants' involvement in and profit from the scheme.

242.    The Management Defendants took additional steps to avoid detection, which included limiting the operation and billing of each PC.

243.    The Management Defendants used a continuous stream of physical therapy PCs, which were cycled through various No-Fault clinics to generate as much billing as possible.

244.    The PC Defendants were sham entities—they operated on a transient basis and did not have fixed places of business.  Many of the PC Defendants were registered to private mail boxes at shipping facilities or at Post Office boxes.

245.    For example, Wellness PT used a P.O. Box when registering with the New York Department of State and the New York Education Department, Office of the Professions.  Wellness

44

PT also used the address of a private shipping facility (1820 Avenue M, #699, Brooklyn, NY 11230) when billing Allstate—the number "#699" represents Wellness PT's private mailbox number, not a unit or suite number.

246.    Several other PC Defendants also used the address of a shipping facility when submitting bills to Allstate:

| PC Defendant | Supposed Place of Business | Actual Location |
|---|---|---|
| MC | 1923 McDonald Ave, #3, Brooklyn, NY | Postman Joe Mail Center |
| MMA | 2896 Shell Road, Ste # 26, Brooklyn, NY | Postman Joe Mail Center |
| Go Flex | 2896 Shell Road, #97, Brooklyn, NY | Postman Joe Mail Center |
| July PT | 2609 East 14th Street, Suite 340, Brooklyn, NY | Postman Joe Mail Center |
| Hand by Hand | 2609 East 14th Street, Suite 373, Brooklyn, NY | Postman Joe Mail Center |
| Comfort | 8520 20th Ave, Suite 5 P.M.B. #1, Brooklyn, NY | JN Network Shipping and Services |
| JEVA | 2851 Cropsey Ave, #117, Brooklyn, NY | 1st Stop Mail Drop |
| JA | 2851 Cropsey Ave, Ste#111, Brooklyn, NY | 1st Stop Mail Drop |
| Better Hands | 2602 Avenue U, #360, Brooklyn, NY | Postman Joe Mail Center |
| Pesidas PT | 2920 Avenue R, #286, Brooklyn, NY | A1 Shipping |

247.    The PC Defendants were continually replaced and shuffled around throughout the scheme to avoid detection; a PC would bill for several months in a row before going dormant for a period, only to resume billing again after a few months.

248.    The PC Defendants were swapped in and out of the scheme, often overlapping with each other at various times.  For example, Pesidas PT, Finesse Care, and Better Hands were the actively billing PC Defendants in February 2020.

249.   In March 2020, Pesidas PT stopped actively billing, leaving Finesse Care and Better Hands as the actively billing PC Defendants.

250.   Finesse Care then went dormant in April 2020, leaving Better Hands as the only active PC Defendant.  However, Finesse Care resumed billing again in May 2020, joining Better Hands and then JEVA, which also began billing.

251.   Better Hands then went dormant in June 2020, leaving JEVA and Finesse Care as the only active PC Defendants.

252.   Then, in July 2020, Go Flex began billing as a substitute for Finesse Care, joining JEVA as the actively billing PC Defendants.

253.   JEVA then went dormant thereafter, leaving Go Flex as the only active PC Defendant from August 2020 through September 2020.

### 2.   <u>Prohibited Patient Referrals</u>

254.   The PC Defendants were operated on a transient basis from No-Fault clinics controlled by the Management Defendants and their associates.

255.   Operating at numerous different clinics enabled the PC Defendants to maximize billing for bogus services.

256.   The success of the scheme depended on physical therapy referrals from other medical providers, who themselves operated according to predetermined protocols set by the Management Defendants.

257.   Non-party Metro Pain Specialists P.C. ("Metro Pain") was a major source of referrals for the PC Defendants.  Metro Pain has been implicated in several other schemes involving unlawful referral relationships and billing for bogus medical services.  *See, e.g., Gov't Empls. Ins. Co. v. John Street Pharmacy, LLC,* No. 22-cv-05651-EK-JMW (E.D.N.Y.); *Allstate*

46

*Ins. Co. v. Metro Pain Specialists Professional Corporation,* No. 21-cv-05586-DG-RER (E.D.N.Y.).

258.    Several providers that worked for Metro Pain have disclosed how they were forced to treat patients according to predetermined treatment protocols, which required the ordering of tests and prescriptions, including physical therapy, during the first visit.

259.    For example, non-party prescriber Michael Alleyne M.D. ("Alleyne") worked for Metro Pain and was the source of many physical therapy referrals.  Alleyne was required to prescribe specific topical pain medications as a condition of working for Metro Pain.  *See* Affidavit of Michael Alleyne M.D., annexed hereto at Exhibit 2.  Alleyne was also required to use pre-printed forms to issue prescriptions for physical therapy, drugs, and other services, which were later altered and submitted in support of bogus claims.  *Id*.

260.    Metro Pain operated from several clinics controlled by the Management Defendants.  The PC Defendants also billed from the same clinics as Metro Pain, many of which have provable ties to criminal activity:

| PC Defendant | Metro Pain Clinic Location(s) |
|---|---|
| Comfort | 105-10 Flatlands Ave, Brooklyn, NY |
| | 204-12 Hillside Ave, Hollis, NY |
| | 409 Rockaway Ave, Brooklyn, NY |
| Life Care | 2386 Jerome Ave, 2nd Floor, Bronx, NY |
| MT | 535 Utica Ave, Brooklyn, NY |
| | 105-10 Flatlands Ave, Brooklyn, NY |
| | 204-12 Hillside Ave, Hollis, NY |
| Atlas | 535 Utica Ave, Brooklyn, NY |
| | 3041 Avenue U, Brooklyn, NY |
| Better Hands | 105-10 Flatlands Ave, Brooklyn, NY |
| | 409 Rockaway Ave, Brooklyn, NY |
| | 204-12 Hillside Ave, Hollis, NY |
| Hands of Hope | 105-10 Flatlands Ave, Brooklyn, NY |
| | 409 Rockaway Ave, Brooklyn, NY |
| | 1767 Southern Blvd, Bronx, NY |
| July PT | 409 Rockaway Ave, Brooklyn, NY |
| | 1767 Southern Blvd, Bronx, NY |

| PC Defendant | Metro Pain Clinic Location(s) |
|---|---|
| MMA | 409 Rockaway Ave, Brooklyn, NY<br>1767 Southern Blvd, Bronx, NY |
| Pyramid | 1767 Southern Blvd, Bronx, NY |
| JA | 105-10 Flatlands Ave, Brooklyn, NY<br>204-12 Hillside Ave, Hollis, NY<br>2386 Jerome Ave, 2nd Floor, Bronx, NY |
| Pesidas PT | 105-10 Flatlands Ave, Brooklyn, NY<br>204-12 Hillside Ave, Hollis, NY<br>409 Rockaway Ave, Brooklyn, NY |
| Wellness PT | 3041 Avenue U, Brooklyn, NY<br>105-10 Flatlands Ave, Brooklyn, NY<br>204-12 Hillside Ave, Hollis, NY<br>409 Rockaway Ave, Brooklyn, NY<br>2386 Jerome Ave, 2nd Floor, Bronx, NY |
| MC | 105-10 Flatlands Ave, Brooklyn, NY<br>409 Rockaway Ave, Brooklyn, NY<br>204-12 Hillside Ave, Hollis, NY |
| Go Flex | 105-10 Flatlands Ave, Brooklyn, NY<br>409 Rockaway Ave, Brooklyn, NY<br>204-12 Hillside Ave, Hollis, NY |
| JEVA | 105-10 Flatlands Ave, Brooklyn, NY<br>409 Rockaway Ave, Brooklyn, NY<br>204-12 Hillside Ave, Hollis, NY |

261.    The clinics located 204-12 Hillside Avenue and 105-10 Flatlands Avenue were controlled by the Management Defendants, and have a demonstrated history of involvement in No-Fault fraud schemes.  *See Gov't Empls. Ins. Co. v. Rego Park Pharmacy LLC*, No. 1:22-cv-05477-MKB-RER (E.D.N.Y.) (explaining that the clinic at 204-12 Hillside Avenue was confirmed as a preferred clinic of the bribery scheme perpetrated by Anthony Rose and others as admitted in *United v. Rose*, No. 19-cr-00789 (PGG) (S.D.N.Y.)); *State Farm Mut. Auto. Ins. Co. v. Metro Pain Specialists, P.C.*, No. 1:21-cv-05523-MKB-PK (E.D.N.Y.) (alleging in Second Amended Complaint that services purportedly performed at 105-10 Flatlands Avenue and 204-12 Hillside Avenue clinics were dictated by unlicensed laypersons).

262.    Non-party Smart Choice Medical, P.C. ("Smart Choice") was another major source of unlawful physical therapy prescriptions for the PC Defendants.  Smart Choice was illegally controlled by non-physicians, including Gulkarov.  Smart Choice's nominal owner, non-party Rolando Chumaceiro, M.D. ("Chumaceiro"), pleaded guilty to allowing non-physicians (i.e., the Management Defendants) to operate and control a PC incorporated in his name (i.e., Smart Choice), and to share in its professional fees and profits in violation of New York law.  Chumaceiro also admitted that he conspired to perform medically unnecessary procedures.

263.    Smart Choice operated from clinics located at 1767 Southern Blvd, Bronx, NY ("1767 Southern Blvd Clinic") and 409 Rockaway Blvd, Brooklyn, NY ("409 Rockaway Blvd Clinic"), which were controlled by the Management Defendants.[9]  Both clinics are at the heart of several civil and criminal actions related to this scheme.  *See United States v. Gulkarov*, No. 1:22-cr-00020-PGG (S.D.N.Y.); *Allstate Ins. Co. v. Hollis Novel Comprehensive Medical, P.C.*, No. 1:20-cv-06108-ENV-RER (E.D.N.Y.) (alleging that Smart Choice was unlawfully owned and operated by unlicensed laypersons, including Gulkarov, and caused to operate from the 1767 Southern Blvd Clinic and 409 Rockaway Blvd Clinic); *Gov't Empls. Ins. Co. v. Chumaceiro*, No. 1:20-cv-02220-DG-PK (E.D.N.Y.) (alleging that the healthcare providers operating at the clinics located at 1767 Southern Blvd Clinic and 409 Rockaway Blvd were unlawfully owned and controlled by unlicensed managers, including Gulkarov).

264.    By operating in the same location as a No-Fault medical provider with an established patient base such as Metro Pain or Smart Choice, the PC Defendants could enjoy a

---

[9] Gulkarov pleaded guilty to charges stemming from his participation illegal control of medical providers at the 1767 Southern Blvd Clinic, including Smart Choice, and their paying of bribes to fill the clinic with patients.  *United States v. Gulkarov*, No. 1:22-cr-00020-PGG (S.D.N.Y.).

steady stream of referrals for physical therapy from the referring physician in exchange for unlawful referral payments.

        **3.**    **Unlawful Billing for Independent Contractors and Unlicensed Technicians**

265.    Under New York's No-Fault laws, PCs are not eligible to collect payments for services furnished by independent contractors.  *See* DOI Opinion Letters, annexed hereto as Exhibit 1.

266.    The PC Defendants violated New York's No-Fault laws by billing for services performed by independent contractors or unlicensed technicians.

267.    Geykhman admitted that "technicians and not physical therapists would perform the [physical therapy] tests" as part of the No-Fault scheme.  *See* Exhibit 57.  According to Geykhman, Elsanaa signed the reports generated by the technicians as if he was the treating provider even though he had neither performed nor supervised the testing.  *Id.*

268.    Elsanaa testified in the *United States v. Popovych* trial that he signed the range of motion tests "[a]s if he had supervised a technician who had performed the test" even though he had not:

```
17  Q    And you signed these range of motion tests for these
18  patients from different clinics?
19  A    Yes.
20  Q    As if you had supervised a technician who had performed
21  the test?
22  A    Yes.
23  Q    And you didn't work for all of those clinics that you
24  were signing for?
25  A    Yes.
```

```
1  Q    Now, you never informed any insurance company that you
2  were signing these tests as if you had supervised the
3  technician?
4  A    No.
```

269.   Moreover, both Magid and Reyes testified that they signed the range of motion testing reports even though they had not performed or supervised the testing.

270.   Elsanaa owns non-party Wayne Staffing Agency Corporation ("Wayne Staffing").

271.   Upon information and belief, Wayne Staffing provides staffing services to healthcare providers on an independent contractor basis.

272.   Wayne Staffing was paid by several of the PC Defendants, including, but not necessarily limited to, JA, Comfort, and Wellness PT.

273.   Upon information and belief, the PC Defendants paid Wayne Staffing to furnish independent contractor technicians to perform, or purport to perform, physical therapy testing services for patients of these PC Defendants.  These services gave rise to bills in which Nominal Owner Defendants (e.g., Abrenica, Cadet, and Rezende) were represented as the treating provider even though they did not actually perform or even supervise the billed-for services.

274.   For example, Finesse Care billed for physical performance testing (i.e., NIOSH testing) for claimant P.O.  The NF-3 submitted by Finesse Care for this service identifies Emara as the treating provider:



275.    However, Finesse Care's report for the NIOSH testing indicates that the services were rendered by an unidentified "Technician":



276.    The misrepresentations about the Nominal Owner Defendants role in the billed-for services helped conceal the fact that the PC Defendants were actually operated and controlled by unlicensed laypersons in violation of New York law.

**C.    BILLING FOR BOGUS SERVICES**

**1.    Predetermined Treatment Protocol**

277.    The Management Defendants ensured that the PC Defendants' patients were subjected to unnecessary and duplicative services, including ROM testing, MMT, and Activity Limitation Measurements ("ALM").  These tests were ordered indiscriminately and the findings were never meaningfully incorporated into the patients' treatment plans.  The PC Defendants billed Allstate for these services even though the patients had already undergone manual ROM

evaluations at the initial physical evaluation, which means additional computerized ROM testing was redundant and unnecessary.

278.    The tests themselves were bogus in many cases.  For example, the PC Defendants reported MMT results that meant most claimants lacked sufficient strength to support the weight of their own head so as to hold their head upright, or lift their head from a pillow while laying down, even though such results were inconsistent with the other reports regarding the patient's condition.

279.    The PC Defendants also billed for ALM testing, which included lift tests created by the National Institute for Occupational Safety & Health (referred to as "NIOSH testing"). NIOSH testing is used to determine whether a worker may safely perform a certain type of lift on the job.

280.    Here, the PC Defendants billed for NIOSH testing, which was never tailored to the work history or needs of the particular patient.  Indeed, many of the PC Defendants' patients were unemployed or retired, and the NIOSH testing was not relevant to their employment or any lifting tasks that the patients performed in the workplace.  Rather, the PC Defendants billed for NIOSH testing as part of a predetermined protocol without regard for whether the testing bore any relevance to the patient's clinical needs.

## 2.    Medically Unnecessary ROM and Muscle Testing

281.    Traditional, or manual, range of motion testing involves non-electronic measurements of the movement at the joint in comparison with an unimpaired joint.  In traditional range of motion tests, the limb is actively or passively moved around the joint and the patient's range of motion is evaluated either by sight or through a device.

282.    Traditional, or manual, muscle testing consists of a non-electronic measurement of muscle strength, which is accomplished by having the patient move his/her body or extremity in a given direction against resistance applied by the provider.  For example, a provider would perform manual muscle testing on a patient's knee by applying resistance against the patient's leg while the patient moved the leg up, then applying resistance while the knee was moving down.

283.    Measuring range of motion and muscle strength is part of the patient evaluation, so providers cannot bill separately for ROM and MMT.  However, the PC Defendants routinely billed separately for computerized ROM and computerized MMT as part of this scheme.

284.    The MMT results were bogus because they reflected profound conditions that did not actually exist.  For example, many MMT reports contain data showing that patients were unable to hold their heads or trunks upright, which findings directly contradicted the reported clinical examination findings for these patients.

285.    The PC Defendants also billed for medically invalid ROM testing by failing to measure all three required principal planes of motion: forwards and backwards, laterally left and right, and rotation left and right.

286.    The PC Defendants also billed for duplicative and redundant NIOSH testing that was covered by the manual assessments of muscle strength performed as a part of the patient's history and physical examination.  NIOSH testing, which, as explained above, is designed to measure a patient's ability to perform certain lifting tasks in the workplace, is not necessary in the context of motor vehicle accident injuries.  Further, the results of the NIOSH testing were never incorporated into the patients' treatment programs and bore no relation to the patients' employment status.

D.     **FRAUDULENT BILLING**

287.     The PC Defendants were required to follow the Fee Schedule when billing Allstate for No-Fault payments.  The Fee Schedule uses the Current Procedural Terminology ("CPT") coding system, which is developed and published by the American Medical Association.  The CPT coding system was designed to help standardize medical terminology and provide uniform language for coding healthcare services and procedures.  Providers subject to the Health Insurance Portability and Accountability Act (HIPAA) are required to use CPT codes when submitting bills. Providers must use accurate CPT codes when billing for services.

288.     For the reasons explained below, the PC Defendants' bills for ROM, MMT and NIOSH testing submitted by the PC Defendants under CPT codes 95831, 95851, 97799, and 97750 are not compensable under New York's No-Fault law, including, but not limited to, the charges listed in the charts annexed hereto at Exhibits 3-20.

1.     **NIOSH Testing**

289.     The PC Defendants billed for ALM or physical performance testing under CPT code 97799 at a rate of $475.00 per test.

290.     However, the documentation provided by the PC Defendants in support of these charges reveals that the PC Defendants actually provided, or purported to provide, NIOSH testing.

291.     For example, MC billed $475.00 for "Activity Limitation Measurement" for claimant A.T. under CPT code 97799:



292.    However, the report submitted by MC in support of these charges reveals that MC actually purported to provide NIOSH testing to A.T.:

293.    The appropriate CPT code for NIOSH testing is CPT code 97750, and not CPT code 97799.

294.    CPT code 97750 is a time-based code that is billed using 1 unit for each 15 minutes of direct care.

295.    Even assuming that the PC Defendants would expend, at most, an hour performing, or purporting to perform, the NIOSH testing, they would only be able to bill for 4 units under CPT code 97750.

296.     Under CPT code 97750, the PC Defendants could only bill $41.66 per unit for a total of $166.64, which is far less than the $475.00 routinely charged by the PC Defendants under CPT code 97799 for unnecessary NIOSH testing.

### 2.     ROM and MMT Testing

297.     The PC Defendants repeatedly billed for multiple instances of MMT under CPT code 95831 in conjunction with multiple instances of ROM testing under CPT code 95851 on the same day.

298.     CPT code 95851 is defined as "[r]ange of motion measurements and report (separate procedure); each extremity (excluding hand) or each trunk section (spine)."

299.     CPT code 95831 is defined as "[m]uscle testing manual (separate procedure) with report, extremity (excluding hand) or trunk."

300.     However, the reports submitted by the PC Defendants in support of the charges for ROM under CPT code 95851 and MMT under CPT code 95831 always indicated that the testing was computerized.

301.     For example, Wellness PT billed 12 separate charges for ROM testing under CPT code 95851, and 9 separate charges for MMT in connection with claimant K.B. (claim number 030648167).

302.     However, Wellness PT's report for K.B. shows that the tests were not manual; rather, they were performed and reported using a JTech computerized evaluation system:



303.    Pursuant to the applicable Fee Schedule, when both computerized range of motion tests and computerized muscle tests are performed on the same date, all of the testing should be reported and billed using CPT code 97750.

304.    The PC Defendants did not document the time spent performing the computerized ROM and MMT.  However, if the tests required 30 minutes to complete, then the PC Defendants could only charge for 2 units of CPT code 97750 (15 minutes each) at a rate of approximately $41.66 per unit, which is far less than the PC Defendants' charges under CPT codes 95831 and 95851, which totaled more than $800.00.

305.    Even if the PC Defendants properly billed under CPT codes 95831 and 95851 (they did not), these charges still are not compensable because the PC Defendants did not submit a written report supporting these charges.  CPT codes 95831 and 95851 each require the provider to provide a separate, distinctly identifiable, signed written report interpreting the results of the MMT and the ROM testing, respectively.

306.    However, the PC Defendants merely provided a printout from the JTech computerized system in support of the bills, which does not satisfy the written report requirement.

58

The printout does not provide muscle grades, and there is no meaningful interpretation of the results.

### 3.   <u>Using Deleted CPT Codes</u>

307.   The PC Defendants improperly billed under CPT codes 97799, 95851, 95831, and 97750 for dates of service on or after October 1, 2020.

308.   On October 1, 2020, the new Physical and Occupational Therapy Fee Schedule went into effect.

309.   Ground Rule 5 of the Fee Schedule states:

> **5.   Codes in the Physical and Occupational Therapy Fee Schedule**
>
> A physical or occupational therapist may only use CPT codes contained in the Physical and Occupational Therapy Fee Schedule for billing of treatment. A physical or occupational therapist may not use codes that do not appear in the Physical and Occupational Therapy Fee Schedule.

310.   CPT codes 97799, 95851, and 95831 are not contained in the Physical and Occupational Therapy Fee Schedule.

311.   CPT code 97750 has a relative value of 0.00 under the Physical and Occupational Therapy Fee Schedule and thus no reimbursement is warranted under this code for services performed on or after October 1, 2020.

312.   However, to the extent that the PC Defendants continued to submit charges under 97799, 95851, 95831, and 97750 for dates of service on or after October 1, 2020, including those charges listed in the charts annexed hereto at Exhibits 3-20, these charges are not compensable under New York's No-Fault law.

E.   SPECIFIC EXAMPLES OF FRAUDULENT BILLING

1.   **Claimant V.M. (claim no. 0475885281)**

313.   Claimant V.M. was supposedly involved in a motor vehicle accident on September 20, 2017.

314.   V.M. began treating at the Southern Boulevard Clinic, and was examined by Chumaceiro through Smart Choice on October 3, 2017, at the clinic located at 1767 Southern Blvd, Bronx, NY.

315.   Chumaceiro referred V.M. for physical therapy following the initial visit, per the Clinic's protocol.

316.   On November 3, 2017, Hands of Hope billed Allstate for ROM (CPT code 95851) and MMT testing (CPT code 95831) purportedly performed for V.M.   The ROM/MMT testing was bogus and unnecessary because V.M.'s range of motion and muscle strength was already assessed as part of the initial patient examination.

317.   Hands of Hope's billing for ROM testing was false because the rotation in V.M.'s lumbar spine was never measured, which means the testing was incomplete.   The ROM testing billed by Hands of Hope was also bogus because the results never influenced or affected V.M.'s treatment plan.

318.   Hands of Hope also reported phony results for V.M.'s MMT testing:

| Date of Test | Type of Test | Max. Result |
|:---:|:---:|:---:|
| 11/3/2017 | Neck flexion | 7 lbs |
| 11/3/2017 | Neck extension | 7 lbs |
| 11/3/2017 | Neck anterolateral flexion | 4 lbs (left); 6 lbs (right) |

319.    Hands of Hope billed for MMT of V.M.'s cervical extension strength; however, Hands of Hope actually purported to provide computerized muscle testing.

320.    The MMT testing results reported by Hands of Hope are not credible; if true, the results meant that V.M. was unable to lift their head from a pillow while lying in a face down or face up position—Hands of Hope reported that V.M. could exert no more than 7 pounds of neck extension or flexion strength, which is less than the minimum amount of strength needed to support an adult's head.

321.    Hands of Hope's MMT testing results also meant that V.M. could not look straight ahead while in an upright position.

322.    Notably, none of V.M.'s other medical records contain evidence of such profound muscle weakness.

323.    On October 23, 2017, Hands of Hope billed Allstate for ALM testing (i.e., NIOSH testing) under CPT code 97799 in connection with V.M.  The ALM testing was bogus and unnecessary because V.M.'s muscle strength was already assessed as part of the initial patient examination.

324.    The billing for NIOSH testing was also fraudulent because Hands of Hope reported phony results—the values reported for V.M.'s strength were too low to be considered legitimate.

325.    NIOSH testing was also unwarranted based on V.M.'s reports of musculoskeletal pain.  A patient experiencing the type of musculoskeletal pain reported by V.M. would have been unable to exert the full effort needed to obtain reliable measurements.

326.    NIOSH testing was also unnecessary in V.M.'s case because the testing is designed to assess a patient's ability to perform work functions.  The NIOSH testing billed by Hands of

61

Hope was not related to a documented list of tasks performed by V.M. in the workplace, which means the tests were unnecessary and of no utility.

327.    Overall, Hands of Hope's bills for V.M. are not compensable under New York's No-Fault laws because the physical therapy services were excessive, medically unnecessary, and falsely charged.

328.    Allstate was induced to make payments totaling at least $1,131.91 to Hands of Hope in connection with the fraudulent billing submitted for V.M.  Allstate is entitled to recover all such payments.

### 2.    Claimant S.G. (claim no. 0513424622)

329.    Claimant S.G. was purportedly involved in a motor vehicle accident on July 31, 2018.

330.    S.G. then began treating at a clinic located at 33-06 88th Street, Jackson Heights, NY, where they were evaluated on August 15, 2018 by a physician working for Metro Pain (i.e., non-party Patricia Kelly, D.O. ("Kelly")).

331.    Kelly has been implicated in other fraud schemes connected to Metro Pain.  In *Gov't Empls. Ins. Co. v. Rego Park Pharmacy LLC*, Kelly was accused of issuing bogus prescriptions, which resulted in a wave of fraudulent pharmacy claims.  *See Gov't Empls. Ins. Co. v. Rego Park Pharmacy LLC*, No. 1:22-cv-05477-MKB-RER (E.D.N.Y.).

332.    Kelly has also testified in other actions "that the No-Fault Clinic locations where she worked [i.e., Metro Pain clinics] 'were controlled by layperson managers and each of the locations ha[d] treatment protocols in place.'"  *Gov't Empls. Ins. Co. v. SMS Therapy Supply, Inc.,* No. 1:23-cv-07862 (E.D.N.Y.)*; Liberty Mut. Ins. Co. v. Nu Age Med Solutions, Inc.,* No. 1:23-cv-07985 (E.D.N.Y.).

333.    Here, Kelly referred S.G. for physical therapy per the predetermined treatment protocol in place at Metro Pain.  S.G. was then referred to Comfort for bogus physical therapy testing pursuant to a prohibited referral relationship between Comfort and Metro Pain.

334.    On September 11, 2018, Comfort billed Allstate for unnecessary, excessive, and duplicative ROM (CPT code 95851) and MMT (CPT code 95831) testing.  The ROM/MMT testing was bogus and unnecessary because S.G.'s range of motion and muscle strength was already assessed as part of the initial patient examination.

335.    The MMT testing results reported by Comfort are not credible; if true, the results meant that S.G. was unable to lift their head from a pillow while lying in a face down position—Comfort reported that S.G. could only exert 7 pounds of cervical extension strength, which is not enough strength to support an adult's head.

336.    Comfort's testing results also meant that S.G. could not look straight ahead while in an upright position.

337.    Notably, none of S.G.'s other medical records contain evidence of such profound muscle weakness.

338.    On September 5, 2018, Comfort billed Allstate for ALM testing (i.e., NIOSH testing) under CPT code 97799 in connection with S.G.  The ALM testing was bogus and unnecessary because S.G.'s muscle strength was already assessed as part of the initial patient examination.

339.    The billing for NIOSH testing was also fraudulent because Comfort reported phony results—the values reported for S.G.'s strength were too low to be considered legitimate.

63

340. NIOSH testing was also unwarranted based on S.G.'s reports of musculoskeletal pain. A patient experiencing the type of musculoskeletal pain reported by S.G. would have been unable to exert the full effort needed to obtain reliable measurements.

341. NIOSH testing was also unnecessary in S.G.'s case because the testing is designed to assess a patient's ability to perform work functions. The NIOSH testing billed by Comfort was not related to a documented list of tasks performed by S.G. in the workplace, which means the tests were unnecessary and of no utility.

342. Overall, Comfort's bills for S.G. are not compensable under New York's No-Fault laws because the physical therapy services were excessive, medically unnecessary, and falsely charged.

343. Allstate was induced to make payments totaling at least $1,126.12 to Comfort in connection with the fraudulent billing submitted for S.G. Allstate is entitled to recover all such payments.

### 3. Claimant V.P. (claim no. 0515357275)

344. Claimant V.P. was supposedly involved in a motor vehicle accident on August 31, 2018.

345. V.P. began treating at a clinic located at 204-12 Hillside Avenue, Hollis, NY 11423, where they were evaluated by a Metro Pain provider (i.e., Kelly) on September 17, 2018.

346. As explained above, Kelly was required by Metro Pain to follow a predetermined protocol when referring patients such as V.P. for certain treatments and services, including from the clinic located at 204-12 Hillside Avenue. *See Gov't Empls. Ins. Co. v. Rego Park Pharmacy LLC*, No. 1:22-cv-05477-MKB-RER (E.D.N.Y.) (alleging that Kelly prescribed unnecessary

topical medications to patients treating at Metro Pain's location at 204-12 Hillside Avenue "pursuant to the illegal, collusive financial agreements and predetermined protocols").

347.    Here, Kelly referred V.P. for physical therapy pursuant to the predetermined treatment protocol in place at Metro Pain.  V.P. was then referred to MT pursuant to a prohibited referral relationship between MT and Metro Pain.

348.    On December 5, 2018, MT billed for ROM (CPT code 95851) and MMT (CPT code 95831) testing.  The ROM/MMT testing was bogus and unnecessary because V.P.'s range of motion and muscle strength was already assessed as part of the initial patient examination.

349.    MT's billing for ROM testing was false because the rotation in V.P.'s lumbar spine was never measured, which means that the testing was incomplete.  The ROM testing billed by MT was also bogus because the results never influenced or affected V.P.'s treatment plan.

350.    Although MT billed for MMT, it purportedly rendered computerized muscle testing for V.P.

351.    MT also reported phony results for V.P.'s MMT testing:

| Date of Test | Type of Test | Max. Result |
|---|---|---|
| 12/5/2018 | Neck flexion | 5 lbs |
| 12/5/2018 | Neck extension | 4 lbs |
| 12/5/2018 | Neck anterolateral flexion | 2 lbs (left); 2 lbs (right) |

352.    The MMT testing results reported by MT are not credible; if true, the results meant that V.P. was unable to lift their head from a pillow while lying in a face down position or face up position—MT reported that V.P. could exert only 5 pounds of neck flexion strength and only 4

pounds of neck extension strength, which is less than the minimum amount of strength needed to support an adult's head.

353.    MT's MMT testing results also meant that V.P. could not look straight ahead while in an upright position.

354.    Notably, none of V.P.'s other medical records contain evidence of such profound muscle weakness.

355.    MT also billed for ALM testing (i.e., NIOSH testing) on December 13, 2018 under CPT code 97799 in connection with V.P.  The ALM testing was bogus and unnecessary because V.P.'s muscle strength was already assessed as part of the initial patient examination.

356.    The billing for NIOSH testing was also fraudulent because MT reported phony results—the values reported for V.P.'s strength were too low to be considered legitimate.

357.    NIOSH testing was also unwarranted based on V.P.'s reports of musculoskeletal pain.  A patient experiencing the type of musculoskeletal pain reported by V.P. would have been unable to exert the full effort needed to obtain reliable measurements.

358.    NIOSH testing was also unnecessary in V.P.'s case because the testing is designed to assess a patient's ability to perform work functions.  The NIOSH testing billed by MT was not related to a documented list of tasks performed by V.P. in the workplace, which means the tests were unnecessary and of no utility.

359.    Overall, MT's bills for V.P. are not compensable under New York's No-Fault laws because the physical therapy services were excessive, medically unnecessary, and falsely charged.

360.    Allstate was induced to make payments totaling at least $1,213.30 to MT in connection with the fraudulent billing submitted for V.P. during the relevant period.  Allstate is entitled to recover all such payments.

### 4. **Claimant J.J. (claim no. 0541001152)**

361.    Claimant J.J. was purportedly involved in a motor vehicle accident on April 3, 2019.

362.    J.J. began treating at a clinic located at 2386 Jerome Ave, 2nd Fl, Bronx, NY 10461, where they were evaluated on April 10, 2019 by a physician working for Metro Pain (i.e., non-party Suresh Paulus, D.O. ("Paulus")).

363.    Paulus referred J.J. for physical therapy per the predetermined treatment protocol in place at Metro Pain.  J.J. was then referred to Wellness PT for bogus physical therapy testing pursuant to a prohibited referral relationship between Wellness PT and Metro Pain.

364.    Paulus specifically referred J.J. for "Range of Motion Test" and "Manual Muscle Test" on April 16, 2019:

365.    On April 16, 2019 and May 21, 2019, Wellness PT billed Allstate for unnecessary, excessive, and duplicative ROM (CPT code 95851) and MMT (CPT code 95831) testing.  The ROM/MMT testing was bogus and unnecessary because J.J.'s range of motion and muscle strength was already assessed as part of the initial patient examination.

366.    Wellness PT's billing for ROM testing was false because the rotation in J.J.'s cervical spine was never measured, which means the testing was incomplete.  The ROM testing billed by Wellness PT was also bogus because the results never influenced or affected J.J.'s treatment plan.

367.    Wellness PT also reported phony results for J.J.'s MMT testing:

| **Date of Test** | **Type of Test** | **Max. Result** |
|---|---|---|
| 4/16/2019 | Neck flexion | 4.4 lbs |
| 4/16/2019 | Neck extension | 3.2 lbs |
| 5/21/2019 | Neck flexion | 5.6 lbs |
| 5/21/2019 | Neck extension | 4.1 lbs |

368.    Although Wellness PT billed for MMT, it purportedly rendered computerized muscle testing for J.J.

369.    The MMT testing results reported by Wellness PT are not credible; if true, the results meant that J.J. was unable to lift their head from a pillow while lying in a face down or face up position—Wellness PT reported that J.J. could exert no more than 5.6 lbs of neck extension or flexion strength, which is less than the minimum amount of strength needed to support an adult's head.

370.    Wellness PT's MMT testing results also meant that J.J. could not look straight ahead while in an upright position.

371.    Notably, none of J.J.'s other medical records contain evidence of such profound muscle weakness.

372.    On April 17, 2019, Paulus referred J.J. for unneeded "Activity Limitation Measurement and Training" pursuant to Metro Pain's predetermined treatment protocol:



373.    On April 17, 2019 and May 24, 2019, Wellness PT billed Allstate for ALM testing (i.e., NIOSH testing) under CPT code 97799 in connection with J.J.  The ALM testing was bogus and unnecessary because J.J.'s muscle strength was already measured as part of the initial patient examination.

374.    The billing for NIOSH testing was also fraudulent because Wellness PT reported phony results—the values reported for J.J.'s strength were too low to be considered legitimate.

375.    NIOSH testing was also unwarranted based on J.J.'s reports of musculoskeletal pain.  A patient experiencing the type of musculoskeletal pain reported by J.J. would have been unable to exert the full effort needed to obtain reliable measurements.

376.    NIOSH testing was also unnecessary in J.J.'s case because the testing is designed to assess a patient's ability to perform work functions.  The NIOSH testing billed by Wellness PT was not related to a documented list of tasks performed by J.J. in the workplace, which means the tests were unnecessary and of no utility.

377.    Overall, Wellness PT's bills for J.J. are not compensable under New York's No-Fault laws because the physical therapy services were excessive, medically unnecessary, and falsely charged.

378.    Allstate was induced to make payments totaling at least $1,358.88 to Wellness PT in connection with the fraudulent billing submitted for J.J.  Allstate is entitled to recover all such payments.

**5.    Claimant K.B. (claim no. 0530648167)**

379.    Claimant K.B. was purportedly involved in a motor vehicle accident on January 8, 2019.

380.    K.B. began treating at a clinic located at 3041 Avenue U, Brooklyn, NY 11229, where they were evaluated on January 14, 2019 by a physician working for Metro Pain (i.e., non-party Michael Alleyne, M.D. ("Alleyne")).

381.    Alleyne has been implicated in other fraud schemes connected to Metro Pain.  *See Gov't Empls. Ins. Co. v. Avonora, Inc. d/b/a Avonora Pharmacy*, No. 23-cv-03409-ARR-MMH

(E.D.N.Y.) (citing Alleyne's testimony under oath regarding unauthorized prescriptions submitted under his name that were forged and/or altered without his knowledge in support of allegations of unlawful referral relationships between illegitimate pharmacies and Metro Pain clinics); *Gov't Empls. Ins. Co. v. Orthopain Supply, Inc.*, No. 23-cv-03413-RPK-RER (E.D.N.Y.) (citing to statements under oath of Metro Pain providers Alleyne and Kelly regarding unauthorized prescriptions for durable medical equipment (DME) with copies or forgeries of their signature used without their consent in support of allegations of unlawful referral relationships between illegitimate DME providers and Metro Pain clinics); *Gov't Empls. Ins. Co. v. Ideal Care Pharmacy, Inc.*, No. 22-cv-03630-KAM-VMS (E.D.N.Y.) (alleging that Alleyne steered prescriptions for medically unnecessary topical products to a pharmacy pursuant to an unlawful referral relationship); *Gov't Empls. Ins. Co. v. Longevity Medical Supply, Inc.*, No. 20-cv-01681-RPK-VMS (E.D.N.Y.) (alleging that Alleyne prescribed fraudulent and medically unnecessary equipment as part of unlawful financial arrangement with supplier).

382.    Alleyne has stated in a sworn affidavit that he was required to follow a predetermined treatment protocol at Metro Pain.

383.    Here, Alleyne referred K.B. for physical therapy services per the predetermined treatment protocol in place at Metro Pain.  K.B. was then referred to Atlas and Wellness PT pursuant to a prohibited referral relationships between Atlas and Metro Pain and Wellness PT and Metro Pain.

384.    On January 31, 2019 and February 28, 2019, Atlas billed Allstate for medically unnecessary, excessive and duplicative ROM (CPT code 95851) and MMT (CPT code 95831) testing.  The ROM/MMT testing was bogus and unnecessary because K.B.'s range of motion and muscle strength was already assessed as part of the initial patient examination.

385.     On April 1, 2019, Wellness PT billed Allstate for medically unnecessary, excessive, and duplicative ROM (CPT code 95851) and MMT (CPT code 95831) testing.  The ROM/MMT testing was bogus and unnecessary because K.B.'s range of motion and muscle strength was already assessed as part of the initial patient examination.

386.     Atlas's and Wellness PT's billing for ROM testing was false because the cervical spine rotation, thoracic spine rotation and flexion/extension, and lumbar spine rotation and lumbar spine lateral motion of K.B.'s spine was never measured, which means the testing was incomplete. The ROM testing billed by Atlas and Wellness PT was also bogus because the results never influenced or affected K.B.'s treatment plan.

387.     Although Atlas and Wellness PT billed for MMT, they purportedly rendered computerized muscle testing for K.B.

388.     Atlas also reported phony results for K.B.'s MMT testing:

| **Date of Test** | **Type of Test** | **Max. Result** |
| --- | --- | --- |
| 1/31/2019 | Neck flexion | 4.5 lbs |
| 1/31/2019 | Neck extension | 3.0 lbs |
| 2/28/2019 | Neck flexion | 4.2 lbs |
| 2/28/2019 | Neck extension | 4.0 lbs |

389.     The MMT testing results reported by Atlas are not credible; if true, the results meant that K.B. was unable to lift their head from a pillow while lying in a face down or face up position—Atlas reported that K.B. could exert no more than 4.5 lbs of neck strength, which is not enough strength to support an adult's head.

390.     The MMT testing results reported by Wellness PT also are not credible; if true, the results meant that K.B. was unable to lift their head from a pillow while lying in a face down position—Wellness PT reported that K.B. could only exert 7.1 lbs of cervical extension force, which is not enough strength to support an adult's head.

391.     Atlas's and Wellness PT's testing results also meant that K.B. could not look straight ahead while in an upright position.

392.     Notably, none of K.B.'s other medical records contain evidence of such profound muscle weakness.

393.     On January 24, 2019 and February 21, 2019, Atlas billed Allstate for ALM (i.e., NIOSH testing) under CPT code 97799 in connection with K.B.  On April 1, 2019, Wellness PT billed Allstate for ALM (i.e., NIOSH testing) under CPT code 97799 in connection with K.B.  The ALM testing was bogus and unnecessary because K.B.'s muscle strength was already assessed as part of the initial patient examination.

394.     The billing for NIOSH testing was also fraudulent because Atlas and Wellness PT reported phony results—the values reported for K.B.'s strength were too low to be considered legitimate.

395.     NIOSH testing was also unwarranted based on K.B.'s reports of musculoskeletal pain.  A patient experiencing the type of musculoskeletal pain reported by K.B. would have been unable to exert the full effort needed to obtain reliable measurements.

396.     NIOSH testing was also unnecessary in K.B.'s case because the testing is designed to assess a patient's ability to perform work functions.  The NIOSH testing was bogus and unnecessary because K.B.'s range of motion and muscle strength testing was already assessed as part of the initial patient examination.

397.    Overall, Atlas's and Wellness PT's bills for K.B. are not compensable under New York's No-Fault laws because the physical therapy services were excessive, medically unnecessary, and falsely charged.

398.    Allstate was induced to make payments totaling at least $2,518.20 to Atlas and at least $1,077.66 to Wellness PT in connection with the fraudulent billing submitted for K.B. Allstate is entitled to recover all such payments.

### 6.    Claimant T.R. (claim no. 0522276807)

399.    Claimant T.R. was purportedly involved in a motor vehicle accident on October 25, 2018.

400.    T.R. then began treating at a clinic located at 1767 Southern Boulevard, Bronx, NY 10460, where they were evaluated by a Metro Pain physician (i.e., non-party Alford Smith, M.D. ("Smith")).

401.    Here, Smith referred T.R. for physical therapy per the predetermined treatment protocol in place at Metro Pain.  T.R. was then referred to Pyramid for bogus physical therapy testing pursuant to a prohibited referral relationship between Pyramid and Metro Pain.

402.    On November 21, 2018, December 19, 2018, and January 23, 2019, Pyramid billed Allstate for unnecessary, excessive, and duplicative ROM (CPT code 95851) and MMT (CPT code 95831) testing.  The ROM/MMT testing was bogus and unnecessary because T.R.'s range of motion and muscle strength was already assessed as part of the initial patient examination.

403.    Pyramid's billing for ROM testing was false because the cervical spine rotation of T.R.'s spine was never measured, which means the testing was incomplete.  The ROM testing billed by Pyramid was also bogus because the results never influenced or affected T.R.'s treatment plan.

404.    On November 6, 2018, January 8, 2019, and February 5, 2019, Pyramid billed for unnecessary "physical performance testing" (i.e., NIOSH testing) under CPT code 97799 in connection with T.R.  The NIOSH testing was bogus and unnecessary because T.R.'s muscle strength was already assessed as part of the initial patient examination.

405.    The billing for NIOSH testing was also fraudulent because Pyramid reported phony results—the values reported for T.R.'s strength were too low to be considered legitimate.

406.    NIOSH testing was also unwarranted based on T.R.'s reports of musculoskeletal pain.  A patient experiencing the type of musculoskeletal pain reported by T.R. would have been unable to exert the full effort needed to obtain reliable measurements.

407.    NIOSH testing was also unnecessary in T.R.'s case because the testing is designed to assess a patient's ability to perform work functions.  The NIOSH testing billed by Pyramid was not related to a documented list of tasks performed by T.R. in the workplace, which means the tests were unnecessary and of no utility.

408.    Indeed, Smith reported at the time of the initial examination at Metro Pain that T.R. was unemployed and the NIOSH testing billed by Pyramid thus was wholly irrelevant.

409.    Overall, Pyramid's bills for T.R. are not compensable under New York's No-Fault laws because the physical therapy services were excessive, medically unnecessary, and falsely charged.

410.    Allstate was induced to make payments totaling at least $1,102.84 to Pyramid in connection with the fraudulent billing submitted for T.R.  Allstate is entitled to recover all such payments.

### 7.      Claimant A.T. (claim no. 0551905441)

411.    Claimant A.T. was purportedly involved in a motor vehicle accident on July 3, 2019.

412.    A.T. then began treating at a clinic located at 105-10 Flatlands Ave, Brooklyn, NY 11236, where they were evaluated on July 12, 2019 by a physician working for Metro Pain (i.e., Theodros Seyoum, M.D. ("Seyoum")).

413.    Seyoum referred A.T. for physical therapy per the predetermined treatment protocol in place at Metro Pain.  A.T. was then referred to MC for bogus physical therapy testing pursuant to a prohibited referral relationship between MC and Metro Pain.

414.    On August 30, 2019, and October 2, 2019, MC billed for medically unnecessary, excessive, and duplicative ROM (CPT code 95851) and MMT (CPT code 95831) testing.  The ROM/MMT testing was bogus and unnecessary because A.T.'s range of motion and muscle strength was already assessed as part of the initial patient examination.

415.    MC's billing for ROM testing was false because the cervical, thoracic, and lumbar rotation, thoracic extension, and lumbar lateral motion of A.T.'s spine was never measured, which means the testing was incomplete.  The ROM testing billed by Axis was also bogus because the results never influenced or affected A.T.'s treatment plan.

416.    Although MC billed for MMT, it purportedly rendered computerized muscle testing for A.T.

417.    MC also reported phony results for A.T.'s MMT testing:

| Date of Test | Type of Test | Max. Result |
|---|---|---|
| 8/30/2019 | Neck flexion | 7.3 lbs |
| 8/30/2019 | Neck extension | 6.8 lbs |

| 10/2/2019 | Neck flexion | 4.6 lbs |
| 10/2/2019 | Neck extension | 6.5 lbs |

418.     The MMT results reported by MC are not credible; if true, the results meant that A.T. was unable to lift their head from a pillow while lying in a face up or face down position—MC reported that A.T. could only exert, at most, 7.3 lbs of neck strength, which is not enough strength to support an adult's head.

419.     MC's MMT testing results also meant that A.T. could not look straight ahead while in an upright position.

420.     Notably, none of A.T.'s other medical records contain evidence of such profound muscle weakness.

421.     On September 9, 2019 and October 29, 2019, MC billed Allstate for ALM (i.e., NIOSH testing) under CPT code 97799 in connection with A.T.  The ALM testing was bogus and unnecessary because A.T.'s muscle strength was already assessed as part of the initial patient examination.

422.     The billing for NIOSH testing was also fraudulent because MC reported phony results—the values reported for A.T.'s strength were too low to be considered legitimate.

423.     NIOSH testing was also unwarranted based on A.T.'s reports of musculoskeletal pain.  A patient experiencing the type of musculoskeletal pain reported by A.T. would have been unable to exert the full effort needed to obtain reliable measurements.

424.     NIOSH testing was also unnecessary in A.T.'s case because the testing is designed to assess a patient's ability to perform work functions.  The NIOSH testing billed by MC was not

related to a documented list of tasks performed by A.T. in the workplace, which means the tests were unnecessary and of no utility.

425. Overall, MC's bills for A.T. are not compensable under New York's No-Fault laws because the physical therapy services were excessive, medically unnecessary, and falsely charged.

426. Allstate was induced to make payments totaling at least $1,771.62 to MC in connection with the fraudulent billing submitted for A.T. Allstate is entitled to recover all such payments.

### 8.   **Claimant P.M. (claim no. 0549778156)**

427. Claimant P.M. was purportedly involved in a motor vehicle accident on June 15, 2019.

428. P.M. then began treating at a clinic located at 204-12 Hillside Avenue, Hollis, NY 11423, where they were evaluated on July 9, 2019, by a Metro Pain physician (i.e., Kelly).

429. Here, Kelly referred P.M. for physical therapy per the predetermined treatment protocol in place at Metro Pain. P.M. was then referred to JA, MC, and Pesidas PT for bogus physical therapy testing pursuant to prohibited referral relationships between JA, MC, Pesidas PT, and Metro Pain.

430. On July 19, 2019, JA billed Allstate for medically unnecessary, excessive, and duplicative ROM (CPT code 95851) and MMT (CPT code 95831) testing. The ROM/MMT testing was bogus and unnecessary because P.M.'s range of motion and muscle strength was already assessed as part of the initial patient examination.

431. On October 16, 2019, MC billed Allstate for medically unnecessary, excessive, and duplicative ROM (CPT code 95851) and MMT (CPT code 95831) testing. The ROM/MMT

testing was bogus and unnecessary because P.M.'s range of motion and muscle strength was already assessed as part of the initial patient examination.

432. On November 18, 2019, Pesidas PT billed Allstate for medically unnecessary, excessive, and duplicative ROM (CPT code 95851) and MMT (CPT code 95831) testing and for additional unnecessary, excessive, and duplicative MMT on December 20, 2019. The ROM/MMT testing was bogus and unnecessary because P.M.'s range of motion and muscle strength was already assessed as part of the initial patient examination.

433. JA, MC, and Pesidas PT's billing for ROM testing was false because the cervical, thoracic, and lumbar rotation, thoracic extension and lateral motion, and lumbar lateral motion of P.M.'s spine was never measured, which means the testing was incomplete. The ROM testing billed by JA, MC, and Pesidas PT was also bogus because the results never influenced or affected P.M.'s treatment plan.

434. Although JA, MC, and Pesidas PT billed for MMT, it purportedly rendered computerized muscle testing for P.M.

435. Pesidas PT reported phony results for P.M.'s MMT testing:

| **Date of Test** | **Type of Test** | **Max. Result** |
|---|---|---|
| 11/18/2019 | Neck flexion | 6.8 lbs |
| 11/18/2019 | Neck extension | 7.4 lbs |
| 12/20/2019 | Neck flexion | 5.6 lbs |
| 12/20/2019 | Neck extension | 6.2 lbs |

436. The MMT testing results reported by Pesidas PT are not credible; if true, the results meant that P.M. was unable to lift their head from a pillow while lying in a face down or face up

position—Pesidas PT reported that P.M. could exert no more than 7.4 lbs of neck strength, which is not enough strength to support an adult's head.

437.    Pesidas's MMT testing results also meant that P.M. could not look straight ahead while in an upright position.

438.    Notably, none of P.M.'s other medical records contain evidence of such profound muscle weakness.

439.    On July 25, 2019, JA billed Allstate for ALM testing (i.e., NIOSH testing) under CPT code 97799 in connection with P.M.

440.    On October 21, 2019, MC billed Allstate for ALM testing (i.e., NIOSH testing) under CPT code 97799 in connection with P.M.

441.    On December 20, 2019, Pesidas PT billed Allstate for ALM testing (i.e., NIOSH testing) under CPT code 97799 in connection with P.M.

442.    The ALM testing billed to Allstate by JA, MC, and Pesidas PT was bogus and unnecessary because P.M.'s muscle strength was already assessed as part of the initial patient examination.

443.    The billing for NIOSH testing was also fraudulent because JA, MC, and Pesidas PT reported phony results—the values reported for P.M.'s strength were too low to be considered legitimate.

444.    NIOSH testing was also unwarranted based on P.M.'s reports of musculoskeletal pain.  A patient experiencing the type of musculoskeletal pain reported by P.M. would have been unable to exert the full effort needed to obtain reliable measurements.

445.    NIOSH testing was also unnecessary in P.M.'s case because the testing is designed to assess a patient's ability to perform work functions.  The NIOSH testing billed by JA, MC, and

Pesidas PT was not related to a documented list of tasks performed by P.M. in the workplace, which means the tests were unnecessary and of no utility.

446.    Overall, JA, MC, and Pesidas PT's bills for P.M. are not compensable under New York's No-Fault laws because the physical therapy services were excessive, medically unnecessary, and falsely charged.

447.    Allstate was induced to make payments totaling $450.54 to JA, $614.50 to MC, and $1,249.17 to Pesidas PT in connection with the fraudulent billing submitted for P.M.  Allstate is entitled to recover all such payments.

**9.    Claimant J.C. (claim no. 0540859444)**

448.    Claimant J.C. was purportedly involved in a motor vehicle accident on April 4, 2019.

449.    J.C. then began treating at a clinic located at 33-06 88th Street, Jackson Heights, NY 11372, where they were evaluated on April 15, 2019 by a physician working for Metro Pain (i.e., Kelly).

450.    Here, Kelly referred J.C. for physical therapy per the predetermined treatment protocol in place at Metro Pain.  J.C. was then referred to JA for bogus physical therapy testing pursuant to a prohibited referral relationship between JA and Metro Pain.

451.    On June 24, 2019, JA billed for medically unnecessary, excessive, and duplicative ROM (CPT code 95851) and MMT (CPT code 95831) testing.  The ROM/MMT testing was bogus and unnecessary because J.C.'s range of motion and muscle strength was already assessed as part of the initial patient examination.

452.    JA's billing for ROM testing was false because the cervical, thoracic, and lumbar rotation, thoracic extension, and lumbar lateral motion of J.C.'s spine was never measured, which

means the testing was incomplete.  The ROM testing billed by JA was also bogus because the results never influenced or affected J.C.'s treatment plan.

453.    Although JA billed for MMT, it purportedly rendered computerized muscle testing for J.C.

454.    The MMT testing results reported by JA are not credible; if true, the results meant that J.C. could not lift their head from a pillow while lying in a face down or face up position—JA reported that J.C. could only exert 4.2 lbs of cervical extension and flexion strength, which is not enough strength to support an adult's head.

455.    JA's MMT testing results also meant that J.C. could not look straight ahead while in an upright position.

456.    Notably, none of J.C.'s other medical records contain evidence of such profound muscle weakness.

457.    JA billed for ALM (i.e., NIOSH testing) for J.C. on June 19, 2019.  The ALM testing was bogus and unnecessary because J.C.'s muscle strength was already assessed as part of the initial patient examination.

458.    The billing for NIOSH testing was also fraudulent because JA reported phony results—the values reported for J.C.'s strength were too low to be considered legitimate.

459.    NIOSH testing was also unwarranted based on J.C.'s reports of musculoskeletal pain.  A patient experiencing the type of musculoskeletal pain reported by J.C. would have been unable to exert the full effort needed to obtain reliable measurements.

460.    NIOSH testing was also unnecessary in J.C.'s case because the testing is designed to assess a patient's ability to perform work functions.  The NIOSH testing billed by JA was not

related to a documented list of tasks performed by J.C. in the workplace, which means the tests were unnecessary and of no utility.

461.    Overall, JA's bills for J.C. are not compensable under New York's No-Fault laws because the physical therapy services were excessive, medically unnecessary, and falsely charged.

462.    Allstate was induced to make payments totaling at least $1,451.68 to JA in connection with the fraudulent billing submitted for J.C.  Allstate is entitled to recover all such payments.

### 10.    Claimant A.M. (claim no. 0523788909)

463.    Claimant A.M. was purportedly involved in a motor vehicle accident on November 8, 2018.

464.    A.M. then began treating at a clinic located at 1975 Linden Boulevard, Elmont, NY 11003, where they were evaluated on November 28, 2018, by a physician working for Metro Pain (i.e., non-party Hong Pak, M.D. ("Pak")).

465.    Pak has been implicated in other fraud schemes based on bogus prescriptions issued for Metro Pain patients.  *See, e.g., Gov't Empls. Ins. Co. v. Park Chemists 4 Av LLC*, No. 1:23-cv-09168 (E.D.N.Y.) (alleging that Pak steered numerous prescriptions for medically unnecessary topical pain products pursuant to an unlawful referral relationship); *Liberty Mut. Ins. Co. v. AVK Rx Inc.*, No. 2:22-cv-07329-GRB-SIL (E.D.N.Y.) (alleging that Pak made unlawful referrals of prescription drugs and medications to pharmacies); *Gov't Empls. Ins. Co. v. Wallegood, Inc.*, No. 1:21-cv-01986-PKC-RLM (E.D.N.Y.) (alleging that Pak prescribed medically unnecessary durable medical equipment to patients pursuant to an unlawful referral relationship); *Gov't Empls. Ins. Co. v. Ultimed Health Care, P.C.*, No. 3:18-cv-16887-BRM-LHG (D.N.J.) (alleging that Pak

performed medically unnecessary initial examinations and electrodiagnostic testing and engaged in unlawful self-referrals).

466.    Here, Pak referred A.M. for physical therapy per the predetermined treatment protocol in place at Metro Pain.  A.M. was then referred to Life Care for bogus physical therapy testing pursuant to a prohibited referral relationship between Life Care and Metro Pain.

467.    On December 20, 2018, January 24, 2019, and March 28, 2019, Life Care billed for medically unnecessary, excessive, and duplicative ROM (CPT code 95851) and MMT (CPT code 95831) testing.  The ROM/MMT testing was bogus and unnecessary because A.M.'s range of motion and muscle strength was already assessed as part of the initial patient examination.

468.    Life Care's billing for ROM testing was false because the lumbar rotation of A.M.'s spine was never measured, which means the testing was incomplete.  The ROM testing billed by Life Care was also bogus because the results never influenced or affected A.M.'s treatment plan.

469.    Although Life Care billed for MMT, it purportedly rendered computerized muscle testing for A.M.

470.    Life Care also reported phony results for A.M.'s MMT testing:

| Date of Test | Type of Test | Max. Result |
|---|---|---|
| 12/20/2018 | Neck flexion | 3 lbs |
| 12/20/2018 | Neck extension | 7 lbs |
| 3/28/2019 | Neck flexion | 5 lbs |
| 3/28/2019 | Neck extension | 7 lbs |
| 6/24/2019 | Neck flexion | 5 lbs |
| 6/24/2019 | Neck extension | 5 lbs |

471.   The MMT testing results reported by Life Care are not credible; if true, the results meant that A.M. could not lift their head from a pillow while lying in a face down or face up position—Life Care reported that A.D. could exert no more than 7 lbs of neck strength, which is not enough strength to support an adult's head.

472.   Life Care's MMT testing results also meant that A.M. could not look straight ahead while in an upright position.

473.   Notably, none of A.M.'s other medical records contain evidence of such profound muscle weakness.

474.   Overall, Life Care's bills for A.M. are not compensable under New York's No-Fault laws because the physical therapy services were excessive, medically unnecessary, and falsely charged.

475.   Allstate was induced to make payments totaling at least $554.49 to Life Care in connection with the fraudulent billing submitted for A.M.  Allstate is entitled to recover all such payments.

### 11.   Claimant J.A. (claim no. 0588327551)

476.   Claimant J.A. was purportedly involved in a motor vehicle accident on May 29, 2020.

477.   J.A. then began treating at a clinic located at 4250 White Plains Road, Bronx, NY 10466, where they were evaluated on July 9, 2020 by a provider working for non-party Macintosh Medical, P.C. (i.e., Aleksandr Kopach, PA ("Kopach")).

478.   Macintosh Medical, P.C. has been accused of submitting false and fraudulent claims "as part of a massive scheme to exploit New York's no-fault insurance system."  *Gov't Empls. Ins. Co. v. Landow*, No. 1:21-cv-01440-NGG-RER (E.D.N.Y.); *see also Allstate Ins. Co.*

*v. Landow*, No. 1:24-cv-02010 (E.D.N.Y.) (alleging that Macintosh Medical, P.C.'s clinic location at 4250 White Plains Road, Bronx, NY "maintained a steady patient base through an unlawful referral network" and followed a predetermined treatment protocol).

479.    Moreover, the clinic located at 4250 White Plains Road, Bronx, NY has been identified as a "'one-stop" shop[]' for no-fault insurance fraud [through] a 'revolving door' of healthcare services professional corporations, chiropractic professional corporations, physical therapy professional corporations, and/or a multitude of other purported healthcare providers, all geared towards exploiting New York's no-fault insurance system." *Gov't Empls. Ins. Co. v. Stybel*, No. 1:22-cv-02834 (E.D.N.Y.).

480.    Kopach has been implicated in fraud schemes involving unlawful referral relationships in exchange for services at the clinic located at 4250 White Plains Road, Bronx, NY. *Gov't Empls. Ins. Co. v. Cool Med Supply, Inc.*, No. 1:23-cv-04316-HG (E.D.N.Y.).

481.    Here, Kopach referred J.A. for physical therapy per the predetermined treatment protocol in place at Macintosh Medical, P.C.  J.A. was then referred to JEVA and Go Flex for bogus physical therapy testing pursuant to prohibited referral relationships between JEVA and Go Flex and Macintosh Medical, P.C.

482.    On June 15, 2020 and July 15, 2020, JEVA billed for medically unnecessary, excessive, and duplicative ROM (CPT code 95851) and MMT (CPT code 95831) testing.  The ROM/MMT testing was bogus and unnecessary because J.A.'s range of motion and muscle strength was already assessed as part of the initial patient examination.

483.    On August 31, 2020 and September 23, 2020, Go Flex billed for medically unnecessary, excessive, and duplicative ROM (CPT code 95851) and MMT (CPT code 95831)

testing.  The ROM/MMT testing was bogus and unnecessary because J.A.'s range of motion and muscle strength was already assessed as part of the initial patient examination.

484.    JEVA's and Go Flex's billing for ROM testing was false because cervical, thoracic, and lumbar rotation, thoracic extension, and lumbar and thoracic lateral motion of J.A.'s spine was never measured, which means the testing was incomplete.  The ROM testing billed by JEVA and Go Flex was also bogus because the results never influenced or affected J.A.'s treatment plan.

485.    Although JEVA and Go Flex billed for MMT, they purportedly rendered computerized muscle testing for J.A.

486.    The MMT testing results reported by Go Flex are not credible; if true, the results meant that J.A. could not lift their head from a pillow while lying in a face down or face up position—Go Flex reported that J.A. could only exert 4 lbs of cervical extension strength and 6.2 lbs of cervical flexion strength, which is not enough strength to support an adult's head.

487.    Go Flex's MMT testing results also meant that J.A. could not look straight ahead while in an upright position.

488.    Notably, none of J.A.'s other medical records contain evidence of such profound muscle weakness.

489.    On June 15, 2020 and July 15, 2020, JEVA billed for medically unnecessary ALM testing (i.e., NIOSH testing) under CPT code 97799 in connection with J.A.  The ALM testing was bogus and unnecessary because J.A.'s muscle strength was already assessed as part of the initial patient examination.

490.    On August 31, 2020 and September 23, 2020, Go Flex billed for medically unnecessary ALM testing (i.e., NIOSH testing) under CPT code 97799 in connection with J.A.

The ALM testing was bogus and unnecessary because J.A.'s muscle strength was already assessed as part of the initial patient examination.

491.    The billing for NIOSH testing was also fraudulent because JEVA and Go Flex reported phony results—the values reported for J.A.'s strength were too low to be considered legitimate.

492.    NIOSH testing was also unwarranted based on J.A.'s reports of musculoskeletal pain.  A patient experiencing the type of musculoskeletal pain reported by J.A. would have been unable to exert the full effort needed to obtain reliable measurements.

493.    NIOSH testing was also unnecessary in J.A.'s case because the testing is designed to assess a patient's ability to perform work functions.  The NIOSH testing billed by JEVA and Go Flex was not related to a documented list of tasks performed by J.A. in the workplace, which means the tests were unnecessary and of no utility.

494.    Overall, Go Flex and JEVA's bills for J.A. are not compensable under New York's No-Fault laws because the physical therapy services were excessive, medically unnecessary, and falsely charged

495.    Allstate was induced to make payments totaling at least $830.78 to Go Flex and at least $852.76 to JEVA in connection with the fraudulent billing submitted for J.A.  Allstate is entitled to recover all such payments.

**12.    Claimant P.O. (claim no. 0555524024)**

496.    Claimant P.O. was purportedly involved in a motor vehicle accident on July 31, 2019.

497. P.O. then began treating at a clinic located at 1894 Eastchester Road, Suite 201, Bronx, NY 10461, where they were evaluated on August 7, 2019 by a provider working for non-party QR Medical Services P.C.

498. QR Medical Services, P.C. has been accused of submitting false charges under New York's No-Fault laws for services purportedly performed pursuant to a predetermined protocol and unlawful referral arrangements. *Liberty Mut. Ins. Co. v. Eldar Kadymoff Medical, P.C.*, No. 2:20-cv-02293-PKC-CLP (E.D.N.Y.).

499. P.O. continued treating at the 1894 Eastchester Road clinic, and was later evaluated on October 16, 2019 by a provider working for Metro Pain.

500. The 1894 Eastchester Road clinic been identified as a "convenient, one-stop shop[] for no-fault insurance fraud [through] a 'revolving door' of healthcare services professional corporations, chiropractic professional corporations, physical therapy professional corporations, and/or a multitude of other purported healthcare providers, all geared towards exploiting New York's no-fault insurance system." *Gov't Empls. Ins. Co. v. Gepp*, No. 1:22-cv-02860 (E.D.N.Y.); *Gov't Empls. Ins. Co. v. Stybel*, No. 1:22-cv-02834 (E.D.N.Y.).

501. Per the predetermined protocol, QR Medical Services P.C. referred P.O. for physical therapy, which was billed by Finesse Care. Metro Pain also referred P.O. for physical therapy, which was billed by MC and Pesidas PT. P.O. was referred to Finesse Care, MC, and Pesidas PT because of the unlawful referral arrangements in place.

502. On August 19, 2019 and September 19, 2019, Finesse Care billed for medically unnecessary, excessive, and duplicative ROM (CPT code 95851) and MMT (CPT code 95831) testing. The ROM/MMT testing was bogus and unnecessary because P.O.'s range of motion and muscle strength was already assessed as part of the initial patient examination.

89

503.    On November 14, 2019, MC billed for medically unnecessary ROM (CPT code 95851) and MMT (CPT code 95831) testing.  The ROM/MMT testing was bogus and unnecessary because P.O.'s range of motion and muscle strength was already assessed as part of the initial patient examination.

504.    Finesse Care and MC's billing for ROM testing was false because the lumbar rotation of P.O.'s spine was never measured, which means the testing was incomplete.  The ROM testing billed by Finesse Care and MC was also bogus because the results never influenced or affected P.O.'s treatment plan.

505.    Although Finesse Care and MC billed for MMT, they purportedly rendered computerized muscle testing for P.O.

506.    Finesse Care also reported phony results for P.O.'s MMT testing:

| **Date of Test** | **Type of Test** | **Max. Result** |
|:---:|:---:|:---:|
| 8/19/2019 | Neck flexion | 4 lbs |
| 8/19/2019 | Neck extension | 3 lbs |
| 9/19/2019 | Neck flexion | 4 lbs |
| 9/19/2019 | Neck extension | 4 lbs |

507.    MC also reported phony results for P.O.'s MMT testing:

| **Date of Test** | **Type of Test** | **Max. Result** |
|:---:|:---:|:---:|
| 11/14/2019 | Neck flexion | 5 lbs |
| 11/14/2019 | Neck extension | 4 lbs |

508. The MMT testing results reported by Finesse Care and MC are not credible; if true, the results meant that P.O. could not lift their head from a pillow while lying in a face down or face up position—Finesse Care and MC reported that P.O. could only exert no more than 5 lbs of neck strength, which is not enough strength to support an adult's head.

509. Finesse Care and MC's MMT testing results also meant that P.O. could not look straight ahead while in an upright position.

510. Notably, none of P.O.'s other medical records contain evidence of such profound muscle weakness.

511. On September 5, 2019 and October 31, 2019, Finesse Care billed Allstate for "physical performance tests" (i.e., NIOSH testing) under CPT code 97799 in connection with P.O. The NIOSH testing was bogus and unnecessary because P.O.'s muscle strength was already assessed as part of the initial patient examination.

512. On December 12, 2019, Pesidas PT billed Allstate for ALM (i.e., NIOSH testing) under CPT code 97799 in connection with P.O. The NIOSH testing was bogus and unnecessary because P.O.'s muscle strength was already assessed as part of the initial patient examination.

513. The billing for NIOSH testing was also fraudulent because Finesse Care and Pesidas PT reported phony results—the values reported for P.O.'s strength were too low to be considered legitimate.

514. NIOSH testing was also unwarranted based on P.O.'s reports of musculoskeletal pain. A patient experiencing the type of musculoskeletal pain reported by P.O. would have been unable to exert the full effort needed to obtain reliable measurements.

515. NIOSH testing was also unnecessary in P.O.'s case because the testing is designed to assess a patient's ability to perform work functions. The NIOSH testing billed by Finesse Care

and Pesidas PT was not related to a documented list of tasks performed by P.O. in the workplace, which means the tests were unnecessary and of no utility.

516.    Overall, Finesse Care, MC, and Pesidas PT's bills for P.O. are not compensable under New York's No-Fault laws because the physical therapy services were excessive, medically unnecessary, and falsely charged.

517.    Allstate was induced to make payments totaling at least $1,059.06 to Finesse Care, at least $406.20 to MC, and at least $46.24 to Pesidas PT in connection with the fraudulent billing submitted for P.O.  Allstate is entitled to recover all such payments.

### 13.    Claimant H.J. (claim no. 0581234291)

518.    Claimant H.J. was purportedly involved in a motor vehicle accident on March 12, 2020.

519.    H.J. then began treating at a clinic located at 1120 Morris Park Avenue, Suite 1B, Bronx, NY 10461 and was referred for physical therapy services.

520.    The clinic located at 1120 Morris Park Avenue, Bronx, NY has been identified as a "one-stop shop[] for no-fault insurance fraud" involving "a 'revolving door' of healthcare services professional corporations, chiropractic professional corporations, physical therapy professional corporations, and/or a multitude of other purported healthcare providers, all geared towards exploiting New York's no-fault insurance system."  *Gov't Empls. Ins. Co. v. Gepp*, No. 1:22-cv-02860 (E.D.N.Y.); *Gov't Empls. Ins. Co. v. Waldman*, No. 1:22-cv-02858 (E.D.N.Y.).

521.    On March 13, 2020, and April 24, 2020, Better Hands billed for medically unnecessary, excessive, and duplicative ROM (CPT code 95851) and MMT (CPT code 95831) testing.  The ROM/MMT testing was bogus and unnecessary because H.J.'s range of motion and muscle strength was already assessed as part of the initial patient examination.

522.    Better Hands' billing for ROM testing was false because the cervical, thoracic, and lumbar rotation, thoracic extension, and lumbar lateral motion of H.J.'s spine was never measured, which means the testing was incomplete.  The ROM testing billed by Better Hands was also bogus because the results never influenced or affected H.J.'s treatment plan.

523.    On April 28, 2020, Better Hands billed Allstate for ALM (i.e., NIOSH testing) under CPT code 97799 in connection with H.J.  The ALM testing was bogus and unnecessary because H.J.'s muscle strength was already assessed as part of the initial patient examination.

524.    The billing for NIOSH testing was also fraudulent because Better Hands reported phony results—the values reported for H.J.'s strength were too low to be considered legitimate.

525.    NIOSH testing was also unwarranted based on H.J.'s reports of musculoskeletal pain.  A patient experiencing the type of musculoskeletal pain reported by H.J. would have been unable to exert the full effort needed to obtain reliable measurements.

526.    NIOSH testing was also unnecessary in H.J.'s case because the testing is designed to assess a patient's ability to perform work functions.  The NIOSH testing billed by Better Hands was not related to a documented list of tasks performed by H.J. in the workplace, which means the tests were unnecessary and of no utility.

527.    Overall, Better Hands' bills for H.J. are not compensable under New York's No-Fault laws because the physical therapy services were excessive, medically unnecessary, and falsely charged

528.    Allstate was induced to make payments totaling at least $1,296.62 to Better Hands in connection with the fraudulent billing submitted for H.J.  Allstate is entitled to recover all such payments.

### 14.    Claimant D.M. (claim no. 0574083820)

529.    Claimant D.M. was purportedly involved in a motor vehicle accident on January 3, 2020.

530.    On January 20, 2020, D.M. was evaluated by Glenn H. Whitney, D.C. ("Whitney") at NY Metro Chiropractic, P.C. at 175 Fulton Ave., Ste. 503, Hempstead, NY 11550.

531.    The clinic located at 175 Fulton Ave, Hempstead, NY allegedly is controlled by laypersons and involved in an illegal referral scheme.  *Gov't Empls. Ins. Co. v. Stybel*, No. 22-cv-02834-PKC-MMH (E.D.N.Y.).

532.    Whitney has been implicated in other fraud schemes alleging unlawful referral arrangements involving the payment of kickbacks in exchange for patient referrals.  *Gov't Empls. Ins. Co. v. Jacques*, No. 14-cv-05299 (E.D.N.Y.); *Gov't Empls. Ins. Co. v. Whitney*, No. 18-cv-05013 (E.D.N.Y.).

533.    Whitney referred D.M. for "Range Of Motion Test" and "Manual Muscle Test" services on February 21, 2020:



534.    On February 21, 2020, Better Hands billed for medically unnecessary, excessive, and duplicative ROM (CPT code 95851) and MMT (CPT code 95831) testing.  The ROM/MMT testing was bogus and unnecessary because D.M.'s range of motion and muscle strength was already assessed as part of the initial patient examination.

535.    On May 27, 2020, and July 14, 2020, JEVA billed for medically unnecessary, excessive, and duplicative ROM (CPT code 95851) and MMT (CPT code 95831) testing.  The ROM/MMT testing was bogus and unnecessary because D.M.'s range of motion and muscle strength was already assessed as part of the initial patient examination.

536.    Better Hands's and JEVA's billing for ROM testing was false because cervical, thoracic, and lumbar rotation, thoracic extension, and lumbar lateral motion of D.M.'s spine was never measured, which means the testing was incomplete.  The ROM testing billed by Better

Hands and JEVA was also bogus because the results never influenced or affected D.M.'s treatment plan.

537.    Although Better Hands and JEVA billed for MMT, they purportedly rendered computerized muscle testing for D.M.

538.    Better Hands also reported phony results for D.M.'s MMT testing:

| Date of Test | Type of Test | Max. Result |
|:---:|:---:|:---:|
| 2/21/2020 | Neck flexion | 3.2 lbs |
| 2/21/2020 | Neck extension | 2.8 lbs |

539.    JEVA also reported phony results for D.M.'s MMT testing:

| Date of Test | Type of Test | Max. Result |
|:---:|:---:|:---:|
| 5/27/2020 | Neck extension | 6.2 lbs |
| 7/14/2020 | Neck extension | 5.8 lbs |

540.    The MMT testing results reported by Better Hands and JEVA are not credible; if true, the results meant that D.M. could not lift their head from a pillow while lying in a face down or face up position—Better Hands and JEVA reported that D.M. could exert no more than 3.2 lbs of neck flexion strength and no more than 6.2 lbs of neck extension strength, which is not enough strength to support an adult's head.

541.    Better Hands and JEVA's MMT testing results also meant that D.M. could not look straight ahead while in an upright position.

542.    Notably, none of D.M.'s other medical records contain evidence of such profound muscle weakness.

543.    Whitney referred D.M. for unnecessary ALM testing on February 21, 2020:



544.    On February 21, 2020, Better Hands billed for ALM (i.e., NIOSH testing) under CPT code 97799 in connection with D.M.  The ALM testing was bogus and unnecessary because D.M.'s muscle strength was already assessed as part of the initial patient examination.

545.    On May 27, 2020 and July 14, 2020, JEVA billed for ALM (i.e., NIOSH testing) under CPT code 97799 in connection with D.M.  The ALM testing was bogus and unnecessary because D.M.'s muscle strength was already assessed as part of the initial patient examination.

546.     The billing for NIOSH testing was also fraudulent because Better Hands and JEVA reported phony results—the values reported for D.M.'s strength were too low to be considered legitimate.

547.     NIOSH testing was also unwarranted based on D.M.'s reports of musculoskeletal pain.  A patient experiencing the type of musculoskeletal pain reported by D.M. would have been unable to exert the full effort needed to obtain reliable measurements.

548.     NIOSH testing was also unnecessary in D.M.'s case because the testing is designed to assess a patient's ability to perform work functions.  The NIOSH testing billed by Better Hands and JEVA was not related to a documented list of tasks performed by D.M. in the workplace, which means the tests were unnecessary and of no utility.

549.     Indeed, D.M. was 82 years old at the time of the services, and according to other medical records for D.M., was retired.

550.     Overall, Better Hands's and JEVA's bills for D.M. are not compensable under New York's No-Fault laws because the physical therapy services were excessive, medically unnecessary, and falsely charged.

551.     Allstate was induced to make payments totaling at least $406.20 to Better Hands and at least $2,218.30 to JEVA in connection with the fraudulent billing submitted for D.M. Allstate is entitled to recover all such payments.

## VI.     SPECIFIC ALLEGATIONS OF MAIL FRAUD RACKETEERING ACTIVITY

552.     The Defendants (a) created, prepared, and submitted (or caused to be created, prepared, and submitted) false No-Fault claim reimbursement documentation, (b) intentionally violated the laws of the United States by devising, and intending to devise, schemes to defraud and obtain money and property using false and fraudulent pretenses and representations, and (c) placed,

98

or caused to be placed, in a post office and/or authorized depository for mail matter, things to be sent and delivered by the United States Postal Service, in violation of 18 U.S.C. § 1341 (mail fraud) to execute, or attempt, such fraudulent schemes.

553.    Unless otherwise pled to the contrary, all documents, notes, reports, invoices, prescription forms, health insurance claim forms, assignment of benefit forms, letters of medical necessity, peer-review rebuttals, other No-Fault claim reimbursement documents, letters, and requests for payment in connection with the insurance claims referenced throughout this pleading (and accompanying exhibits) traveled through the U.S. Mail.

554.    Every automobile insurance claim detailed within this Complaint involved at least one use of the U.S. Mail, including the mailing of, among other things, the notice of claim, initial policies, insurance payments, claim-related payments, and the return of the canceled payment instruments to the financial institution(s) from which the draft(s) were drawn.

A.    BETTER HANDS ENTERPRISE

555.    Geykhman, Gulkarov, Sattarov, Rahmatov, Parcon, Go Flex, Ballener, JEVA, JA, Abrenica, Pesidas PT, Pesidas, MMA, Magid, MT, Tandingan, Axis, Awad, MC, Cuadra, Finesse Care, Emara, July PT, Elsanaa, Hands of Hope, Ebeido, Comfort, Cadet, Wellness PT, Rezende, Pyramid, and Hablas participated in the operation and management of the Better Hands enterprise.

556.    Geykhman, Gulkarov, Sattarov, Rahmatov, Parcon, Go Flex, Ballener, JEVA, JA, Abrenica, Pesidas PT, Pesidas, MMA, Magid, MT, Tandingan, Axis, Awad, MC, Cuadra, Finesse Care, Emara, July PT, Elsanaa, Hands of Hope, Ebeido, Comfort, Cadet, Wellness PT, Rezende, Pyramid, and Hablas caused Better Hands to falsely certify that it was, in all respects, eligible to be reimbursed under New York's No-Fault Laws each time that a demand for payment (i.e., invoice, NF-3 bill, or CMS-1500 form) was mailed to Allstate.

557.   Geykhman, Gulkarov, Sattarov, and Rahman's participation in the management and control of Better Hands rendered the PC completely ineligible for No-Fault reimbursement under New York law.

558.   Geykhman, Gulkarov, Sattarov, Rahmatov, Parcon, Go Flex, Ballener, JEVA, JA, Abrenica, Pesidas PT, Pesidas, MMA, Magid, MT, Tandingan, Axis, Awad, MC, Cuadra, Finesse Care, Emara, July PT, Elsanaa, Hands of Hope, Ebeido, Comfort, Cadet, Wellness PT, Rezende, Pyramid, and Hablas caused Better Hands to make a misrepresentation each and every time that a demand for payment (i.e., invoice, NF-3 bill, or CMS-1500 form) was mailed to Allstate because Better Hands was owned and controlled by unlicensed persons, which is against New York law. The employment status of the independent contractor technicians was also misrepresented in Better Hands's NF-3 bills.

559.   Geykhman, Gulkarov, Sattarov, Rahmatov, Parcon, Go Flex, Ballener, JEVA, JA, Abrenica, Pesidas PT, Pesidas, MMA, Magid, MT, Tandingan, Axis, Awad, MC, Cuadra, Finesse Care, Emara, July PT, Elsanaa, Hands of Hope, Ebeido, Comfort, Cadet, Wellness PT, Rezende, Pyramid, and Hablas committed mail fraud because they used the U.S. Mail to submit false and fraudulent No-Fault claims to Allstate through Better Hands.

560.   Geykhman, Gulkarov, Sattarov, Rahmatov, Parcon, Go Flex, Ballener, JEVA, JA, Abrenica, Pesidas PT, Pesidas, MMA, Magid, MT, Tandingan, Axis, Awad, MC, Cuadra, Finesse Care, Emara, July PT, Elsanaa, Hands of Hope, Ebeido, Comfort, Cadet, Wellness PT, Rezende, Pyramid, and Hablas knew that Better Hands' employees and agents would use the U.S. Mail to submit No-Fault claims to Allstate.  Geykhman, Gulkarov, Sattarov, Rahmatov, Parcon, Go Flex, Ballener, JEVA, JA, Abrenica, Pesidas PT, Pesidas, MMA, Magid, MT, Tandingan, Axis, Awad, MC, Cuadra, Finesse Care, Emara, July PT, Elsanaa, Hands of Hope, Ebeido, Comfort, Cadet,

Wellness PT, Rezende, Pyramid, and Hablas also knew that claimants, attorneys, and Allstate would use the U.S. Mail in the course of processing No-Fault claims submitted by Better Hands.

561.    Allstate estimates that the unlawful operation of the Better Hands enterprise generated hundreds of mailings.  A table highlighting selected examples of mailings made in furtherance of this scheme is annexed at Exhibit 21 and incorporated by reference as if set forth in its entirety.

### B. HANDS OF HOPE ENTERPRISE

562.    Geykhman, Gulkarov, Sattarov, Rahmatov, Ebeido, July PT, Elsanaa, Pyramid, Hablas, MMA, Magid, Comfort, Cadet, Wellness PT, Rezende, MT, Tandingan, Pesidas PT, Pesidas, Better Hands, Parcon, Go Flex, Ballener, JEVA, JA, Abrenica, MC, and Cuadra participated in the operation and management of the Hands of Hope enterprise.

563.    Geykhman, Gulkarov, Sattarov, Rahmatov, Ebeido, July PT, Elsanaa, Pyramid, Hablas, MMA, Magid, Comfort, Cadet, Wellness PT, Rezende, MT, Tandingan, Pesidas PT, Pesidas, Better Hands, Parcon, Go Flex, Ballener, JEVA, JA, Abrenica, MC, and Cuadra caused Hands of Hope to falsely certify that it was, in all respects, eligible to be reimbursed under New York's No-Fault Laws each time that a demand for payment (i.e., invoice, NF-3 bill, or CMS-1500 form) was mailed to Allstate.

564.    Geykhman, Gulkarov, Sattarov, and Rahmatov's participation in the management and control of Hands of Hope, rendered Hands of Hope completely ineligible for No-Fault reimbursement under New York law.

565.    Geykhman, Gulkarov, Sattarov, Rahman, Ebeido, July PT, Elsanaa, Pyramid, Hablas, MMA, Magid, Comfort, Cadet, Wellness PT, Rezende, MT, Tandingan, Pesidas PT, Pesidas, Better Hands, Parcon, Go Flex, Ballener, JEVA, JA, Abrenica, MC, and Cuadra caused

Hands of Hope to make a misrepresentation each and every time that a demand for payment (i.e., invoice, NF-3 bill, or CMS-1500 form) was mailed to Allstate because Hands of Hope was owned and controlled by unlicensed persons, which is against New York law.  The employment status of the independent contractor technicians was also misrepresented in Hands of Hope's NF-3 bills.

566.    Geykhman, Gulkarov, Sattarov, Rahman, Ebeido, July PT, Elsanaa, Pyramid, Hablas, MMA, Magid, Comfort, Cadet, Wellness PT, Rezende, MT, Tandingan, Pesidas PT, Pesidas, Better Hands, Parcon, Go Flex, Ballener, JEVA, JA, Abrenica, MC, and Cuadra committed mail fraud because they used the U.S. Mail to submit false and fraudulent No-Fault claims to Allstate through Hands of Hope.

567.    Geykhman, Gulkarov, Sattarov, Rahman, Ebeido, July PT, Elsanaa, Pyramid, Hablas, MMA, Magid, Comfort, Cadet, Wellness PT, Rezende, MT, Tandingan, Pesidas PT, Pesidas, Better Hands, Parcon, Go Flex, Ballener, JEVA, JA, Abrenica, MC, and Cuadra knew that Hands of Hope's employees and agents would use the U.S. Mail to submit No-Fault claims to Allstate.  Geykhman, Gulkarov, Sattarov, Rahman, Ebeido, July PT, Elsanaa, Pyramid, Hablas, MMA, Magid, Comfort, Cadet, Wellness PT, Rezende, MT, Tandingan, Pesidas PT, Pesidas, Better Hands, Parcon, Go Flex, Ballener, JEVA, JA, Abrenica, MC, and Cuadra also knew that claimants, attorneys, and Allstate would use the U.S. Mail in the course of processing No-Fault claims submitted by Hands of Hope.

568.    Allstate estimates that the unlawful operation of the Hands of Hope enterprise generated hundreds of mailings.  A table highlighting selected examples of mailings made in furtherance of this scheme is annexed at Exhibit 22 and incorporated by reference as if set forth in its entirety.

102

C.     J<span>ULY</span> PT E<span>NTERPRISE</span>

569.     Geykhman, Gulkarov, Sattarov, Rahmatov, Elsanaa, Hand by Hand, Hands of Hope, Ebeido, Pyramid, Hablas, MMA, Magid, MT, Tandingan, Comfort, Cadet, Wellness PT, Rezende, Pesidas PT, Pesidas, Better Hands, Parcon, Go Flex, Ballener, JEVA, Abrenica, MC, and Cuadra participated in the operation and management of the July PT enterprise.

570.     Geykhman, Gulkarov, Sattarov, Rahmatov, Elsanaa, Hand by Hand, Hands of Hope, Ebeido, Pyramid, Hablas, MMA, Magid, MT, Tandingan, Comfort, Cadet, Wellness PT, Rezende, Pesidas PT, Pesidas, Better Hands, Parcon, Go Flex, Ballener, JEVA, Abrenica, MC, and Cuadra caused July PT to falsely certify that it was, in all respects, eligible to be reimbursed under New York's No-Fault Laws each time that a demand for payment (i.e., invoice, NF-3 bill, or CMS-1500 form) was mailed to Allstate.

571.     Geykhman, Gulkarov, Sattarov, and Rahmatov's participation in the management and control of July PT rendered July PT completely ineligible for No-Fault reimbursement under New York law.

572.     Geykhman, Gulkarov, Sattarov, Rahmatov, Elsanaa, Hand by Hand, Hands of Hope, Ebeido, Pyramid, Hablas, MMA, Magid, MT, Tandingan, Comfort, Cadet, Wellness PT, Rezende, Pesidas PT, Pesidas, Better Hands, Parcon, Go Flex, Ballener, JEVA, Abrenica, MC, and Cuadra caused July PT to make a misrepresentation each and every time that a demand for payment (i.e., invoice, NF-3 bill, or CMS-1500 form) was mailed to Allstate because July PT was owned and controlled by unlicensed persons, which is against New York law.  The employment status of the independent contractor technicians was also misrepresented in July PT's NF-3 bills.

573.     Geykhman, Gulkarov, Sattarov, Rahmatov, Elsanaa, Hand by Hand, Hands of Hope, Ebeido, Pyramid, Hablas, MMA, Magid, MT, Tandingan, Comfort, Cadet, Wellness PT,

Rezende, Pesidas PT, Pesidas, Better Hands, Parcon, Go Flex, Ballener, JEVA, Abrenica, MC, and Cuadra committed mail fraud because they used the U.S. Mail to submit false and fraudulent No-Fault claims to Allstate through July PT.

574.    Geykhman, Gulkarov, Sattarov, Rahmatov, Elsanaa, Hand by Hand, Hands of Hope, Ebeido, Pyramid, Hablas, MMA, Magid, MT, Tandingan, Comfort, Cadet, Wellness PT, Rezende, Pesidas PT, Pesidas, Better Hands, Parcon, Go Flex, Ballener, JEVA, Abrenica, MC, and Cuadra knew that July PT's employees and agents would use the U.S. Mail to submit No-Fault claims to Allstate.  Geykhman, Gulkarov, Sattarov, Rahmatov, Elsanaa, Hand by Hand, Hands of Hope, Ebeido, Pyramid, Hablas, MMA, Magid, MT, Tandingan, Comfort, Cadet, Wellness PT, Rezende, Pesidas PT, Pesidas, Better Hands, Parcon, Go Flex, Ballener, JEVA, Abrenica, MC, and Cuadra also knew that claimants, attorneys, and Allstate would use the U.S. Mail in the course of processing No-Fault claims submitted by July PT.

575.    Allstate estimates that the unlawful operation of the July PT enterprise generated hundreds of mailings.  A table highlighting selected examples of mailings made in furtherance of this scheme is annexed at Exhibit 23 and incorporated by reference as if set forth in its entirety.

**D.    MMA ENTERPRISE**

576.    Geykhman, Gulkarov, Sattarov, Rahmatov, Magid, Hands of Hope, Ebeido, July PT, Elsanaa, Pyramid, Hablas, Comfort, Cadet, MT, Tandingan, Wellness PT, Rezende, Better Hands, Parcon, Atlas, Awad, Pesidas PT, Pesidas, Go Flex, Ballener, JEVA, Abrenica, MC, and Cuadra participated in the operation and management of the MMA enterprise.

577.    Geykhman, Gulkarov, Sattarov, Rahmatov, Magid, Hands of Hope, Ebeido, July PT, Elsanaa, Pyramid, Hablas, Comfort, Cadet, MT, Tandingan, Wellness PT, Rezende, Better Hands, Parcon, Atlas, Awad, Pesidas PT, Pesidas, Go Flex, Ballener, JEVA, Abrenica, MC, and

Cuadra caused MMA to falsely certify that it was, in all respects, eligible to be reimbursed under New York's No-Fault Laws each time that a demand for payment (i.e., invoice, NF-3 bill, or CMS-1500 form) was mailed to Allstate.

578.     Geykhman, Gulkarov, Sattarov, and Rahmatov's participation in the management and control of MMA rendered MMA completely ineligible for No-Fault reimbursement under New York law.

579.     Geykhman, Gulkarov, Sattarov, Rahmatov, Magid, Hands of Hope, Ebeido, July PT, Elsanaa, Pyramid, Hablas, Comfort, Cadet, MT, Tandingan, Wellness PT, Rezende, Better Hands, Parcon, Atlas, Awad, Pesidas PT, Pesidas, Go Flex, Ballener, JEVA, Abrenica, MC, and Cuadra caused MMA to make a misrepresentation each and every time that a demand for payment (i.e., invoice, NF-3 bill, or CMS-1500 form) was mailed to Allstate because MMA was owned and controlled by unlicensed persons, which is against New York law.  The employment status of the independent contractor technicians was also misrepresented in MMA's NF-3 bills.

580.     Geykhman, Gulkarov, Sattarov, Rahmatov, Magid, Hands of Hope, Ebeido, July PT, Elsanaa, Pyramid, Hablas, Comfort, Cadet, MT, Tandingan, Wellness PT, Rezende, Better Hands, Parcon, Atlas, Awad, Pesidas PT, Pesidas, Go Flex, Ballener, JEVA, Abrenica, MC, and Cuadra committed mail fraud because they used the U.S. Mail to submit false and fraudulent No-Fault claims to Allstate through MMA.

581.     Geykhman, Gulkarov, Sattarov, Rahmatov, Magid, Hands of Hope, Ebeido, July PT, Elsanaa, Pyramid, Hablas, Comfort, Cadet, MT, Tandingan, Wellness PT, Rezende, Better Hands, Parcon, Atlas, Awad, Pesidas PT, Pesidas, Go Flex, Ballener, JEVA, Abrenica, MC, and Cuadra knew that MMA's employees and agents would use the U.S. Mail to submit No-Fault claims to Allstate.  Geykhman, Gulkarov, Sattarov, Rahmatov, Magid, Hands of Hope, Ebeido,

105

July PT, Elsanaa, Pyramid, Hablas, Comfort, Cadet, MT, Tandingan, Wellness PT, Rezende, Better Hands, Parcon, Atlas, Awad, Pesidas PT, Pesidas, Go Flex, Ballener, JEVA, Abrenica, MC, and Cuadra also knew that claimants, attorneys, and Allstate would use the U.S. Mail in the course of processing No-Fault claims submitted by MMA.

582.    Allstate estimates that the unlawful operation of the MMA enterprise generated hundreds of mailings.  A table highlighting selected examples of mailings made in furtherance of this scheme is annexed at Exhibit 24 and incorporated by reference as if set forth in its entirety.

### E.    PYRAMID ENTERPRISE

583.    Geykhman, Gulkarov, Sattarov, Rahmatov, Hablas, Hands of Hope, Ebeido, July PT, Elsanaa, MMA, Magid, Go Flex, Ballener, JEVA, Abrenica, MC, Cuadra, Better Hands, Parcon, Comfort, Cadet, Wellness PT, Rezende, MT, Tandingan, Pesidas PT, and Pesidas participated in the operation and management of the Pyramid enterprise.

584.    Geykhman, Gulkarov, Sattarov, Rahmatov, Hablas, Hands of Hope, Ebeido, July PT, Elsanaa, MMA, Magid, Go Flex, Ballener, JEVA, Abrenica, MC, Cuadra, Better Hands, Parcon, Comfort, Cadet, Wellness PT, Rezende, MT, Tandingan, Pesidas PT, and Pesidas caused Pyramid to falsely certify that it was, in all respects, eligible to be reimbursed under New York's No-Fault Laws each time that a demand for payment (i.e., invoice, NF-3 bill, or CMS-1500 form) was mailed to Allstate.

585.    Geykhman, Gulkarov, Sattarov, and Rahmatov's participation in the management and control of Pyramid rendered Pyramid completely ineligible for No-Fault reimbursement under New York law.

586.    Geykhman, Gulkarov, Sattarov, Rahmatov, Hablas, Hands of Hope, Ebeido, July PT, Elsanaa, MMA, Magid, Go Flex, Ballener, JEVA, Abrenica, MC, Cuadra, Better Hands,

Parcon, Comfort, Cadet, Wellness PT, Rezende, MT, Tandingan, Pesidas PT, and Pesidas caused Pyramid to make a misrepresentation each and every time that a demand for payment (i.e., invoice, NF-3 bill, or CMS-1500 form) was mailed to Allstate because Pyramid was owned and controlled by unlicensed persons, which is against New York law.  The employment status of the independent contractor technicians was also misrepresented in Pyramid's NF-3 bills.

587.    Geykhman, Gulkarov, Sattarov, Rahmatov, Hablas, Hands of Hope, Ebeido, July PT, Elsanaa, MMA, Magid, Go Flex, Ballener, JEVA, Abrenica, MC, Cuadra, Better Hands, Parcon, Comfort, Cadet, Wellness PT, Rezende, MT, Tandingan, Pesidas PT, and Pesidas committed mail fraud because they used the U.S. Mail to submit false and fraudulent No-Fault claims to Allstate through Pyramid.

588.    Geykhman, Gulkarov, Sattarov, Rahmatov, Hablas, Hands of Hope, Ebeido, July PT, Elsanaa, MMA, Magid, Go Flex, Ballener, JEVA, Abrenica, MC, Cuadra, Better Hands, Parcon, Comfort, Cadet, Wellness PT, Rezende, MT, Tandingan, Pesidas PT, and Pesidas knew that Pyramid's employees and agents would use the U.S. Mail to submit No-Fault claims to Allstate.  Geykhman, Gulkarov, Sattarov, Rahmatov, Hablas, Hands of Hope, Ebeido, July PT, Elsanaa, MMA, Magid, Go Flex, Ballener, JEVA, Abrenica, MC, Cuadra, Better Hands, Parcon, Comfort, Cadet, Wellness PT, Rezende, MT, Tandingan, Pesidas PT, and Pesidas also knew that claimants, attorneys, and Allstate would use the U.S. Mail in the course of processing No-Fault claims submitted by Pyramid.

589.    Allstate estimates that the unlawful operation of the Pyramid enterprise generated hundreds of mailings.  A table highlighting selected examples of mailings made in furtherance of this scheme is annexed at Exhibit 25 and incorporated by reference as if set forth in its entirety.

F.   **COMFORT ENTERPRISE**

590.   Geykhman, Gulkarov, Sattarov, Rahmatov, Cadet, MT, Tandingan, MMA, Magid, July PT, Elsanaa, Hands of Hope, Ebeido, Pesidas PT, Pesidas, Atlas, Awad, MC, Cuadra, Pyramid, Hablas, Better Hands, Parcon, Go Flex, Ballener, JEVA, and Abrenica participated in the operation and management of the Comfort enterprise.

591.   Geykhman, Gulkarov, Sattarov, Rahmatov, Cadet, MT, Tandingan, MMA, Magid, July PT, Elsanaa, Hands of Hope, Ebeido, Pesidas PT, Pesidas, Atlas, Awad, MC, Cuadra, Pyramid, Hablas, Better Hands, Parcon, Go Flex, Ballener, JEVA, and Abrenica caused Comfort to falsely certify that it was, in all respects, eligible to be reimbursed under New York's No-Fault Laws each time that a demand for payment (i.e., invoice, NF-3 bill, or CMS-1500 form) was mailed to Allstate.

592.   Geykhman, Gulkarov, Sattarov, and Rahmatov's participation in the management and control of Comfort rendered Comfort completely ineligible for No-Fault reimbursement under New York law.

593.   Geykhman, Gulkarov, Sattarov, Rahmatov, Cadet, MT, Tandingan, MMA, Magid, July PT, Elsanaa, Hands of Hope, Ebeido, Pesidas PT, Pesidas, Atlas, Awad, MC, Cuadra, Pyramid, Hablas, Better Hands, Parcon, Go Flex, Ballener, JEVA, and Abrenica caused Comfort to make a misrepresentation each and every time that a demand for payment (i.e., invoice, NF-3 bill, or CMS-1500 form) was mailed to Allstate because Comfort was owned and controlled by unlicensed persons, which is against New York law.  The employment status of the independent contractor technicians was also misrepresented in Comfort's NF-3 bills.

594.   Geykhman, Gulkarov, Sattarov, Rahmatov, Cadet, MT, Tandingan, MMA, Magid, July PT, Elsanaa, Hands of Hope, Ebeido, Pesidas PT, Pesidas, Atlas, Awad, MC, Cuadra,

Pyramid, Hablas, Better Hands, Parcon, Go Flex, Ballener, JEVA, and Abrenica committed mail fraud because they used the U.S. Mail to submit false and fraudulent No-Fault claims to Allstate through Comfort.

595.    Geykhman, Gulkarov, Sattarov, Rahmatov, Cadet, MT, Tandingan, MMA, Magid, July PT, Elsanaa, Hands of Hope, Ebeido, Pesidas PT, Pesidas, Atlas, Awad, MC, Cuadra, Pyramid, Hablas, Better Hands, Parcon, Go Flex, Ballener, JEVA, and Abrenica knew that Comfort's employees and agents would use the U.S. Mail to submit No-Fault claims to Allstate. Geykhman, Gulkarov, Sattarov, Rahmatov, Cadet, MT, Tandingan, MMA, Magid, July PT, Elsanaa, Hands of Hope, Ebeido, Pesidas PT, Pesidas, Atlas, Awad, MC, Cuadra, Pyramid, Hablas, Better Hands, Parcon, Go Flex, Ballener, JEVA, and Abrenica also knew that claimants, attorneys, and Allstate would use the U.S. Mail in the course of processing No-Fault claims submitted by Comfort.

596.    Allstate estimates that the unlawful operation of the Comfort enterprise generated hundreds of mailings.  A table highlighting selected examples of mailings made in furtherance of this scheme is annexed at Exhibit 26 and incorporated by reference as if set forth in its entirety.

### G.    MT ENTERPRISE

597.    Geykhman, Gulkarov, Sattarov, Rahmatov, Tandingan, Comfort, Cadet, Wellness PT, Rezende, Pesidas PT, Pesidas, JA, JEVA, Abrenica, MMA, Magid, July PT, Elsanaa, MC, Cuadra, Life Care, Emara, Atlas, Awad, Go Flex, Ballener, Hands of Hope, Ebeido, Pyramid, Hablas, Better Hands, and Parcon participated in the operation and management of the MT enterprise.

598.    Geykhman, Gulkarov, Sattarov, Rahmatov, Tandingan, Comfort, Cadet, Wellness PT, Rezende, Pesidas PT, Pesidas, JA, JEVA, Abrenica, MMA, Magid, July PT, Elsanaa, MC,

Cuadra, Life Care, Emara, Atlas, Awad, Go Flex, Ballener, Hands of Hope, Ebeido, Pyramid, Hablas, Better Hands, and Parcon caused MT to falsely certify that it was, in all respects, eligible to be reimbursed under New York's No-Fault Laws each time that a demand for payment (i.e., invoice, NF-3 bill, or CMS-1500 form) was mailed to Allstate.

599.    Geykhman, Gulkarov, Sattarov, and Rahmatov's participation in the management and control of MT rendered MT completely ineligible for No-Fault reimbursement under New York law.

600.    Geykhman, Gulkarov, Sattarov, Rahmatov, Tandingan, Comfort, Cadet, Wellness PT, Rezende, Pesidas PT, Pesidas, JA, JEVA, Abrenica, MMA, Magid, July PT, Elsanaa, MC, Cuadra, Life Care, Emara, Atlas, Awad, Go Flex, Ballener, Hands of Hope, Ebeido, Pyramid, Hablas, Better Hands, and Parcon caused MT to make a misrepresentation each and every time that a demand for payment (i.e., invoice, NF-3 bill, or CMS-1500 form) was mailed to Allstate because MT was owned and controlled by unlicensed persons, which is against New York law. The employment status of the independent contractor technicians was also misrepresented in MT's NF-3 bills.

601.    Geykhman, Gulkarov, Sattarov, Rahmatov, Tandingan, Comfort, Cadet, Wellness PT, Rezende, Pesidas PT, Pesidas, JA, JEVA, Abrenica, MMA, Magid, July PT, Elsanaa, MC, Cuadra, Life Care, Emara, Atlas, Awad, Go Flex, Ballener, Hands of Hope, Ebeido, Pyramid, Hablas, Better Hands, and Parcon committed mail fraud because they used the U.S. Mail to submit false and fraudulent No-Fault claims to Allstate through MT.

602.    Geykhman, Gulkarov, Sattarov, Rahmatov, Tandingan, Comfort, Cadet, Wellness PT, Rezende, Pesidas PT, Pesidas, JA, JEVA, Abrenica, MMA, Magid, July PT, Elsanaa, MC, Cuadra, Life Care, Emara, Atlas, Awad, Go Flex, Ballener, Hands of Hope, Ebeido, Pyramid,

Hablas, Better Hands, and Parcon knew that MT's employees and agents would use the U.S. Mail to submit No-Fault claims to Allstate. Geykhman, Gulkarov, Sattarov, Rahmatov, Tandingan, Comfort, Cadet, Wellness PT, Rezende, Pesidas PT, Pesidas, JA, JEVA, Abrenica, MMA, Magid, July PT, Elsanaa, MC, Cuadra, Life Care, Emara, Atlas, Awad, Go Flex, Ballener, Hands of Hope, Ebeido, Pyramid, Hablas, Better Hands, and Parcon also knew that claimants, attorneys, and Allstate would use the U.S. Mail in the course of processing No-Fault claims submitted by MT.

603.    Allstate estimates that the unlawful operation of the MT enterprise generated hundreds of mailings. A table highlighting selected examples of mailings made in furtherance of this scheme is annexed at Exhibit 27 and incorporated by reference as if set forth in its entirety.

## H.    LIFE CARE ENTERPRISE

604.    Geykhman, Sattarov, Rahmatov, Emara, Finesse Care, Pesidas PT, Pesidas, Wellness PT, Rezende, JA, Abrenica, MT, Tandingan, MC, and Cuadra participated in the operation and management of the Life Care enterprise.

605.    Geykhman, Sattarov, Rahmatov, Emara, Finesse Care, Pesidas PT, Pesidas, Wellness PT, Rezende, JA, Abrenica, MT, Tandingan, MC, and Cuadra caused Life Care to falsely certify that it was, in all respects, eligible to be reimbursed under New York's No-Fault Laws each time that a demand for payment (i.e., invoice, NF-3 bill, or CMS-1500 form) was mailed to Allstate.

606.    Geykhman, Sattarov, and Rahmatov's participation in the management and control of Life Care rendered Life Care completely ineligible for No-Fault reimbursement under New York law.

607.    Geykhman, Sattarov, Rahmatov, Emara, Finesse Care, Pesidas PT, Pesidas, Wellness PT, Rezende, JA, Abrenica, MT, Tandingan, MC, and Cuadra caused Life Care to make

a misrepresentation each and every time that a demand for payment (i.e., invoice, NF-3 bill, or CMS-1500 form) was mailed to Allstate because Life Care was owned and controlled by unlicensed persons, which is against New York law.  The employment status of the independent contractor technicians was also misrepresented in Life Care's NF-3 bills.

608.    Geykhman, Sattarov, Rahmatov, Emara, Finesse Care, Pesidas PT, Pesidas, Wellness PT, Rezende, JA, Abrenica, MT, Tandingan, MC, and Cuadra committed mail fraud because they used the U.S. Mail to submit false and fraudulent No-Fault claims to Allstate through Life Care.

609.    Geykhman, Sattarov, Rahmatov, Emara, Finesse Care, Pesidas PT, Pesidas, Wellness PT, Rezende, JA, Abrenica, MT, Tandingan, MC, and Cuadra knew that Life Care's employees and agents would use the U.S. Mail to submit No-Fault claims to Allstate.  Geykhman, Gulkarov, Sattarov, Rahmatov, Emara, Finesse Care, Pesidas PT, Pesidas, Wellness PT, Rezende, JA, Abrenica, MT, Tandingan, MC, and Cuadra also knew that claimants, attorneys, and Allstate would use the U.S. Mail in the course of processing No-Fault claims submitted by Life Care.

610.    Allstate estimates that the unlawful operation of the Life Care enterprise generated hundreds of mailings.  A table highlighting selected examples of mailings made in furtherance of this scheme is annexed at Exhibit 28 and incorporated by reference as if set forth in its entirety.

## I.    JA ENTERPRISE

611.    Geykhman, Gulkarov, Sattarov, Rahmatov, Abrenica, JEVA, Wellness PT, Rezende, Comfort, Cadet, MT, Tandingan, Pesidas PT, Pesidas, Life Care, Emara, MC, Cuadra, Better Hands, Parcon, Go Flex, Axis, Awad, Hands of Hope, and Ebeido participated in the operation and management of the JA enterprise.

612. Geykhman, Gulkarov, Sattarov, Rahmatov, Abrenica, JEVA, Wellness PT, Rezende, Comfort, Cadet, MT, Tandingan, Pesidas PT, Pesidas, Life Care, Emara, MC, Cuadra, Better Hands, Parcon, Go Flex, Axis, Awad, Hands of Hope, and Ebeido caused JA to falsely certify that it was, in all respects, eligible to be reimbursed under New York's No-Fault Laws each time that a demand for payment (i.e., invoice, NF-3 bill, or CMS-1500 form) was mailed to Allstate.

613. Geykhman, Gulkarov, Sattarov, and Rahmatov's participation in the management and control of JA rendered JA completely ineligible for No-Fault reimbursement under New York law.

614. Geykhman, Gulkarov, Sattarov, Rahmatov, Abrenica, JEVA, Wellness PT, Rezende, Comfort, Cadet, MT, Tandingan, Pesidas PT, Pesidas, Life Care, Emara, MC, Cuadra, Better Hands, Parcon, Go Flex, Axis, Awad, Hands of Hope, and Ebeido caused JA to make a misrepresentation each and every time that a demand for payment (i.e., invoice, NF-3 bill, or CMS-1500 form) was mailed to Allstate because JA was owned and controlled by unlicensed persons, which is against New York law. The employment status of the independent contractor technicians was also misrepresented in JA's NF-3 bills.

615. Geykhman, Gulkarov, Sattarov, Rahmatov, Abrenica, JEVA, Wellness PT, Rezende, Comfort, Cadet, MT, Tandingan, Pesidas PT, Pesidas, Life Care, Emara, MC, Cuadra, Better Hands, Parcon, Go Flex, Axis, Awad, Hands of Hope, and Ebeido committed mail fraud because they used the U.S. Mail to submit false and fraudulent No-Fault claims to Allstate through JA.

616. Geykhman, Gulkarov, Sattarov, Rahmatov, Abrenica, JEVA, Wellness PT, Rezende, Comfort, Cadet, MT, Tandingan, Pesidas PT, Pesidas, Life Care, Emara, MC, Cuadra,

113

Better Hands, Parcon, Go Flex, Axis, Awad, Hands of Hope, and Ebeido knew that JA's employees and agents would use the U.S. Mail to submit No-Fault claims to Allstate. Geykhman, Gulkarov, Sattarov, Rahmatov, Abrenica, JEVA, Wellness PT, Rezende, Comfort, Cadet, MT, Tandingan, Pesidas PT, Pesidas, Life Care, Emara, MC, Cuadra, Better Hands, Parcon, Go Flex, Axis, Awad, Hands of Hope, and Ebeido also knew that claimants, attorneys, and Allstate would use the U.S. Mail in the course of processing No-Fault claims submitted by JA.

617.    Allstate estimates that the unlawful operation of the JA enterprise generated hundreds of mailings. A table highlighting selected examples of mailings made in furtherance of this scheme is annexed at Exhibit 29 and incorporated by reference as if set forth in its entirety.

## J.    PESIDAS PT ENTERPRISE

618.    Geykhman, Gulkarov, Sattarov, Rahmatov, Pesidas, Life Care, Emara, Comfort, Cadet, MT, Tandingan, Wellness PT, Rezende, JA, Awad, MC, Cuadra, Better Hands, Parcon, Go Flex, Ballener, JEVA, Abrenica, Finesse Care, July PT, Elsanaa, Hands of Hope, Ebeido, MMA, Magid, Pyramid, Hablas, MC, and Cuadra participated in the operation and management of the Pesidas PT enterprise.

619.    Geykhman, Gulkarov, Sattarov, Rahmatov, Pesidas, Life Care, Emara, Comfort, Cadet, MT, Tandingan, Wellness PT, Rezende, JA, Awad, MC, Cuadra, Better Hands, Parcon, Go Flex, Ballener, JEVA, Abrenica, Finesse Care, July PT, Elsanaa, Hands of Hope, Ebeido, MMA, Magid, Pyramid, Hablas, MC, and Cuadra caused Pesidas PT to falsely certify that it was, in all respects, eligible to be reimbursed under New York's No-Fault Laws each time that a demand for payment (i.e., invoice, NF-3 bill, or CMS-1500 form) was mailed to Allstate.

620.    Geykhman, Gulkarov, Sattarov, and Rahmatov's participation in the management and control of Pesidas PT rendered Pesidas PT completely ineligible for No-Fault reimbursement under New York law.

621.    Geykhman, Gulkarov, Sattarov, Rahmatov, Pesidas, Life Care, Emara, Comfort, Cadet, MT, Tandingan, Wellness PT, Rezende, JA, Awad, MC, Cuadra, Better Hands, Parcon, Go Flex, Ballener, JEVA, Abrenica, Finesse Care, July PT, Elsanaa, Hands of Hope, Ebeido, MMA, Magid, Pyramid, Hablas, MC, and Cuadra caused Pesidas PT to make a misrepresentation each and every time that a demand for payment (i.e., invoice, NF-3 bill, or CMS-1500 form) was mailed to Allstate because Pesidas PT was owned and controlled by unlicensed persons, which is against New York law.   The employment status of the independent contractor technicians was also misrepresented in Pesidas PT's NF-3 bills.

622.    Geykhman, Gulkarov, Sattarov, Rahmatov, Pesidas, Life Care, Emara, Comfort, Cadet, MT, Tandingan, Wellness PT, Rezende, JA, Awad, MC, Cuadra, Better Hands, Parcon, Go Flex, Ballener, JEVA, Abrenica, Finesse Care, July PT, Elsanaa, Hands of Hope, Ebeido, MMA, Magid, Pyramid, Hablas, MC, and Cuadra committed mail fraud because they used the U.S. Mail to submit false and fraudulent No-Fault claims to Allstate through Pesidas PT.

623.    Geykhman, Gulkarov, Sattarov, Rahmatov, Pesidas, Life Care, Emara, Comfort, Cadet, MT, Tandingan, Wellness PT, Rezende, JA, Awad, MC, Cuadra, Better Hands, Parcon, Go Flex, Ballener, JEVA, Abrenica, Finesse Care, July PT, Elsanaa, Hands of Hope, Ebeido, MMA, Magid, Pyramid, Hablas, MC, and Cuadra knew that Pesidas PT's employees and agents would use the U.S. Mail to submit No-Fault claims to Allstate.   Geykhman, Gulkarov, Sattarov, Rahmatov, Pesidas, Life Care, Emara, Comfort, Cadet, MT, Tandingan, Wellness PT, Rezende, JA, Awad, MC, Cuadra, Better Hands, Parcon, Go Flex, Ballener, JEVA, Abrenica, Finesse Care,

July PT, Elsanaa, Hands of Hope, Ebeido, MMA, Magid, Pyramid, Hablas, MC, and Cuadra also knew that claimants, attorneys, and Allstate would use the U.S. Mail in the course of processing No-Fault claims submitted by Pesidas PT.

624.     Allstate estimates that the unlawful operation of the Pesidas PT enterprise generated hundreds of mailings.  A table highlighting selected examples of mailings made in furtherance of this scheme is annexed at Exhibit 30 and incorporated by reference as if set forth in its entirety.

### K.    WELLNESS PT ENTERPRISE

625.     Geykhman, Gulkarov, Sattarov, Rahmatov, Rezende, JA, JEVA, Abrenica, Comfort, Cadet, MT, Tandingan, Pesidas PT, Pesidas, Life Care, Emara, Atlas, Awad, July PT, Elsanaa, Hands of Hope, Ebeido, MMA, Magid, MC, Cuadra, Go Flex, Ballener, Pyramid, Hablas, Better Hands, and Parcon participated in the operation and management of the Wellness PT enterprise.

626.     Geykhman, Gulkarov, Sattarov, Rahmatov, Rezende, JA, JEVA, Abrenica, Comfort, Cadet, MT, Tandingan, Pesidas PT, Pesidas, Life Care, Emara, Atlas, Awad, July PT, Elsanaa, Hands of Hope, Ebeido, MMA, Magid, MC, Cuadra, Go Flex, Ballener, Pyramid, Hablas, Better Hands, and Parcon caused Wellness PT to falsely certify that it was, in all respects, eligible to be reimbursed under New York's No-Fault Laws each time that a demand for payment (i.e., invoice, NF-3 bill, or CMS-1500 form) was mailed to Allstate.

627.     Geykhman, Gulkarov, Sattarov, and Rahmatov's participation in the management and control of Wellness PT rendered Wellness PT completely ineligible for No-Fault reimbursement under New York law.

628.     Geykhman, Gulkarov, Sattarov, Rahmatov, Rezende, JA, JEVA, Abrenica, Comfort, Cadet, MT, Tandingan, Pesidas PT, Pesidas, Life Care, Emara, Atlas, Awad, July PT,

Elsanaa, Hands of Hope, Ebeido, MMA, Magid, MC, Cuadra, Go Flex, Ballener, Pyramid, Hablas, Better Hands, and Parcon caused Wellness PT to make a misrepresentation each and every time that a demand for payment (i.e., invoice, NF-3 bill, or CMS-1500 form) was mailed to Allstate because Wellness PT was owned and controlled by unlicensed persons, which is against New York law. The employment status of the independent contractor technicians was also misrepresented in Wellness PT's NF-3 bills.

629. Geykhman, Gulkarov, Sattarov, Rahmatov, Rezende, JA, JEVA, Abrenica, Comfort, Cadet, MT, Tandingan, Pesidas PT, Pesidas, Life Care, Emara, Atlas, Awad, July PT, Elsanaa, Hands of Hope, Ebeido, MMA, Magid, MC, Cuadra, Go Flex, Ballener, Pyramid, Hablas, Better Hands, and Parcon committed mail fraud because they used the U.S. Mail to submit false and fraudulent No-Fault claims to Allstate through Wellness PT.

630. Geykhman, Gulkarov, Sattarov, Rahmatov, Rezende, JA, JEVA, Abrenica, Comfort, Cadet, MT, Tandingan, Pesidas PT, Pesidas, Life Care, Emara, Atlas, Awad, July PT, Elsanaa, Hands of Hope, Ebeido, MMA, Magid, MC, Cuadra, Go Flex, Ballener, Pyramid, Hablas, Better Hands, and Parcon knew that Wellness PT's employees and agents would use the U.S. Mail to submit No-Fault claims to Allstate. Geykhman, Gulkarov, Sattarov, Rahmatov, Rezende, JA, JEVA, Abrenica, Comfort, Cadet, MT, Tandingan, Pesidas PT, Pesidas, Life Care, Emara, Atlas, Awad, July PT, Elsanaa, Hands of Hope, Ebeido, MMA, Magid, MC, Cuadra, Go Flex, Ballener, Pyramid, Hablas, Better Hands, and Parcon also knew that claimants, attorneys, and Allstate would use the U.S. Mail in the course of processing No-Fault claims submitted by Wellness PT.

631. Allstate estimates that the unlawful operation of the Wellness PT enterprise generated hundreds of mailings. A table highlighting selected examples of mailings made in

furtherance of this scheme is annexed at Exhibit 31 and incorporated by reference as if set forth in its entirety.

**L. HAND BY HAND ENTERPRISE**

632. Geykhman, Sattarov, Rahmatov, Elsanaa, and July PT participated in the operation and management of the Hand by Hand enterprise.

633. Geykhman, Sattarov, Rahmatov, Elsanaa, and July PT caused Hand by Hand to falsely certify that it was, in all respects, eligible to be reimbursed under New York's No-Fault Laws each time that a demand for payment (i.e., invoice, NF-3 bill, or CMS-1500 form) was mailed to Allstate.

634. Geykhman, Sattarov, and Rahmatov's participation in the management and control of Hand by Hand rendered Hand by Hand completely ineligible for No-Fault reimbursement under New York law.

635. Geykhman, Sattarov, Rahmatov, Elsanaa, and July PT caused Hand by Hand to make a misrepresentation each and every time that a demand for payment (i.e., invoice, NF-3 bill, or CMS-1500 form) was mailed to Allstate because Hand by Hand was owned and controlled by unlicensed persons, which is against New York law. The employment status of the independent contractor technicians was also misrepresented in Hand by Hand's NF-3 bills.

636. Geykhman, Sattarov, Rahmatov, Elsanaa, and July PT committed mail fraud because they used the U.S. Mail to submit false and fraudulent No-Fault claims to Allstate through Hand by Hand.

637. Geykhman, Sattarov, Rahmatov, Elsanaa, and July PT knew that Hand by Hand's employees and agents would use the U.S. Mail to submit No-Fault claims to Allstate. Geykhman, Gulkarov, Sattarov, Rahmatov, Elsanaa, and July PT also knew that claimants, attorneys, and

Allstate would use the U.S. Mail in the course of processing No-Fault claims submitted by Hand by Hand.

638.   Allstate estimates that the unlawful operation of the Hand by Hand enterprise generated hundreds of mailings.  A table highlighting selected examples of mailings made in furtherance of this scheme is annexed at Exhibit 32 and incorporated by reference as if set forth in its entirety.

**M.   MC ENTERPRISE**

639.   Geykhman, Gulkarov, Sattarov, Rahmatov, Cuadra, Pesidas PT, Pesidas, JA, JEVA, Abrenica, Wellness PT, Rezende, Axis, Atlas, Awad, Better Hands, Parcon, Go Flex, Ballener, MT, Tandingan, Comfort, Cadet, Finesse Care, Life Care, Emara, July PT, Elsanaa, Hands of Hope, Ebeido, MMA, Magid, Pyramid, and Hablas participated in the operation and management of the MC enterprise.

640.   Geykhman, Gulkarov, Sattarov, Rahmatov, Cuadra, Pesidas PT, Pesidas, JA, JEVA, Abrenica, Wellness PT, Rezende, Axis, Atlas, Awad, Better Hands, Parcon, Go Flex, Ballener, MT, Tandingan, Comfort, Cadet, Finesse Care, Life Care, Emara, July PT, Elsanaa, Hands of Hope, Ebeido, MMA, Magid, Pyramid, and Hablas caused MC to falsely certify that it was, in all respects, eligible to be reimbursed under New York's No-Fault Laws each time that a demand for payment (i.e., invoice, NF-3 bill, or CMS-1500 form) was mailed to Allstate.

641.   Geykhman, Gulkarov, Sattarov, and Rahmatov's participation in the management and control of MC rendered MC completely ineligible for No-Fault reimbursement under New York law.

642.   Geykhman, Gulkarov, Sattarov, Rahmatov, Cuadra, Pesidas PT, Pesidas, JA, JEVA, Abrenica, Wellness PT, Rezende, Axis, Atlas, Awad, Better Hands, Parcon, Go Flex,

Ballener, MT, Tandingan, Comfort, Cadet, Finesse Care, Life Care, Emara, July PT, Elsanaa, Hands of Hope, Ebeido, MMA, Magid, Pyramid, and Hablas caused MC to make a misrepresentation each and every time that a demand for payment (i.e., invoice, NF-3 bill, or CMS-1500 form) was mailed to Allstate because MC was owned and controlled by unlicensed persons, which is against New York law. The employment status of the independent contractor technicians was also misrepresented in MC's NF-3 bills.

643. Geykhman, Gulkarov, Sattarov, Rahmatov, Cuadra, Pesidas PT, Pesidas, JA, JEVA, Abrenica, Wellness PT, Rezende, Axis, Atlas, Awad, Better Hands, Parcon, Go Flex, Ballener, MT, Tandingan, Comfort, Cadet, Finesse Care, Life Care, Emara, July PT, Elsanaa, Hands of Hope, Ebeido, MMA, Magid, Pyramid, and Hablas committed mail fraud because they used the U.S. Mail to submit false and fraudulent No-Fault claims to Allstate through MC.

644. Geykhman, Gulkarov, Sattarov, Rahmatov, Cuadra, Pesidas PT, Pesidas, JA, JEVA, Abrenica, Wellness PT, Rezende, Axis, Atlas, Awad, Better Hands, Parcon, Go Flex, Ballener, MT, Tandingan, Comfort, Cadet, Finesse Care, Life Care, Emara, July PT, Elsanaa, Hands of Hope, Ebeido, MMA, Magid, Pyramid, and Hablas knew that MC's employees and agents would use the U.S. Mail to submit No-Fault claims to Allstate. Geykhman, Gulkarov, Sattarov, Rahmatov, Cuadra, Pesidas PT, Pesidas, JA, JEVA, Abrenica, Wellness PT, Rezende, Axis, Atlas, Awad, Better Hands, Parcon, Go Flex, Ballener, MT, Tandingan, Comfort, Cadet, Finesse Care, Life Care, Emara, July PT, Elsanaa, Hands of Hope, Ebeido, MMA, Magid, Pyramid, and Hablas also knew that claimants, attorneys, and Allstate would use the U.S. Mail in the course of processing No-Fault claims submitted by MC.

645.    Allstate estimates that the unlawful operation of the MC enterprise generated hundreds of mailings.  A table highlighting selected examples of mailings made in furtherance of this scheme is annexed at Exhibit 33 and incorporated by reference as if set forth in its entirety.

### N.    GO FLEX ENTERPRISE

646.    Geykhman, Gulkarov, Sattarov, Rahmatov, Ballener, Better Hands, Parcon, JEVA, JA, Abrenica, Pesidas PT, Pesidas, Axis, Atlas, Awad, MC, Cuadra, Wellness PT, Rezende, MT, Tandingan, July PT, Elsanaa, Hands of Hope, Ebeido, MMA, Magid, Comfort, Cadet, Pyramid, and Hablas participated in the operation and management of the Go Flex enterprise.

647.    Geykhman, Gulkarov, Sattarov, Rahmatov, Ballener, Better Hands, Parcon, JEVA, JA, Abrenica, Pesidas PT, Pesidas, Axis, Atlas, Awad, MC, Cuadra, Wellness PT, Rezende, MT, Tandingan, July PT, Elsanaa, Hands of Hope, Ebeido, MMA, Magid, Comfort, Cadet, Pyramid, and Hablas caused Go Flex to falsely certify that it was, in all respects, eligible to be reimbursed under New York's No-Fault Laws each time that a demand for payment (i.e., invoice, NF-3 bill, or CMS-1500 form) was mailed to Allstate.

648.    Geykhman, Gulkarov, Sattarov, and Rahmatov's participation in the management and control of Go Flex rendered Go Flex completely ineligible for No-Fault reimbursement under New York law.

649.    Geykhman, Gulkarov, Sattarov, Rahmatov, Ballener, Better Hands, Parcon, JEVA, JA, Abrenica, Pesidas PT, Pesidas, Axis, Atlas, Awad, MC, Cuadra, Wellness PT, Rezende, MT, Tandingan, July PT, Elsanaa, Hands of Hope, Ebeido, MMA, Magid, Comfort, Cadet, Pyramid, and Hablas caused Go Flex to make a misrepresentation each and every time that a demand for payment (i.e., invoice, NF-3 bill, or CMS-1500 form) was mailed to Allstate because Go Flex was

owned and controlled by unlicensed persons, which is against New York law.  The employment status of the independent contractor technicians was also misrepresented in Go Flex's NF-3 bills.

650.    Geykhman, Gulkarov, Sattarov, Rahmatov, Ballener, Better Hands, Parcon, JEVA, JA, Abrenica, Pesidas PT, Pesidas, Axis, Atlas, Awad, MC, Cuadra, Wellness PT, Rezende, MT, Tandingan, July PT, Elsanaa, Hands of Hope, Ebeido, MMA, Magid, Comfort, Cadet, Pyramid, and Hablas committed mail fraud because they used the U.S. Mail to submit false and fraudulent No-Fault claims to Allstate through Go Flex.

651.    Geykhman, Gulkarov, Sattarov, Rahmatov, Ballener, Better Hands, Parcon, JEVA, JA, Abrenica, Pesidas PT, Pesidas, Axis, Atlas, Awad, MC, Cuadra, Wellness PT, Rezende, MT, Tandingan, July PT, Elsanaa, Hands of Hope, Ebeido, MMA, Magid, Comfort, Cadet, Pyramid, and Hablas knew that Go Flex's employees and agents would use the U.S. Mail to submit No-Fault claims to Allstate.  Geykhman, Gulkarov, Sattarov, Rahmatov, Ballener, Better Hands, Parcon, JEVA, JA, Abrenica, Pesidas PT, Pesidas, Axis, Atlas, Awad, MC, Cuadra, Wellness PT, Rezende, MT, Tandingan, July PT, Elsanaa, Hands of Hope, Ebeido, MMA, Magid, Comfort, Cadet, Pyramid, and Hablas also knew that claimants, attorneys, and Allstate would use the U.S. Mail in the course of processing No-Fault claims submitted by Go Flex.

652.    Allstate estimates that the unlawful operation of the Go Flex enterprise generated hundreds of mailings.  A table highlighting selected examples of mailings made in furtherance of this scheme is annexed at Exhibit 34 and incorporated by reference as if set forth in its entirety.

### O.    JEVA ENTERPRISE

653.    Geykhman, Gulkarov, Sattarov, Rahmatov, Abrenica, JA, Better Hands, Parcon, Go Flex, Ballener, Pesidas PT, Pesidas, Axis, Atlas, Awad, MC, Cuadra, MT, Tandingan,

Wellness PT, Rezende, July PT, Elsanaa, Hands of Hope, Ebeido, MMA, Magid, Comfort, Cadet, Pyramid, and Hablas participated in the operation and management of the JEVA enterprise.

654.     Geykhman, Gulkarov, Sattarov, Rahmatov, Abrenica, JA, Better Hands, Parcon, Go Flex, Ballener, Pesidas PT, Pesidas, Axis, Atlas, Awad, MC, Cuadra, MT, Tandingan, Wellness PT, Rezende, July PT, Elsanaa, Hands of Hope, Ebeido, MMA, Magid, Comfort, Cadet, Pyramid, and Hablas caused JEVA to falsely certify that it was, in all respects, eligible to be reimbursed under New York's No-Fault Laws each time that a demand for payment (i.e., invoice, NF-3 bill, or CMS-1500 form) was mailed to Allstate.

655.     Geykhman, Gulkarov, Sattarov, and Rahmatov's participation in the management and control of JEVA rendered JEVA completely ineligible for No-Fault reimbursement under New York law.

656.     Geykhman, Gulkarov, Sattarov, Rahmatov, Abrenica, JA, Better Hands, Parcon, Go Flex, Ballener, Pesidas PT, Pesidas, Axis, Atlas, Awad, MC, Cuadra, MT, Tandingan, Wellness PT, Rezende, July PT, Elsanaa, Hands of Hope, Ebeido, MMA, Magid, Comfort, Cadet, Pyramid, and Hablas caused JEVA to make a misrepresentation each and every time that a demand for payment (i.e., invoice, NF-3 bill, or CMS-1500 form) was mailed to Allstate because JEVA was owned and controlled by unlicensed persons, which is against New York law.   The employment status of the independent contractor technicians was also misrepresented in JEVA's NF-3 bills.

657.     Geykhman, Gulkarov, Sattarov, Rahmatov, Abrenica, JA, Better Hands, Parcon, Go Flex, Ballener, Pesidas PT, Pesidas, Axis, Atlas, Awad, MC, Cuadra, MT, Tandingan, Wellness PT, Rezende, July PT, Elsanaa, Hands of Hope, Ebeido, MMA, Magid, Comfort, Cadet,

Pyramid, and Hablas committed mail fraud because they used the U.S. Mail to submit false and fraudulent No-Fault claims to Allstate through JEVA.

658.   Geykhman, Gulkarov, Sattarov, Rahmatov, Abrenica, JA, Better Hands, Parcon, Go Flex, Ballener, Pesidas PT, Pesidas, Axis, Atlas, Awad, MC, Cuadra, MT, Tandingan, Wellness PT, Rezende, July PT, Elsanaa, Hands of Hope, Ebeido, MMA, Magid, Comfort, Cadet, Pyramid, and Hablas knew that JEVA's employees and agents would use the U.S. Mail to submit No-Fault claims to Allstate.   Geykhman, Gulkarov, Sattarov, Rahmatov, Abrenica, JA, Better Hands, Parcon, Go Flex, Ballener, Pesidas PT, Pesidas, Axis, Atlas, Awad, MC, Cuadra, MT, Tandingan, Wellness PT, Rezende, July PT, Elsanaa, Hands of Hope, Ebeido, MMA, Magid, Comfort, Cadet, Pyramid, and Hablas also knew that claimants, attorneys, and Allstate would use the U.S. Mail in the course of processing No-Fault claims submitted by JEVA.

659.   Allstate estimates that the unlawful operation of the JEVA enterprise generated hundreds of mailings.  A table highlighting selected examples of mailings made in furtherance of this scheme is annexed at Exhibit 35 and incorporated by reference as if set forth in its entirety.

### P.   FINESSE CARE ENTERPRISE

660.   Geykhman, Sattarov, Rahmatov, Emara, Life Care, MC, Cuadra, Pesidas PT, Pesidas, Better Hands, and Parcon participated in the operation and management of the Finesse Care enterprise.

661.   Geykhman, Sattarov, Rahmatov, Emara, Life Care, MC, Cuadra, Pesidas PT, Pesidas, Better Hands, and Parcon caused Finesse Care to falsely certify that it was, in all respects, eligible to be reimbursed under New York's No-Fault Laws each time that a demand for payment (i.e., invoice, NF-3 bill, or CMS-1500 form) was mailed to Allstate.

124

662.    Geykhman, Sattarov, and Rahmatov's participation in the management and control of Finesse Care rendered Finesse Care completely ineligible for No-Fault reimbursement under New York law.

663.    Geykhman, Sattarov, Rahmatov, Emara, Life Care, MC, Cuadra, Pesidas PT, Pesidas, Better Hands, and Parcon caused Finesse Care to make a misrepresentation each and every time that a demand for payment (i.e., invoice, NF-3 bill, or CMS-1500 form) was mailed to Allstate because Finesse Care was owned and controlled by unlicensed persons, which is against New York law.  The employment status of the independent contractor technicians was also misrepresented in Finesse Care's NF-3 bills.

664.    Geykhman, Sattarov, Rahmatov, Emara, Life Care, MC, Cuadra, Pesidas PT, Pesidas, Better Hands, and Parcon committed mail fraud because they used the U.S. Mail to submit false and fraudulent No-Fault claims to Allstate through Finesse Care.

665.    Geykhman, Sattarov, Rahmatov, Emara, Life Care, MC, Cuadra, Pesidas PT, Pesidas, Better Hands, and Parcon knew that Finesse Care's employees and agents would use the U.S. Mail to submit No-Fault claims to Allstate.  Geykhman, Sattarov, Rahmatov, Emara, Life Care, MC, Cuadra, Pesidas PT, Pesidas, Better Hands, and Parcon also knew that claimants, attorneys, and Allstate would use the U.S. Mail in the course of processing No-Fault claims submitted by Finesse Care.

666.    Allstate estimates that the unlawful operation of the Finesse Care enterprise generated hundreds of mailings.  A table highlighting selected examples of mailings made in furtherance of this scheme is annexed at Exhibit 36 and incorporated by reference as if set forth in its entirety.

**Q.**   **AXIS ENTERPRISE**

667.    Geykhman, Sattarov, Rahmatov, Awad, Atlas, Go Flex, Ballener, JEVA, JA, Abrenica, Better Hands, Parcon, Pesidas PT, Pesidas, MC, and Cuadra participated in the operation and management of the Axis enterprise.

668.    Geykhman, Sattarov, Rahmatov, Awad, Atlas, Go Flex, Ballener, JEVA, JA, Abrenica, Better Hands, Parcon, Pesidas PT, Pesidas, MC, and Cuadra caused Axis to falsely certify that it was, in all respects, eligible to be reimbursed under New York's No-Fault Laws each time that a demand for payment (i.e., invoice, NF-3 bill, or CMS-1500 form) was mailed to Allstate.

669.    Geykhman, Sattarov, and Rahmatov's participation in the management and control of Axis, rendered Axis completely ineligible for No-Fault reimbursement under New York law.

670.    Geykhman, Sattarov, Rahmatov, Awad, Atlas, Go Flex, Ballener, JEVA, JA, Abrenica, Better Hands, Parcon, Pesidas PT, Pesidas, MC, and Cuadra caused Axis to make a misrepresentation each and every time that a demand for payment (i.e., invoice, NF-3 bill, or CMS-1500 form) was mailed to Allstate because Axis was owned and controlled by unlicensed persons, which is against New York law.  The employment status of the independent contractor technicians was also misrepresented in Axis's NF-3 bills.

671.    Geykhman, Sattarov, Rahmatov, Awad, Atlas, Go Flex, Ballener, JEVA, JA, Abrenica, Better Hands, Parcon, Pesidas PT, Pesidas, MC, and Cuadra committed mail fraud because they used the U.S. Mail to submit false and fraudulent No-Fault claims to Allstate.

672.    Geykhman, Sattarov, Rahmatov, Awad, Atlas, Go Flex, Ballener, JEVA, JA, Abrenica, Better Hands, Parcon, Pesidas PT, Pesidas, MC, and Cuadra knew that Axis's employees and agents would use the U.S. Mail to submit No-Fault claims to Allstate.  Geykhman, Sattarov,

Rahmatov, Awad, Atlas, Go Flex, Ballener, JEVA, JA, Abrenica, Better Hands, Parcon, Pesidas PT, Pesidas, MC, and Cuadra also knew that claimants, attorneys, and Allstate would use the U.S. Mail in the course of processing No-Fault claims submitted by Axis.

673.   Allstate estimates that the unlawful operation of the Axis enterprise generated hundreds of mailings.  A table highlighting selected examples of mailings made in furtherance of this scheme is annexed at Exhibit 37 and incorporated by reference as if set forth in its entirety.

### R.   ATLAS ENTERPRISE

674.   Geykhman, Sattarov, Rahmatov, Awad, Axis, Wellness PT, Rezende, Comfort, Cadet, MMA, Magid, Go Flex, Ballener, JEVA, Abrenica, MT, Tandingan, MC, and Cuadra participated in the operation and management of the Atlas enterprise.

675.   Geykhman, Sattarov, Rahmatov, Awad, Axis, Wellness PT, Rezende, Comfort, Cadet, MMA, Magid, Go Flex, Ballener, JEVA, Abrenica, MT, Tandingan, MC, and Cuadra caused Atlas to falsely certify that it was, in all respects, eligible to be reimbursed under New York's No-Fault Laws each time that a demand for payment (i.e., invoice, NF-3 bill, or CMS-1500 form) was mailed to Allstate.

676.   Geykhman, Sattarov, and Rahmatov's participation in the management and control of Atlas rendered Atlas completely ineligible for No-Fault reimbursement under New York law.

677.   Geykhman, Sattarov, Rahmatov, Awad, Axis, Wellness PT, Rezende, Comfort, Cadet, MMA, Magid, Go Flex, Ballener, JEVA, Abrenica, MT, Tandingan, MC, and Cuadra caused Atlas to make a misrepresentation each and every time that a demand for payment (i.e., invoice, NF-3 bill, or CMS-1500 form) was mailed to Allstate because Atlas was owned and controlled by unlicensed persons, which is against New York law.  The employment status of the independent contractor technicians was also misrepresented in Atlas's NF-3 bills.

678.     Geykhman, Sattarov, Rahmatov, Awad, Axis, Wellness PT, Rezende, Comfort, Cadet, MMA, Magid, Go Flex, Ballener, JEVA, Abrenica, MT, Tandingan, MC, and Cuadra committed mail fraud because they used the U.S. Mail to submit false and fraudulent No-Fault claims to Allstate through Atlas.

679.     Geykhman, Sattarov, Rahmatov, Awad, Axis, Wellness PT, Rezende, Comfort, Cadet, MMA, Magid, Go Flex, Ballener, JEVA, Abrenica, MT, Tandingan, MC, and Cuadra knew that Atlas's employees and agents would use the U.S. Mail to submit No-Fault claims to Allstate. Geykhman, Sattarov, Rahmatov, Awad, Axis, Wellness PT, Rezende, Comfort, Cadet, MMA, Magid, Go Flex, Ballener, JEVA, Abrenica, MT, Tandingan, MC, and Cuadra also knew that claimants, attorneys, and Allstate would use the U.S. Mail in the course of processing No-Fault claims submitted by Atlas.

680.     Allstate estimates that the unlawful operation of the Atlas enterprise generated hundreds of mailings.  A table highlighting selected examples of mailings made in furtherance of this scheme is annexed at Exhibit 38 and incorporated by reference as if set forth in its entirety.

## VII.   SPECIFIC ALLEGATIONS OF FRAUDULENT CONCEALMENT AND MISREPRESENTATIONS MADE TO AND RELIED UPON BY ALLSTATE

### A.   BETTER HANDS ENTERPRISE

681.     Parcon is registered with the State of New York as Better Hands's sole officer, director, and shareholder.

682.     Geykhman and Gulkarov induced Parcon to cede control over the operation and management of Better Hands to Geykhman and Gulkarov during the relevant period.

683.     Geykhman and Gulkarov worked with Sattarov and Rahmatov to launder the proceeds of this scheme, which were comprised of professional fees paid to Better Hands on No-Fault claims.

684.     The documents created and filed with the State of New York related to Better Hands deliberately omitted any reference to Geykhman, Gulkarov, Sattarov, and Rahmatov's involvement with Better Hands.

685.     Based on the representations contained within the documents filed with the State of New York on behalf of Better Hands, Allstate—even acting with reasonable diligence—could not possibly have discovered the nature and extent of Geykhman, Gulkarov, Sattarov, and Rahmatov's domination and control over Parcon and Better Hands.

686.     Geykhman, Gulkarov, Sattarov, and Rahmatov took purposeful steps to conceal their involvement in the day-to-day operations of Better Hands.

687.     The purposeful concealment of Geykhman, Gulkarov, Sattarov, and Rahmatov's controlling interests in Better Hands allowed Geykhman, Gulkarov, Sattarov, and Rahmatov to unlawfully control Better Hands undetected.

688.     Overall, the purposeful concealment of Geykhman, Gulkarov, Sattarov, and Rahmatov's controlling interests in Better Hands enabled them to violate New York law while also preventing Allstate from discovering their unlawful acts for a prolonged period.

689.     At all relevant times during the operation of the Better Hands enterprise, Geykhman, Gulkarov, Sattarov, Rahmatov, Go Flex, Ballener, JEVA, Abrenica, Pesidas PT, Pesidas, MMA, Magid, MT, Tandingan, Axis, Awad, JA, MC Physical, Cuadra, Finesse Care, Emara, July PT, Elsanaa, Hands of Hope, Ebeido, Comfort, Cadet, Wellness, Rezende, Pyramid, and Hablas caused Better Hands to falsely certify that it was eligible to be reimbursed under New York's No-Fault Laws.

690.     Because Geykhman, Gulkarov, Sattarov, and Rahmatov were not licensed to practice physical therapy, or allowed to operate, control, or profit from a professional corporation

organized to provide professional physical therapy services, and because Better Hands was organized as a physical therapist-owned professional service corporation, Geykhman, Gulkarov, Sattarov, and Rahmatov were never lawfully entitled to participate in, or in any way direct, the operation and management of Better Hands.

691.     Accordingly, because Geykhman, Gulkarov, Sattarov, and Rahmatov unlawfully participated in the operation and management of Better Hands throughout the relevant period, Better Hands was caused to falsely claim eligibility for No-Fault reimbursement each and every time that it sought No-Fault reimbursement from Allstate.

692.     Further, Parcon attested (or caused the attestation) to the medical necessity of the services allegedly performed in connection with Better Hands's patients.

693.     At all relevant times, Parcon, as a duly licensed physical therapist, was legally and ethically obligated to act honestly and with integrity.

694.     As alleged above, Geykhman, Gulkarov, Sattarov, Rahmatov, Go Flex, Ballener, JEVA, Abrenica, Pesidas PT, Pesidas, MMA, Magid, MT, Tandingan, Axis, Awad, JA, MC Physical, Cuadra, Finesse Care, Emara, July PT, Elsanaa, Hands of Hope, Ebeido, Comfort, Cadet, Wellness, Rezende, Pyramid, and Hablas (or those persons acting under their control) caused Better Hands to create and submit to Allstate treatment records and demands for payment relative to medical services that were (a) unnecessary, (b) charged at excessive rates, (c) not actually rendered as represented, (c) performed pursuant to an unlawful referral relationship, and/or (d) performed by an independent contractor.

695.     Such conduct is unlawful, and rendered each such claim non-compensable under New York's No-Fault laws.

696.   Many of these facts—particularly (a) Geykhman, Gulkarov, Sattarov, and Rahmatov's involvement in the direction and control of the physical therapist services purportedly rendered for Better Hands's patients, and (b) Better Hands's unlawful splitting of professional fees and profits with Geykhman, Gulkarov, Sattarov, and Rahmatov, are not readily evident within the documents submitted to Allstate by these Defendants and upon which Allstate relied in adjusting the claims and tendering payment in connection with each discrete patient claim.

697.   Claims under New York's No-Fault Laws can only be submitted, and reimbursed, for treatment that was provided in accord with all applicable New York state licensing requirements.

698.   Thus, every time that Geykhman, Gulkarov, Sattarov, Rahmatov, Go Flex, Ballener, JEVA, Abrenica, Pesidas PT, Pesidas, MMA, Magid, MT, Tandingan, Axis, Awad, JA, MC, Cuadra, Finesse Care, Emara, July PT, Elsanaa, Hands of Hope, Ebeido, Comfort, Cadet, Wellness PT, Rezende, Pyramid, and Hablas caused Better Hands to submit No-Fault reimbursement demands to Allstate, Better Hands and Parcon (and those individuals working under their control) necessarily certified that Better Hands was eligible to be reimbursed under New York's No-Fault Laws.

699.   The full extent of Geykhman, Gulkarov, Sattarov, and Rahmatov's fraudulent and unlawful acts relative to their control over the Better Hands enterprise—including (a) Geykhman, Gulkarov, Sattarov, and Rahmatov's participation in the operation and control of Better Hands, and (b) the unlawful channeling of Better Hands's professional proceeds to Geykhman, Gulkarov, Sattarov, and Rahmatov was not known to Allstate until shortly before it commenced this action.

### B.     HANDS OF HOPE ENTERPRISE

700.     Ebeido is registered with the State of New York as Hands of Hope's sole officer, director, and shareholder.

701.      Geykhman and Gulkarov induced Ebeido to cede control over the operation and management of Hands of Hope to Geykhman and Gulkarov during the relevant period.

702.     Geykhman and Gulkarov worked with Sattarov and Rahmatov to launder the proceeds of this scheme, which were comprised of professional fees paid to Hands of Hope on No-Fault claims.

703.     The documents created and filed with the State of New York related to Hands of Hope deliberately omitted any reference to Geykhman, Gulkarov, Sattarov, and Rahmatov's involvement with Hands of Hope.

704.     Based on the representations contained within the documents filed with the State of New York on behalf of Hands of Hope, Allstate—even acting with reasonable diligence—could not possibly have discovered the nature and extent of Geykhman, Gulkarov, Sattarov, and Rahmatov's domination and control over Ebeido and Hands of Hope.

705.     Geykhman, Gulkarov, Sattarov, and Rahmatov took purposeful steps to conceal their involvement in the day-to-day operations of Hands of Hope.

706.     The purposeful concealment of Geykhman, Gulkarov, Sattarov, and Rahmatov's controlling interests in Hands of Hope allowed Geykhman, Gulkarov, Sattarov, and Rahmatov to unlawfully control Hands of Hope undetected.

707.     Overall, the purposeful concealment of Geykhman, Gulkarov, Sattarov, and Rahmatov's controlling interests in Hands of Hope enabled them to violate New York law while also preventing Allstate from discovering their unlawful acts for a prolonged period.

708.    At all relevant times during the operation of the Hands of Hope enterprise, Geykhman, Gulkarov, Sattarov, Rahmatov, Ebeido, July PT, Elsanaa, Pyramid, Hablas, MMA, Magid, Comfort, Cadet, Wellness PT, Rezende, MT, Tandingan, Pesidas PT, Pesidas, Better Hands, Parcon, Go Flex, Ballener, JEVA, Abrenica, MC, Cuadra, and JA caused Hands of Hope to falsely certify that it was eligible to be reimbursed under New York's No-Fault Laws.

709.    Because Geykhman, Gulkarov, Sattarov, and Rahmatov were not licensed to practice physical therapy, or allowed to operate, control, or profit from a professional corporation organized to provide professional physical therapy services, and because Hands of Hope was organized as a physical therapist-owned professional service corporation, Geykhman, Gulkarov, Sattarov, and Rahmatov were never lawfully entitled to participate in, or in any way direct, the operation and management of Hands of Hope.

710.    Accordingly, because Geykhman, Gulkarov, Sattarov, and Rahmatov unlawfully participated in the operation and management of Hands of Hope throughout the relevant period, Hands of Hope was caused to falsely claim eligibility for No-Fault reimbursement each and every time that it sought No-Fault reimbursement from Allstate.

711.    Further, Ebeido attested (or caused the attestation) to the medical necessity of the services allegedly performed in connection with Hands of Hope's patients.

712.    At all relevant times, Ebeido, as a duly licensed physical therapist, was legally and ethically obligated to act honestly and with integrity.

713.    As alleged above, Geykhman, Gulkarov, Sattarov, Rahmatov, Ebeido, July PT, Elsanaa, Pyramid, Hablas, MMA, Magid, Comfort, Cadet, Wellness PT, Rezende, MT, Tandingan, Pesidas PT, Pesidas, Better Hands, Parcon, Go Flex, Ballener, JEVA, Abrenica, MC, Cuadra, and JA (or those persons acting under their control) caused Hands of Hope to create and submit to

133

Allstate treatment records and demands for payment relative to medical services that were (a) unnecessary, (b) charged at excessive rates, (c) not actually rendered as represented, (c) performed pursuant to an unlawful referral relationship, and/or (d) performed by an independent contractor.

714.     Such conduct is unlawful, and rendered each such claim non-compensable under New York's No-Fault laws.

715.     Many of these facts—particularly (a) Geykhman, Gulkarov, Sattarov, and Rahmatov's involvement in the direction and control of the physical therapist services purportedly rendered for Hands of Hope's patients, and (b) Hands of Hope's unlawful splitting of professional fees and profits with Geykhman, Gulkarov, Sattarov, and Rahmatov are not readily evident within the documents submitted to Allstate by these Defendants and upon which Allstate relied in adjusting the claims and tendering payment in connection with each discrete patient claim.

716.     Claims under New York's No-Fault Laws can only be submitted, and reimbursed, for treatment that was provided in accord with all applicable New York state licensing requirements.

717.     Thus, every time that Geykhman, Gulkarov, Sattarov, Rahmatov, Ebeido, July PT, Elsanaa, Pyramid, Hablas, MMA, Magid, Comfort, Cadet, Wellness PT, Rezende, MT, Tandingan, Pesidas PT, Pesidas, Better Hands, Parcon, Go Flex, Ballener, JEVA, Abrenica, MC, Cuadra, and JA caused Hands of Hope to submit No-Fault reimbursement demands to Allstate, Hands of Hope and Ebeido (and those individuals working under their control) necessarily certified that Hands of Hope was eligible to be reimbursed under New York's No-Fault Laws.

718.     The full extent of Geykhman, Gulkarov, Sattarov, and Rahmatov's fraudulent and unlawful acts relative to their control over the Hands of Hope enterprise—including (a) Geykhman, Gulkarov, Sattarov, and Rahmatov's participation in the operation and control of

Hands of Hope, and (b) the unlawful channeling of Hands of Hope's professional proceeds to Geykhman, Gulkarov, Sattarov, and Rahmatov was not known to Allstate until shortly before it commenced this action.

### C.   JULY PT ENTERPRISE

719.   Elsanaa is registered with the State of New York as July PT's sole officer, director, and shareholder.

720.   Geykhman and Gulkarov induced Elsanaa to cede control over the operation and management of July PT to Geykhman and Gulkarov during the relevant period.

721.   Geykhman and Gulkarov worked with Sattarov and Rahmatov to launder the proceeds of this scheme, which were comprised of professional fees paid to July PT on No-Fault claims.

722.   The documents created and filed with the State of New York related to July PT deliberately omitted any reference to Geykhman, Gulkarov, Sattarov, and Rahmatov's involvement with July PT.

723.   Based on the representations contained within the documents filed with the State of New York on behalf of July PT, Allstate—even acting with reasonable diligence—could not possibly have discovered the nature and extent of Geykhman, Gulkarov, Sattarov, and Rahmatov's domination and control over Elsanaa and July PT.

724.   Geykhman, Gulkarov, Sattarov, and Rahmatov took purposeful steps to conceal their involvement in the day-to-day operations of July PT.

725.   The purposeful concealment of Geykhman, Gulkarov, Sattarov, and Rahmatov's controlling interests in July PT allowed Geykhman, Gulkarov, Sattarov, and Rahmatov to unlawfully control July PT undetected.

726.     Overall, the purposeful concealment of Geykhman, Gulkarov, Sattarov, and Rahmatov's controlling interests in July PT enabled them to violate New York law while also preventing Allstate from discovering their unlawful acts for a prolonged period.

727.     At all relevant times during the operation of the July PT enterprise, Geykhman, Gulkarov, Sattarov, Rahmatov, Elsanaa, Hand by Hand, Hands of Hope, Ebeido, Pyramid, Hablas, MMA, Magid, MT, Tandingan, Comfort, Cadet, Wellness PT, Rezende, Pesidas PT, Pesidas, Better Hands, Parcon, Go Flex, Ballener, JEVA, Abrenica, MC, and Cuadra caused July PT to falsely certify that it was eligible to be reimbursed under New York's No-Fault Laws.

728.     Because Geykhman, Gulkarov, Sattarov, and Rahmatov were not licensed to practice physical therapy, or allowed to operate, control, or profit from a professional corporation organized to provide professional physical therapy services, and because July PT was organized as a physical therapist-owned professional service corporation, Geykhman, Gulkarov, Sattarov, and Rahmatov were never lawfully entitled to participate in, or in any way direct, the operation and management of July PT.

729.     Accordingly, because Geykhman, Gulkarov, Sattarov, and Rahmatov unlawfully participated in the operation and management of July PT throughout the relevant period, July PT was caused to falsely claim eligibility for No-Fault reimbursement each and every time that it sought No-Fault reimbursement from Allstate.

730.     Further, Elsanaa attested (or caused the attestation) to the medical necessity of the services allegedly performed in connection with July PT's patients.

731.     At all relevant times, Elsanaa, as a duly licensed physical therapist, was legally and ethically obligated to act honestly and with integrity.

732.     As alleged above, Geykhman, Gulkarov, Sattarov, Rahmatov, Elsanaa, Hand by Hand, Hands of Hope, Ebeido, Pyramid, Hablas, MMA, Magid, MT, Tandingan, Comfort, Cadet, Wellness PT, Rezende, Pesidas PT, Pesidas, Better Hands, Parcon, Go Flex, Ballener, JEVA, Abrenica, MC, and Cuadra (or those persons acting under their control) caused July PT to create and submit to Allstate treatment records and demands for payment relative to medical services that were (a) unnecessary, (b) charged at excessive rates, (c) not actually rendered as represented, (c) performed pursuant to an unlawful referral relationship, and/or (d) performed by an independent contractor.

733.     Such conduct is unlawful, and rendered each such claim non-compensable under New York's No-Fault laws.

734.     Many of these facts—particularly (a) Geykhman, Gulkarov, Sattarov, and Rahmatov's involvement in the direction and control of the physical therapist services purportedly rendered for July PT's patients, and (b) July PT's unlawful splitting of professional fees and profits with Geykhman, Gulkarov, Sattarov, and Rahmatov are not readily evident within the documents submitted to Allstate by these Defendants and upon which Allstate relied in adjusting the claims and tendering payment in connection with each discrete patient claim.

735.     Claims under New York's No-Fault Laws can only be submitted, and reimbursed, for treatment that was provided in accord with all applicable New York state licensing requirements.

736.     Thus, every time that Geykhman, Gulkarov, Sattarov, Rahmatov, Elsanaa, Hand by Hand, Hands of Hope, Ebeido, Pyramid, Hablas, MMA, Magid, MT, Tandingan, Comfort, Cadet, Wellness PT, Rezende, Pesidas PT, Pesidas, Better Hands, Parcon, Go Flex, Ballener, JEVA, Abrenica, MC, and Cuadra caused July PT to submit No-Fault reimbursement demands to Allstate,

July PT and Elsanaa (and those individuals working under their control) necessarily certified that July PT was eligible to be reimbursed under New York's No-Fault Laws.

737.    The full extent of Geykhman, Gulkarov, Sattarov, and Rahmatov's fraudulent and unlawful acts relative to their control over the July PT enterprise—including (a) Geykhman, Gulkarov, Sattarov, and Rahmatov's participation in the operation and control of July PT, and (b) the unlawful channeling of July PT's professional proceeds to Geykhman, Gulkarov, Sattarov, and Rahmatov was not known to Allstate until shortly before it commenced this action.

### D.    MMA ENTERPRISE

738.    Magid is registered with the State of New York as MMA's sole officer, director, and shareholder.

739.    Geykhman and Gulkarov induced Magid to cede control over the operation and management of MMA to Geykhman and Gulkarov during the relevant period.

740.    Geykhman and Gulkarov worked with Sattarov and Rahmatov to launder the proceeds of this scheme, which were comprised of professional fees paid to MMA on No-Fault claims.

741.    The documents created and filed with the State of New York related to MMA deliberately omitted any reference to Geykhman, Gulkarov, Sattarov, and Rahmatov's involvement with MMA.

742.    Based on the representations contained within the documents filed with the State of New York on behalf of MMA, Allstate—even acting with reasonable diligence—could not possibly have discovered the nature and extent of Geykhman, Gulkarov, Sattarov, and Rahmatov's domination and control over Magid and MMA.

743.   Geykhman, Gulkarov, Sattarov, and Rahmatov took purposeful steps to conceal their involvement in the day-to-day operations of MMA.

744.   The purposeful concealment of Geykhman, Gulkarov, Sattarov, and Rahmatov's controlling interests in MMA allowed Geykhman, Gulkarov, Sattarov, and Rahmatov to unlawfully control MMA undetected.

745.   Overall, the purposeful concealment of Geykhman, Gulkarov, Sattarov, and Rahmatov's controlling interests in MMA enabled them to violate New York law while also preventing Allstate from discovering their unlawful acts for a prolonged period.

746.   At all relevant times during the operation of the MMA enterprise, Geykhman, Gulkarov, Sattarov, Rahmatov, Magid, Hands of Hope, Ebeido, July PT, Elsanaa, Pyramid, Hablas, Comfort, Cadet, MT, Tandingan, Wellness PT, Rezende, Better Hands, Parcon, Atlas, Awad, Pesidas PT, Pesidas, Go Flex, Ballener, JEVA, Abrenica, MC, and Cuadra caused MMA to falsely certify that it was eligible to be reimbursed under New York's No-Fault Laws.

747.   Because Geykhman, Gulkarov, Sattarov, and Rahmatov were not licensed to practice physical therapy, or allowed to operate, control, or profit from a professional corporation organized to provide professional physical therapy services, and because MMA was organized as a physical therapist-owned professional service corporation, Geykhman, Gulkarov, Sattarov, and Rahmatov were never lawfully entitled to participate in, or in any way direct, the operation and management of MMA.

748.   Accordingly, because Geykhman, Gulkarov, Sattarov, and Rahmatov unlawfully participated in the operation and management of MMA throughout the relevant period, MMA was caused to falsely claim eligibility for No-Fault reimbursement each and every time that it sought No-Fault reimbursement from Allstate.

749.    Further, Magid attested (or caused the attestation) to the medical necessity of the services allegedly performed in connection with MMA's patients.

750.    At all relevant times, Magid, as a duly licensed physical therapist, was legally and ethically obligated to act honestly and with integrity.

751.    As alleged above, Magid and Geykhman, Gulkarov, Sattarov, Rahmatov, Hands of Hope, Ebeido, July PT, Elsanaa, Pyramid, Hablas, Comfort, Cadet, MT, Tandingan, Wellness PT, Rezende, Better Hands, Parcon, Atlas, Awad, Pesidas PT, Pesidas, Go Flex, Ballener, JEVA, Abrenica, MC, and Cuadra (or those persons acting under their control) caused MMA to create and submit to Allstate treatment records and demands for payment relative to medical services that were (a) unnecessary, (b) charged at excessive rates, (c) not actually rendered as represented, (c) performed pursuant to an unlawful referral relationship, and/or (d) performed by an independent contractor.

752.    Such conduct is unlawful, and rendered each such claim non-compensable under New York's No-Fault laws.

753.    Many of these facts—particularly (a) Geykhman, Gulkarov, Sattarov, and Rahmatov's involvement in the direction and control of the physical therapist services purportedly rendered for MMA's patients, and (b) MMA's unlawful splitting of professional fees and profits with Geykhman, Gulkarov, Sattarov, and Rahmatov are not readily evident within the documents submitted to Allstate by these Defendants and upon which Allstate relied in adjusting the claims and tendering payment in connection with each discrete patient claim.

754.    Claims under New York's No-Fault Laws can only be submitted, and reimbursed, for treatment that was provided in accord with all applicable New York state licensing requirements.

755.     Thus, every time that Magid and Geykhman, Gulkarov, Sattarov, Rahmatov, Hands of Hope, Ebeido, July PT, Elsanaa, Pyramid, Hablas, Comfort, Cadet, MT, Tandingan, Wellness PT, Rezende, Better Hands, Parcon, Atlas, Awad, Pesidas PT, Pesidas, Go Flex, Ballener, JEVA, Abrenica, MC, and Cuadra caused MMA to submit No-Fault reimbursement demands to Allstate, MMA and Magid (and those individuals working under their control) necessarily certified that MMA was eligible to be reimbursed under New York's No-Fault Laws.

756.     The full extent of Geykhman, Gulkarov, Sattarov, and Rahmatov's fraudulent and unlawful acts relative to their control over the MMA enterprise—including (a) Geykhman, Gulkarov, Sattarov, and Rahmatov's participation in the operation and control of MMA, and (b) the unlawful channeling of MMA's professional proceeds to Geykhman, Gulkarov, Sattarov, and Rahmatov, was not known to Allstate until shortly before it commenced this action.

### E.     PYRAMID ENTERPRISE

757.     Hablas is registered with the State of New York as Pyramid's sole officer, director, and shareholder.

758.     Geykhman and Gulkarov induced Hablas to cede control over the operation and management of Pyramid to Geykhman and Gulkarov during the relevant period.

759.     Geykhman and Gulkarov worked with Sattarov and Rahmatov to launder the proceeds of this scheme, which were comprised of professional fees paid to Pyramid on No-Fault claims.

760.     The documents created and filed with the State of New York related to Pyramid deliberately omitted any reference to Geykhman, Gulkarov, Sattarov, and Rahmatov's involvement with Pyramid.

761.     Based on the representations contained within the documents filed with the State of New York on behalf of Pyramid, Allstate—even acting with reasonable diligence—could not possibly have discovered the nature and extent of Geykhman, Gulkarov, Sattarov, and Rahmatov's domination and control over Hablas and Pyramid.

762.     Geykhman, Gulkarov, Sattarov, and Rahmatov took purposeful steps to conceal their involvement in the day-to-day operations of Pyramid.

763.     The purposeful concealment of Geykhman, Gulkarov, Sattarov, and Rahmatov's controlling interests in Pyramid allowed Geykhman, Gulkarov, Sattarov, and Rahmatov to unlawfully control Pyramid undetected.

764.     Overall, the purposeful concealment of Geykhman, Gulkarov, Sattarov, and Rahmatov's controlling interests in Pyramid enabled them to violate New York law while also preventing Allstate from discovering their unlawful acts for a prolonged period.

765.     At all relevant times during the operation of the Pyramid enterprise, Geykhman, Gulkarov, Sattarov, Rahmatov, Hablas, Hands of Hope, Ebeido, July PT, Elsanaa, MMA, Magid, Go Flex, Ballener, JEVA, Abrenica, MC, Cuadra, Better Hands, Parcon, Comfort, Cadet, Wellness PT, Rezende, MT, Tandingan, Pesidas PT, and Pesidas caused Pyramid to falsely certify that it was eligible to be reimbursed under New York's No-Fault Laws.

766.     Because Geykhman, Gulkarov, Sattarov, and Rahmatov were not licensed to practice physical therapy, or allowed to operate, control, or profit from a professional corporation organized to provide professional physical therapy services, and because Pyramid was organized as a physical therapist-owned professional service corporation, Geykhman, Gulkarov, Sattarov, and Rahmatov were never lawfully entitled to participate in, or in any way direct, the operation and management of Pyramid.

142

767.    Accordingly, because Geykhman, Gulkarov, Sattarov, and Rahmatov unlawfully participated in the operation and management of Pyramid throughout the relevant period, Pyramid was caused to falsely claim eligibility for No-Fault reimbursement each and every time that it sought No-Fault reimbursement from Allstate.

768.    Further, Hablas attested (or caused the attestation) to the medical necessity of the services allegedly performed in connection with Pyramid's patients.

769.    At all relevant times, Hablas, as a duly licensed physical therapist, was legally and ethically obligated to act honestly and with integrity.

770.    As alleged above, Geykhman, Gulkarov, Sattarov, Rahmatov, Hablas, Hands of Hope, Ebeido, July PT, Elsanaa, MMA, Magid, Go Flex, Ballener, JEVA, Abrenica, MC, Cuadra, Better Hands, Parcon, Comfort, Cadet, Wellness PT, Rezende, MT, Tandingan, Pesidas PT, and Pesidas (or those persons acting under their control) caused Pyramid to create and submit to Allstate treatment records and demands for payment relative to medical services that were (a) unnecessary, (b) charged at excessive rates, (c) not actually rendered as represented, (c) performed pursuant to an unlawful referral relationship, and/or (d) performed by an independent contractor.

771.    Such conduct is unlawful, and rendered each such claim non-compensable under New York's No-Fault laws.

772.    Many of these facts—particularly (a) Geykhman, Gulkarov, Sattarov, and Rahmatov's involvement in the direction and control of the physical therapist services purportedly rendered for Pyramid's patients, and (b) Pyramid's unlawful splitting of professional fees and profits with Geykhman, Gulkarov, Sattarov, and Rahmatov is not readily evident within the documents submitted to Allstate by these Defendants and upon which Allstate relied in adjusting the claims and tendering payment in connection with each discrete patient claim.

773.     Claims under New York's No-Fault Laws can only be submitted, and reimbursed, for treatment that was provided in accord with all applicable New York state licensing requirements.

774.     Thus, every time that Geykhman, Gulkarov, Sattarov, Rahmatov, Hablas, Hands of Hope, Ebeido, July PT, Elsanaa, MMA, Magid, Go Flex, Ballener, JEVA, Abrenica, MC, Cuadra, Better Hands, Parcon, Comfort, Cadet, Wellness PT, Rezende, MT, Tandingan, Pesidas PT, and Pesidas caused Pyramid to submit No-Fault reimbursement demands to Allstate, Pyramid and Hablas (and those individuals working under their control) necessarily certified that Pyramid was eligible to be reimbursed under New York's No-Fault Laws.

775.     The full extent of Geykhman, Gulkarov, Sattarov, and Rahmatov's fraudulent and unlawful acts relative to their control over the Pyramid enterprise—including (a) Geykhman, Gulkarov, Sattarov, and Rahmatov's participation in the operation and control of Pyramid, and (b) the unlawful channeling of Pyramid's professional proceeds to Geykhman, Gulkarov, Sattarov, and Rahmatov was not known to Allstate until shortly before it commenced this action.

## F.     COMFORT ENTERPRISE

776.     Cadet is registered with the State of New York as Comfort's sole officer, director, and shareholder.

777.     Geykhman and Gulkarov induced Cadet to cede control over the operation and management of Comfort to Geykhman and Gulkarov during the relevant period.

778.     Geykhman and Gulkarov worked with Sattarov and Rahmatov to launder the proceeds of this scheme, which were comprised of professional fees paid to Comfort on No-Fault claims.

779.    The documents created and filed with the State of New York related to Comfort deliberately omitted any reference to Geykhman, Gulkarov, Sattarov, and Rahmatov's involvement with Comfort.

780.    Based on the representations contained within the documents filed with the State of New York on behalf of Comfort, Allstate—even acting with reasonable diligence—could not possibly have discovered the nature and extent of Geykhman, Gulkarov, Sattarov, and Rahmatov's domination and control over Cadet and Comfort.

781.    Geykhman, Gulkarov, Sattarov, and Rahmatov took purposeful steps to conceal their involvement in the day-to-day operations of Comfort.

782.    The purposeful concealment of Geykhman, Gulkarov, Sattarov, and Rahmatov's controlling interests in Comfort allowed Geykhman, Gulkarov, Sattarov, and Rahmatov to unlawfully control Comfort undetected.

783.    Overall, the purposeful concealment of Geykhman, Gulkarov, Sattarov, and Rahmatov's controlling interests in Comfort enabled them to violate New York law while also preventing Allstate from discovering their unlawful acts for a prolonged period.

784.    At all relevant times during the operation of the Comfort enterprise, Geykhman, Gulkarov, Sattarov, Rahmatov, Cadet, MT, Tandingan, MMA, Magid, July PT, Elsanaa, Hands of Hope, Ebeido, Pesidas PT, Pesidas, Atlas, Awad, MC, Cuadra, Pyramid, Hablas, Better Hands, Parcon, Go Flex, Ballener, JEVA, and Abrenica caused Comfort to falsely certify that it was eligible to be reimbursed under New York's No-Fault Laws.

785.    Because Geykhman, Gulkarov, Sattarov, and Rahmatov were not licensed to practice physical therapy, or allowed to operate, control, or profit from a professional corporation organized to provide professional physical therapy services, and because Comfort was organized

as a physical therapist-owned professional service corporation, Geykhman, Gulkarov, Sattarov, and Rahmatov were never lawfully entitled to participate in, or in any way direct, the operation and management of Comfort.

786.    Accordingly, because Geykhman, Gulkarov, Sattarov, and Rahmatov unlawfully participated in the operation and management of Comfort throughout the relevant period, Comfort was caused to falsely claim eligibility for No-Fault reimbursement each and every time that it sought No-Fault reimbursement from Allstate.

787.    Further, Cadet attested (or caused the attestation) to the medical necessity of the services allegedly performed in connection with Comfort's patients.

788.    At all relevant times, Cadet, as a duly licensed physical therapist, was legally and ethically obligated to act honestly and with integrity.

789.    As alleged above, Geykhman, Gulkarov, Sattarov, Rahmatov, Cadet, MT, Tandingan, MMA, Magid, July PT, Elsanaa, Hands of Hope, Ebeido, Pesidas PT, Pesidas, Atlas, Awad, MC, Cuadra, Pyramid, Hablas, Better Hands, Parcon, Go Flex, Ballener, JEVA, and Abrenica (or those persons acting under their control) caused Comfort to create and submit to Allstate treatment records and demands for payment relative to medical services that were (a) unnecessary, (b) charged at excessive rates, (c) not actually rendered as represented, (c) performed pursuant to an unlawful referral relationship, and/or (d) performed by an independent contractor.

790.    Such conduct is unlawful, and rendered each such claim non-compensable under New York's No-Fault laws.

791.    Many of these facts—particularly (a) Geykhman, Gulkarov, Sattarov, and Rahmatov's involvement in the direction and control of the physical therapist services purportedly rendered for Comfort's patients, and (b) Comfort's unlawful splitting of professional fees and

profits with Geykhman, Gulkarov, Sattarov, and Rahmatov are not readily evident within the documents submitted to Allstate by these Defendants and upon which Allstate relied in adjusting the claims and tendering payment in connection with each discrete patient claim.

792.   Claims under New York's No-Fault Laws can only be submitted, and reimbursed, for treatment that was provided in accord with all applicable New York state licensing requirements.

793.   Thus, every time that Geykhman, Gulkarov, Sattarov, Rahmatov, Cadet, MT, Tandingan, MMA, Magid, July PT, Elsanaa, Hands of Hope, Ebeido, Pesidas PT, Pesidas, Atlas, Awad, MC, Cuadra, Pyramid, Hablas, Better Hands, Parcon, Go Flex, Ballener, JEVA, and Abrenica caused Comfort to submit No-Fault reimbursement demands to Allstate, Comfort and Cadet (and those individuals working under their control) necessarily certified that Comfort was eligible to be reimbursed under New York's No-Fault Laws.

794.   The full extent of Geykhman, Gulkarov, Sattarov, and Rahmatov's fraudulent and unlawful acts relative to their control over the Comfort enterprise—including (a) Geykhman, Gulkarov, Sattarov, and Rahmatov's participation in the operation and control of Comfort, and (b) the unlawful channeling of Comfort's professional proceeds to Geykhman, Gulkarov, Sattarov, and Rahmatov was not known to Allstate until shortly before it commenced this action.

## G.   MT ENTERPRISE

795.   Tandingan is registered with the State of New York as MT's sole officer, director, and shareholder.

796.   Geykhman and Gulkarov induced Tandingan to cede control over the operation and management of MT to Geykhman during the relevant period.

797.    Geykhman and Gulkarov worked with Sattarov and Rahmatov to launder the proceeds of this scheme, which were comprised of professional fees paid to MT on No-Fault claims.

798.    The documents created and filed with the State of New York related to MT deliberately omitted any reference to Geykhman, Gulkarov, Sattarov, and Rahmatov's involvement with MT.

799.    Based on the representations contained within the documents filed with the State of New York on behalf of MT, Allstate—even acting with reasonable diligence—could not possibly have discovered the nature and extent of Geykhman, Gulkarov, Sattarov, and Rahmatov's domination and control over Tandingan and MT.

800.    Geykhman, Gulkarov, Sattarov, and Rahmatov took purposeful steps to conceal their involvement in the day-to-day operations of MT.

801.    The purposeful concealment of Geykhman, Gulkarov, Sattarov, and Rahmatov's controlling interests in MT allowed Geykhman, Gulkarov, Sattarov, and Rahmatov to unlawfully control MT undetected.

802.    Overall, the purposeful concealment of Geykhman, Gulkarov, Sattarov, and Rahmatov's controlling interests in MT enabled them to violate New York law while also preventing Allstate from discovering their unlawful acts for a prolonged period.

803.    At all relevant times during the operation of the MT enterprise, Geykhman, Gulkarov, Sattarov, Rahmatov, Tandingan, Comfort, Cadet, Wellness, Rezende, Pesidas PT, Pesidas, JA, Abrenica, MMA, Magid, July PT, Elsanaa, MC, Cuadra, Life Care, Emara, Atlas, Awad, JEVA, Go Flex, Ballener, Hands of Hope, Ebeido, Pyramid, Hablas, Better Hands, and

Parcon caused MT to falsely certify that it was eligible to be reimbursed under New York's No-Fault Laws.

804. Because Geykhman, Gulkarov, Sattarov, and Rahmatov were not licensed to practice physical therapy, or allowed to operate, control, or profit from a professional corporation organized to provide professional physical therapy services, and because MT was organized as a physical therapist-owned professional service corporation, Geykhman, Gulkarov, Sattarov, and Rahmatov were never lawfully entitled to participate in, or in any way direct, the operation and management of MT.

805. Accordingly, because Geykhman, Gulkarov, Sattarov, and Rahmatov unlawfully participated in the operation and management of MT throughout the relevant period, MT was caused to falsely claim eligibility for No-Fault reimbursement each and every time that it sought No-Fault reimbursement from Allstate.

806. Further, Tandingan attested (or caused the attestation) to the medical necessity of the services allegedly performed in connection with MT's patients.

807. At all relevant times, Tandingan, as a duly licensed physical therapist, was legally and ethically obligated to act honestly and with integrity.

808. As alleged above, Geykhman, Gulkarov, Sattarov, Rahmatov, Tandingan, Comfort, Cadet, Wellness PT, Rezende, Pesidas PT, Pesidas, JA, Abrenica, MMA, Magid, July PT, Elsanaa, MC, Cuadra, Life Care, Emara, Atlas, Awad, JEVA, Go Flex, Ballener, Hands of Hope, Ebeido, Pyramid, Hablas, Better Hands, and Parcon (or those persons acting under their control) caused MT to create and submit to Allstate treatment records and demands for payment relative to medical services that were (a) unnecessary, (b) charged at excessive rates, (c) not actually rendered as

represented, (c) performed pursuant to an unlawful referral relationship, and/or (d) performed by an independent contractor.

809.    Such conduct is unlawful, and rendered each such claim non-compensable under New York's No-Fault laws.

810.    Many of these facts—particularly (a) Geykhman, Gulkarov, Sattarov, and Rahmatov's involvement in the direction and control of the physical therapist services purportedly rendered for MT's patients, and (b) MT's unlawful splitting of professional fees and profits with Geykhman, Gulkarov, Sattarov, and Rahmatov were not readily evident within the documents submitted to Allstate by these Defendants and upon which Allstate relied in adjusting the claims and tendering payment in connection with each discrete patient claim.

811.    Claims under New York's No-Fault Laws can only be submitted, and reimbursed, for treatment that was provided in accord with all applicable New York state licensing requirements.

812.    Thus, every time that Geykhman, Gulkarov, Sattarov, Rahmatov, Tandingan, Comfort, Cadet, Wellness PT, Rezende, Pesidas PT, Pesidas, JA, Abrenica, MMA, Magid, July PT, Elsanaa, MC, Cuadra, Life Care, Emara, Atlas, Awad, JEVA, Go Flex, Ballener, Hands of Hope, Ebeido, Pyramid, Hablas, Better Hands, and Parcon caused MT to submit No-Fault reimbursement demands to Allstate, MT and Tandingan (and those individuals working under their control) necessarily certified that MT was eligible to be reimbursed under New York's No-Fault Laws.

813.    The full extent of Geykhman, Gulkarov, Sattarov, and Rahmatov's fraudulent and unlawful acts relative to their control over the MT enterprise—including (a) Geykhman, Gulkarov, Sattarov, and Rahmatov's participation in the operation and control of MT, and (b) the unlawful

150

channeling of MT's professional proceeds to Geykhman, Gulkarov, Sattarov, and Rahmatov was not known to Allstate until shortly before it commenced this action.

### H.   LIFE CARE ENTERPRISE

814.   Emara is registered with the State of New York as Life Care's sole officer, director, and shareholder.

815.   Geykhman induced Emara to cede control over the operation and management of Life Care to Geykhman during the relevant period.

816.   Geykhman worked with Sattarov and Rahmatov to launder the proceeds of this scheme, which were comprised of professional fees paid to Life Care on No-Fault claims.

817.   The documents created and filed with the State of New York related to Life Care deliberately omitted any reference to Geykhman, Sattarov, and Rahmatov's involvement with Life Care.

818.   Based on the representations contained within the documents filed with the State of New York on behalf of Life Care, Allstate—even acting with reasonable diligence—could not possibly have discovered the nature and extent of Geykhman, Sattarov, and Rahmatov's domination and control over Emara and Life Care.

819.   Geykhman, Sattarov, and Rahmatov took purposeful steps to conceal their involvement in the day-to-day operations of Life Care.

820.   The purposeful concealment of Geykhman, Sattarov, and Rahmatov's controlling interests in Life Care allowed Geykhman, Sattarov, and Rahmatov to unlawfully control Life Care undetected.

821.     Overall, the purposeful concealment of Geykhman, Sattarov, and Rahmatov's controlling interests in Life Care enabled them to violate New York law while also preventing Allstate from discovering their unlawful acts for a prolonged period.

822.     At all relevant times during the operation of the Life Care enterprise, Geykhman, Sattarov, Rahmatov, Emara, Finesse Care, Pesidas PT, Pesidas, Wellness PT, Rezende, JA, Abrenica, MT, Tandingan, MC, and Cuadra caused Life Care to falsely certify that it was eligible to be reimbursed under New York's No-Fault Laws.

823.     Because Geykhman, Sattarov, and Rahmatov were not licensed to practice physical therapy, or allowed to operate, control, or profit from a professional corporation organized to provide professional physical therapy services, and because Life Care was organized as a physical therapist-owned professional service corporation, Geykhman, Sattarov, and Rahmatov were never lawfully entitled to participate in, or in any way direct, the operation and management of Life Care.

824.     Accordingly, because Geykhman, Sattarov, and Rahmatov unlawfully participated in the operation and management of Life Care throughout the relevant period, Life Care was caused to falsely claim eligibility for No-Fault reimbursement each and every time that it sought No-Fault reimbursement from Allstate.

825.     Further, Emara attested (or caused the attestation) to the medical necessity of the services allegedly performed in connection with Life Care's patients.

826.     At all relevant times, Emara, as a duly licensed physical therapist, was legally and ethically obligated to act honestly and with integrity.

827.     As alleged above, Geykhman, Sattarov, Rahmatov, Emara, Finesse Care, Pesidas PT, Pesidas, Wellness PT, Rezende, JA, Abrenica, MT, Tandingan, MC, and Cuadra (or those persons acting under their control) caused Life Care to create and submit to Allstate treatment

152

records and demands for payment relative to medical services that were (a) unnecessary, (b) charged at excessive rates, (c) not actually rendered as represented, (c) performed pursuant to an unlawful referral relationship, and/or (d) performed by an independent contractor.

828.    Such conduct is unlawful, and rendered each such claim non-compensable under New York's No-Fault laws.

829.    Many of these facts—particularly (a) Geykhman, Sattarov, and Rahmatov's involvement in the direction and control of the physical therapist services purportedly rendered for Life Care's patients, and (b) Life Care's unlawful splitting of professional fees and profits with Geykhman, Sattarov, and Rahmatov are not readily evident within the documents submitted to Allstate by these Defendants and upon which Allstate relied in adjusting the claims and tendering payment in connection with each discrete patient claim.

830.    Claims under New York's No-Fault Laws can only be submitted, and reimbursed, for treatment that was provided in accord with all applicable New York state licensing requirements.

831.    Thus, every time that Geykhman, Sattarov, Rahmatov, Emara, Finesse Care, Pesidas PT, Pesidas, Wellness PT, Rezende, JA, Abrenica, MT, Tandingan, MC, and Cuadra caused Life Care to submit No-Fault reimbursement demands to Allstate, Life Care and Emara (and those individuals working under their control) necessarily certified that Life Care was eligible to be reimbursed under New York's No-Fault Laws.

832.    The full extent of Geykhman, Sattarov, and Rahmatov's fraudulent and unlawful acts relative to their control over the Life Care enterprise—including (a) Geykhman, Sattarov, and Rahmatov's participation in the operation and control of Life Care, and (b) the unlawful channeling

of Life Care's professional proceeds to Geykhman, Sattarov, and Rahmatov was not known to Allstate until shortly before it commenced this action.

## I.     <u>JA Enterprise</u>

833.     Abrenica is registered with the State of New York as JA's sole officer, director, and shareholder.

834.     Geykhman and Gulkarov induced Abrenica to cede control over the operation and management of JA to Geykhman and Gulkarov during the relevant period.

835.     Geykhman and Gulkarov worked with Sattarov and Rahmatov to launder the proceeds of this scheme, which were comprised of professional fees paid to JA on No-Fault claims.

836.     The documents created and filed with the State of New York related to JA deliberately omitted any reference to Geykhman, Gulkarov, Sattarov, and Rahmatov's involvement with JA.

837.     Based on the representations contained within the documents filed with the State of New York on behalf of JA, Allstate—even acting with reasonable diligence—could not possibly have discovered the nature and extent of Geykhman, Gulkarov, Sattarov, and Rahmatov's domination and control over Abrenica and JA.

838.     Geykhman, Gulkarov, Sattarov, and Rahmatov took purposeful steps to conceal their involvement in the day-to-day operations of JA.

839.     The purposeful concealment of Geykhman, Gulkarov, Sattarov, and Rahmatov's controlling interests in JA allowed Geykhman, Gulkarov, Sattarov, and Rahmatov to unlawfully control JA undetected.

840.    Overall, the purposeful concealment of Geykhman, Gulkarov, Sattarov, and Rahmatov's controlling interests in JA enabled them to violate New York law while also preventing Allstate from discovering their unlawful acts for a prolonged period.

841.    At all relevant times during the operation of the JA enterprise, Geykhman, Gulkarov, Sattarov, Rahmatov, Abrenica, JEVA, Wellness PT, Rezende, Comfort, Cadet, MT, Tandingan, Pesidas PT, Pesidas, Life Care, Emara, MC, Cuadra, Better Hands, Parcon, Go Flex, Ballener, Axis, Awad, Hands of Hope, amd Ebeido caused JA to falsely certify that it was eligible to be reimbursed under New York's No-Fault Laws.

842.    Because Geykhman, Gulkarov, Sattarov, and Rahmatov were not licensed to practice physical therapy, or allowed to operate, control, or profit from a professional corporation organized to provide professional physical therapy services, and because JA was organized as a physical therapist-owned professional service corporation, Geykhman, Gulkarov, Sattarov, and Rahmatov were never lawfully entitled to participate in, or in any way direct, the operation and management of JA.

843.    Accordingly, because Geykhman, Gulkarov, Sattarov, and Rahmatov unlawfully participated in the operation and management of JA throughout the relevant period, JA was caused to falsely claim eligibility for No-Fault reimbursement each and every time that it sought No-Fault reimbursement from Allstate.

844.    Further, Abrenica attested (or caused the attestation) to the medical necessity of the services allegedly performed in connection with JA's patients.

845.    At all relevant times, Abrenica, as a duly licensed physical therapist, was legally and ethically obligated to act honestly and with integrity.

155

846.   As alleged above, Geykhman, Gulkarov, Sattarov, Rahmatov, Abrenica, JEVA, Wellness PT, Rezende, Comfort, Cadet, MT, Tandingan, Pesidas PT, Pesidas, Life Care, Emara, MC, Cuadra, Better Hands, Parcon, Go Flex, Ballener, Axis, Awad, Hands of Hope, amd Ebeido (or those persons acting under their control) caused JA to create and submit to Allstate treatment records and demands for payment relative to medical services that were (a) unnecessary, (b) charged at excessive rates, (c) not actually rendered as represented, (c) performed pursuant to an unlawful referral relationship, and/or (d) performed by an independent contractor.

847.   Such conduct is unlawful, and rendered each such claim non-compensable under New York's No-Fault laws.

848.   Many of these facts—particularly (a) Geykhman, Gulkarov, Sattarov, and Rahmatov's involvement in the direction and control of the physical therapist services purportedly rendered for JA's patients, and (b) JA's unlawful splitting of professional fees and profits with Geykhman, Gulkarov, Sattarov, and Rahmatov are not readily evident within the documents submitted to Allstate by these Defendants and upon which Allstate relied in adjusting the claims and tendering payment in connection with each discrete patient claim.

849.   Claims under New York's No-Fault Laws can only be submitted, and reimbursed, for treatment that was provided in accord with all applicable New York state licensing requirements.

850.   Thus, every time that Geykhman,Gulkarov, Sattarov, Rahmatov, Abrenica, JEVA, Wellness PT, Rezende, Comfort, Cadet, MT, Tandingan, Pesidas PT, Pesidas, Life Care, Emara, MC, Cuadra, Better Hands, Parcon, Go Flex, Ballener, Axis, Awad, Hands of Hope, amd Ebeido caused JA to submit No-Fault reimbursement demands to Allstate, JA and Abrenica (and those

individuals working under their control) necessarily certified that JA was eligible to be reimbursed under New York's No-Fault Laws.

851.    The full extent of Geykhman, Gulkarov, Sattarov, and Rahmatov's fraudulent and unlawful acts relative to his control over the JA enterprise—including (a) Geykhman, Gulkarov, Sattarov, and Rahmatov's participation in the operation and control of JA, and (b) the unlawful channeling of JA's professional proceeds to Geykhman, Gulkarov, Sattarov, and Rahmatov was not known to Allstate until shortly before it commenced this action.

### J.    PESIDAS PT ENTERPRISE

852.    Pesidas is registered with the State of New York as Pesidas PT's sole officer, director, and shareholder.

853.    Geykhman and Gulkarov induced Pesidas to cede control over the operation and management of Pesidas PT to Geykhman and Gulkarov during the relevant period.

854.    Geykhman and Gulkarov worked with Sattarov and Rahmatov to launder the proceeds of this scheme, which were comprised of professional fees paid to Pesidas PT on No-Fault claims.

855.    The documents created and filed with the State of New York related to Pesidas PT deliberately omitted any reference to Geykhman, Gulkarov, Sattarov, and Rahmatov's involvement with Pesidas PT.

856.    Based on the representations contained within the documents filed with the State of New York on behalf of Pesidas PT, Allstate—even acting with reasonable diligence—could not possibly have discovered the nature and extent of Geykhman, Gulkarov, Sattarov, and Rahmatov's domination and control over Pesidas and Pesidas PT.

857.    Geykhman, Gulkarov, Sattarov, and Rahmatov took purposeful steps to conceal their involvement in the day-to-day operations of Pesidas PT.

858.    The purposeful concealment of Geykhman, Gulkarov, Sattarov, and Rahmatov's controlling interests in Pesidas PT allowed Geykhman, Gulkarov, Sattarov, and Rahmatov to unlawfully control Pesidas PT undetected.

859.    Overall, the purposeful concealment of Geykhman, Gulkarov, Sattarov, and Rahmatov's controlling interests in Pesidas PT enabled them to violate New York law while also preventing Allstate from discovering their unlawful acts for a prolonged period.

860.    At all relevant times during the operation of the Pesidas PT enterprise, Geykhman, Gulkarov, Sattarov, Rahmatov, Pesidas, Life Care, Emara, Comfort, Cadet, MT, Tandingan, Wellness PT, Rezende, JA, Awad, MC, Cuadra, Better Hands, Parcon, Go Flex, Ballener, JEVA, Abrenica, Finesse Care, Emara, July PT, Elsanaa, Hands of Hope, Ebeido, MMA, Magid, Pyramid, Hablas, MC, and Cuadra caused Pesidas PT to falsely certify that it was eligible to be reimbursed under New York's No-Fault Laws.

861.    Because Geykhman, Gulkarov, Sattarov, and Rahmatov were not licensed to practice physical therapy, or allowed to operate, control, or profit from a professional corporation organized to provide professional physical therapy services, and because Pesidas PT was organized as a physical therapist-owned professional service corporation, Geykhman, Gulkarov, Sattarov, and Rahmatov were never lawfully entitled to participate in, or in any way direct, the operation and management of Pesidas PT.

862.    Accordingly, because Geykhman, Gulkarov, Sattarov, and Rahmatov unlawfully participated in the operation and management of Pesidas PT throughout the relevant period,

Pesidas PT was caused to falsely claim eligibility for No-Fault reimbursement each and every time that it sought No-Fault reimbursement from Allstate.

863.  Further, Pesidas attested (or caused the attestation) to the medical necessity of the services allegedly performed in connection with Pesidas PT's patients.

864.  At all relevant times, Pesidas, as a duly licensed physical therapist, was legally and ethically obligated to act honestly and with integrity.

865.  As alleged above, Geykhman, Gulkarov, Sattarov, Rahmatov, Pesidas, Life Care, Emara, Comfort, Cadet, MT, Tandingan, Wellness PT, Rezende, JA, Awad, MC, Cuadra, Better Hands, Parcon, Go Flex, Ballener, JEVA, Abrenica, Finesse Care, Emara, July PT, Elsanaa, Hands of Hope, Ebeido, MMA, Magid, Pyramid, Hablas, MC, and Cuadra (or those persons acting under their control) caused Pesidas PT to create and submit to Allstate treatment records and demands for payment relative to medical services that were (a) unnecessary, (b) charged at excessive rates, (c) not actually rendered as represented, (c) performed pursuant to an unlawful referral relationship, and/or (d) performed by an independent contractor.

866.  Such conduct is unlawful, and rendered each such claim non-compensable under New York's No-Fault laws.

867.  Many of these facts—particularly (a) Geykhman, Gulkarov, Sattarov, and Rahmatov's involvement in the direction and control of the physical therapist services purportedly rendered for Pesidas PT's patients, and (b) Pesidas PT's unlawful splitting of professional fees and profits with Geykhman, Gulkarov, Sattarov, and Rahmatov are not readily evident within the documents submitted to Allstate by these Defendants and upon which Allstate relied in adjusting the claims and tendering payment in connection with each discrete patient claim.

159

868.   Claims under New York's No-Fault Laws can only be submitted, and reimbursed, for treatment that was provided in accord with all applicable New York state licensing requirements.

869.   Thus, every time that Geykhman, Gulkarov, Sattarov, Rahmatov, Pesidas, Life Care, Emara, Comfort, Cadet, MT, Tandingan, Wellness PT, Rezende, JA, Awad, MC, Cuadra, Better Hands, Parcon, Go Flex, Ballener, JEVA, Abrenica, Finesse Care, Emara, July PT, Elsanaa, Hands of Hope, Ebeido, MMA, Magid, Pyramid, Hablas, MC, and Cuadra caused Pesidas PT to submit No-Fault reimbursement demands to Allstate, Pesidas PT and Pesidas (and those individuals working under their control), necessarily certified that Pesidas PT was eligible to be reimbursed under New York's No-Fault Laws.

870.   The full extent of Geykhman, Gulkarov, Sattarov, and Rahmatov's fraudulent and unlawful acts relative to their control over the Pesidas PT enterprise—including (a) Geykhman, Gulkarov, Sattarov, and Rahmatov's participation in the operation and control of Pesidas PT, and (b) the unlawful channeling of Pesidas PT's professional proceeds to Geykhman, Gulkarov, Sattarov, and Rahmatov were not known to Allstate until shortly before it commenced this action.

### K.   WELLNESS PT ENTERPRISE

871.   Rezende is registered with the State of New York as Wellness PT's sole officer, director, and shareholder.

872.   Geykhman and Gulkarov induced Rezende to cede control over the operation and management of Wellness PT to Geykhman and Gulkarov during the relevant period.

873.   Geykhman and Gulkarov worked with Sattarov and Rahmatov to launder the proceeds of this scheme, which were comprised of professional fees paid to Wellness PT on No-Fault claims.

874. The documents created and filed with the State of New York related to Wellness PT deliberately omitted any reference to Geykhman, Gulkarov, Sattarov, and Rahmatov's involvement with Wellness PT.

875. Based on the representations contained within the documents filed with the State of New York on behalf of Wellness PT, Allstate—even acting with reasonable diligence—could not possibly have discovered the nature and extent of Geykhman, Gulkarov, Sattarov, and Rahmatov's domination and control over Rezende and Wellness PT.

876. Geykhman, Gulkarov, Sattarov, and Rahmatov took purposeful steps to conceal their involvement in the day-to-day operations of Wellness PT.

877. The purposeful concealment of Geykhman, Gulkarov, Sattarov, and Rahmatov's controlling interests in Wellness PT allowed Geykhman, Gulkarov, Sattarov, and Rahmatov to unlawfully control Wellness PT undetected.

878. Overall, the purposeful concealment of Geykhman, Gulkarov, Sattarov, and Rahmatov's controlling interests in Wellness PT enabled them to violate New York law while also preventing Allstate from discovering their unlawful acts for a prolonged period.

879. At all relevant times during the operation of the Wellness PT enterprise, Geykhman, Gulkarov, Sattarov, Rahmatov, Rezende, JA, Abrenica, Comfort, Cadet, MT, Tandingan, Pesidas PT, Pesidas, Life Care, Emara, Atlas, Awad, July PT, Elsanaa, Hands of Hope, Ebeido, MMA, Magid, MC, Cuadra, Atlas, Awad, Go Flex, Ballener, JEVA, Abrenica, Pyramid, Hablas, Better Hands, and Parcon caused Wellness PT to falsely certify that it was eligible to be reimbursed under New York's No-Fault Laws.

880. Because Geykhman, Gulkarov, Sattarov, and Rahmatov were not licensed to practice physical therapy, or allowed to operate, control, or profit from a professional corporation

161

organized to provide professional physical therapy services, and because Wellness PT was organized as a physical therapist-owned professional service corporation, Geykhman, Gulkarov, Sattarov, and Rahmatov were never lawfully entitled to participate in, or in any way direct, the operation and management of Wellness PT.

881.    Accordingly, because Geykhman, Gulkarov, Sattarov, and Rahmatov unlawfully participated in the operation and management of Wellness PT throughout the relevant period, Wellness PT was caused to falsely claim eligibility for No-Fault reimbursement each and every time that it sought No-Fault reimbursement from Allstate.

882.    Further, Rezende attested (or caused the attestation) to the medical necessity of the services allegedly performed in connection with Wellness PT's patients.

883.    At all relevant times, Rezende, as a duly licensed physical therapist, was legally and ethically obligated to act honestly and with integrity.

884.    As alleged above, Geykhman, Gulkarov, Sattarov, Rahmatov, Rezende, JA, Abrenica, Comfort, Cadet, MT, Tandingan, Pesidas PT, Pesidas, Life Care, Emara, Atlas, Awad, July PT, Elsanaa, Hands of Hope, Ebeido, MMA, Magid, MC, Cuadra, Atlas, Awad, Go Flex, Ballener, JEVA, Abrenica, Pyramid, Hablas, Better Hands, and Parcon (or those persons acting under their control) caused Wellness PT to create and submit to Allstate treatment records and demands for payment relative to medical services that were (a) unnecessary, (b) charged at excessive rates, (c) not actually rendered as represented, (c) performed pursuant to an unlawful referral relationship, and/or (d) performed by an independent contractor.

885.    Such conduct is unlawful, and rendered each such claim non-compensable under New York's No-Fault laws.

886. Many of these facts—particularly (a) Geykhman, Gulkarov, Sattarov, and Rahmatov's involvement in the direction and control of the physical therapist services purportedly rendered for Wellness PT's patients, and (b) Wellness PT's unlawful splitting of professional fees and profits with Geykhman, Gulkarov, Sattarov, and Rahmatov are not readily evident within the documents submitted to Allstate by these Defendants and upon which Allstate relied in adjusting the claims and tendering payment in connection with each discrete patient claim.

887. Claims under New York's No-Fault Laws can only be submitted, and reimbursed, for treatment that was provided in accord with all applicable New York state licensing requirements.

888. Thus, every time that Geykhman, Gulkarov, Sattarov, Rahmatov, Rezende, JA, Abrenica, Comfort, Cadet, MT, Tandingan, Pesidas PT, Pesidas, Life Care, Emara, Atlas, Awad, July PT, Elsanaa, Hands of Hope, Ebeido, MMA, Magid, MC, Cuadra, Atlas, Awad, Go Flex, Ballener, JEVA, Abrenica, Pyramid, Hablas, Better Hands, and Parcon caused Wellness PT to submit No-Fault reimbursement demands to Allstate, Wellness PT and Rezende (and those individuals working under their control) necessarily certified that Wellness PT was eligible to be reimbursed under New York's No-Fault Laws.

889. The full extent of Geykhman, Gulkarov, Sattarov, and Rahmatov's fraudulent and unlawful acts relative to their control over the Wellness PT enterprise—including (a) Geykhman, Gulkarov, Sattarov, and Rahmatov's participation in the operation and control of Wellness PT, and (b) the unlawful channeling of Wellness PT's professional proceeds to Geykhman, Gulkarov, Sattarov, and Rahmatov was not known to Allstate until shortly before it commenced this action.

L.   **HAND BY HAND ENTERPRISE**

890.   Elsanaa is registered with the State of New York as Hand by Hand's sole officer, director, and shareholder.

891.   Geykhman induced Elsanaa to cede control over the operation and management of Hand by Hand to Geykhman during the relevant period.

892.   Geykhman worked with Sattarov and Rahmatov to launder the proceeds of this scheme, which were comprised of professional fees paid to Hand by Hand on No-Fault claims.

893.   The documents created and filed with the State of New York related to Hand by Hand deliberately omitted any reference to Geykhman, Sattarov, and Rahmatov's involvement with Hand by Hand.

894.   Based on the representations contained within the documents filed with the State of New York on behalf of Hand by Hand, Allstate—even acting with reasonable diligence—could not possibly have discovered the nature and extent of Geykhman, Sattarov, and Rahmatov's domination and control over Elsanaa and Hand by Hand.

895.   Geykhman, Sattarov, and Rahmatov took purposeful steps to conceal their involvement in the day-to-day operations of Hand by Hand.

896.   The purposeful concealment of Geykhman, Sattarov, and Rahmatov's controlling interests in Hand by Hand allowed Geykhman, Sattarov, and Rahmatov to unlawfully control Hand by Hand undetected.

897.   Overall, the purposeful concealment of Geykhman, Sattarov, and Rahmatov's controlling interests in Hand by Hand enabled them to violate New York law while also preventing Allstate from discovering their unlawful acts for a prolonged period.

898.    At all relevant times during the operation of the Hand by Hand enterprise, Geykhman, Sattarov, Rahmatov, Elsanaa, and July PT caused Hand by Hand to falsely certify that it was eligible to be reimbursed under New York's No-Fault Laws.

899.    Because Geykhman, Sattarov, and Rahmatov were not licensed to practice physical therapy, or allowed to operate, control, or profit from a professional corporation organized to provide professional physical therapy services, and because Hand by Hand was organized as a physical therapist-owned professional service corporation, Geykhman, Sattarov, and Rahmatov were never lawfully entitled to participate in, or in any way direct, the operation and management of Hand by Hand.

900.    Accordingly, because Geykhman, Sattarov, and Rahmatov unlawfully participated in the operation and management of Hand by Hand throughout the relevant period, Hand by Hand was caused to falsely claim eligibility for No-Fault reimbursement each and every time that it sought No-Fault reimbursement from Allstate.

901.    Further, Elsanaa attested (or caused the attestation) to the medical necessity of the services allegedly performed in connection with Hand by Hand's patients.

902.    At all relevant times, Elsanaa, as a duly licensed physical therapist, was legally and ethically obligated to act honestly and with integrity.

903.    As alleged above, Geykhman, Sattarov, Rahmatov, Elsanaa, and July PT (or those persons acting under their control) caused Hand by Hand to create and submit to Allstate treatment records and demands for payment relative to medical services that were (a) unnecessary, (b) charged at excessive rates, (c) not actually rendered as represented, (c) performed pursuant to an unlawful referral relationship, and/or (d) performed by an independent contractor.

165

904.    Such conduct is unlawful, and rendered each such claim non-compensable under New York's No-Fault laws.

905.    Many of these facts—particularly (a) Geykhman, Sattarov, and Rahmatov's involvement in the direction and control of the physical therapist services purportedly rendered for Hand by Hand's patients, and (b) Hand by Hand's unlawful splitting of professional fees and profits with Geykhman, Sattarov, and Rahmatov are not readily evident within the documents submitted to Allstate by these Defendants and upon which Allstate relied in adjusting the claims and tendering payment in connection with each discrete patient claim.

906.    Claims under New York's No-Fault Laws can only be submitted, and reimbursed, for treatment that was provided in accord with all applicable New York state licensing requirements.

907.    Thus, every time that Geykhman, Sattarov, Rahmatov, Elsanaa, and July PT caused Hand by Hand to submit No-Fault reimbursement demands to Allstate, July PT and Elsanaa (and those individuals working under their control) necessarily certified that Hand by Hand was eligible to be reimbursed under New York's No-Fault Laws.

908.    The full extent of Geykhman, Sattarov, and Rahmatov's fraudulent and unlawful acts relative to his control over the Hand by Hand enterprise—including (a) Geykhman, Sattarov, and Rahmatov's participation in the operation and control of Hand by Hand, and (b) the unlawful channeling of Hand by Hand's professional proceeds to Geykhman, Sattarov, and Rahmatov was not known to Allstate until shortly before it commenced this action.

### M.    MC ENTERPRISE

909.    Cuadra is registered with the State of New York as MC's sole officer, director, and shareholder.

910.     Geykhman and Gulkarov induced Cuadra to cede control over the operation and management of MC to Geykhman and Gulkarov during the relevant period.

911.     Geykhman and Gulkarov worked with Sattarov and Rahmatov to launder the proceeds of this scheme, which were comprised of professional fees paid to MC on No-Fault claims.

912.     The documents created and filed with the State of New York related to MC deliberately omitted any reference to Geykhman, Gulkarov, Sattarov, and Rahmatov's involvement with MC.

913.     Based on the representations contained within the documents filed with the State of New York on behalf of MC, Allstate—even acting with reasonable diligence—could not possibly have discovered the nature and extent of Geykhman, Gulkarov, Sattarov, and Rahmatov's domination and control over Cuadra and MC.

914.     Geykhman, Gulkarov, Sattarov, and Rahmatov took purposeful steps to conceal their involvement in the day-to-day operations of MC.

915.     The purposeful concealment of Geykhman, Gulkarov, Sattarov, and Rahmatov's controlling interests in MC allowed Geykhman, Gulkarov, Sattarov, and Rahmatov to unlawfully control MC undetected.

916.     Overall, the purposeful concealment of Geykhman, Gulkarov, Sattarov, and Rahmatov's controlling interests in MC enabled them to violate New York law while also preventing Allstate from discovering their unlawful acts for a prolonged period.

917.     At all relevant times during the operation of the MC enterprise, Geykhman, Gulkarov, Sattarov, Rahmatov, Cuadra, Pesidas PT, Pesidas, JA, JEVA, Abrenica, Wellness PT, Rezende, Axis, Awad, Better Hands, Parcon, Go Flex, Ballener, MT, Tandingan, Comfort, Cadet,

Finesse Care, Life Care, Emara, Atlas, Awad, July PT, Elsanaa, Hands of Hope, Ebeido, MMA, Magid, Pyramid, and Hablas caused MC to falsely certify that it was eligible to be reimbursed under New York's No-Fault Laws.

918.    Because Geykhman, Gulkarov, Sattarov, and Rahmatov were not licensed to practice physical therapy, or allowed to operate, control, or profit from a professional corporation organized to provide professional physical therapy services, and because MC was organized as a physical therapist-owned professional service corporation, Geykhman, Gulkarov, Sattarov, and Rahmatov were never lawfully entitled to participate in, or in any way direct, the operation and management of MC.

919.    Accordingly, because Geykhman, Gulkarov, Sattarov, and Rahmatov unlawfully participated in the operation and management of MC throughout the relevant period, MC was caused to falsely claim eligibility for No-Fault reimbursement each and every time that it sought No-Fault reimbursement from Allstate.

920.    Further, Cuadra attested (or caused the attestation) to the medical necessity of the services allegedly performed in connection with MC's patients.

921.    At all relevant times, Cuadra, as a duly licensed physical therapist, was legally and ethically obligated to act honestly and with integrity.

922.    As alleged above, Geykhman, Gulkarov, Sattarov, Rahmatov, Cuadra, Pesidas PT, Pesidas, JA, JEVA, Abrenica, Wellness PT, Rezende, Axis, Awad, Better Hands, Parcon, Go Flex, Ballener, MT, Tandingan, Comfort, Cadet, Finesse Care, Life Care, Emara, Atlas, Awad, July PT, Elsanaa, Hands of Hope, Ebeido, MMA, Magid, Pyramid, and Hablas (or those persons acting under their control) caused MC to create and submit to Allstate treatment records and demands for payment relative to medical services that were (a) unnecessary, (b) charged at excessive rates, (c)

not actually rendered as represented, (c) performed pursuant to an unlawful referral relationship, and/or (d) performed by an independent contractor.

923.    Such conduct is unlawful, and rendered each such claim non-compensable under New York's No-Fault laws.

924.    Many of these facts—particularly (a) Geykhman, Gulkarov, Sattarov, and Rahmatov's involvement in the direction and control of the physical therapist services purportedly rendered for MC's patients, and (b) MC's unlawful splitting of professional fees and profits with Geykhman, Gulkarov, Sattarov, and Rahmatov are not readily evident within the documents submitted to Allstate by these Defendants and upon which Allstate relied in adjusting the claims and tendering payment in connection with each discrete patient claim.

925.    Claims under New York's No-Fault Laws can only be submitted, and reimbursed, for treatment that was provided in accord with all applicable New York state licensing requirements.

926.    Thus, every time that Geykhman, Gulkarov, Sattarov, Rahmatov, Cuadra, Pesidas PT, Pesidas, JA, JEVA, Abrenica, Wellness PT, Rezende, Axis, Awad, Better Hands, Parcon, Go Flex, Ballener, MT, Tandingan, Comfort, Cadet, Finesse Care, Life Care, Emara, Atlas, Awad, July PT, Elsanaa, Hands of Hope, Ebeido, MMA, Magid, Pyramid, and Hablas caused MC to submit No-Fault reimbursement demands to Allstate, MC and Cuadra (and those individuals working under their control) necessarily certified that MC was eligible to be reimbursed under New York's No-Fault Laws.

927.    The full extent of Geykhman, Gulkarov, Sattarov, and Rahmatov's fraudulent and unlawful acts relative to their control over the MC enterprise—including (a) Geykhman, Gulkarov, Sattarov, and Rahmatov's participation in the operation and control of MC, and (b) the unlawful

channeling of MC's professional proceeds to Geykhman, Gulkarov, Sattarov, and Rahmatov was not known to Allstate until shortly before it commenced this action.

**N.    GO FLEX ENTERPRISE**

928.    Ballener is registered with the State of New York as Go Flex's sole officer, director, and shareholder.

929.    Geykhman and Gulkarov induced Ballener to cede control over the operation and management of Go Flex to Geykhman and Gulkarov during the relevant period.

930.    Geykhman and Gulkarov worked with Sattarov and Rahmatov to launder the proceeds of this scheme, which were comprised of professional fees paid to Go Flex on No-Fault claims.

931.    The documents created and filed with the State of New York related to Go Flex deliberately omitted any reference to Geykhman, Gulkarov, Sattarov, and Rahmatov's involvement with Go Flex.

932.    Based on the representations contained within the documents filed with the State of New York on behalf of Go Flex, Allstate—even acting with reasonable diligence—could not possibly have discovered the nature and extent of Geykhman, Gulkarov, Sattarov, and Rahmatov's domination and control over Ballener and Go Flex.

933.    Geykhman, Gulkarov, Sattarov, and Rahmatov took purposeful steps to conceal their involvement in the day-to-day operations of Go Flex.

934.    The purposeful concealment of Geykhman, Gulkarov, Sattarov, and Rahmatov's controlling interests in Go Flex allowed Geykhman, Gulkarov, Sattarov, and Rahmatov to unlawfully control Go Flex undetected.

935.    Overall, the purposeful concealment of Geykhman, Gulkarov, Sattarov, and Rahmatov's controlling interests in Go Flex enabled them to violate New York law while also preventing Allstate from discovering their unlawful acts for a prolonged period.

936.    At all relevant times during the operation of the Go Flex enterprise, Geykhman, Gulkarov, Sattarov, Rahmatov, Ballener, Better Hands, Parcon, JEVA, JA, Abrenica, Pesidas PT, Pesidas, Axis, Atlas, Awad, MC, Cuadra, Wellness PT, Rezende, MT, Tandingan, July PT, Elsanaa, Hands of Hope, Ebeido, MMA, Magid, Comfort, Cadet, Pyramid, and Hablas caused Go Flex to falsely certify that it was eligible to be reimbursed under New York's No-Fault Laws.

937.    Because Geykhman, Gulkarov, Sattarov, and Rahmatov were not licensed to practice physical therapy, or allowed to operate, control, or profit from a professional corporation organized to provide professional physical therapy services, and because Go Flex was organized as a physical therapist-owned professional service corporation, Geykhman, Gulkarov, Sattarov, and Rahmatov were never lawfully entitled to participate in, or in any way direct, the operation and management of Go Flex.

938.    Accordingly, because Geykhman, Gulkarov, Sattarov, and Rahmatov unlawfully participated in the operation and management of Go Flex throughout the relevant period, Go Flex was caused to falsely claim eligibility for No-Fault reimbursement each and every time that it sought No-Fault reimbursement from Allstate.

939.    Further, Ballener attested (or caused the attestation) to the medical necessity of the services allegedly performed in connection with Go Flex's patients.

940.    At all relevant times, Ballener, as a duly licensed physical therapist, was legally and ethically obligated to act honestly and with integrity.

941.    As alleged above, Geykhman, Gulkarov, Sattarov, Rahmatov, Ballener, Better Hands, Parcon, JEVA, JA, Abrenica, Pesidas PT, Pesidas, Axis, Atlas, Awad, MC, Cuadra, Wellness PT, Rezende, MT, Tandingan, July PT, Elsanaa, Hands of Hope, Ebeido, MMA, Magid, Comfort, Cadet, Pyramid, and Hablas (or those persons acting under their control) caused Go Flex to create and submit to Allstate treatment records and demands for payment relative to medical services that were (a) unnecessary, (b) charged at excessive rates, (c) not actually rendered as represented, (c) performed pursuant to an unlawful referral relationship, and/or (d) performed by an independent contractor.

942.    Such conduct is unlawful, and rendered each such claim non-compensable under New York's No-Fault laws.

943.    Many of these facts—particularly (a) Geykhman, Gulkarov, Sattarov, and Rahmatov's involvement in the direction and control of the physical therapist services purportedly rendered for Go Flex's patients, and (b) Go Flex's unlawful splitting of professional fees and profits with Geykhman, Gulkarov, Sattarov, and Rahmatov are not readily evident within the documents submitted to Allstate by these Defendants and upon which Allstate relied in adjusting the claims and tendering payment in connection with each discrete patient claim.

944.    Claims under New York's No-Fault Laws can only be submitted, and reimbursed, for treatment that was provided in accord with all applicable New York state licensing requirements.

945.    Thus, every time that Geykhman, Gulkarov, Sattarov, Rahmatov, Ballener, Better Hands, Parcon, JEVA, JA, Abrenica, Pesidas PT, Pesidas, Axis, Atlas, Awad, MC, Cuadra, Wellness PT, Rezende, MT, Tandingan, July PT, Elsanaa, Hands of Hope, Ebeido, MMA, Magid, Comfort, Cadet, Pyramid, and Hablas caused Go Flex to submit No-Fault reimbursement demands

to Allstate, Go Flex and Ballener (and those individuals working under their control) necessarily certified that Go Flex was eligible to be reimbursed under New York's No-Fault Laws.

946.    The full extent of Geykhman, Gulkarov, Sattarov, and Rahmatov's fraudulent and unlawful acts relative to their control over the Go Flex enterprise—including (a) Geykhman, Gulkarov, Sattarov, and Rahmatov's participation in the operation and control of Go Flex, and (b) the unlawful channeling of Go Flex's professional proceeds to Geykhman, Gulkarov, Sattarov, and Rahmatov were not known to Allstate until shortly before it commenced this action.

### O.    JEVA ENTERPRISE

947.    Abrenica is registered with the State of New York as JEVA's sole officer, director, and shareholder.

948.    Geykhman and Gulkarov induced Abrenica to cede control over the operation and management of JEVA to Geykhman and Gulkarov during the relevant period.

949.    Geykhman and Gulkarov worked with Sattarov and Rahmatov to launder the proceeds of this scheme, which were comprised of professional fees paid to JEVA on No-Fault claims.

950.    The documents created and filed with the State of New York related to JEVA deliberately omitted any reference to Geykhman, Gulkarov, Sattarov, and Rahmatov's involvement with JEVA.

951.    Based on the representations contained within the documents filed with the State of New York on behalf of JEVA, Allstate—even acting with reasonable diligence—could not possibly have discovered the nature and extent of Geykhman, Gulkarov, Sattarov, and Rahmatov's domination and control over Abrenica and JEVA.

952.     Geykhman, Gulkarov, Sattarov, and Rahmatov took purposeful steps to conceal their involvement in the day-to-day operations of JEVA.

953.     The purposeful concealment of Geykhman, Gulkarov, Sattarov, and Rahmatov's controlling interests in JEVA allowed Geykhman, Gulkarov, Sattarov, and Rahmatov to unlawfully control JEVA undetected.

954.     Overall, the purposeful concealment of Geykhman, Gulkarov, Sattarov, and Rahmatov's controlling interests in JEVA enabled them to violate New York law while also preventing Allstate from discovering their unlawful acts for a prolonged period.

955.     At all relevant times during the operation of the JEVA enterprise, Geykhman, Gulkarov, Sattarov, Rahmatov, Abrenica, JA Physical, Better Hands, Parcon, Go Flex, Ballener, Pesidas PT, Pesidas, Axis, Awad, Atlas, Awad, MC, Cuadra, MT, Tandingan, Wellness PT, Rezende, July PT, Elsanaa, Hands of Hope, Ebeido, MMA, Magid, Comfort, Cadet, Pyramid, and Hablas caused JEVA to falsely certify that it was eligible to be reimbursed under New York's No-Fault Laws.

956.     Because Geykhman, Gulkarov, Sattarov, and Rahmatov were not licensed to practice physical therapy, or allowed to operate, control, or profit from a professional corporation organized to provide professional physical therapy services, and because JEVA was organized as a physical therapist-owned professional service corporation, Geykhman, Gulkarov, Sattarov, and Rahmatov were never lawfully entitled to participate in, or in any way direct, the operation and management of JEVA.

957.     Accordingly, because Geykhman, Gulkarov, Sattarov, and Rahmatov unlawfully participated in the operation and management of JEVA throughout the relevant period, JEVA was

caused to falsely claim eligibility for No-Fault reimbursement each and every time that it sought No-Fault reimbursement from Allstate.

958.    Further, Abrenica attested (or caused the attestation) to the medical necessity of the services allegedly performed in connection with JEVA's patients.

959.    At all relevant times, Abrenica, as a duly licensed physical therapist, was legally and ethically obligated to act honestly and with integrity.

960.    As alleged above, Geykhman, Gulkarov, Sattarov, Rahmatov, Abrenica, JA, Better Hands, Parcon, Go Flex, Ballener, Pesidas PT, Pesidas, Axis, Atlas, Awad, MC, Cuadra, MT, Tandingan, Wellness PT, Rezende, July PT, Elsanaa, Hands of Hope, Ebeido, MMA, Magid, Comfort, Cadet, Pyramid, and Hablas (or those persons acting under their control) caused JEVA to create and submit to Allstate treatment records and demands for payment relative to medical services that were (a) unnecessary, (b) charged at excessive rates, (c) not actually rendered as represented, (c) performed pursuant to an unlawful referral relationship, and/or (d) performed by an independent contractor.

961.    Such conduct is unlawful, and rendered each such claim non-compensable under New York's No-Fault laws.

962.    Many of these facts—particularly (a) Geykhman, Gulkarov, Sattarov, and Rahmatov's involvement in the direction and control of the physical therapist services purportedly rendered for JEVA's patients, and (b) JEVA's unlawful splitting of professional fees and profits with Geykhman, Gulkarov, Sattarov, and Rahmatov are not readily evident within the documents submitted to Allstate by these Defendants and upon which Allstate relied in adjusting the claims and tendering payment in connection with each discrete patient claim.

963.     Claims under New York's No-Fault Laws can only be submitted, and reimbursed, for treatment that was provided in accord with all applicable New York state licensing requirements.

964.     Thus, every time that Geykhman, Gulkarov, Sattarov, Rahmatov, Abrenica, JA, Better Hands, Parcon, Go Flex, Ballener, Pesidas PT, Pesidas, Axis, Atlas, Awad, MC, Cuadra, MT, Tandingan, Wellness PT, Rezende, July PT, Elsanaa, Hands of Hope, Ebeido, MMA, Magid, Comfort, Cadet, Pyramid, and Hablas caused JEVA to submit No-Fault reimbursement demands to Allstate, JA and Abrenica (and those individuals working under their control) necessarily certified that JEVA was eligible to be reimbursed under New York's No-Fault Laws.

965.     The full extent of Geykhman, Gulkarov, Sattarov, and Rahmatov's fraudulent and unlawful acts relative to their control over the JEVA enterprise—including (a) Geykhman, Gulkarov, Sattarov, and Rahmatov's participation in the operation and control of JEVA, and (b) the unlawful channeling of JEVA's professional proceeds to Geykhman, Gulkarov, Sattarov, and Rahmatov was not known to Allstate until shortly before it commenced this action.

### P.     FINESSE CARE ENTERPRISE

966.     Emara is registered with the State of New York as Finesse Care's sole officer, director, and shareholder.

967.     Geykhman induced Emara to cede control over the operation and management of Finesse Care to Geykhman during the relevant period.

968.     Geykhman worked with Sattarov and Rahmatov to launder the proceeds of this scheme, which were comprised of professional fees paid to Finesse Care on No-Fault claims.

969.    The documents created and filed with the State of New York related to Finesse Care deliberately omitted any reference to Geykhman, Sattarov, and Rahmatov's involvement with Finesse Care.

970.    Based on the representations contained within the documents filed with the State of New York on behalf of Finesse Care, Allstate—even acting with reasonable diligence—could not possibly have discovered the nature and extent of Geykhman, Sattarov, and Rahmatov's domination and control over Emara and Finesse Care.

971.    Geykhman, Sattarov, and Rahmatov took purposeful steps to conceal their involvement in the day-to-day operations of Finesse Care.

972.    The purposeful concealment of Geykhman, Sattarov, and Rahmatov's controlling interests in Finesse Care allowed Geykhman, Sattarov, and Rahmatov to unlawfully control Finesse Care undetected.

973.    Overall, the purposeful concealment of Geykhman, Sattarov, and Rahmatov's controlling interests in Finesse Care enabled them to violate New York law while also preventing Allstate from discovering their unlawful acts for a prolonged period.

974.    At all relevant times during the operation of the Finesse Care enterprise, Geykhman, Sattarov, Rahmatov, Emara, Life Care, MC, Cuadra, Pesidas PT, Pesidas, Better Hands, and Parcon caused Finesse Care to falsely certify that it was eligible to be reimbursed under New York's No-Fault Laws.

975.    Because Geykhman, Sattarov, and Rahmatov was not licensed to practice physical therapy, or allowed to operate, control, or profit from a professional corporation organized to provide professional physical therapy services, and because Finesse Care was organized as a physical therapist-owned professional service corporation, Geykhman, Sattarov, and Rahmatov

was never lawfully entitled to participate in, or in any way direct, the operation and management of Finesse Care.

976.    Accordingly, because Geykhman, Sattarov, and Rahmatov unlawfully participated in the operation and management of Finesse Care throughout the relevant period, Finesse Care was caused to falsely claim eligibility for No-Fault reimbursement each and every time that it sought No-Fault reimbursement from Allstate.

977.    Further, Emara attested (or caused the attestation) to the medical necessity of the services allegedly performed in connection with Finesse Care's patients.

978.    At all relevant times, Emara, as a duly licensed physical therapist, was legally and ethically obligated to act honestly and with integrity.

979.    As alleged above, Geykhman, Sattarov, Rahmatov, Emara, Life Care, MC, Cuadra, Pesidas PT, Pesidas, Better Hands, and Parcon (or those persons acting under their control) caused Finesse Care to create and submit to Allstate treatment records and demands for payment relative to medical services that were (a) unnecessary, (b) charged at excessive rates, (c) not actually rendered as represented, (c) performed pursuant to an unlawful referral relationship, and/or (d) performed by an independent contractor.

980.    Such conduct is unlawful, and rendered each such claim non-compensable under New York's No-Fault laws.

981.    Many of these facts—particularly (a) Geykhman, Sattarov, and Rahmatov's involvement in the direction and control of the physical therapist services purportedly rendered for Finesse Care's patients, and (b) Finesse Care's unlawful splitting of professional fees and profits with Geykhman, Sattarov, and Rahmatov are not readily evident within the documents submitted

to Allstate by these Defendants and upon which Allstate relied in adjusting the claims and tendering payment in connection with each discrete patient claim.

982.    Claims under New York's No-Fault Laws can only be submitted, and reimbursed, for treatment that was provided in accord with all applicable New York state licensing requirements.

983.    Thus, every time that Geykhman, Sattarov, Rahmatov, Emara, Life Care, MC, Cuadra, Pesidas PT, Pesidas, Better Hands, and Parcon caused Finesse Care to submit No-Fault reimbursement demands to Allstate, Finesse Care and Emara (and those individuals working under their control) necessarily certified that Finesse Care was eligible to be reimbursed under New York's No-Fault Laws.

984.    The full extent of Geykhman, Sattarov, and Rahmatov's fraudulent and unlawful acts relative to their control over the Finesse Care enterprise—including (a) Geykhman, Sattarov, and Rahmatov's participation in the operation and control of Finesse Care, and (b) the unlawful channeling of Finesse Care's professional proceeds to Geykhman, Sattarov, and Rahmatov was not known to Allstate until shortly before it commenced this action.

**Q.    AXIS PT ENTERPRISE**

985.    Awad is registered with the State of New York as Axis's sole officer, director, and shareholder.

986.    Geykhman induced Awad to cede control over the operation and management of Axis to Geykhman during the relevant period.

987.    Geykhman worked with Sattarov and Rahmatov to launder the proceeds of this scheme, which were comprised of professional fees paid to Axis on No-Fault claims.

988.    The documents created and filed with the State of New York related to Axis deliberately omitted any reference to Geykhman, Sattarov, and Rahmatov's involvement with Axis.

989.    Based on the representations contained within the documents filed with the State of New York on behalf of Axis, Allstate—even acting with reasonable diligence—could not possibly have discovered the nature and extent of Geykhman, Sattarov, and Rahmatov's domination and control over Awad and Axis.

990.    Geykhman, Sattarov, and Rahmatov took purposeful steps to conceal their involvement in the day-to-day operations of Axis.

991.    The purposeful concealment of Geykhman, Sattarov, and Rahmatov's controlling interests in Axis allowed Geykhman to unlawfully control Axis undetected.

992.    Overall, the purposeful concealment of Geykhman, Sattarov, and Rahmatov's controlling interests in Axis enabled them to violate New York law while also preventing Allstate from discovering their unlawful acts for a prolonged period.

993.    At all relevant times during the operation of the Axis enterprise, Geykhman, Sattarov, Rahmatov, Atlas, Go Flex, Ballener, JEVA, JA, Abrenica, Better Hands, Parcon, Pesidas PT, Pesidas, MC, and Cuadra caused Axis to falsely certify that it was eligible to be reimbursed under New York's No-Fault Laws.

994.    Because Geykhman, Sattarov, and Rahmatov were not licensed to practice physical therapy, or allowed to operate, control, or profit from a professional corporation organized to provide professional physical therapy services, and because Axis was organized as a physical therapist-owned professional service corporation, Geykhman, Sattarov, and Rahmatov were never lawfully entitled to participate in, or in any way direct, the operation and management of Axis.

995.    Accordingly, because Geykhman, Sattarov, and Rahmatov unlawfully participated in the operation and management of Axis throughout the relevant period, Axis was caused to falsely claim eligibility for No-Fault reimbursement each and every time that it sought No-Fault reimbursement from Allstate.

996.    Further, Awad attested (or caused the attestation) to the medical necessity of the services allegedly performed in connection with Axis's patients.

997.    At all relevant times, Awad, as a duly licensed physical therapist, was legally and ethically obligated to act honestly and with integrity.

998.    As alleged above, Geykhman, Sattarov, Rahmatov, Atlas, Go Flex, Ballener, JEVA, JA, Abrenica, Better Hands, Parcon, Pesidas PT, Pesidas, MC, and Cuadra (or those persons acting under their control) caused Axis to create and submit to Allstate treatment records and demands for payment relative to medical services that were (a) unnecessary, (b) charged at excessive rates, (c) not actually rendered as represented, (c) performed pursuant to an unlawful referral relationship, and/or (d) performed by an independent contractor.

999.    Such conduct is unlawful, and rendered each such claim non-compensable under New York's No-Fault laws.

1000.    Many of these facts—particularly (a) Geykhman, Sattarov, and Rahmatov's involvement in the direction and control of the physical therapist services purportedly rendered for Axis's patients, and (b) Axis's unlawful splitting of professional fees and profits with Geykhman, Sattarov, and Rahmatov are not readily evident within the documents submitted to Allstate by these Defendants and upon which Allstate relied in adjusting the claims and tendering payment in connection with each discrete patient claim.

1001.   Claims under New York's No-Fault Laws can only be submitted, and reimbursed, for treatment that was provided in accord with all applicable New York state licensing requirements.

1002.   Thus, every time that Geykhman, Sattarov, Rahmatov, Atlas, Go Flex, Ballener, JEVA, JA, Abrenica, Better Hands, Parcon, Pesidas PT, Pesidas, MC, and Cuadra to submit No-Fault reimbursement demands to Allstate, Axis and Awad (and those individuals working under their control) necessarily certified that Axis was eligible to be reimbursed under New York's No-Fault Laws.

1003.   The full extent of Geykhman, Sattarov, and Rahmatov's fraudulent and unlawful acts relative to their control over the Axis enterprise—including (a) Geykhman, Sattarov, and Rahmatov's participation in the operation and control of Axis, and (b) the unlawful channeling of Axis's professional proceeds to Geykhman, Sattarov, and Rahmatov was not known to Allstate until shortly before it commenced this action.

### R.   ATLAS ENTERPRISE

1004.   Awad is registered with the State of New York as Atlas's sole officer, director, and shareholder.

1005.   Geykhman and induced Atlas to cede control over the operation and management of Atlas to Geykhman during the relevant period.

1006.   Geykhman worked with Sattarov and Rahmatov to launder the proceeds of this scheme, which were comprised of professional fees paid to Atlas on No-Fault claims.

1007.   The documents created and filed with the State of New York related to Atlas deliberately omitted any reference to Geykhman, Sattarov, and Rahmatov's involvement with Atlas.

1008.   Based on the representations contained within the documents filed with the State of New York on behalf of Atlas, Allstate—even acting with reasonable diligence—could not possibly have discovered the nature and extent of Geykhman, Sattarov, and Rahmatov's domination and control over Awad and Atlas.

1009.   Geykhman, Sattarov, and Rahmatov took purposeful steps to conceal their involvement in the day-to-day operations of Atlas.

1010.   The purposeful concealment of Geykhman, Sattarov, and Rahmatov's controlling interests in Atlas allowed Geykhman to unlawfully control Atlas undetected.

1011.   Overall, the purposeful concealment of Geykhman, Sattarov, and Rahmatov's controlling interests in Atlas enabled them to violate New York law while also preventing Allstate from discovering their unlawful acts for a prolonged period.

1012.   At all relevant times during the operation of the Atlas enterprise, Geykhman, Sattarov, Rahmatov, Awad, Axis, Wellness PT, Rezende, Comfort, Cadet, MMA, Magid, Go Flex, Ballener, JEVA, Abrenica, MT, Tandingan, MC, and Cuadra caused Atlas to falsely certify that it was eligible to be reimbursed under New York's No-Fault Laws.

1013.   Because Geykhman, Sattarov, and Rahmatov were not licensed to practice physical therapy, or allowed to operate, control, or profit from a professional corporation organized to provide professional physical therapy services, and because Atlas was organized as a physical therapist-owned professional service corporation, Geykhman, Sattarov, and Rahmatov were never lawfully entitled to participate in, or in any way direct, the operation and management of Atlas.

1014.   Accordingly, because Geykhman, Sattarov, and Rahmatov unlawfully participated in the operation and management of Axis throughout the relevant period, Atlas was caused to

183

falsely claim eligibility for No-Fault reimbursement each and every time that it sought No-Fault reimbursement from Allstate.

1015.   Further, Atlas attested (or caused the attestation) to the medical necessity of the services allegedly performed in connection with Atlas's patients.

1016.   At all relevant times, Atlas as a duly licensed physical therapist, was legally and ethically obligated to act honestly and with integrity.

1017.   As alleged above, Geykhman, Sattarov, Rahmatov, Awad, Axis, Wellness PT, Rezende, Comfort, Cadet, MMA, Magid, Go Flex, Ballener, JEVA, Abrenica, MT, Tandingan, MC, and Cuadra (or those persons acting under their control) caused Atlas to create and submit to Allstate treatment records and demands for payment relative to medical services that were (a) unnecessary, (b) charged at excessive rates, (c) not actually rendered as represented, (c) performed pursuant to an unlawful referral relationship, and/or (d) performed by an independent contractor.

1018.   Such conduct is unlawful, and rendered each such claim non-compensable under New York's No-Fault laws.

1019.   Many of these facts—particularly (a) Geykhman, Sattarov, and Rahmatov's involvement in the direction and control of the physical therapist services purportedly rendered for Atlas's patients, and (b) Atlas's unlawful splitting of professional fees and profits with Geykhman, Sattarov, and Rahmatov are not readily evident within the documents submitted to Allstate by these Defendants and upon which Allstate relied in adjusting the claims and tendering payment in connection with each discrete patient claim.

1020.   Claims under New York's No-Fault Laws can only be submitted, and reimbursed, for treatment that was provided in accord with all applicable New York state licensing requirements.

1021.   Thus, every time that Geykhman, Sattarov, Rahmatov, Awad, Axis, Wellness PT, Rezende, Comfort, Cadet, MMA, Magid, Go Flex, Ballener, JEVA, Abrenica, MT, Tandingan, MC, and Cuadra caused Atlas to submit No-Fault reimbursement demands to Allstate, Atlas and Awad (and those individuals working under their control) necessarily certified that Atlas was eligible to be reimbursed under New York's No-Fault Laws.

1022.   The full extent of Geykhman, Sattarov, and Rahmatov's fraudulent and unlawful acts relative to their control over the Atlas enterprise—including (a) Geykhman, Sattarov, and Rahmatov's participation in the operation and control of Axis, and (b) the unlawful channeling of Atlas's professional proceeds to Geykhman, Sattarov, and Rahmatov was not known to Allstate until shortly before it commenced this action.

## VIII.   **ALLSTATE'S JUSTIFIABLE RELIANCE**

1023.   Each claim submitted to Allstate by (or on behalf of) the PC Defendants was verified pursuant to Insurance Law § 403.

1024.   At all relevant times, the Nominal Owner Defendants, as a duly licensed physical therapists, were legally and ethically obligated to act honestly and with integrity, and were also legally and ethically obligated to act in accordance with any other aspect of their oath as licensed medical professionals.

1025.   The Defendants submitted NF-3 bills to Allstate that certified the PC Defendants' eligibility for No-Fault payments.  The Defendants submitted the NF-3 bills to Allstate to induce Allstate to promptly pay the PC Defendants' patient invoices.  The Defendants also hired attorneys and law firms to pursue collection of the fraudulent and/or non-compensable charges from Allstate. These attorneys and law firms routinely file time-consuming and expensive lawsuits and

arbitration matters against Allstate in the event that the PC Defendants' charges are not paid in full.

1026.   Allstate is under statutory and contractual obligations to promptly and fairly process claims within thirty (30) days.  The facially valid documents submitted to Allstate in support of the fraudulent and/or non-compensable charges at issue, combined with the material misrepresentations described above, were designed to, and did, cause Allstate to justifiably rely on them.

1027.   At all relevant times, as alleged above, the Defendants concealed from Allstate the truth regarding the PC Defendants' reimbursement eligibility under New York law.

1028.   In reasonable reliance on these misrepresentations, Allstate paid money to the PC Defendants to its detriment.

1029.   Allstate would not have paid these monies had the Defendants provided true and accurate information about the PC Defendants' reimbursement eligibility under New York law, including the PC Defendants' No-Fault reimbursement eligibility under N.Y. Insurance Law § 5101, *et seq*.

1030.   As a result, Allstate was caused to make No-Fault benefit payments totaling over $1,606,792.15 to the PC Defendants in reasonable reliance on the PC Defendants' false No-Fault claim reimbursement documentation, and the false representations regarding the PC Defendants' eligibility for reimbursement under New York's No-Fault Laws.

## IX.   DAMAGES

1031.   The Defendants' pattern of fraudulent conduct injured Allstate in its business and property by reason of the aforesaid violations of state and federal law.  Although it is not necessary for Allstate to calculate damages with specificity at this stage in the litigation (whereas Allstate's

damages continue to accrue), Allstate's injury includes, but is not limited to, compensatory

damages for:

a.    Payments made to Better Hands in connection with first-party ("No-Fault") claims in excess of $129,095.00, the exact amount to be determined at trial.  The chart annexed as Exhibit 39, and incorporated herein as if set forth in its entirety, identifies Allstate's payments to Better Hands in connection with first-party ("No-Fault") claims determined to be fraudulent and not compensable as of the filing of this Complaint.

b.    Payments made to Hands of Hope in connection with first-party ("No-Fault") claims in excess of $38,488.00, the exact amount to be determined at trial.  The chart annexed as Exhibit 40, and incorporated herein as if set forth in its entirety, identifies Allstate's payments to Hands of Hope in connection with first-party ("No-Fault") claims determined to be fraudulent and not compensable as of the filing of this Complaint.

c.    Payments made to July PT in connection with first-party ("No-Fault") claims in excess of $78,604.00, the exact amount to be determined at trial.  The chart annexed as Exhibit 41, and incorporated herein as if set forth in its entirety, identifies Allstate's payments to July PT in connection with first-party ("No-Fault") claims determined to be fraudulent and not compensable as of the filing of this Complaint.

d.    Payments made to MMA in connection with first-party ("No-Fault") claims in excess of $78,080.00, the exact amount to be determined at trial.  The chart annexed as Exhibit 42, and incorporated herein as if set forth in its entirety, identifies Allstate's payments to MMA in connection with first-party ("No-Fault") claims determined to be fraudulent and not compensable as of the filing of this Complaint.

e.    Payments made to Pyramid in connection with first-party ("No-Fault") claims in excess of $92,394.00, the exact amount to be determined at trial.  The chart annexed as Exhibit 43, and incorporated herein as if set forth in its entirety, identifies Allstate's payments to Pyramid in connection with first-party ("No-Fault") claims determined to be fraudulent and not compensable as of the filing of this Complaint.

f.    Payments made to Comfort in connection with first-party ("No-Fault") claims in excess of $107,808.00, the exact amount to be determined at trial.  The chart annexed as Exhibit 44, and incorporated herein as if set forth in its entirety, identifies Allstate's payments to Comfort in connection with first-party ("No-Fault") claims determined to be fraudulent and not compensable as of the filing of this Complaint.

g.    Payments made to Axis in connection with first-party ("No-Fault") claims in excess of $55,087.00, the exact amount to be determined at trial.  The chart annexed as Exhibit 45, and incorporated herein as if set forth in its entirety, identifies Allstate's

payments to Atlas in connection with first-party ("No-Fault") claims determined to be fraudulent and not compensable as of the filing of this Complaint.

h.       Payments made to Atlas in connection with first-party ("No-Fault") claims in excess of $84,044.00, the exact amount to be determined at trial.  The chart annexed as Exhibit 46, and incorporated herein as if set forth in its entirety, identifies Allstate's payments to Atlas in connection with first-party ("No-Fault") claims determined to be fraudulent and not compensable as of the filing of this Complaint.

i.       Payments made to MT in connection with first-party ("No-Fault") claims in excess of $50,907.00, the exact amount to be determined at trial.  The chart annexed as Exhibit 47, and incorporated herein as if set forth in its entirety, identifies Allstate's payments to MT in connection with first-party ("No-Fault") claims determined to be fraudulent and not compensable as of the filing of this Complaint.

j.       Payments made to Life Care in connection with first-party ("No-Fault") claims in excess of $78,713.00, the exact amount to be determined at trial.  The chart annexed as Exhibit 48, and incorporated herein as if set forth in its entirety, identifies Allstate's payments to Life Care in connection with first-party ("No-Fault") claims determined to be fraudulent and not compensable as of the filing of this Complaint.

k.       Payments made to JA in connection with first-party ("No-Fault") claims in excess of $101,741.00, the exact amount to be determined at trial.  The chart annexed as Exhibit 49, and incorporated herein as if set forth in its entirety, identifies Allstate's payments to JA in connection with first-party ("No-Fault") claims determined to be fraudulent and not compensable as of the filing of this Complaint.

l.       Payments made to Pesidas PT in connection with first-party ("No-Fault") claims in excess of $153,289.00, the exact amount to be determined at trial.  The chart annexed as Exhibit 50 and incorporated herein as if set forth in its entirety, identifies Allstate's payments to Pesidas PT in connection with first-party ("No-Fault") claims determined to be fraudulent and not compensable as of the filing of this Complaint.

m.       Payments made to Wellness PT in connection with first-party ("No-Fault") claims in excess of $106,733.00, the exact amount to be determined at trial.  The chart annexed as Exhibit 51, and incorporated herein as if set forth in its entirety, identifies Allstate's payments to Wellness PT in connection with first-party ("No-Fault") claims determined to be fraudulent and not compensable as of the filing of this Complaint.

n.       Payments made to Hand by Hand in connection with first-party ("No-Fault") claims in excess of $20,163.00, the exact amount to be determined at trial.  The chart annexed as Exhibit 52, and incorporated herein as if set forth in its entirety, identifies Allstate's payments to Hand by Hand in connection with first-party ("No-

188

Fault") claims determined to be fraudulent and not compensable as of the filing of this Complaint

o.    Payments made to MC in connection with first-party ("No-Fault") claims in excess of $147,712.00, the exact amount to be determined at trial. The chart annexed as Exhibit 53, and incorporated herein as if set forth in its entirety, identifies Allstate's payments to MC in connection with first-party ("No-Fault") claims determined to be fraudulent and not compensable as of the filing of this Complaint.

p.    Payments made to Go Flex in connection with first-party ("No-Fault") claims in excess of $119,304.00, the exact amount to be determined at trial. The chart annexed as Exhibit 54, and incorporated herein as if set forth in its entirety, identifies Allstate's payments to Go Flex in connection with first-party ("No-Fault") claims determined to be fraudulent and not compensable as of the filing of this Complaint.

q.    Payments made to JEVA in connection with first-party ("No-Fault") claims in excess of $100,239.00, the exact amount to be determined at trial. The chart annexed as Exhibit 55, and incorporated herein as if set forth in its entirety, identifies Allstate's payments to JEVA in connection with first-party ("No-Fault") claims determined to be fraudulent and not compensable as of the filing of this Complaint.

r.    Payments made to Finesse Care in connection with first-party ("No-Fault") claims in excess of $64,382.00, the exact amount to be determined at trial. The chart annexed as Exhibit 56, and incorporated herein as if set forth in its entirety, identifies Allstate's payments to Finesse Care in connection with first-party ("No-Fault") claims determined to be fraudulent and not compensable as of the filing of this Complaint.

## X.    **CAUSES OF ACTION**

**COUNT I**
**VIOLATIONS OF 18 U.S.C. § 1962(c)**
**BETTER HANDS PHYSICAL THERAPY P.C. ENTERPRISE**
**(Against Kristine May Bitanga Parcon, P.T., Vladimir Geykhman, Alexander Gulkarov, Artur Sattarov, Jasur Rahmatov, Go Flex Rehab Physical Therapy, P.C., JEVA Physical Therapy P.C., Joseph Edwin Villacorte Abrenica, P.T., Raine M. Pesidas Physical Therapy P.C., Rainegale Marie Mendiola Pesidas, P.T., MMA Physical Therapy P.C., Mazen Mohamed Ahmed Ali Abdel Magid, P.T., MT Physical Therapy P.C., Madonna Parunga Tandingan, P.T., Axis PT, P.C., Mohamed Awad Awad, P.T., JA Physical Therapy P.C., MC Physical Therapy, P.C., Michelle Nesas Cuadra, P.T., Finesse Care Physical Therapy, P.C., Ahmed Hamdy Emara, P.T., July PT, P.C., Mahmoud Elsayed Elsanaa, P.T., Hands of Hope P.T., P.C., Motaz Mohamoud Ebeido, P.T., Comfort Physical Therapy, PLLC, Melissa C. Cadet, P.T., Wellness Physical Therapy Rehabilitation PLLC, Milena Rezende, P.T. a/k/a Milena Reyes, Pyramid Care PT, P.C., and Mohamed Hablas, P.T.)**

189

1032.   Allstate re-alleges, re-pleads and incorporates by reference the allegations set forth in paragraphs 1-1031 as if set forth fully herein.

1033.   In furtherance of their operation and management of Better Hands Physical Therapy, P.C. ("Better Hands"), Kristine May Bitanga Parcon, P.T., Vladimir Geykhman, Alexander Gulkarov, Artur Sattarov, Jasur Rahmatov, Go Flex Rehab Physical Therapy, P.C., JEVA Physical Therapy P.C., Joseph Edwin Villacorte Abrenica, P.T., Raine M. Pesidas Physical Therapy P.C., Rainegale Marie Mendiola Pesidas, P.T., MMA Physical Therapy P.C., Mazen Mohamed Ahmed Ali Abdel Magid, P.T., MT Physical Therapy P.C., Madonna Parunga Tandingan, P.T., Axis PT, P.C., Mohamed Awad Awad, P.T., JA Physical Therapy P.C., MC Physical Therapy, P.C., Michelle Nesas Cuadra, P.T., Finesse Care Physical Therapy, P.C., Ahmed Hamdy Emara, P.T., July PT, P.C., Mahmoud Elsayed Elsanaa, P.T., Hands of Hope P.T., P.C., Motaz Mohamoud Ebeido, P.T., Comfort Physical Therapy, PLLC, Melissa C. Cadet, P.T., Wellness Physical Therapy Rehabilitation PLLC, Milena Rezende, P.T. a/k/a Milena Reyes, Pyramid Care PT, P.C., and Mohamed Hablas, P.T. (collectively, "Count I Defendants") intentionally prepared and mailed (or caused to be prepared and mailed) false medical documentation in connection with Allstate insurance claims in furtherance of their scheme to defraud.

1034.   The Count I Defendants employed one or more mailings to demand and/or receive payment from Allstate on certain dates, including, but not limited to, those dates identified in the chart at Exhibit 21.

1035.   Among other things, NF-3 forms, medical billing invoices, medical reports, applications for insurance, and premium checks were routinely delivered to Allstate through the U.S. Mail.

190

1036.   Policies of insurance were delivered to insureds through the U.S. Mail.

1037.   Payments made by Allstate to Better Hands were delivered through the U.S. Mail.

1038.   As documented above, the Count I Defendants repeatedly and intentionally submitted, or caused to be submitted, NF-3 forms and other claim-related documentation to Allstate related to expenses and/or services that were purportedly performed at Better Hands for the purpose of collecting payment from Allstate under the Personal Injury Protection benefits portion of the Allstate policies and applicable New York No-Fault laws.  As a result of, and in reasonable reliance upon, the mailing and/or submission of these misleading documents and materially false representations, Allstate, by its agents and employees, issued drafts to Better Hands, for the benefit of one or more of the Count I Defendants, that would not otherwise have been paid.

1039.   The Count I Defendants' pattern of preparing and mailing (or causing/directing the preparation and mailing of) these documents and other claim-related materials, each appearing legitimate on their face, also prevented Allstate from discovering this scheme for a long period of time, thus enabling the Count I Defendants to continue without being detected.

1040.   The facts set forth above constitute indictable offenses pursuant to 18 U.S.C. § 1341 (mail fraud).

1041.   By creating and then mailing to Allstate (or directing the creation and subsequent mailing to Allstate) of numerous fraudulent documents and other claim-related materials in an ongoing scheme, the Count I Defendants engaged in a pattern of racketeering activity within the meaning of 18 U.S.C. § 1962(c).

1042.   The activities alleged in this case had the direct effect of causing funds to be transferred from Allstate to Better Hands for the benefit of the Count I Defendants.

191

1043.   The unlawful activities alleged in this case also had the direct effect of causing these funds, including professional fees and profits, to be channeled to Vladimir Geykhman, Alexander Gulkarov, Artur Sattarov, and Jasur Rahmatov for their own personal use and financial gain.

1044.   Allstate is in the business of writing insurance and paying claims in the State of New York.  Insurance fraud schemes practiced here and elsewhere have a deleterious impact on Allstate's overall financial well-being and adversely affect insurance rates.

1045.   Better Hands constitutes an enterprise engaged in, and the activities of which affect, interstate commerce.

1046.   The Count I Defendants associated with the foregoing enterprise, and participated—both directly and indirectly—in the conduct of the Better Hands enterprise through a pattern of racketeering activities.

1047.   Allstate is a "person" as defined by 18 U.S.C. § 1961(3), injured in its business or property by reason of the Count I Defendants' conduct.

1048.   The Count I Defendants' conduct in violation of 18 U.S.C. § 1962(c) was the direct and proximate cause of Allstate's injury.

1049.   By virtue of the Count I Defendants' violations of 18 U.S.C. § 1962(c), Allstate is entitled to recover from them three times the damages sustained by reason of the claims submitted by them, and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

**COUNT II**
**VIOLATION 18 U.S.C. § 1962(d)**
**BETTER HANDS PHYSICAL THERAPY, P.C. ENTERPRISE**
**(Against Kristine May Bitanga Parcon, P.T., Vladimir Geykhman, Alexander Gulkarov, Artur Sattarov, Jasur Rahmatov, Go Flex Rehab Physical Therapy, P.C., JEVA Physical Therapy P.C., Joseph Edwin Villacorte Abrenica, P.T., Raine M. Pesidas Physical Therapy P.C., Rainegale Marie Mendiola Pesidas, P.T., MMA Physical Therapy P.C., Mazen Mohamed Ahmed Ali Abdel Magid, P.T., MT Physical Therapy P.C., Madonna Parunga Tandingan, P.T., Axis PT, P.C., Mohamed Awad Awad, P.T., JA Physical Therapy P.C., MC Physical Therapy, P.C., Michelle Nesas Cuadra, P.T., Finesse Care Physical Therapy, P.C., Ahmed Hamdy Emara, P.T., July PT, P.C., Mahmoud Elsayed Elsanaa, P.T., Hands of Hope P.T., P.C., Motaz Mohamoud Ebeido, P.T., Comfort Physical Therapy, PLLC, Melissa C. Cadet, P.T., Wellness Physical Therapy Rehabilitation PLLC, Milena Rezende, P.T. a/k/a Milena Reyes, Pyramid Care PT, P.C., and Mohamed Hablas, P.T.)**

1050.   Allstate re-alleges, re-pleads and incorporates by reference the allegations set forth in paragraphs 1-1031 as if set forth fully herein.

1051.   Through their participation in the operation and management of Better Hands Physical Therapy, P.C. ("Better Hands"), Kristine May Bitanga Parcon, P.T., Vladimir Geykhman, Alexander Gulkarov, Artur Sattarov, Jasur Rahmatov, Go Flex Rehab Physical Therapy, P.C., JEVA Physical Therapy P.C., Joseph Edwin Villacorte Abrenica, P.T., Raine M. Pesidas Physical Therapy P.C., Rainegale Marie Mendiola Pesidas, P.T., MMA Physical Therapy P.C., Mazen Mohamed Ahmed Ali Abdel Magid, P.T., MT Physical Therapy P.C., Madonna Parunga Tandingan, P.T., Axis PT, P.C., Mohamed Awad Awad, P.T., JA Physical Therapy P.C., MC Physical Therapy, P.C., Michelle Nesas Cuadra, P.T., Finesse Care Physical Therapy, P.C., Ahmed Hamdy Emara, P.T., July PT, P.C., Mahmoud Elsayed Elsanaa, P.T., Hands of Hope P.T., P.C., Motaz Mohamoud Ebeido, P.T., Comfort Physical Therapy, PLLC, Melissa C. Cadet, P.T., Wellness Physical Therapy Rehabilitation PLLC, Milena Rezende, P.T. a/k/a Milena Reyes, Pyramid Care PT, P.C., and Mohamed Hablas, P.T. (collectively, "Count II Defendants") conspired with each other to violate 18 U.S.C. § 1962(c).

1052.   The Count II Defendants each agreed to participate in a conspiracy to violate 18 U.S.C. § 1962(c) by agreeing to conduct the affairs of Better Hands by means of a pattern of racketeering activity, including numerous instances of mail fraud as set forth in Exhibit 21, and through the preparation and mailing of fraudulent insurance claim documents, including NF-3 forms, to Allstate.

1053.   The purpose of the conspiracy was to obtain, for the Count II Defendants' benefit, No-Fault benefit payments from Allstate on behalf of Better Hands, even though Better Hands, as a result of the Count II Defendants' unlawful conduct, was not eligible to collect such No-Fault benefit payments.

1054.   The purpose of the conspiracy was also to cause professional fees and profits collected by Better Hands to be channeled for the benefit of Vladimir Geykhman, Alexander Gulkarov, Artur Sattarov, and Jasur Rahmatov.

1055.   The Count II Defendants were aware of these purposes and agreed to take steps to meet the conspiracy's objectives, including the creation of and mailing of documents and other claim-related materials, including NF-3 forms, containing misrepresentations and/or material omissions.

1056.   Allstate has been injured in its business and property by reason of this conspiratorial conduct whereas Allstate has been induced to make No-Fault claim payments as a result of the Count II Defendants' unlawful conduct described herein.

1057.   By virtue of this violation of 18 U.S.C. § 1962(d), the Count II Defendants are jointly and severally liable to Allstate, and Allstate is entitled to recover from each of the Count II Defendants three times the damages sustained by reason of the claims submitted by the

Defendants, and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

<u>COUNT III</u>
**VIOLATIONS OF 18 U.S.C. § 1962(c)**
**HANDS OF HOPE P.T., P.C. ENTERPRISE**
**(Against Motaz Mahmoud Ebeido, P.T., Vladimir Geykhman, Alexander Gulkarov, Artur Sattarov, Jasur Rahmatov, July PT, P.C., Mahmoud Elsayed Elsanaa, P.T., Pyramid Care PT, P.C., Mohamed Hablas, P.T., MMA Physical Therapy, P.C., Mazen Mohamed Ahmed Ali Abdel Magid, P.T., Comfort Physical Therapy, PLLC, Melissa C. Cadet, P.T., Wellness Physical Therapy Rehabilitation, PLLC, Milena Rezende, P.T. a/k/a Milena Reyes, MT Physical Therapy P.C., Madonna Parungo Tandingan, P.T., Raine M. Pesidas Physical Therapy, P.C., Rainegale Marie Mendiola Pesidas, P.T., Better Hands Physical Therapy P.C., Kristine May Bitanga Parcon, P.T., Go Flex Rehab Physical Therapy P.C., Lyn Jonson Ballener, P.T., JEVA Physical Therapy P.C., JA Physical Therapy, P.C., Joseph Edwin Villacorte Abrenica, P.C., MC Physical Therapy, P.C., and Michelle Nesas Cuadra, P.T.)**

1058.    Allstate re-alleges, re-pleads and incorporates by reference the allegations set forth in paragraphs 1-1031 as if set forth fully herein.

1059.    In furtherance of their operation and management of Hands of Hope P.T., P.C. ("Hands of Hope"), Motaz Mahmoud Ebeido, P.T., Vladimir Geykhman, Alexander Gulkarov, Artur Sattarov, Jasur Rahmatov, July PT, P.C., Mahmoud Elsayed Elsanaa, P.T., Pyramid Care PT, P.C., Mohamed Hablas, P.T., MMA Physical Therapy, P.C., Mazen Mohamed Ahmed Ali Abdel Magid, P.T., Comfort Physical Therapy, PLLC, Melissa C. Cadet, P.T., Wellness Physical Therapy Rehabilitation, PLLC, Milena Rezende, P.T. a/k/a Milena Reyes, MT Physical Therapy P.C., Madonna Parungo Tandingan, P.T., Raine M. Pesidas Physical Therapy, P.C., Rainegale Marie Mendiola Pesidas, P.T., Better Hands Physical Therapy P.C., Kristine May Bitanga Parcon, P.T., Go Flex Rehab Physical Therapy P.C., Lyn Jonson Ballener, P.T., JEVA Physical Therapy P.C., JA Physical Therapy, P.C., Joseph Edwin Villacorte Abrenica, P.C., MC Physical Therapy, P.C., and Michelle Nesas Cuadra, P.T. (collectively, "Count III Defendants") intentionally

prepared and mailed (or caused to be prepared and mailed) false medical documentation in connection with Allstate insurance claims in furtherance of their scheme to defraud.

1060.   The Count III Defendants employed one or more mailings to demand and/or receive payment from Allstate on certain dates, including, but not limited to, those dates identified in the chart at Exhibit 22.

1061.   Among other things, NF-3 forms, medical billing invoices, medical reports, applications for insurance, and premium checks were routinely delivered to Allstate through the U.S. Mail.

1062.   Policies of insurance were delivered to insureds through the U.S. Mail.

1063.   Payments made by Allstate to Hands of Hope were delivered through the U.S. Mail.

1064.   As documented above, the Count III Defendants repeatedly and intentionally submitted, or caused to be submitted, NF-3 forms and other claim-related documentation to Allstate related to expenses and/or services that were purportedly performed at Hands of Hope for the purpose of collecting payment from Allstate under the Personal Injury Protection benefits portion of the Allstate policies and applicable New York No-Fault laws.  As a result of, and in reasonable reliance upon, the mailing and/or submission of these misleading documents and materially false representations, Allstate, by its agents and employees, issued drafts to Hands of Hope that would not otherwise have been paid.

1065.   The Count III Defendants' pattern of preparing and mailing (or causing/directing the preparation and mailing of) these documents and other claim-related materials, each appearing legitimate on their face, also prevented Allstate from discovering this scheme for a long period of time, thus enabling the Count III Defendants to continue without being detected.

1066.   The facts set forth above constitute indictable offenses pursuant to 18 U.S.C. § 1341 (mail fraud).

1067.   By creating and then mailing to Allstate (or directing the creation and subsequent mailing to Allstate) of numerous fraudulent documents and other claim-related materials in an ongoing scheme, the Count III Defendants engaged in a pattern of racketeering activity within the meaning of 18 U.S.C. § 1962(c).

1068.   The activities alleged in this case had the direct effect of causing funds to be transferred from Allstate to Hands of Hope for the benefit of the Count III Defendants.

1069.   The unlawful activities alleged in this case also had the direct effect of causing these funds, including professional fees and profits, to be channeled to Vladimir Geykhman, Alexander Gulkarov, Artur Sattarov, and Jasur Rahmatov for their own personal use and financial gain.

1070.   Allstate is in the business of writing insurance and paying claims in the State of New York.  Insurance fraud schemes practiced here and elsewhere have a deleterious impact on Allstate's overall financial well-being and adversely affect insurance rates.

1071.   Hands of Hope constitutes an enterprise engaged in, and the activities of which affect, interstate commerce.

1072.  The Count III Defendants associated with the foregoing enterprise, and participated—both directly and indirectly—in the conduct of the Hands of Hope enterprise through a pattern of racketeering activities.

1073.   Allstate is a "person" as defined by 18 U.S.C. § 1961(3), injured in its business or property by reason of the Count III Defendants' conduct.

1074.   The Count III Defendants' conduct in violation of 18 U.S.C. § 1962(c) was the direct and proximate cause of Allstate's injury.

1075.   By virtue of the Count III Defendants' violations of 18 U.S.C. § 1962(c), Allstate is entitled to recover from them three times the damages sustained by reason of the claims submitted by them, and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

**COUNT IV**
**VIOLATION 18 U.S.C. § 1962(d)**
**HANDS OF HOPE P.T., P.C. ENTERPRISE**
**(Against Motaz Mahmoud Ebeido, P.T., Vladimir Geykhman, Alexander Gulkarov, Artur Sattarov, Jasur Rahmatov, July PT, P.C., Mahmoud Elsayed Elsanaa, P.T., Pyramid Care PT, P.C., Mohamed Hablas, P.T., MMA Physical Therapy, P.C., Mazen Mohamed Ahmed Ali Abdel Magid, P.T., Comfort Physical Therapy, PLLC, Melissa C. Cadet, P.T., Wellness Physical Therapy Rehabilitation, PLLC, Milena Rezende, P.T. a/k/a Milena Reyes, MT Physical Therapy P.C., Madonna Parungo Tandingan, P.T., Raine M. Pesidas Physical Therapy, P.C., Rainegale Marie Mendiola Pesidas, P.T., Better Hands Physical Therapy P.C., Kristine May Bitanga Parcon, P.T., Go Flex Rehab Physical Therapy P.C., Lyn Jonson Ballener, P.T., JEVA Physical Therapy P.C., JA Physical Therapy, P.C., Joseph Edwin Villacorte Abrenica, P.C., MC Physical Therapy, P.C., and Michelle Nesas Cuadra, P.T.)**

1076.   Allstate re-alleges, re-pleads and incorporates by reference the allegations set forth in paragraphs 1-1031 as if set forth fully herein.

1077.   Through their participation in the operation and management of Hands of Hope P.T., P.C. ("Hands of Hope"), Motaz Mahmoud Ebeido, P.T., Vladimir Geykhman, Alexander Gulkarov, Artur Sattarov, Jasur Rahmatov, July PT, P.C., Mahmoud Elsayed Elsanaa, P.T., Pyramid Care PT, P.C., Mohamed Hablas, P.T., MMA Physical Therapy, P.C., Mazen Mohamed Ahmed Ali Abdel Magid, P.T., Comfort Physical Therapy, PLLC, Melissa C. Cadet, P.T., Wellness Physical Therapy Rehabilitation, PLLC, Milena Rezende, P.T. a/k/a Milena Reyes, MT Physical Therapy P.C., Madonna Parungo Tandingan, P.T., Raine M. Pesidas Physical Therapy, P.C., Rainegale Marie Mendiola Pesidas, P.T., Better Hands Physical Therapy P.C., Kristine May

Bitanga Parcon, P.T., Go Flex Rehab Physical Therapy P.C., Lyn Jonson Ballener, P.T., JEVA Physical Therapy P.C., JA Physical Therapy, P.C., Joseph Edwin Villacorte Abrenica, P.C., MC Physical Therapy, P.C., and Michelle Nesas Cuadra, P.T. (collectively, "Count IV Defendants") conspired with each other to violate 18 U.S.C. § 1962(c).

1078.   The Count IV Defendants each agreed to participate in a conspiracy to violate 18 U.S.C. § 1962(c) by agreeing to conduct the affairs of Hands of Hope by means of a pattern of racketeering activity, including numerous instances of mail fraud as set forth in Exhibit 22, and through the preparation and mailing of fraudulent insurance claim documents, including NF-3 forms, to Allstate.

1079.   The purpose of the conspiracy was to obtain, for the Count IV Defendants' benefit, No-Fault payments from Allstate on behalf of Hands of Hope even though Hands of Hope, as a result of the Count IV Defendants' unlawful conduct, was not eligible to collect such No-Fault benefit payments.

1080.   The purpose of the conspiracy was also to cause professional fees and profits collected by Hands of Hope to be channeled to Vladimir Geykhman, Alexander Gulkarov, Artur Sattarov, and Jasur Rahmatov.  The Count III Defendants were aware of this purpose and agreed to take steps to meet the conspiracy's objectives, including the creation of and mailing of documents and other claim-related materials, including NF-3 forms, containing misrepresentations and/or material omissions.

1081.   The Count IV Defendants' use of Hands of Hope to funnel professional fees and profits from Hands of Hope to Vladimir Geykhman, Alexander Gulkarov, Artur Sattarov, and Jasur Rahmatov was unlawful, and allowed Vladimir Geykhman, Alexander Gulkarov, Artur Sattarov, and Jasur Rahmatov to exercise control over the operation and management of Hands of

Hope and further permitted Vladimir Geykhman, Alexander Gulkarov, Artur Sattarov, and Jasur Rahmatov to share in the professional fees and profits collected by Hands of Hope.

1082.   Allstate has been injured in its business and property by reason of this conspiratorial conduct whereas Allstate has been induced to make No-Fault claim payments as a result of the Count IV Defendants' unlawful conduct described herein.

1083.   By virtue of this violation of 18 U.S.C. § 1962(d), the Count IV Defendants are jointly and severally liable to Allstate, and Allstate is entitled to recover from each of the Count IV Defendants three times the damages sustained by reason of the claims submitted by the Defendants, and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

### COUNT V
### VIOLATIONS OF 18 U.S.C. § 1962(c)
### JULY PT, P.C. ENTERPRISE
**(Against Mahmoud Elsayed Elsanaa, P.T., Vladimir Geykhman, Alexander Gulkarov, Artur Sattarov, Jasur Rahmatov, Hand by Hand PT, P.C., Hands of Hope P.T., P.C., Motaz Mahmoud Ebeido, P.T., Pyramid Care PT, P.C., Mohamed Hablas, P.T., MMA Physical Therapy, P.C., Mazen Mohamed Ahmed Ali Abdel Magid, P.T., MT Physical Therapy, P.C., Madonna Parungo Tandingan, P.T., Comfort Physical Therapy, PLLC, Melissa C. Cadet, P.T., Wellness Physical Therapy Rehabilitation PLLC, Milena Rezende, P.T. a/k/a Milena Reyes, Raine M. Pesidas Physical Therapy P.C., Rainegale Marie Mendiola Pesidas, P.T., Better Hands Physical Therapy P.C., Kristine May Bitanga Parcon, P.T., Go Flex Rehab Physical Therapy, P.C., Lyn Jonson Ballener, P.T., JEVA Physical Therapy P.C., Joseph Edwin Villacorte Abrenica, P.T., MC Physical Therapy, P.C., and Michelle Nesas Cuadra, P.T.)**

1084.   Allstate re-alleges, re-pleads and incorporates by reference the allegations set forth in paragraphs 1-1031 as if set forth fully herein.

1085.   In furtherance of their operation and management of July PT, P.C. ("July PT"), Defendants Mahmoud Elsayed Elsanaa, P.T., Vladimir Geykhman, Alexander Gulkarov, Artur Sattarov, Jasur Rahmatov, Hand by Hand PT, P.C., Hands of Hope P.T., P.C., Motaz Mahmoud

Ebeido, P.T., Pyramid Care PT, P.C., Mohamed Hablas, P.T., MMA Physical Therapy, P.C., Mazen Mohamed Ahmed Ali Abdel Magid, P.T., MT Physical Therapy, P.C., Madonna Parungo Tandingan, P.T., Comfort Physical Therapy, PLLC, Melissa C. Cadet, P.T., Wellness Physical Therapy Rehabilitation PLLC, Milena Rezende, P.T. a/k/a Milena Reyes, Raine M. Pesidas Physical Therapy P.C., Rainegale Marie Mendiola Pesidas, P.T., Better Hands Physical Therapy P.C., Kristine May Bitanga Parcon, P.T., Go Flex Rehab Physical Therapy, P.C., Lyn Jonson Ballener, P.T., JEVA Physical Therapy P.C., Joseph Edwin Villacorte Abrenica, P.T., MC Physical Therapy, P.C., and Michelle Nesas Cuadra, P.T. (collectively, "Count V Defendants") intentionally prepared and mailed (or caused to be prepared and mailed) false medical documentation in connection with Allstate insurance claims in furtherance of their scheme to defraud.

1086. The Count V Defendants employed one or more mailings to demand and/or receive payment from Allstate on certain dates, including, but not limited to, those dates identified in the chart at Exhibit 23.

1087. Among other things, NF-3 forms, medical billing invoices, medical reports, applications for insurance, and premium checks were routinely delivered to Allstate through the U.S. Mail.

1088. Policies of insurance were delivered to insureds through the U.S. Mail.

1089. Payments made by Allstate to July PT were delivered through the U.S. Mail.

1090. As documented above, the Count V Defendants repeatedly and intentionally submitted, or caused to be submitted, NF-3 forms and other claim-related documentation to Allstate related to expenses and/or services that were purportedly performed at July PT for the

purpose of collecting payment from Allstate under the Personal Injury Protection benefits portion of the Allstate policies and applicable New York No-Fault laws.

1091.   As a result of, and in reasonable reliance upon, the mailing and/or submission of these misleading documents and materially false representations, Allstate, by its agents and employees, issued drafts to July PT that would not otherwise have been paid.

1092.   The Count V Defendants' pattern of preparing and mailing (or causing/directing the preparation and mailing of) these documents and other claim-related materials, each appearing legitimate on their face, also prevented Allstate from discovering this scheme for a long period of time, thus enabling the Count V Defendants to continue without being detected.

1093.   The facts set forth above constitute indictable offenses pursuant to 18 U.S.C. § 1341 (mail fraud).

1094.   By creating and then mailing to Allstate (or directing the creation and subsequent mailing to Allstate) of numerous fraudulent documents and other claim-related materials in an ongoing scheme, the Count V Defendants engaged in a pattern of racketeering activity within the meaning of 18 U.S.C. § 1962(c).

1095.   The activities alleged in this case had the direct effect of causing funds to be transferred from Allstate to July PT for the benefit of the Count V Defendants.

1096.   The unlawful activities alleged in this case also had the direct effect of causing these funds, including professional fees and profits, to be channeled to Vladimir Geykhman, Alexander Gulkarov, Artur Sattarov, and Jasur Rahmatov for their own personal use and financial gain.

1097.   Allstate is in the business of writing insurance and paying claims in the State of New York.  Insurance fraud schemes practiced here and elsewhere have a deleterious impact on Allstate's overall financial well-being and adversely affect insurance rates.

1098.   July PT constitutes an enterprise engaged in, and the activities of which affect, interstate commerce.

1099.   The Count V Defendants associated with the foregoing enterprise, and participated—both directly and indirectly—in the conduct of this enterprise through a pattern of racketeering activities.

1100.   Allstate is a "person" as defined by 18 U.S.C. § 1961(3), injured in its business or property by reason of the Count V Defendants' conduct.

1101.   The Count V Defendants' conduct in violation of 18 U.S.C. § 1962(c) was the direct and proximate cause of Allstate's injury.

1102.   By virtue of the Count V Defendants' violations of 18 U.S.C. § 1962(c), Allstate is entitled to recover from them three times the damages sustained by reason of the claims submitted by them, and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

## COUNT VI
### VIOLATION 18 U.S.C. § 1962(d)
### JULY PT, P.C. ENTERPRISE
**(Against Mahmoud Elsayed Elsanaa, P.T., Vladimir Geykhman, Alexander Gulkarov, Artur Sattarov, Jasur Rahmatov, Hand by Hand PT, P.C., Hands of Hope P.T., P.C., Motaz Mahmoud Ebeido, P.T., Pyramid Care PT, P.C., Mohamed Hablas, P.T., MMA Physical Therapy, P.C., Mazen Mohamed Ahmed Ali Abdel Magid, P.T., MT Physical Therapy, P.C., Madonna Parungo Tandingan, P.T., Comfort Physical Therapy, PLLC, Melissa C. Cadet, P.T., Wellness Physical Therapy Rehabilitation PLLC, Milena Rezende, P.T. a/k/a Milena Reyes, Raine M. Pesidas Physical Therapy P.C., Rainegale Marie Mendiola Pesidas, P.T., Better Hands Physical Therapy P.C., Kristine May Bitanga Parcon, P.T., Go Flex Rehab Physical Therapy, P.C., Lyn Jonson Ballener, P.T., JEVA Physical Therapy P.C., Joseph Edwin Villacorte Abrenica, P.T., MC Physical Therapy, P.C., and Michelle Nesas Cuadra, P.T.)**

1103.   Allstate re-alleges, re-pleads and incorporates by reference the allegations set forth in paragraphs 1-1031 as if set forth fully herein.

1104.   Through their participation in the operation and management of July PT, P.C. ("July PT"), Mahmoud Elsayed Elsanaa, P.T., Vladimir Geykhman, Alexander Gulkarov, Artur Sattarov, Jasur Rahmatov, Hand by Hand PT, P.C., Hands of Hope P.T., P.C., Motaz Mahmoud Ebeido, P.T., Pyramid Care PT, P.C., Mohamed Hablas, P.T., MMA Physical Therapy, P.C., Mazen Mohamed Ahmed Ali Abdel Magid, P.T., MT Physical Therapy, P.C., Madonna Parungo Tandingan, P.T., Comfort Physical Therapy, PLLC, Melissa C. Cadet, P.T., Wellness Physical Therapy Rehabilitation PLLC, Milena Rezende, P.T. a/k/a Milena Reyes, Raine M. Pesidas Physical Therapy P.C., Rainegale Marie Mendiola Pesidas, P.T., Better Hands Physical Therapy P.C., Kristine May Bitanga Parcon, P.T., Go Flex Rehab Physical Therapy, P.C., Lyn Jonson Ballener, P.T., JEVA Physical Therapy P.C., Joseph Edwin Villacorte Abrenica, P.T., MC Physical Therapy, P.C., and Michelle Nesas Cuadra, P.T. (collectively, "Count VI Defendants") conspired with each other to violate 18 U.S.C. § 1962(c).

1105.   The Count VI Defendants each agreed to participate in a conspiracy to violate 18 U.S.C. § 1962(c) by agreeing to conduct the affairs of July PT by means of a pattern of racketeering activity, including numerous instances of mail fraud as set forth in Exhibit 23, and through the preparation and mailing of fraudulent insurance claim documents, including NF-3 forms, to Allstate.

1106.   The purpose of the conspiracy was to obtain, for the Count VI Defendants' benefit, No-Fault payments from Allstate on behalf of July PT, even though July PT, as a result of the Count VI Defendants' unlawful conduct, was not eligible to collect such No-Fault benefit payments.

1107.   The purpose of the conspiracy was also to cause professional fees and profits collected by July PT to be channeled for the benefit of Vladimir Geykhman, Alexander Gulkarov, Artur Sattarov, and Jasur Rahmatov.

1108.   The Count VI Defendants were aware of these purposes, and agreed to take steps to meet the conspiracy's objectives, including the creation of and mailing of documents and other claim-related materials, including NF-3 forms, containing misrepresentations and/or material omissions.

1109.   Allstate has been injured in its business and property by reason of this conspiratorial conduct whereas Allstate has been induced to make No-Fault claim payments as a result of the Count VI Defendants' unlawful conduct described herein.

1110.   By virtue of this violation of 18 U.S.C. § 1962(d), the Count VI Defendants are jointly and severally liable to Allstate, and Allstate is entitled to recover from each of the Count VI Defendants three times the damages sustained by reason of the claims submitted by the Defendants, and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

### COUNT VII
### VIOLATIONS OF 18 U.S.C. § 1962(c)
### MMA PHYSICAL THERAPY, P.C. ENTERPRISE
**(Against Mazen Mohamed Ahmed Ali Abdel Magid, P.T., Vladimir Geykhman, Alexander Gulkarov, Artur Sattarov, Jasur Rahmatov, Hands of Hope P.T., P.C., Motaz Mahmoud Ebeido, P.T., July PT, P.C., Mahmoud Elsayed Elsanaa, P.T., Pyramid Care PT, P.C., Mohamed Hablas, P.T., Comfort Physical Therapy, P.C., Melissa C. Cadet, P.T., MT Physical Therapy, P.C., Madonna Parungo Tandingan, P.T., Wellness Physical Therapy Rehabilitation PLLC, Milena Rezende, P.T. a/k/a Milena Reyes, Better Hands Physical Therapy P.C., Kristine May Bitanga Parcon, P.T., Atlas PT, P.C., Mohamed Awad Awad, P.T., Raine M Pesidas Physical Therapy P.C., Rainegale Marie Mendiola Pesidas, P.T., Go Flex Rehab Physical Therapy PLLC, Lyn Jonson Ballener, P.T., JEVA Physical Therapy P.C., Joseph Edwin Villacorte Abrenica, P.T., MC Physical Therapy, P.C., and Michelle Nesas Cuadra, P.T.)**

1111.   Allstate re-alleges, re-pleads and incorporates by reference the allegations set forth in paragraphs 1-1031 as if set forth fully herein.

1112.   In furtherance of their operation and management of MMA Physical Therapy, P.C. ("MMA"), Mazen Mohamed Ahmed Ali Abdel Magid, P.T., Vladimir Geykhman, Alexander Gulkarov, Artur Sattarov, Jasur Rahmatov, Hands of Hope P.T., P.C., Motaz Mahmoud Ebeido, P.T., July PT, P.C., Mahmoud Elsayed Elsanaa, P.T., Pyramid Care PT, P.C., Mohamed Hablas, P.T., Comfort Physical Therapy, P.C., Melissa C. Cadet, P.T., MT Physical Therapy, P.C., Madonna Parungo Tandingan, P.T., Wellness Physical Therapy Rehabilitation PLLC, Milena Rezende, P.T. a/k/a Milena Reyes, Better Hands Physical Therapy P.C., Kristine May Bitanga Parcon, P.T., Atlas PT, P.C., Mohamed Awad Awad, P.T., Raine M Pesidas Physical Therapy P.C., Rainegale Marie Mendiola Pesidas, P.T., Go Flex Rehab Physical Therapy PLLC, Lyn Jonson Ballener, P.T., JEVA Physical Therapy P.C., Joseph Edwin Villacorte Abrenica, P.T., MC Physical Therapy, P.C., and Michelle Nesas Cuadra, P.T. (collectively, "Count VII Defendants") intentionally prepared and mailed (or caused to be prepared and mailed) false medical documentation in connection with Allstate insurance claims in furtherance of their scheme to defraud.

1113.   The Count VII Defendants employed one or more mailings to demand and/or receive payment from Allstate on certain dates, including, but not limited to, those dates identified in the chart at Exhibit 24.

1114.   Among other things, NF-3 forms, medical billing invoices, medical reports, applications for insurance, and premium checks were routinely delivered to Allstate through the U.S. Mail.

1115.   Policies of insurance were delivered to insureds through the U.S. Mail.

1116.   Payments made by Allstate to MMA were delivered through the U.S. Mail.

1117.   As documented above, the Count VII Defendants repeatedly and intentionally submitted, or caused to be submitted, NF-3 forms and other claim-related documentation to Allstate related to expenses and/or services that were purportedly performed at MMA for the purpose of collecting payment from Allstate under the Personal Injury Protection benefits portion of the Allstate policies and applicable New York No-Fault laws.

1118.   As a result of, and in reasonable reliance upon, the mailing and/or submission of these misleading documents and materially false representations, Allstate, by its agents and employees, issued drafts to MMA that would not otherwise have been paid.

1119.   The Count VII Defendants' pattern of preparing and mailing (or causing/directing the preparation and mailing of) these documents and other claim-related materials, each appearing legitimate on their face, also prevented Allstate from discovering this scheme for a long period of time, thus enabling the Count VII Defendants to continue without being detected.

1120.   The facts set forth above constitute indictable offenses pursuant to 18 U.S.C. § 1341 (mail fraud).

1121.   By creating and then mailing to Allstate (or directing the creation and subsequent mailing to Allstate) of numerous fraudulent documents and other claim-related materials in an ongoing scheme, the Count VII Defendants engaged in a pattern of racketeering activity within the meaning of 18 U.S.C. § 1962(c).

1122.   The activities alleged in this case had the direct effect of causing funds to be transferred from Allstate to MMA for the benefit of the Count VII Defendants.

1123.   The unlawful activities alleged in this case also had the direct effect of causing these funds, including professional fees and profits, to be channeled to Vladimir Geykhman,

Alexander Gulkarov, Artur Sattarov, and Jasur Rahmatov for their own personal use and financial gain.

1124.   Allstate is in the business of writing insurance and paying claims in the State of New York.  Insurance fraud schemes practiced here and elsewhere have a deleterious impact on Allstate's overall financial well-being and adversely affect insurance rates.

1125.   MMA constitutes an enterprise engaged in, and the activities of which affect, interstate commerce.

1126.   The Count VII Defendants associated with the foregoing enterprise, and participated—both directly and indirectly—in the conduct of this enterprise through a pattern of racketeering activities.

1127.   Allstate is a "person" as defined by 18 U.S.C. § 1961(3), injured in its business or property by reason of the Count VII Defendants' conduct.

1128.   The Count VII Defendants' conduct in violation of 18 U.S.C. § 1962(c) was the direct and proximate cause of Allstate's injury.

1129.   By virtue of the Count VII Defendants' violations of 18 U.S.C. § 1962(c), Allstate is entitled to recover from them three times the damages sustained by reason of the claims submitted by them, and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

**COUNT VIII**
**VIOLATION 18 U.S.C. § 1962(d)**
**MMA PHYSICAL THERAPY P.C. ENTERPRISE**
**(Against Mazen Mohamed Ahmed Ali Abdel Magid, P.T., Vladimir Geykhman, Alexander Gulkarov, Artur Sattarov, Jasur Rahmatov, Hands of Hope P.T., P.C., Motaz Mahmoud Ebeido, P.T., July PT, P.C., Mahmoud Elsayed Elsanaa, P.T., Pyramid Care PT, P.C., Mohamed Hablas, P.T., Comfort Physical Therapy, P.C., Melissa C. Cadet, P.T., MT Physical Therapy, P.C., Madonna Parungo Tandingan, P.T., Wellness Physical Therapy Rehabilitation PLLC, Milena Rezende, P.T. a/k/a Milena Reyes, Better Hands Physical Therapy P.C., Kristine May Bitanga Parcon, P.T., Atlas PT, P.C., Mohamed Awad Awad,**

**P.T., Raine M Pesidas Physical Therapy P.C., Rainegale Marie Mendiola Pesidas, P.T., Go Flex Rehab Physical Therapy PLLC, Lyn Jonson Ballener, P.T., JEVA Physical Therapy P.C., Joseph Edwin Villacorte Abrenica, P.T., MC Physical Therapy, P.C., and Michelle Nesas Cuadra, P.T.)**

1130.   Allstate re-alleges, re-pleads and incorporates by reference the allegations set forth in paragraphs 1-1031 as if set forth fully herein.

1131.   Through their participation in the operation and management of MMA Physical Therapy, P.C. ("MMA"), Mazen Mohamed Ahmed Ali Abdel Magid, P.T., Vladimir Geykhman, Alexander Gulkarov, Artur Sattarov, Jasur Rahmatov, Hands of Hope P.T., P.C., Motaz Mahmoud Ebeido, P.T., July PT, P.C., Mahmoud Elsayed Elsanaa, P.T., Pyramid Care PT, P.C., Mohamed Hablas, P.T., Comfort Physical Therapy, P.C., Melissa C. Cadet, P.T., MT Physical Therapy, P.C., Madonna Parungo Tandingan, P.T., Wellness Physical Therapy Rehabilitation PLLC, Milena Rezende, P.T. a/k/a Milena Reyes, Better Hands Physical Therapy P.C., Kristine May Bitanga Parcon, P.T., Atlas PT, P.C., Mohamed Awad Awad, P.T., Raine M Pesidas Physical Therapy P.C., Rainegale Marie Mendiola Pesidas, P.T., Go Flex Rehab Physical Therapy PLLC, Lyn Jonson Ballener, P.T., JEVA Physical Therapy P.C., Joseph Edwin Villacorte Abrenica, P.T., MC Physical Therapy, P.C., and Michelle Nesas Cuadra, P.T. (collectively, "Count VIII Defendants") conspired with each other to violate 18 U.S.C. § 1962(c).

1132.   The Count VIII Defendants each agreed to participate in a conspiracy to violate 18 U.S.C. § 1962(c) by agreeing to conduct the affairs of MMA by means of a pattern of racketeering activity, including numerous instances of mail fraud as set forth in Exhibit 24, and through the preparation and mailing of fraudulent insurance claim documents, including NF-3 forms, to Allstate.

1133.   The purpose of the conspiracy was to obtain, for the Count VIII Defendants' benefit, No-Fault payments from Allstate on behalf of MMA, even though MMA, as a result of

the Count VIII Defendants' unlawful conduct, was not eligible to collect such No-Fault benefit payments.

1134.   The purpose of the conspiracy was also to cause professional fees and profits collected by MMA to be channeled for the benefit of Vladimir Geykhman, Alexander Gulkarov, Artur Sattarov, and Jasur Rahmatov.

1135.   The Count VIII Defendants' use of MMA to funnel professional fees and profits from MMA to Vladimir Geykhman, Alexander Gulkarov, Artur Sattarov, and Jasur Rahmatov was unlawful, and allowed Vladimir Geykhman, Alexander Gulkarov, Artur Sattarov, and Jasur Rahmatov to exercise control over the operation and management of MMA, and further permitted Vladimir Geykhman, Alexander Gulkarov, Artur Sattarov, and Jasur Rahmatov to share in the professional fees and profits collected by MMA.

1136.   The Count VIII Defendants were aware of these purposes, and agreed to take steps to meet the conspiracy's objectives, including the creation of and mailing of documents and other claim-related materials, including NF-3 forms, containing misrepresentations and/or material omissions.

1137.   Allstate has been injured in its business and property by reason of this conspiratorial conduct whereas Allstate has been induced to make No-Fault claim payments as a result of the Count VIII Defendants' unlawful conduct described herein.

1138.   By virtue of this violation of 18 U.S.C. § 1962(d), the Count VIII Defendants are jointly and severally liable to Allstate, and Allstate is entitled to recover from each of the Count VIII Defendants three times the damages sustained by reason of the claims submitted by the Defendants, and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

## COUNT IX
## VIOLATIONS OF 18 U.S.C. § 1962(c)
## PYRAMID CARE PT, P.C. ENTERPRISE
**(Against Mohamed Hablas, P.T., Vladimir Geykhman, Alexander Gulkarov, Artur Sattarov, Jasur Rahmatov, Hands of Hope P.T., P.C., Motaz Mahmoud Ebeido, P.T., July PT, P.C., Mahmoud Elsayed Elsanaa, P.T., MMA Physical Therapy, P.C., Mazen Mohamed Ahmed Ali Abdel Magid, P.T., Go Flex Rehab Physical Therapy, P.C., Lyn Jonson Ballener, P.T., JEVA Physical Therapy P.C., Joseph Edwin Villacorte Abrenica, P.T., MC Physical Therapy, P.C., Michelle Nesas Cuadra, P.T., Better Hands Physical Therapy P.C., Kristine May Bitanga Parcon, P.T., Comfort Physical Therapy, PLLC, Melissa C. Cadet, P.T., Wellness Physical Therapy Rehabilitation P.C., Milena Rezende, P.T. a/k/a Milena Reyes, MT Physical Therapy, P.C., Madonna Parungo Tandingan, P.T., Raine M. Pesidas Physical Therapy P.C., and Rainegale Marie Mendiola Pesidas, P.T.)**

1139.   Allstate re-alleges, re-pleads and incorporates by reference the allegations set forth in paragraphs 1-1031 as if set forth fully herein.

1140.   In furtherance of their operation and management of Pyramid Care PT, P.C. ("Pyramid"), Mohamed Hablas, P.T., Vladimir Geykhman, Alexander Gulkarov, Artur Sattarov, Jasur Rahmatov, Hands of Hope P.T., P.C., Motaz Mahmoud Ebeido, P.T., July PT, P.C., Mahmoud Elsayed Elsanaa, P.T., MMA Physical Therapy, P.C., Mazen Mohamed Ahmed Ali Abdel Magid, P.T., Go Flex Rehab Physical Therapy, P.C., Lyn Jonson Ballener, P.T., JEVA Physical Therapy P.C., Joseph Edwin Villacorte Abrenica, P.T., MC Physical Therapy, P.C., Michelle Nesas Cuadra, P.T., Better Hands Physical Therapy P.C., Kristine May Bitanga Parcon, P.T., Comfort Physical Therapy, PLLC, Melissa C. Cadet, P.T., Wellness Physical Therapy Rehabilitation P.C., Milena Rezende, P.T. a/k/a Milena Reyes, MT Physical Therapy, P.C., Madonna Parungo Tandingan, P.T., Raine M. Pesidas Physical Therapy P.C., and Rainegale Marie Mendiola Pesidas, P.T. (collectively, "Count IX Defendants") intentionally prepared and mailed (or caused to be prepared and mailed) false medical documentation in connection with Allstate insurance claims in furtherance of their scheme to defraud.

211

1141.   The Count IX Defendants employed one or more mailings to demand and/or receive payment from Allstate on certain dates, including, but not limited to, those dates identified in the chart at Exhibit 25.

1142.   Among other things, NF-3 forms, medical billing invoices, medical reports, applications for insurance, and premium checks were routinely delivered to Allstate through the U.S. Mail.

1143.   Policies of insurance were delivered to insureds through the U.S. Mail.

1144.   Payments made by Allstate to Pyramid were delivered through the U.S. Mail.

1145.   As documented above, the Count IX Defendants repeatedly and intentionally submitted, or caused to be submitted, NF-3 forms and other claim-related documentation to Allstate related to expenses and/or services that were purportedly performed at Pyramid for the purpose of collecting payment from Allstate under the Personal Injury Protection benefits portion of the Allstate policies and applicable New York No-Fault laws.

1146.   As a result of, and in reasonable reliance upon, the mailing and/or submission of these misleading documents and materially false representations, Allstate, by its agents and employees, issued drafts to Pyramid that would not otherwise have been paid.

1147.   The Count IX Defendants' pattern of preparing and mailing (or causing/directing the preparation and mailing of) these documents and other claim-related materials, each appearing legitimate on their face, also prevented Allstate from discovering this scheme for a long period of time, thus enabling the Count IX Defendants to continue without being detected.

1148.   The facts set forth above constitute indictable offenses pursuant to 18 U.S.C. § 1341 (mail fraud).

1149.   By creating and then mailing to Allstate (or directing the creation and subsequent mailing to Allstate) of numerous fraudulent documents and other claim-related materials in an ongoing scheme, the Count IX Defendants engaged in a pattern of racketeering activity within the meaning of 18 U.S.C. § 1962(c).

1150.   The activities alleged in this case had the direct effect of causing funds to be transferred from Allstate to Pyramid for the benefit of the Count IX Defendants.

1151.   The unlawful activities alleged in this case also had the direct effect of causing these funds, including professional fees and profits, to be channeled to Vladimir Geykhman, Alexander Gulkarov, Artur Sattarov, and Jasur Rahmatov for their own personal use and financial gain.

1152.   Allstate is in the business of writing insurance and paying claims in the State of New York.  Insurance fraud schemes practiced here and elsewhere have a deleterious impact on Allstate's overall financial well-being and adversely affect insurance rates.

1153.   Pyramid constitutes an enterprise engaged in, and the activities of which affect, interstate commerce.

1154.   The Count IX Defendants associated with the foregoing enterprise, and participated—both directly and indirectly—in the conduct of this enterprise through a pattern of racketeering activities.

1155.   Allstate is a "person" as defined by 18 U.S.C. § 1961(3), injured in its business or property by reason of the Count IX Defendants' conduct.

1156.   The Count IX Defendants' conduct in violation of 18 U.S.C. § 1962(c) was the direct and proximate cause of Allstate's injury.

1157.   By virtue of the Count IX Defendants' violations of 18 U.S.C. § 1962(c), Allstate is entitled to recover from them three times the damages sustained by reason of the claims submitted by them, and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

## COUNT X
## VIOLATION 18 U.S.C. § 1962(d)
## PYRAMID CARE PT P.C. ENTERPRISE
**(Against Mohamed Hablas, P.T., Vladimir Geykhman, Alexander Gulkarov, Artur Sattarov, Jasur Rahmatov, Hands of Hope P.T., P.C., Motaz Mahmoud Ebeido, P.T., July PT, P.C., Mahmoud Elsayed Elsanaa, P.T., MMA Physical Therapy, P.C., Mazen Mohamed Ahmed Ali Abdel Magid, P.T., Go Flex Rehab Physical Therapy, P.C., Lyn Jonson Ballener, P.T., JEVA Physical Therapy P.C., Joseph Edwin Villacorte Abrenica, P.T., MC Physical Therapy, P.C., Michelle Nesas Cuadra, P.T., Better Hands Physical Therapy P.C., Kristine May Bitanga Parcon, P.T., Comfort Physical Therapy, PLLC, Melissa C. Cadet, P.T., Wellness Physical Therapy Rehabilitation P.C., Milena Rezende, P.T. a/k/a Milena Reyes, MT Physical Therapy, P.C., Madonna Parungo Tandingan, P.T., Raine M. Pesidas Physical Therapy P.C., and Rainegale Marie Mendiola Pesidas, P.T.)**

1158.   Allstate re-alleges, re-pleads and incorporates by reference the allegations set forth in paragraphs 1-1031 as if set forth fully herein.

1159.   Through their participation in the operation and management of Pyramid Care PT, P.C. ("Pyramid"), Mohamed Hablas, P.T., Vladimir Geykhman, Alexander Gulkarov, Artur Sattarov, Jasur Rahmatov, Hands of Hope P.T., P.C., Motaz Mahmoud Ebeido, P.T., July PT, P.C., Mahmoud Elsayed Elsanaa, P.T., MMA Physical Therapy, P.C., Mazen Mohamed Ahmed Ali Abdel Magid, P.T., Go Flex Rehab Physical Therapy, P.C., Lyn Jonson Ballener, P.T., JEVA Physical Therapy P.C., Joseph Edwin Villacorte Abrenica, P.T., MC Physical Therapy, P.C., Michelle Nesas Cuadra, P.T., Better Hands Physical Therapy P.C., Kristine May Bitanga Parcon, P.T., Comfort Physical Therapy, PLLC, Melissa C. Cadet, P.T., Wellness Physical Therapy Rehabilitation P.C., Milena Rezende, P.T. a/k/a Milena Reyes, MT Physical Therapy, P.C., Madonna Parungo Tandingan, P.T., Raine M. Pesidas Physical Therapy P.C., and Rainegale Marie

Mendiola Pesidas, P.T. (collectively, "Count X Defendants") conspired with each other to violate 18 U.S.C. § 1962(c).

1160.   The Count X Defendants each agreed to participate in a conspiracy to violate 18 U.S.C. § 1962(c) by agreeing to conduct the affairs of Pyramid by means of a pattern of racketeering activity, including numerous instances of mail fraud as set forth in Exhibit 25, and through the preparation and mailing of fraudulent insurance claim documents, including NF-3 forms, to Allstate.

1161.   The purpose of the conspiracy was to obtain, for the Count X Defendants benefit, No-Fault payments from Allstate on behalf of Pyramid, even though Pyramid, as a result of the Count X Defendants' unlawful conduct, was not eligible to collect such No-Fault benefit payments.

1162.   The purpose of the conspiracy was also to cause professional fees and profits collected by Pyramid to be channeled for the benefit of Vladimir Geykhman, Alexander Gulkarov, Artur Sattarov, and Jasur Rahmatov.

1163.   The Count X Defendants were aware of these purposes, and agreed to take steps to meet the conspiracy's objectives, including the creation of and mailing of documents and other claim-related materials, including NF-3 forms, containing misrepresentations and/or material omissions.

1164.   Allstate has been injured in its business and property by reason of this conspiratorial conduct whereas Allstate has been induced to make No-Fault claim payments as a result of the Count X Defendants' unlawful conduct described herein.

1165.   By virtue of this violation of 18 U.S.C. § 1962(d), the Count X Defendants are jointly and severally liable to Allstate, and Allstate is entitled to recover from each of the Count X

Defendants three times the damages sustained by reason of the claims submitted by the Defendants, and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

## COUNT XI
## VIOLATIONS OF 18 U.S.C. § 1962(c)
## COMFORT PHYSICAL THERAPY, PLLC ENTERPRISE
**(Against Melissa C. Cadet, P.T., Vladimir Geykhman, Alexander Gulkarov, Artur Sattarov, Jasur Rahmatov, Mohamed Hablas, P.T., Hands of Hope P.T., P.C., Motaz Mahmoud Ebeido, P.T., July PT, P.C., Mahmoud Elsayed Elsanaa, P.T., MMA Physical Therapy, P.C., Mazen Mohamed Ahmed Ali Abdel Magid, P.T., Go Flex Rehab Physical Therapy, P.C., Lyn Jonson Ballener, P.T., JEVA Physical Therapy P.C., Joseph Edwin Villacorte Abrenica, P.T., MC Physical Therapy P.C., Michelle Nesas Cuadra, P.T., Better Hands Physical Therapy P.C., Kristine May Bitanga Parcon, P.T., Wellness Physical Therapy Rehabilitation PLLC, Milena Rezende, P.T. a/k/a Milena Reyes, MT Physical Therapy P.C., Madonna Parungo Tandingan, P.T., Raine M. Pesidas Physical Therapy P.C., and Marie Mendiola Pesidas, P.T.)**

1166.   Allstate re-alleges, re-pleads and incorporates by reference the allegations set forth in paragraphs 1-1031 as if set forth fully herein.

1167.   In furtherance of their operation and management of Comfort Physical Therapy, PLLC ("Comfort"), Melissa C. Cadet, P.T., Vladimir Geykhman, Alexander Gulkarov, Artur Sattarov, Jasur Rahmatov, Mohamed Hablas, P.T., Hands of Hope P.T., P.C., Motaz Mahmoud Ebeido, P.T., July PT, P.C., Mahmoud Elsayed Elsanaa, P.T., MMA Physical Therapy, P.C., Mazen Mohamed Ahmed Ali Abdel Magid, P.T., Go Flex Rehab Physical Therapy, P.C., Lyn Jonson Ballener, P.T., JEVA Physical Therapy P.C., Joseph Edwin Villacorte Abrenica, P.T., MC Physical Therapy P.C., Michelle Nesas Cuadra, P.T., Better Hands Physical Therapy P.C., Kristine May Bitanga Parcon, P.T., Wellness Physical Therapy Rehabilitation PLLC, Milena Rezende, P.T. a/k/a Milena Reyes, MT Physical Therapy P.C., Madonna Parungo Tandingan, P.T., Raine M. Pesidas Physical Therapy P.C., and Marie Mendiola Pesidas, P.T. (collectively, "Count XI Defendants") intentionally prepared and mailed (or caused to be prepared and mailed) false

216

medical documentation in connection with Allstate insurance claims in furtherance of their scheme to defraud.

1168.   The Count XI Defendants employed one or more mailings to demand and/or receive payment from Allstate on certain dates, including, but not limited to, those dates identified in the chart at Exhibit 26.

1169.   Among other things, NF-3 forms, medical billing invoices, medical reports, applications for insurance, and premium checks were routinely delivered to Allstate through the U.S. Mail.

1170.   Policies of insurance were delivered to insureds through the U.S. Mail.

1171.   Payments made by Allstate to Comfort were delivered through the U.S. Mail.

1172.   As documented above, the Count XI Defendants repeatedly and intentionally submitted, or caused to be submitted, NF-3 forms and other claim-related documentation to Allstate related to expenses and/or services that were purportedly performed at Comfort for the purpose of collecting payment from Allstate under the Personal Injury Protection benefits portion of the Allstate policies and applicable New York No-Fault laws.

1173.   As a result of, and in reasonable reliance upon, the mailing and/or submission of these misleading documents and materially false representations, Allstate, by its agents and employees, issued drafts to Comfort that would not otherwise have been paid.

1174.   The Count XI Defendants' pattern of preparing and mailing (or causing/directing the preparation and mailing of) these documents and other claim-related materials, each appearing legitimate on their face, also prevented Allstate from discovering this scheme for a long period of time, thus enabling the Count XI Defendants to continue without being detected.

1175.   The facts set forth above constitute indictable offenses pursuant to 18 U.S.C. § 1341 (mail fraud).

1176.   By creating and then mailing to Allstate (or directing the creation and subsequent mailing to Allstate) of numerous fraudulent documents and other claim-related materials in an ongoing scheme, the Count XI Defendants engaged in a pattern of racketeering activity within the meaning of 18 U.S.C. § 1962(c).

1177.   The activities alleged in this case had the direct effect of causing funds to be transferred from Allstate to Comfort for the benefit of the Count XI Defendants.

1178.   The unlawful activities alleged in this case also had the direct effect of causing these funds, including professional fees and profits, to be channeled to Vladimir Geykhman, Alexander Gulkarov, Artur Sattarov, and Jasur Rahmatov for their own personal use and financial gain.

1179.   Allstate is in the business of writing insurance and paying claims in the State of New York.  Insurance fraud schemes practiced here and elsewhere have a deleterious impact on Allstate's overall financial well-being and adversely affect insurance rates.

1180.   Comfort constitutes an enterprise engaged in, and the activities of which affect, interstate commerce.

1181.   The Count XI Defendants associated with the foregoing enterprise, and participated—both directly and indirectly—in the conduct of this enterprise through a pattern of racketeering activities.

1182.   Allstate is a "person" as defined by 18 U.S.C. § 1961(3), injured in its business or property by reason of the Count XI Defendants' conduct.

1183.    The Count XI Defendants' conduct in violation of 18 U.S.C. § 1962(c) was the direct and proximate cause of Allstate's injury.

1184.    By virtue of the Count XI Defendants violations of 18 U.S.C. § 1962(c), Allstate is entitled to recover from them three times the damages sustained by reason of the claims submitted by them, and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

**COUNT XII**
**VIOLATION 18 U.S.C. § 1962(d)**
**COMFORT PHYSICAL THERAPY PLLC ENTERPRISE**
**(Against Melissa C. Cadet, P.T., Vladimir Geykhman, Alexander Gulkarov, Artur Sattarov, Jasur Rahmatov, Mohamed Hablas, P.T., Hands of Hope P.T., P.C., Motaz Mahmoud Ebeido, P.T., July PT, P.C., Mahmoud Elsayed Elsanaa, P.T., MMA Physical Therapy, P.C., Mazen Mohamed Ahmed Ali Abdel Magid, P.T., Go Flex Rehab Physical Therapy, P.C., Lyn Jonson Ballener, P.T., JEVA Physical Therapy P.C., Joseph Edwin Villacorte Abrenica, P.T., MC Physical Therapy P.C., Michelle Nesas Cuadra, P.T., Better Hands Physical Therapy P.C., Kristine May Bitanga Parcon, P.T., Wellness Physical Therapy Rehabilitation PLLC, Milena Rezende, P.T. a/k/a Milena Reyes, MT Physical Therapy P.C., Madonna Parungo Tandingan, P.T., Raine M. Pesidas Physical Therapy P.C., and Marie Mendiola Pesidas, P.T.)**

1185.    Allstate re-alleges, re-pleads and incorporates by reference the allegations set forth in paragraphs 1-1031 as if set forth fully herein.

1186.    Through their participation in the operation and management of Comfort Physical Therapy, PLLC ("Comfort"), Melissa C. Cadet, P.T., Vladimir Geykhman, Alexander Gulkarov, Artur Sattarov, Jasur Rahmatov, Mohamed Hablas, P.T., Hands of Hope P.T., P.C., Motaz Mahmoud Ebeido, P.T., July PT, P.C., Mahmoud Elsayed Elsanaa, P.T., MMA Physical Therapy, P.C., Mazen Mohamed Ahmed Ali Abdel Magid, P.T., Go Flex Rehab Physical Therapy, P.C., Lyn Jonson Ballener, P.T., JEVA Physical Therapy P.C., Joseph Edwin Villacorte Abrenica, P.T., MC Physical Therapy P.C., Michelle Nesas Cuadra, P.T., Better Hands Physical Therapy P.C., Kristine May Bitanga Parcon, P.T., Wellness Physical Therapy Rehabilitation PLLC, Milena

Rezende, P.T. a/k/a Milena Reyes, MT Physical Therapy P.C., Madonna Parungo Tandingan, P.T., Raine M. Pesidas Physical Therapy P.C., and Marie Mendiola Pesidas, P.T. (collectively, "Count XII Defendants") conspired with each other to violate 18 U.S.C. § 1962(c).

1187.   The Count XII Defendants each agreed to participate in a conspiracy to violate 18 U.S.C. § 1962(c) by agreeing to conduct the affairs of Comfort by means of a pattern of racketeering activity, including numerous instances of mail fraud as set forth in Exhibit 26, and through the preparation and mailing of fraudulent insurance claim documents, including NF-3 forms, to Allstate.

1188.   The purpose of the conspiracy was to obtain, for the Count XII Defendants, No-Fault payments from Allstate on behalf of Comfort, even though Comfort, as a result of the Count XII Defendants' unlawful conduct, was not eligible to collect such No-Fault benefit payments.

1189.   The purpose of the conspiracy was also to cause professional fees and profits collected by Comfort to be channeled for the benefit of Vladimir Geykhman, Alexander Gulkarov, Artur Sattarov, and Jasur Rahmatov.

1190.   The Count XII Defendants were aware of these purposes, and agreed to take steps to meet the conspiracy's objectives, including the creation of and mailing of documents and other claim-related materials, including NF-3 forms, containing misrepresentations and/or material omissions.

1191.   Allstate has been injured in its business and property by reason of this conspiratorial conduct whereas Allstate has been induced to make No-Fault claim payments as a result of the Count XII Defendants' unlawful conduct described herein.

1192.   By virtue of this violation of 18 U.S.C. § 1962(d), the Count XII Defendants are jointly and severally liable to Allstate, and Allstate is entitled to recover from each of the Count

XII Defendants three times the damages sustained by reason of the claims submitted by the Defendants, and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

## COUNT XIII
### VIOLATIONS OF 18 U.S.C. § 1962(c)
### MT PHYSICAL THERAPY, PLLC ENTERPRISE
**(Against Madonna Parungo Tandingan, P.T., Vladimir Geykhman, Alexander Gulkarov, Artur Sattarov, Jasur Rahmatov, Comfort Physical Therapy PLLC, Melissa C. Cadet, P.T., Wellness Physical Therapy Rehabilitation PLLC, Milena Rezende, P.T. a/k/a Milena Reyes, Raine M. Pesidas Physical Therapy P.C., Rainegale Marie Mendiola Pesidas, P.T., JA Physical Therapy P.C., Joseph Edwin Villacorte Abrenica, P.T., MMA Physical Therapy, P.C., Mazen Mohamed Ahmed Ali Abdel Magid, P.T., July PT, P.C., Mahmoud Elsayed Elsanaa, P.T., MC Physical Therapy, P.C., Michelle Nesas Cuadra, P.T., Life Care Physical Therapy, P.C., Ahmed Hamdy Emara, P.T., Atlas PT, P.C., Mohamed Awad Awad, P.T., JEVA Physical Therapy P.C., Go Flex Rehab Physical Therapy, P.C., Lyn Jonson Ballener, P.T., Hands of Hope P.T., P.C., Motaz Mahmoud Ebeido, P.T., Pyramid Care PT, P.C., Mohamed Hablas, P.T., Better Hands Physical Therapy P.C., and Kristine May Bitanga Parcon, P.T.)**

1193.    Allstate re-alleges, re-pleads and incorporates by reference the allegations set forth in paragraphs 1-1031 as if set forth fully herein.

1194.    In furtherance of their operation and management of MT Physical Therapy, P.C. ("MT"), Madonna Parungo Tandingan, P.T., Vladimir Geykhman, Alexander Gulkarov, Artur Sattarov, Jasur Rahmatov, Comfort Physical Therapy PLLC, Melissa C. Cadet, P.T., Wellness Physical Therapy Rehabilitation PLLC, Milena Rezende, P.T. a/k/a Milena Reyes, Raine M. Pesidas Physical Therapy P.C., Rainegale Marie Mendiola Pesidas, P.T., JA Physical Therapy P.C., Joseph Edwin Villacorte Abrenica, P.T., MMA Physical Therapy, P.C., Mazen Mohamed Ahmed Ali Abdel Magid, P.T., July PT, P.C., Mahmoud Elsayed Elsanaa, P.T., MC Physical Therapy, P.C., Michelle Nesas Cuadra, P.T., Life Care Physical Therapy, P.C., Ahmed Hamdy Emara, P.T., Atlas PT, P.C., Mohamed Awad Awad, P.T., JEVA Physical Therapy P.C., Go Flex Rehab Physical Therapy, P.C., Lyn Jonson Ballener, P.T., Hands of Hope P.T., P.C., Motaz

Mahmoud Ebeido, P.T., Pyramid Care PT, P.C., Mohamed Hablas, P.T., Better Hands Physical Therapy P.C., and Kristine May Bitanga Parcon, P.T. (collectively, "Count XIII Defendants") intentionally prepared and mailed (or caused to be prepared and mailed) false medical documentation in connection with Allstate insurance claims in furtherance of their scheme to defraud.

1195.   The Count XIII Defendants employed one or more mailings to demand and/or receive payment from Allstate on certain dates, including, but not limited to, those dates identified in the chart at Exhibit 27.

1196.   Among other things, NF-3 forms, medical billing invoices, medical reports, applications for insurance, and premium checks were routinely delivered to Allstate through the U.S. Mail.

1197.   Policies of insurance were delivered to insureds through the U.S. Mail.

1198.   Payments made by Allstate to MT were delivered through the U.S. Mail.

1199.   As documented above, the Count XIII Defendants repeatedly and intentionally submitted, or caused to be submitted, NF-3 forms and other claim-related documentation to Allstate related to expenses and/or services that were purportedly performed at MT for the purpose of collecting payment from Allstate under the Personal Injury Protection benefits portion of the Allstate policies and applicable New York No-Fault laws.

1200.   As a result of, and in reasonable reliance upon, the mailing and/or submission of these misleading documents and materially false representations, Allstate, by its agents and employees, issued drafts to MT that would not otherwise have been paid.

1201.   The Count XIII Defendants' pattern of preparing and mailing (or causing/directing the preparation and mailing of) these documents and other claim-related materials, each appearing

222

legitimate on their face, also prevented Allstate from discovering this scheme for a long period of time, thus enabling the Count XIII Defendants to continue without being detected.

1202. The facts set forth above constitute indictable offenses pursuant to 18 U.S.C. § 1341 (mail fraud).

1203. By creating and then mailing to Allstate (or directing the creation and subsequent mailing to Allstate) of numerous fraudulent documents and other claim-related materials in an ongoing scheme, the Count XIII Defendants engaged in a pattern of racketeering activity within the meaning of 18 U.S.C. § 1962(c).

1204. The activities alleged in this case had the direct effect of causing funds to be transferred from Allstate to MT for the benefit of the Count XIII Defendants.

1205. The unlawful activities alleged in this case also had the direct effect of causing these funds, including professional fees and profits, to be channeled to Vladimir Geykhman, Alexander Gulkarov, Artur Sattarov, and Jasur Rahmatov for their own personal use and financial gain.

1206. Allstate is in the business of writing insurance and paying claims in the State of New York. Insurance fraud schemes practiced here and elsewhere have a deleterious impact on Allstate's overall financial well-being and adversely affect insurance rates.

1207. MT constitutes an enterprise engaged in, and the activities of which affect, interstate commerce.

1208. The Count XIII Defendants associated with the foregoing enterprise, and participated—both directly and indirectly—in the conduct of this enterprise through a pattern of racketeering activities.

1209.   Allstate is a "person" as defined by 18 U.S.C. § 1961(3), injured in its business or property by reason of the Count XIII Defendants' conduct.

1210.   The Count XIII Defendants' conduct in violation of 18 U.S.C. § 1962(c) was the direct and proximate cause of Allstate's injury.

1211.   By virtue of the Count XIII Defendants' violations of 18 U.S.C. § 1962(c), Allstate is entitled to recover from them three times the damages sustained by reason of the claims submitted by them, and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

### COUNT XIV
### VIOLATION 18 U.S.C. § 1962(d)
### MT PHYSICAL THERAPY P.C. ENTERPRISE
**(Against Madonna Parungo Tandingan, P.T., Vladimir Geykhman, Alexander Gulkarov, Artur Sattarov, Jasur Rahmatov, Comfort Physical Therapy PLLC, Melissa C. Cadet, P.T., Wellness Physical Therapy Rehabilitation PLLC, Milena Rezende, P.T. a/k/a Milena Reyes, Raine M. Pesidas Physical Therapy P.C., Rainegale Marie Mendiola Pesidas, P.T., JA Physical Therapy P.C., Joseph Edwin Villacorte Abrenica, P.T., MMA Physical Therapy, P.C., Mazen Mohamed Ahmed Ali Abdel Magid, P.T., July PT, P.C., Mahmoud Elsayed Elsanaa, P.T., MC Physical Therapy, P.C., Michelle Nesas Cuadra, P.T., Life Care Physical Therapy, P.C., Ahmed Hamdy Emara, P.T., Atlas PT, P.C., Mohamed Awad Awad, P.T., JEVA Physical Therapy P.C., Go Flex Rehab Physical Therapy, P.C., Lyn Jonson Ballener, P.T., Hands of Hope P.T., P.C., Motaz Mahmoud Ebeido, P.T., Pyramid Care PT, P.C., Mohamed Hablas, P.T., Better Hands Physical Therapy P.C., and Kristine May Bitanga Parcon, P.T.)**

1212.   Allstate re-alleges, re-pleads and incorporates by reference the allegations set forth in paragraphs 1-1031 as if set forth fully herein.

1213.   Through their participation in the operation and management of MT Physical Therapy P.C. ("MT"), Madonna Parungo Tandingan, P.T., Vladimir Geykhman, Alexander Gulkarov, Artur Sattarov, Jasur Rahmatov, Comfort Physical Therapy PLLC, Melissa C. Cadet, P.T., Wellness Physical Therapy Rehabilitation PLLC, Milena Rezende, P.T. a/k/a Milena Reyes, Raine M. Pesidas Physical Therapy P.C., Rainegale Marie Mendiola Pesidas, P.T., JA Physical

Therapy P.C., Joseph Edwin Villacorte Abrenica, P.T., MMA Physical Therapy, P.C., Mazen Mohamed Ahmed Ali Abdel Magid, P.T., July PT, P.C., Mahmoud Elsayed Elsanaa, P.T., MC Physical Therapy, P.C., Michelle Nesas Cuadra, P.T., Life Care Physical Therapy, P.C., Ahmed Hamdy Emara, P.T., Atlas PT, P.C., Mohamed Awad Awad, P.T., JEVA Physical Therapy P.C., Go Flex Rehab Physical Therapy, P.C., Lyn Jonson Ballener, P.T., Hands of Hope P.T., P.C., Motaz Mahmoud Ebeido, P.T., Pyramid Care PT, P.C., Mohamed Hablas, P.T., Better Hands Physical Therapy P.C., and Kristine May Bitanga Parcon, P.T. (collectively, "Count XIV Defendants") conspired with each other to violate 18 U.S.C. § 1962(c).

1214.  The Count XIV Defendants each agreed to participate in a conspiracy to violate 18 U.S.C. § 1962(c) by agreeing to conduct the affairs of MT by means of a pattern of racketeering activity, including numerous instances of mail fraud as set forth in Exhibit 27, and through the preparation and mailing of fraudulent insurance claim documents, including NF-3 forms, to Allstate.

1215.  The purpose of the conspiracy was to obtain, for the Count XIV Defendants benefit, No-Fault payments from Allstate on behalf of MT, even though MT, as a result of the Count XIV Defendants' unlawful conduct, was not eligible to collect such No-Fault benefit payments.

1216.  The purpose of the conspiracy was also to cause professional fees and profits collected by MT to be channeled for the benefit of Vladimir Geykhman, Alexander Gulkarov, Artur Sattarov, and Jasur Rahmatov.

1217.  The Count XIV Defendants were aware of these purposes, and agreed to take steps to meet the conspiracy's objectives, including the creation of and mailing of documents and other claim-related materials, including NF-3 forms, containing misrepresentations and/or material omissions.

1218.   Allstate has been injured in its business and property by reason of this conspiratorial conduct whereas Allstate has been induced to make No-Fault claim payments as a result of the Count XIV Defendants' unlawful conduct described herein.

1219.   By virtue of this violation of 18 U.S.C. § 1962(d), the Count XIV Defendants are jointly and severally liable to Allstate, and Allstate is entitled to recover from each of the Count XIV Defendants three times the damages sustained by reason of the claims submitted by the Defendants, and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

**COUNT XV**
**VIOLATIONS OF 18 U.S.C. § 1962(c)**
**LIFE CARE PHYSICAL THERAPY P.C. ENTERPRISE**
**(Against Ahmed Hamdy Emara, P.T., Vladimir Geykhman, Artur Sattarov, Jasur Rahmatov, Finesse Care Physical Therapy P.C., Raine M. Pesidas Physical Therapy P.C., Rainegale Marie Mendiola Pesidas, P.T., Wellness Physical Therapy Rehabilitation PLLC, Milena Rezende, P.T. a/k/a Milena Reyes, JA Physical Therapy P.C., Joseph Edwin Villacorte Abrenica, P.T., MT Physical Therapy P.C., Madonna Parungo Tandingan, P.T., MC Physical Therapy, P.C., and Michelle Nesas Cuadra, P.T.)**

1220.   Allstate re-alleges, re-pleads and incorporates by reference the allegations set forth in paragraphs 1-1031 as if set forth fully herein.

1221.   In furtherance of their operation and management of Life Care Physical Therapy, P.C. ("Life Care"), Ahmed Hamdy Emara, P.T., Vladimir Geykhman, Artur Sattarov, Jasur Rahmatov, Finesse Care Physical Therapy P.C., Raine M. Pesidas Physical Therapy P.C., Rainegale Marie Mendiola Pesidas, P.T., Wellness Physical Therapy Rehabilitation PLLC, Milena Rezende, P.T. a/k/a Milena Reyes, JA Physical Therapy P.C., Joseph Edwin Villacorte Abrenica, P.T., MT Physical Therapy P.C., Madonna Parungo Tandingan, P.T., MC Physical Therapy, P.C., and Michelle Nesas Cuadra, P.T. (collectively, "Count XV Defendants") intentionally prepared

and mailed (or caused to be prepared and mailed) false medical documentation in connection with Allstate insurance claims in furtherance of their scheme to defraud.

1222.   The Count XV Defendants employed one or more mailings to demand and/or receive payment from Allstate on certain dates, including, but not limited to, those dates identified in the chart at Exhibit 28.

1223.   Among other things, NF-3 forms, medical billing invoices, medical reports, applications for insurance, and premium checks were routinely delivered to Allstate through the U.S. Mail.

1224.   Policies of insurance were delivered to insureds through the U.S. Mail.

1225.   Payments made by Allstate to Life Care were delivered through the U.S. Mail.

1226.   As documented above, the Count XV Defendants repeatedly and intentionally submitted, or caused to be submitted, NF-3 forms and other claim-related documentation to Allstate related to expenses and/or services that were purportedly performed at Life Care for the purpose of collecting payment from Allstate under the Personal Injury Protection benefits portion of the Allstate policies and applicable New York No-Fault laws.

1227.   As a result of, and in reasonable reliance upon, the mailing and/or submission of these misleading documents and materially false representations, Allstate, by its agents and employees, issued drafts to Life Care that would not otherwise have been paid.

1228.   The Count XV Defendants' pattern of preparing and mailing (or causing/directing the preparation and mailing of) these documents and other claim-related materials, each appearing legitimate on their face, also prevented Allstate from discovering this scheme for a long period of time, thus enabling the Count XV Defendants to continue without being detected.

1229.   The facts set forth above constitute indictable offenses pursuant to 18 U.S.C. § 1341 (mail fraud).

1230.   By creating and then mailing to Allstate (or directing the creation and subsequent mailing to Allstate) of numerous fraudulent documents and other claim-related materials in an ongoing scheme, the Count XV Defendants engaged in a pattern of racketeering activity within the meaning of 18 U.S.C. § 1962(c).

1231.   The activities alleged in this case had the direct effect of causing funds to be transferred from Allstate to Life Care for the benefit of the Count XV Defendants.

1232.   The unlawful activities alleged in this case also had the direct effect of causing these funds, including professional fees and profits, to be channeled to Vladimir Geykhman, Artur Sattarov, and Jasur Rahmatov for their own personal use and financial gain.

1233.   Allstate is in the business of writing insurance and paying claims in the State of New York.  Insurance fraud schemes practiced here and elsewhere have a deleterious impact on Allstate's overall financial well-being and adversely affect insurance rates.

1234.   Count XV Defendants constitutes an enterprise engaged in, and the activities of which affect, interstate commerce.

1235.  The Count XV Defendants associated with the foregoing enterprise, and participated—both directly and indirectly—in the conduct of this enterprise through a pattern of racketeering activities.

1236.   Allstate is a "person" as defined by 18 U.S.C. § 1961(3), injured in its business or property by reason of the Count XV Defendants' conduct.

1237.   The Count XV Defendants' conduct in violation of 18 U.S.C. § 1962(c) was the direct and proximate cause of Allstate's injury.

1238.   By virtue of the Count XV Defendants' violations of 18 U.S.C. § 1962(c), Allstate is entitled to recover from them three times the damages sustained by reason of the claims submitted by them, and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

**COUNT XVI**
**VIOLATION 18 U.S.C. § 1962(d)**
**LIFE CARE PHYSICAL THERAPY P.C. ENTERPRISE**
**(Against Ahmed Hamdy Emara, P.T., Vladimir Geykhman, Artur Sattarov, Jasur Rahmatov, Finesse Care Physical Therapy P.C., Raine M. Pesidas Physical Therapy P.C., Rainegale Marie Mendiola Pesidas, P.T., Wellness Physical Therapy Rehabilitation PLLC, Milena Rezende, P.T. a/k/a Milena Reyes, JA Physical Therapy P.C., Joseph Edwin Villacorte Abrenica, P.T., MT Physical Therapy P.C., Madonna Parungo Tandingan, P.T., MC Physical Therapy, P.C., and Michelle Nesas Cuadra, P.T.)**

1239.   Allstate re-alleges, re-pleads and incorporates by reference the allegations set forth in paragraphs 1-1031 as if set forth fully herein.

1240.   Through their participation in the operation and management of Life Care Physical Therapy P.C. ("Life Care"), Ahmed Hamdy Emara, P.T., Vladimir Geykhman, Artur Sattarov, Jasur Rahmatov, Finesse Care Physical Therapy P.C., Raine M. Pesidas Physical Therapy P.C., Rainegale Marie Mendiola Pesidas, P.T., Wellness Physical Therapy Rehabilitation PLLC, Milena Rezende, P.T. a/k/a Milena Reyes, JA Physical Therapy P.C., Joseph Edwin Villacorte Abrenica, P.T., MT Physical Therapy P.C., Madonna Parungo Tandingan, P.T., MC Physical Therapy, P.C., and Michelle Nesas Cuadra, P.T. (collectively, "Count XVI Defendants") conspired with each other to violate 18 U.S.C. § 1962(c).

1241.   The Count XVI Defendants each agreed to participate in a conspiracy to violate 18 U.S.C. § 1962(c) by agreeing to conduct the affairs of Life Care by means of a pattern of racketeering activity, including numerous instances of mail fraud as set forth in Exhibit 28, and

229

through the preparation and mailing of fraudulent insurance claim documents, including NF-3 forms, to Allstate.

1242.   The purpose of the conspiracy was to obtain, for the Count XVI Defendants benefit, No-Fault payments from Allstate on behalf of Life Care, even though Life Care, as a result of the Count XVI Defendants' unlawful conduct, was not eligible to collect such No-Fault benefit payments.

1243.   The purpose of the conspiracy was also to cause professional fees and profits collected by Life Care to be channeled for the benefit of Vladimir Geykhman, Artur Sattarov, and Jasur Rahmatov.

1244.   The Count XVI Defendants were aware of these purposes, and agreed to take steps to meet the conspiracy's objectives, including the creation of and mailing of documents and other claim-related materials, including NF-3 forms, containing misrepresentations and/or material omissions.

1245.   Allstate has been injured in its business and property by reason of this conspiratorial conduct whereas Allstate has been induced to make No-Fault claim payments as a result of the Count VI Defendants' unlawful conduct described herein.

1246.   By virtue of this violation of 18 U.S.C. § 1962(d), the Count XVI Defendants are jointly and severally liable to Allstate, and Allstate is entitled to recover from each of the Count XVI Defendants three times the damages sustained by reason of the claims submitted by the Defendants, and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

## COUNT XVII
## VIOLATIONS OF 18 U.S.C. § 1962(c)
## JA PHYSICAL THERAPY P.C. ENTERPRISE
**(Against Joseph Edwin Villacorte Abrenica, P.T., Vladimir Geykhman, Alexander Gulkarov, Artur Sattarov, Jasur Rahmatov, JEVA Physical Therapy P.C., Wellness Physical Therapy Rehabilitation PLLC, Milena Rezende, P.T. a/k/a Milena Reyes, Comfort Physical Therapy, PLLC, Melissa C. Cadet, P.T., MT Physical Therapy P.C., Madonna Parungo Tandingan, P.T., Raine M. Pesidas Physical Therapy, P.C., Rainegale Marie Mendiola Pesidas, P.T., Life Care Physical Therapy P.C., Ahmed Hamdy Emara, P.T., MC Physical Therapy P.C., Michelle Nesas Cuadra, P.T., Better Hands Physical Therapy P.C., Kristine May Bitanga Parcon, P.T., Go Flex Rehab Physical Therapy, P.C., Lyn Jonson Ballener, P.T., Axis PT, P.C., Mohamed Awad Awad, P.T., Hands of Hope P.T., P.C., and Motaz Mahmoud Ebeido, P.T.)**

1247.   Allstate re-alleges, re-pleads and incorporates by reference the allegations set forth in paragraphs 1-1031 as if set forth fully herein.

1248.   In furtherance of their operation and management of JA Physical Therapy, P.C. ("JA"), Joseph Edwin Villacorte Abrenica, P.T., Vladimir Geykhman, Alexander Gulkarov, Artur Sattarov, Jasur Rahmatov, JEVA Physical Therapy P.C., Wellness Physical Therapy Rehabilitation PLLC, Milena Rezende, P.T. a/k/a Milena Reyes, Comfort Physical Therapy, PLLC, Melissa C. Cadet, P.T., MT Physical Therapy P.C., Madonna Parungo Tandingan, P.T., Raine M. Pesidas Physical Therapy, P.C., Rainegale Marie Mendiola Pesidas, P.T., Life Care Physical Therapy P.C., Ahmed Hamdy Emara, P.T., MC Physical Therapy P.C., Michelle Nesas Cuadra, P.T., Better Hands Physical Therapy P.C., Kristine May Bitanga Parcon, P.T., Go Flex Rehab Physical Therapy, P.C., Lyn Jonson Ballener, P.T., Axis PT, P.C., Mohamed Awad Awad, P.T., Hands of Hope P.T., P.C., and Motaz Mahmoud Ebeido, P.T. (collectively, "Count XVII Defendants") intentionally prepared and mailed (or caused to be prepared and mailed) false medical documentation in connection with Allstate insurance claims in furtherance of their scheme to defraud.

231

1249.   The Count XVII Defendants employed one or more mailings to demand and/or receive payment from Allstate on certain dates, including, but not limited to, those dates identified in the chart at Exhibit 29.

1250.   Among other things, NF-3 forms, medical billing invoices, medical reports, applications for insurance, and premium checks were routinely delivered to Allstate through the U.S. Mail.

1251.   Policies of insurance were delivered to insureds through the U.S. Mail.

1252.   Payments made by Allstate to JA were delivered through the U.S. Mail.

1253.   As documented above, the Count XVII Defendants repeatedly and intentionally submitted documentation to Allstate for medical expenses and/or services that were purportedly performed at JA to collect payment from Allstate under the Personal Injury Protection benefits portion of the Allstate policies and applicable New York No-Fault laws.

1254.   As a result of, and in reasonable reliance upon, the mailing and/or submission of these misleading documents and materially false representations, Allstate, by its agents and employees, issued drafts to JA that would not otherwise have been paid.

1255.   The Count XVII Defendants' pattern of preparing and mailing (or causing/directing the preparation and mailing of) these documents and other claim-related materials, each appearing legitimate on their face, also prevented Allstate from discovering this scheme for a long period of time, thus enabling the Count XVII Defendants to continue without being detected.

1256.   The facts set forth above constitute indictable offenses pursuant to 18 U.S.C. § 1341 (mail fraud).

1257.   By creating and then mailing to Allstate (or directing the creation and subsequent mailing to Allstate) of numerous fraudulent documents and other claim-related materials in an

ongoing scheme, the Count XVII Defendants engaged in a pattern of racketeering activity within the meaning of 18 U.S.C. § 1962(c).

1258.   The activities alleged in this case had the direct effect of causing funds to be transferred from Allstate to JA for the benefit of the Count XVII Defendants.

1259.   The unlawful activities alleged in this case also had the direct effect of causing these funds, including professional fees and profits, to be channeled to Vladimir Geykhman, Alexander Gulkarov, Artur Sattarov, and Jasur Rahmatov for their own personal use and financial gain.

1260.   Allstate is in the business of writing insurance and paying claims in the State of New York.  Insurance fraud schemes practiced here and elsewhere have a deleterious impact on Allstate's overall financial well-being and adversely affect insurance rates.

1261.   JA constitutes an enterprise engaged in, and the activities of which affect, interstate commerce.

1262.   The Count XVII Defendants sassociated with the foregoing enterprise, and participated—both directly and indirectly—in the conduct of this enterprise through a pattern of racketeering activities.

1263.   Allstate is a "person" as defined by 18 U.S.C. § 1961(3), injured in its business or property by reason of the Count XVII Defendants' conduct.

1264.   The Count XVII Defendants' conduct in violation of 18 U.S.C. § 1962(c) was the direct and proximate cause of Allstate's injury.

1265.   By virtue of the Count XVII Defendants' violations of 18 U.S.C. § 1962(c), Allstate is entitled to recover from them three times the damages sustained by reason of the claims

submitted by them, and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

## COUNT XVIII
### VIOLATION 18 U.S.C. § 1962(d)
### JA PHYSICAL THERAPY P.C. ENTERPRISE
**(Against Joseph Edwin Villacorte Abrenica, P.T., Vladimir Geykhman, Alexander Gulkarov, Artur Sattarov, Jasur Rahmatov, JEVA Physical Therapy P.C., Wellness Physical Therapy Rehabilitation PLLC, Milena Rezende, P.T. a/k/a Milena Reyes, Comfort Physical Therapy, PLLC, Melissa C. Cadet, P.T., MT Physical Therapy P.C., Madonna Parungo Tandingan, P.T., Raine M. Pesidas Physical Therapy, P.C., Rainegale Marie Mendiola Pesidas, P.T., Life Care Physical Therapy P.C., Ahmed Hamdy Emara, P.T., MC Physical Therapy P.C., Michelle Nesas Cuadra, P.T., Better Hands Physical Therapy P.C., Kristine May Bitanga Parcon, P.T., Go Flex Rehab Physical Therapy, P.C., Lyn Jonson Ballener, P.T., Axis PT, P.C., Mohamed Awad Awad, P.T., Hands of Hope P.T., P.C., and Motaz Mahmoud Ebeido, P.T.)**

1266.   Allstate re-alleges, re-pleads and incorporates by reference the allegations set forth in paragraphs 1-1031 as if set forth fully herein.

1267.   Through their participation in the operation and management of JA Physical Therapy P.C. ("JA"), Joseph Edwin Villacorte Abrenica, P.T., Vladimir Geykhman, Alexander Gulkarov, Artur Sattarov, Jasur Rahmatov, JEVA Physical Therapy P.C., Wellness Physical Therapy Rehabilitation PLLC, Milena Rezende, P.T. a/k/a Milena Reyes, Comfort Physical Therapy, PLLC, Melissa C. Cadet, P.T., MT Physical Therapy P.C., Madonna Parungo Tandingan, P.T., Raine M. Pesidas Physical Therapy, P.C., Rainegale Marie Mendiola Pesidas, P.T., Life Care Physical Therapy P.C., Ahmed Hamdy Emara, P.T., MC Physical Therapy P.C., Michelle Nesas Cuadra, P.T., Better Hands Physical Therapy P.C., Kristine May Bitanga Parcon, P.T., Go Flex Rehab Physical Therapy, P.C., Lyn Jonson Ballener, P.T., Axis PT, P.C., Mohamed Awad Awad, P.T., Hands of Hope P.T., P.C., and Motaz Mahmoud Ebeido, P.T. (collectively, "Count XVIII Defendants") conspired with each other to violate 18 U.S.C. § 1962(c).

234

1268.   The Count XVIII Defendants each agreed to participate in a conspiracy to violate 18 U.S.C. § 1962(c) by agreeing to conduct the affairs of JA by means of a pattern of racketeering activity, including numerous instances of mail fraud as set forth in Exhibit 29, and through the preparation and mailing of fraudulent insurance claim documents, including NF-3 forms, to Allstate.

1269.   The purpose of the conspiracy was to obtain, for the Count XVIII Defendants' benefit, No-Fault payments from Allstate on behalf of JA, even though JA, as a result of the Count XVIII Defendants' unlawful conduct, was not eligible to collect such No-Fault benefit payments.

1270.   The purpose of the conspiracy was also to cause professional fees and profits collected by JA to be channeled for the benefit of Vladimir Geykhman, Alexander Gulkarov, Artur Sattarov, and Jasur Rahmatov

1271.   The Count XVIII Defendants were aware of these purposes, and agreed to take steps to meet the conspiracy's objectives, including the creation of and mailing of documents and other claim-related materials, including NF-3 forms, containing misrepresentations and/or material omissions.

1272.   Allstate has been injured in its business and property by reason of this conspiratorial conduct whereas Allstate has been induced to make No-Fault claim payments as a result of the Count XVIII Defendants' unlawful conduct described herein.

1273.   By virtue of this violation of 18 U.S.C. § 1962(d), the Count XVIII Defendants are jointly and severally liable to Allstate, and Allstate is entitled to recover from each of the Count XVIII Defendants three times the damages sustained by reason of the claims submitted by the Defendants, and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

**COUNT XIX**
**VIOLATIONS OF 18 U.S.C. § 1962(c)**
**RAINE M. PESIDAS PHYSICAL THERAPY P.C. ENTERPRISE**
**(Against Rainegale Marie Mendiola Pesidas, P.T., Vladimir Geykhman, Alexander**
**Gulkarov, Artur Sattarov, Jasur Rahmatov, Life Care Physical Therapy P.C., Ahmed**
**Hamdy Emara, P.T., Comfort Physical Therapy, PLLC, Melissa C. Cadet, P.T., MT**
**Physical Therapy P.C., Madonna Parungo Tandingan, P.T., Wellness Physical Therapy**
**Rehabilitation PLLC, Milena Rezende, P.T. a/k/a Milena Reyes, JA Physical Therapy P.C.,**
**Mohamed Awad Awad, P.T., MC Physical Therapy P.C., Michelle Nesas Cuadra, P.T.,**
**Better Hands Physical Therapy P.C., Kristine May Bitanga Parcon, P.T., Go Flex Rehab**
**Physical Therapy, P.C., Lyn Jonson Ballener, P.T., JEVA Physical Therapy P.C., Joseph**
**Edwin Villacorte Abrenica, P.T., Finesse Care Physical Therapy P.C., Ahmed Hamdy**
**Emara, P.T., July PT, P.C., Mahmoud Elsayed Elsanaa, P.T., Hands of Hope P.T., P.C.,**
**Motaz Mahmoud Ebeido, P.T., MMA Physical Therapy P.C., Mazen Mohamed Ahmed Ali**
**Abdel Magid, P.T., Pyramid Care PT, P.C., Mohamed Hablas, P.T., MC Physical Therapy,**
**P.C., and Michelle Nesas Cuadra, P.T.)**

1274.   Allstate re-alleges, re-pleads and incorporates by reference the allegations set forth

in paragraphs 1-1031 as if set forth fully herein.

1275.   In furtherance of their operation and management of Raine M. Pesidas Physical

Therapy, P.C. ("Pesidas PT"), Rainegale Marie Mendiola Pesidas, P.T., Vladimir Geykhman,

Alexander Gulkarov, Artur Sattarov, Jasur Rahmatov, Life Care Physical Therapy P.C., Ahmed

Hamdy Emara, P.T., Comfort Physical Therapy, PLLC, Melissa C. Cadet, P.T., MT Physical

Therapy P.C., Madonna Parungo Tandingan, P.T., Wellness Physical Therapy Rehabilitation

PLLC, Milena Rezende, P.T. a/k/a Milena Reyes, JA Physical Therapy P.C., Mohamed Awad

Awad, P.T., MC Physical Therapy P.C., Michelle Nesas Cuadra, P.T., Better Hands Physical

Therapy P.C., Kristine May Bitanga Parcon, P.T., Go Flex Rehab Physical Therapy, P.C., Lyn

Jonson Ballener, P.T., JEVA Physical Therapy P.C., Joseph Edwin Villacorte Abrenica, P.T.,

Finesse Care Physical Therapy P.C., Ahmed Hamdy Emara, P.T., July PT, P.C., Mahmoud

Elsayed Elsanaa, P.T., Hands of Hope P.T., P.C., Motaz Mahmoud Ebeido, P.T., MMA Physical

Therapy P.C., Mazen Mohamed Ahmed Ali Abdel Magid, P.T., Pyramid Care PT, P.C., Mohamed

Hablas, P.T., MC Physical Therapy, P.C., and Michelle Nesas Cuadra, P.T. (collectively, "Count

236

XIX Defendants") intentionally prepared and mailed (or caused to be prepared and mailed) false medical documentation in connection with Allstate insurance claims in furtherance of their scheme to defraud.

1276.   The Count XIX Defendants employed one or more mailings to demand and/or receive payment from Allstate on certain dates, including, but not limited to, those dates identified in the chart at Exhibit 30.

1277.   Among other things, NF-3 forms, medical billing invoices, medical reports, applications for insurance, and premium checks were routinely delivered to Allstate through the U.S. Mail.

1278.   Policies of insurance were delivered to insureds through the U.S. Mail.

1279.   Payments made by Allstate to Pesidas PT were delivered through the U.S. Mail.

1280.   As documented above, the Count XIX Defendants repeatedly and intentionally submitted documentation to Allstate for medical expenses and/or services that were purportedly performed at Pesidas PT to collect payment from Allstate under the Personal Injury Protection benefits portion of the Allstate policies and applicable New York No-Fault laws.

1281.   As a result of, and in reasonable reliance upon, the mailing and/or submission of these misleading documents and materially false representations, Allstate, by its agents and employees, issued drafts to Pesidas PT that would not otherwise have been paid.

1282.   The Count XIX Defendants pattern of preparing and mailing (or causing/directing the preparation and mailing of) these documents and other claim-related materials, each appearing legitimate on their face, also prevented Allstate from discovering this scheme for a long period of time, thus enabling the Count XIX Defendants to continue without being detected.

1283.   The facts set forth above constitute indictable offenses pursuant to 18 U.S.C. § 1341 (mail fraud).

1284.   By creating and then mailing to Allstate (or directing the creation and subsequent mailing to Allstate) of numerous fraudulent documents and other claim-related materials in an ongoing scheme, the Count XIX Defendants engaged in a pattern of racketeering activity within the meaning of 18 U.S.C. § 1962(c).

1285.   The activities alleged in this case had the direct effect of causing funds to be transferred from Allstate to Pesidas PT for the benefit of the Count XIX Defendants.

1286.   The unlawful activities alleged in this case also had the direct effect of causing these funds, including professional fees and profits, to be channeled to Vladimir Geykhman, Alexander Gulkarov, Artur Sattarov, and Jasur Rahmatov for their own personal use and financial gain.

1287.   Allstate is in the business of writing insurance and paying claims in the State of New York.  Insurance fraud schemes practiced here and elsewhere have a deleterious impact on Allstate's overall financial well-being and adversely affect insurance rates.

1288.   Raine M. Pesidas PT constitutes an enterprise engaged in, and the activities of which affect, interstate commerce.

1289.   The Count XIX Defendant sassociated with the foregoing enterprise, and participated—both directly and indirectly—in the conduct of this enterprise through a pattern of racketeering activities.

1290.   Allstate is a "person" as defined by 18 U.S.C. § 1961(3), injured in its business or property by reason of the Count XIX Defendants' conduct.

1291. The Count XIX Defendants' conduct in violation of 18 U.S.C. § 1962(c) was the direct and proximate cause of Allstate's injury.

1292. By virtue of the Count XIX Defendants' violations of 18 U.S.C. § 1962(c), Allstate is entitled to recover from them three times the damages sustained by reason of the claims submitted by them, and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

<u>COUNT XX</u>
**VIOLATION 18 U.S.C. § 1962(d)**
**RAINE M. PESIDAS PHYSICAL THERAPY P.C. ENTERPRISE**
**(Against Rainegale Marie Mendiola Pesidas, P.T., Vladimir Geykhman, Alexander Gulkarov, Artur Sattarov, Jasur Rahmatov, Life Care Physical Therapy P.C., Ahmed Hamdy Emara, P.T., Comfort Physical Therapy, PLLC, Melissa C. Cadet, P.T., MT Physical Therapy P.C., Madonna Parungo Tandingan, P.T., Wellness Physical Therapy Rehabilitation PLLC, Milena Rezende, P.T. a/k/a Milena Reyes. JA Physical Therapy P.C., Mohamed Awad Awad, P.T., MC Physical Therapy P.C., Michelle Nesas Cuadra, P.T., Better Hands Physical Therapy P.C., Kristine May Bitanga Parcon, P.T., Go Flex Rehab Physical Therapy, P.C., Lyn Jonson Ballener, P.T., JEVA Physical Therapy P.C., Joseph Edwin Villacorte Abrenica, P.T., Finesse Care Physical Therapy P.C., Ahmed Hamdy Emara, P.T., July PT, P.C., Mahmoud Elsayed Elsanaa, P.T., Hands of Hope P.T., P.C., Motaz Mahmoud Ebeido, P.T., MMA Physical Therapy P.C., Mazen Mohamed Ahmed Ali Abdel Magid, P.T., Pyramid Care PT, P.C., Mohamed Hablas, P.T., MC Physical Therapy, P.C., and Michelle Nesas Cuadra, P.T.)**

1293. Allstate re-alleges, re-pleads and incorporates by reference the allegations set forth in paragraphs 1-1031 as if set forth fully herein.

1294. Through their participation in the operation and management of Raine M. Pesidas Physical Therapy P.C. ("Pesidas PT"), Rainegale Marie Mendiola Pesidas, P.T., Vladimir Geykhman, Alexander Gulkarov, Artur Sattarov, Jasur Rahmatov, Life Care Physical Therapy P.C., Ahmed Hamdy Emara, P.T., Comfort Physical Therapy, PLLC, Melissa C. Cadet, P.T., MT Physical Therapy P.C., Madonna Parungo Tandingan, P.T., Wellness Physical Therapy Rehabilitation PLLC, Milena Rezende, P.T. a/k/a Milena Reyes. JA Physical Therapy P.C., Mohamed Awad Awad, P.T., MC Physical Therapy P.C., Michelle Nesas Cuadra, P.T., Better

239

Hands Physical Therapy P.C., Kristine May Bitanga Parcon, P.T., Go Flex Rehab Physical Therapy, P.C., Lyn Jonson Ballener, P.T., JEVA Physical Therapy P.C., Joseph Edwin Villacorte Abrenica, P.T., Finesse Care Physical Therapy P.C., Ahmed Hamdy Emara, P.T., July PT, P.C., Mahmoud Elsayed Elsanaa, P.T., Hands of Hope P.T., P.C., Motaz Mahmoud Ebeido, P.T., MMA Physical Therapy P.C., Mazen Mohamed Ahmed Ali Abdel Magid, P.T., Pyramid Care PT, P.C., Mohamed Hablas, P.T., MC Physical Therapy, P.C., and Michelle Nesas Cuadra, P.T. (collectively, "Count XX Defendants") conspired with each other to violate 18 U.S.C. § 1962(c).

1295.   The Count XX Defendants each agreed to participate in a conspiracy to violate 18 U.S.C. § 1962(c) by agreeing to conduct the affairs of Pesidas PT by means of a pattern of racketeering activity, including numerous instances of mail fraud as set forth in Exhibit 30, and through the preparation and mailing of fraudulent insurance claim documents, including NF-3 forms, to Allstate.

1296.   The purpose of the conspiracy was to obtain, for the Count XX Defendants benefit, No-Fault payments from Allstate on behalf of Pesidas PT, even though Pesidas PT, as a result of the Count XX Defendants' unlawful conduct, was not eligible to collect such No-Fault benefit payments.

1297.   The purpose of the conspiracy was also to cause professional fees and profits collected by Pesidas PT to be channeled to Vladimir Geykhman, Alexander Gulkarov, Artur Sattarov, and Jasur Rahmatov for the benefit of Count XX Defendants.

1298.   The Count XX Defendants were aware of these purposes, and agreed to take steps to meet the conspiracy's objectives, including the creation of and mailing of documents and other claim-related materials, including NF-3 forms, containing misrepresentations and/or material omissions.

240

1299.   Allstate has been injured in its business and property by reason of this conspiratorial conduct whereas Allstate has been induced to make No-Fault claim payments as a result of the Count XX Defendants' unlawful conduct described herein.

1300.   By virtue of this violation of 18 U.S.C. § 1962(d), the Count XX Defendants are jointly and severally liable to Allstate, and Allstate is entitled to recover from each of the Count XX Defendants three times the damages sustained by reason of the claims submitted by the Defendants, and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

**COUNT XXI**
**VIOLATIONS OF 18 U.S.C. § 1962(c)**
**WELLNESS PHYSICAL THERAPY REHABILITATION P.C. ENTERPRISE**
**(Against Milena Rezende, P.T. a/k/a Milena Reyes, Vladimir Geykhman, Alexander Gulkarov, Artur Sattarov, Jasur Rahmatov, JA Physical Therapy P.C., Joseph Edwin Villacorte Abrenica, P.T., Comfort Physical Therapy, PLLC, Melissa C. Cadet, P.T., MT Physical Therapy P.C., Madonna Parungo Tandingan, P.T., Raine M. Pesidas Physical Therapy, P.C., Rainegale Marie Mendiola Pesidas, P.T., Life Care Physical Therapy, P.C., Ahmed Hamdy Emara, P.T., Atlas PT, P.C., Mohamed Awad Awad, P.T., July PT, P.C., Mahmoud Elsayed Elsanaa, P.T., Hands of Hope P.T., P.C., Motaz Mahmoud Ebeido, P.T., MMA Physical Therapy P.C., Mazen Mohamed Ahmed Ali Abdel Magid, P.T., MC Physical Therapy P.C., Michelle Nesas Cuadra, P.T., Go Flex Rehab Physical Therapy P.C., Lyn Jonson Ballener, P.T., JEVA Physical Therapy P.C., Pyramid Care PT, P.C., Mohamed Hablas, P.T., Better Hands Physical Therapy P.C., and Kristine May Bitanga Parcon, P.T.)**

1301.   Allstate re-alleges, re-pleads and incorporates by reference the allegations set forth in paragraphs 1-1031 as if set forth fully herein.

1302.   In furtherance of their operation and management of Wellness Physical Therapy Rehabilitation P.C. ("Wellness PT"), Milena Rezende, P.T. a/k/a Milena Reyes, Vladimir Geykhman, Alexander Gulkarov, Artur Sattarov, Jasur Rahmatov, JA Physical Therapy P.C., Joseph Edwin Villacorte Abrenica, P.T., Comfort Physical Therapy, PLLC, Melissa C. Cadet, P.T., MT Physical Therapy P.C., Madonna Parungo Tandingan, P.T., Raine M. Pesidas Physical

Therapy, P.C., Rainegale Marie Mendiola Pesidas, P.T., Life Care Physical Therapy, P.C., Ahmed Hamdy Emara, P.T., Atlas PT, P.C., Mohamed Awad Awad, P.T., July PT, P.C., Mahmoud Elsayed Elsanaa, P.T., Hands of Hope P.T., P.C., Motaz Mahmoud Ebeido, P.T., MMA Physical Therapy P.C., Mazen Mohamed Ahmed Ali Abdel Magid, P.T., MC Physical Therapy P.C., Michelle Nesas Cuadra, P.T., Go Flex Rehab Physical Therapy P.C., Lyn Jonson Ballener, P.T., JEVA Physical Therapy P.C., Pyramid Care PT, P.C., Mohamed Hablas, P.T., Better Hands Physical Therapy P.C., and Kristine May Bitanga Parcon, P.T. (collectively, "Count XXI Defendants") intentionally prepared and mailed (or caused to be prepared and mailed) false medical documentation in connection with Allstate insurance claims in furtherance of their scheme to defraud.

1303.   The Count XXI Defendants employed one or more mailings to demand and/or receive payment from Allstate on certain dates, including, but not limited to, those dates identified in the chart at Exhibit 31.

1304.   Among other things, NF-3 forms, medical billing invoices, medical reports, applications for insurance, and premium checks were routinely delivered to Allstate through the U.S. Mail.

1305.   Policies of insurance were delivered to insureds through the U.S. Mail.

1306.   Payments made by Allstate to Wellness PT were delivered through the U.S. Mail.

1307.   As documented above, the Count XXI Defendants repeatedly and intentionally submitted, or caused to be submitted, NF-3 forms and other claim-related documentation to Allstate related to expenses and/or services that were purportedly performed at Wellness PT for the purpose of collecting payment from Allstate under the Personal Injury Protection benefits portion of the Allstate policies and applicable New York No-Fault laws.

1308.   As a result of, and in reasonable reliance upon, the mailing and/or submission of these misleading documents and materially false representations, Allstate, by its agents and employees, issued drafts to Wellness PT that would not otherwise have been paid.

1309.   The Count XXI Defendants pattern of preparing and mailing (or causing/directing the preparation and mailing of) these documents and other claim-related materials, each appearing legitimate on their face, also prevented Allstate from discovering this scheme for a long period of time, thus enabling the Count XXI Defendants to continue without being detected.

1310.   The facts set forth above constitute indictable offenses pursuant to 18 U.S.C. § 1341 (mail fraud).

1311.   By creating and then mailing to Allstate (or directing the creation and subsequent mailing to Allstate) of numerous fraudulent documents and other claim-related materials in an ongoing scheme, the Count XXI Defendantsengaged in a pattern of racketeering activity within the meaning of 18 U.S.C. § 1962(c).

1312.   The activities alleged in this case had the direct effect of causing funds to be transferred from Allstate to Wellness PT for the benefit of the Count XXI Defendants.

1313.   The unlawful activities alleged in this case also had the direct effect of causing these funds, including professional fees and profits, to be channeled to Vladimir Geykhman, Alexander Gulkarov, Artur Sattarov, and Jasur Rahmatov for their own personal use and financial gain.

1314.   Allstate is in the business of writing insurance and paying claims in the State of New York.  Insurance fraud schemes practiced here and elsewhere have a deleterious impact on Allstate's overall financial well-being and adversely affect insurance rates.

1315.   Wellness PT constitutes an enterprise engaged in, and the activities of which affect, interstate commerce.

1316.   The Count XXI Defendants associated with the foregoing enterprise, and participated—both directly and indirectly—in the conduct of this enterprise through a pattern of racketeering activities.

1317.   Allstate is a "person" as defined by 18 U.S.C. § 1961(3), injured in its business or property by reason of the Count XXI Defendantsconduct.

1318.   The Count XXI Defendantsconduct in violation of 18 U.S.C. § 1962(c) was the direct and proximate cause of Allstate's injury.

1319.   By virtue of the Count XXI Defendantsviolations of 18 U.S.C. § 1962(c), Allstate is entitled to recover from them three times the damages sustained by reason of the claims submitted by them, and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

### COUNT XXII
### VIOLATION 18 U.S.C. § 1962(d)
### WELLNESS PHYSICAL THERAPY REHABILITATION P.C. ENTERPRISE
**(Against Milena Rezende, P.T. a/k/a Milena Reyes, Vladimir Geykhman, Alexander Gulkarov, Artur Sattarov, Jasur Rahmatov, JA Physical Therapy P.C., Joseph Edwin Villacorte Abrenica, P.T., Comfort Physical Therapy, PLLC, Melissa C. Cadet, P.T., MT Physical Therapy P.C., Madonna Parungo Tandingan, P.T., Raine M. Pesidas Physical Therapy, P.C., Rainegale Marie Mendiola Pesidas, P.T., Life Care Physical Therapy, P.C., Ahmed Hamdy Emara, P.T., Atlas PT, P.C., Mohamed Awad Awad, P.T., July PT, P.C., Mahmoud Elsayed Elsanaa, P.T., Hands of Hope P.T., P.C., Motaz Mahmoud Ebeido, P.T., MMA Physical Therapy P.C., Mazen Mohamed Ahmed Ali Abdel Magid, P.T., MC Physical Therapy P.C., Michelle Nesas Cuadra, P.T., Go Flex Rehab Physical Therapy P.C., Lyn Jonson Ballener, P.T., JEVA Physical Therapy P.C., Pyramid Care PT, P.C., Mohamed Hablas, P.T., Better Hands Physical Therapy P.C., and Kristine May Bitanga Parcon, P.T.)**

1320.   Allstate re-alleges, re-pleads and incorporates by reference the allegations set forth in paragraphs 1-1031 as if set forth fully herein.

244

1321.   Through their participation in the operation and management of Wellness Physical Therapy Rehabilitation P.C. ("Wellness PT"), Milena Rezende, P.T. a/k/a Milena Reyes, Vladimir Geykhman, Alexander Gulkarov, Artur Sattarov, Jasur Rahmatov, JA Physical Therapy P.C., Joseph Edwin Villacorte Abrenica, P.T., Comfort Physical Therapy, PLLC, Melissa C. Cadet, P.T., MT Physical Therapy P.C., Madonna Parungo Tandingan, P.T., Raine M. Pesidas Physical Therapy, P.C., Rainegale Marie Mendiola Pesidas, P.T., Life Care Physical Therapy, P.C., Ahmed Hamdy Emara, P.T., Atlas PT, P.C., Mohamed Awad Awad, P.T., July PT, P.C., Mahmoud Elsayed Elsanaa, P.T., Hands of Hope P.T., P.C., Motaz Mahmoud Ebeido, P.T., MMA Physical Therapy P.C., Mazen Mohamed Ahmed Ali Abdel Magid, P.T., MC Physical Therapy P.C., Michelle Nesas Cuadra, P.T., Go Flex Rehab Physical Therapy P.C., Lyn Jonson Ballener, P.T., JEVA Physical Therapy P.C., Pyramid Care PT, P.C., Mohamed Hablas, P.T., Better Hands Physical Therapy P.C., and Kristine May Bitanga Parcon, P.T. (collectively, "Count XXII Defendants") conspired with each other to violate 18 U.S.C. § 1962(c).

1322.   The Count XXII Defendants each agreed to participate in a conspiracy to violate 18 U.S.C. § 1962(c) by agreeing to conduct the affairs of Wellness PT by means of a pattern of racketeering activity, including numerous instances of mail fraud as set forth in Exhibit 31, and through the preparation and mailing of fraudulent insurance claim documents, including NF-3 forms, to Allstate.

1323.   The purpose of the conspiracy was to obtain, for the Count XXII Defendants benefit, No-Fault payments from Allstate on behalf of Wellness PT, even though Wellness PT, as a result of the Count XXII Defendants' unlawful conduct, was not eligible to collect such No-Fault benefit payments.

1324.   The purpose of the conspiracy was also to cause professional fees and profits collected by Wellness PT to be channeled for the benefit of Vladimir Geykhman, Alexander Gulkarov, Artur Sattarov, and Jasur Rahmatov.

1325.   The Count XXII Defendants were aware of these purposes, and agreed to take steps to meet the conspiracy's objectives, including the creation of and mailing of documents and other claim-related materials, including NF-3 forms, containing misrepresentations and/or material omissions.

1326.   Allstate has been injured in its business and property by reason of this conspiratorial conduct whereas Allstate has been induced to make No-Fault claim payments as a result of the Count XXII Defendants' unlawful conduct described herein.

1327.   By virtue of this violation of 18 U.S.C. § 1962(d), the Count XXII Defendants are jointly and severally liable to Allstate, and Allstate is entitled to recover from each of the Count XXII Defendants three times the damages sustained by reason of the claims submitted by the Defendants, and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

**COUNT XXIII**
**VIOLATIONS OF 18 U.S.C. § 1962(c)**
**HAND BY HAND PT, P.C. ENTERPRISE**
**(Against Mahmoud Elsayed Elsanaa, P.T., Vladimir Geykhman, Artur Sattarov, Jasur Rahmatov, and July PT, P.C.)**

1328.   Allstate re-alleges, re-pleads and incorporates by reference the allegations set forth in paragraphs 1-1031 as if set forth fully herein.

1329.   In furtherance of their operation and management of Hand by Hand PT, P.C. ("Hand by Hand"), Mahmoud Elsayed Elsanaa, P.T., Vladimir Geykhman, Artur Sattarov, Jasur Rahmatov, and July PT, P.C. (collectively, "Count XXIII Defendants") intentionally prepared and

mailed (or caused to be prepared and mailed) false medical documentation in connection with Allstate insurance claims in furtherance of their scheme to defraud.

1330.  The Count XXIII Defendants employed one or more mailings to demand and/or receive payment from Allstate on certain dates, including, but not limited to, those dates identified in the chart at Exhibit 32.

1331.  Among other things, NF-3 forms, medical billing invoices, medical reports, applications for insurance, and premium checks were routinely delivered to Allstate through the U.S. Mail.

1332.  Policies of insurance were delivered to insureds through the U.S. Mail.

1333.  Payments made by Allstate to Hand by Hand— were delivered through the U.S. Mail.

1334.  As documented above, the Count XXIII Defendants repeatedly and intentionally submitted, or caused to be submitted, NF-3 forms and other claim-related documentation to Allstate related to expenses and/or services that were purportedly performed at Hand by Hand for the purpose of collecting payment from Allstate under the Personal Injury Protection benefits portion of the Allstate policies and applicable New York No-Fault laws.

1335.  As a result of, and in reasonable reliance upon, the mailing and/or submission of these misleading documents and materially false representations, Allstate, by its agents and employees, issued drafts to Hand by Hand, that would not otherwise have been paid.

1336.  The Count XXIII Defendants' pattern of preparing and mailing (or causing/directing the preparation and mailing of) these documents and other claim-related materials, each appearing legitimate on their face, also prevented Allstate from discovering this

scheme for a long period of time, thus enabling the Count XXIII Defendants to continue without being detected.

1337.   The facts set forth above constitute indictable offenses pursuant to 18 U.S.C. § 1341 (mail fraud).

1338.   By creating and then mailing to Allstate (or directing the creation and subsequent mailing to Allstate) of numerous fraudulent documents and other claim-related materials in an ongoing scheme, the Count XXIII Defendants engaged in a pattern of racketeering activity within the meaning of 18 U.S.C. § 1962(c).

1339.   The activities alleged in this case had the direct effect of causing funds to be transferred from Allstate to Hand by Hand for the benefit of the Count XXIII Defendants.

1340.   The unlawful activities alleged in this case also had the direct effect of causing these funds, including professional fees and profits, to be channeled to Vladimir Geykhman, Artur Sattarov, and Jasur Rahmatov for their own personal use and financial gain.

1341.   Allstate is in the business of writing insurance and paying claims in the State of New York.  Insurance fraud schemes practiced here and elsewhere have a deleterious impact on Allstate's overall financial well-being and adversely affect insurance rates.

1342.   Hand by Hand constitutes an enterprise engaged in, and the activities of which affect, interstate commerce.

1343.   The Count XXIII Defendants associated with the foregoing enterprise, and participated—both directly and indirectly—in the conduct of this enterprise through a pattern of racketeering activities.

1344.   Allstate is a "person" as defined by 18 U.S.C. § 1961(3), injured in its business or property by reason of the Count XXIII Defendants' conduct.

1345.   The Count XXIII Defendants' conduct in violation of 18 U.S.C. § 1962(c) was the direct and proximate cause of Allstate's injury.

1346.   By virtue of the Count XXIII Defendants' violations of 18 U.S.C. § 1962(c), Allstate is entitled to recover from them three times the damages sustained by reason of the claims submitted by them, and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

**COUNT XXIV**
**VIOLATION 18 U.S.C. § 1962(d)**
**HAND BY HAND PT, P.C. ENTERPRISE**
**(Against Mahmoud Elsayed Elsanaa, P.T., Vladimir Geykhman, Artur Sattarov, Jasur Rahmatov, and July PT, P.C.)**

1347.   Allstate re-alleges, re-pleads and incorporates by reference the allegations set forth in paragraphs 1-1031 as if set forth fully herein.

1348.   Through their participation in the operation and management of Hand by Hand PT, P.C. ("Hands by Hand"), Mahmoud Elsayed Elsanaa, P.T., Vladimir Geykhman, Artur Sattarov, Jasur Rahmatov, and July PT, P.C. (collectively, "Count XXIV Defendants") conspired with each other to violate 18 U.S.C. § 1962(c).

1349.   The Count Count XXIV Defendants each agreed to participate in a conspiracy to violate 18 U.S.C. § 1962(c) by agreeing to conduct the affairs of Hands by Hand by means of a pattern of racketeering activity, including numerous instances of mail fraud as set forth in Exhibit 32, and through the preparation and mailing of fraudulent insurance claim documents, including NF-3 forms, to Allstate.

1350.   The purpose of the conspiracy was to obtain, for the Count XXIV Defendants benefit, No-Fault payments from Allstate on behalf of Hands of Hope, even though Hands by

Hand, as a result of the Count XXIV Defendants' unlawful conduct, was not eligible to collect such No-Fault benefit payments.

1351.   The purpose of the conspiracy was also to cause professional fees and profits collected by Hands by Hand to be channeled for the benefit of Vladimir Geykhman, Artur Sattarov, and Jasur Rahmatov.

1352.   The Count XXIV Defendants were aware of these purposes, and agreed to take steps to meet the conspiracy's objectives, including the creation of and mailing of documents and other claim-related materials, including NF-3 forms, containing misrepresentations and/or material omissions.

1353.   Allstate has been injured in its business and property by reason of this conspiratorial conduct whereas Allstate has been induced to make No-Fault claim payments as a result of the Count XXIV Defendants' unlawful conduct described herein.

1354.   By virtue of this violation of 18 U.S.C. § 1962(d), the Count XXIV Defendants are jointly and severally liable to Allstate, and Allstate is entitled to recover from each of the Count XXIV Defendants three times the damages sustained by reason of the claims submitted by the Defendants, and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

## COUNT XXV
### VIOLATIONS OF 18 U.S.C. § 1962(c)
### MC PHYSICAL THERAPY P.C. ENTERPRISE
**(Against Michelle Nesas Cuadra, P.T., Vladimir Geykhman, Alexander Gulkarov, Artur Sattarov, Jasur Rahmatov, Raine M. Pesidas Physical Therapy P.C., Rainegale Marie Mendiola Pesidas, P.T., JA Physical Therapy P.C., JEVA Physical Therapy P.C., Joseph Edwin Villacorte Abrenica, P.T., Wellness Physical Therapy Rehabilitation PLLC, Milena Rezende, P.T. a/k/a Milena Reyes, Axis PT, P.C., Mohamed Awad Awad, P.T., Better Hands Physical Therapy, P.C., Kristine May Bitanga Parcon, P.T., Go Flex Rehab Physical Therapy, P.C., Lyn Jonson Ballener, P.T., MT Physical Therapy P.C., Madonna Parungo Tandingan, P.T., Comfort Physical Therapy, PLLC, Melissa C. Cadet, P.T., Finesse Care Physical Therapy, P.C., Ahmed Hamdy Emara, P.T., Life Care Physical Therapy P.C.,**

**Ahmed Hamdy Emara, P.T., Atlas PT, P.C., July PT, P.C., Mahmoud Elsayed Elsanaa, P.T., Hands of Hope PT, P.C., Motaz Mahmoud Ebeido, P.T., MMA Physical Therapy P.C., Mazen Mohamed Ahmed Ali Abdel Magid, P.T., Pyramid Care PT, P.C., and Mohamed Hablas, P.T.)**

1355.   Allstate re-alleges, re-pleads and incorporates by reference the allegations set forth in paragraphs 1-1031 as if set forth fully herein.

1356.   In furtherance of their operation and management of MC Physical Therapy P.C. ("MC"), Michelle Nesas Cuadra, P.T., Vladimir Geykhman, Alexander Gulkarov, Artur Sattarov, Jasur Rahmatov, Raine M. Pesidas Physical Therapy P.C., Rainegale Marie Mendiola Pesidas, P.T., JA Physical Therapy P.C., JEVA Physical Therapy P.C., Joseph Edwin Villacorte Abrenica, P.T., Wellness Physical Therapy Rehabilitation PLLC, Milena Rezende, P.T. a/k/a Milena Reyes, Axis PT, P.C., Mohamed Awad Awad, P.T., Better Hands Physical Therapy, P.C., Kristine May Bitanga Parcon, P.T., Go Flex Rehab Physical Therapy, P.C., Lyn Jonson Ballener, P.T., MT Physical Therapy P.C., Madonna Parungo Tandingan, P.T., Comfort Physical Therapy, PLLC, Melissa C. Cadet, P.T., Finesse Care Physical Therapy, P.C., Ahmed Hamdy Emara, P.T., Life Care Physical Therapy P.C., Ahmed Hamdy Emara, P.T., Atlas PT, P.C., July PT, P.C., Mahmoud Elsayed Elsanaa, P.T., Hands of Hope PT, P.C., Motaz Mahmoud Ebeido, P.T., MMA Physical Therapy P.C., Mazen Mohamed Ahmed Ali Abdel Magid, P.T., Pyramid Care PT, P.C., and Mohamed Hablas, P.T. (collectively, "Count XXV Defendants") intentionally prepared and mailed (or caused to be prepared and mailed) false medical documentation in connection with Allstate insurance claims in furtherance of their scheme to defraud.

1357.   The Count XXV Defendants employed one or more mailings to demand and/or receive payment from Allstate on certain dates, including, but not limited to, those dates identified in the chart at Exhibit 33.

1358.   Among other things, NF-3 forms, medical billing invoices, medical reports, applications for insurance, and premium checks were routinely delivered to Allstate through the U.S. Mail.

1359.   Policies of insurance were delivered to insureds through the U.S. Mail.

1360.   Payments made by Allstate to MC were delivered through the U.S. Mail.

1361.   As documented above, the Count XXV Defendants repeatedly and intentionally submitted, or caused to be submitted, NF-3 forms and other claim-related documentation to Allstate related to expenses and/or services that were purportedly performed at MC for the purpose of collecting payment from Allstate under the Personal Injury Protection benefits portion of the Allstate policies and applicable New York No-Fault laws.

1362.   As a result of, and in reasonable reliance upon, the mailing and/or submission of these misleading documents and materially false representations, Allstate, by its agents and employees, issued drafts to MC that would not otherwise have been paid.

1363.   The Count XXV Defendants' pattern of preparing and mailing (or causing/directing the preparation and mailing of) these documents and other claim-related materials, each appearing legitimate on their face, also prevented Allstate from discovering this scheme for a long period of time, thus enabling the Count XXV Defendants to continue without being detected.

1364.   The facts set forth above constitute indictable offenses pursuant to 18 U.S.C. § 1341 (mail fraud).

1365.   By creating and then mailing to Allstate (or directing the creation and subsequent mailing to Allstate) of numerous fraudulent documents and other claim-related materials in an ongoing scheme, the Count XXV Defendants engaged in a pattern of racketeering activity within the meaning of 18 U.S.C. § 1962(c).

252

1366.   The activities alleged in this case had the direct effect of causing funds to be transferred from Allstate to MC for the benefit of the Count XXV Defendants.

1367.   The unlawful activities alleged in this case also had the direct effect of causing these funds, including professional fees and profits, to be channeled to Vladimir Geykhman, Alexander Gulkarov, Artur Sattarov, and Jasur Rahmatov for their own personal use and financial gain.

1368.   Allstate is in the business of writing insurance and paying claims in the State of New York.  Insurance fraud schemes practiced here and elsewhere have a deleterious impact on Allstate's overall financial well-being and adversely affect insurance rates.

1369.   MC constitutes an enterprise engaged in, and the activities of which affect, interstate commerce.

1370.   The Count XXV Defendants associated with the foregoing enterprise, and participated—both directly and indirectly—in the conduct of this enterprise through a pattern of racketeering activities.

1371.   Allstate is a "person" as defined by 18 U.S.C. § 1961(3), injured in its business or property by reason of the Count XXV Defendants' conduct.

1372.   The Count XXV Defendants' conduct in violation of 18 U.S.C. § 1962(c) was the direct and proximate cause of Allstate's injury.

1373.   By virtue of the Count XXV Defendants' violations of 18 U.S.C. § 1962(c), Allstate is entitled to recover from them three times the damages sustained by reason of the claims submitted by them, and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

**COUNT XXVI**
**VIOLATION 18 U.S.C. § 1962(d)**
**MC PHYSICAL THERAPY P.C. ENTERPRISE**
**(Against Michelle Nesas Cuadra, P.T., Vladimir Geykhman, Alexander Gulkarov, Artur Sattarov, Jasur Rahmatov, Raine M. Pesidas Physical Therapy P.C., Rainegale Marie Mendiola Pesidas, P.T., JA Physical Therapy P.C., JEVA Physical Therapy P.C., Joseph Edwin Villacorte Abrenica, P.T., Wellness Physical Therapy Rehabilitation PLLC, Milena Rezende, P.T. a/k/a Milena Reyes, Axis PT, P.C., Mohamed Awad Awad, P.T., Better Hands Physical Therapy, P.C., Kristine May Bitanga Parcon, P.T., Go Flex Rehab Physical Therapy, P.C., Lyn Jonson Ballener, P.T., MT Physical Therapy P.C., Madonna Parungo Tandingan, P.T., Comfort Physical Therapy, PLLC, Melissa C. Cadet, P.T., Finesse Care Physical Therapy P.C., Ahmed Hamdy Emara, P.T., Life Care Physical Therapy P.C., Ahmed Hamdy Emara, P.T., Atlas PT, P.C., July PT, P.C., Mahmoud Elsayed Elsanaa, P.T., Hands of Hope PT, P.C., Motaz Mahmoud Ebeido, P.T., MMA Physical Therapy P.C., Mazen Mohamed Ahmed Ali Abdel Magid, P.T., Pyramid Care PT, P.C., and Mohamed Hablas, P.T.)**

1374.   Allstate re-alleges, re-pleads and incorporates by reference the allegations set forth in paragraphs 1-1031 as if set forth fully herein.

1375.   Through their participation in the operation and management of MC Physical Therapy P.C. ("MC"), Michelle Nesas Cuadra, P.T., Vladimir Geykhman, Alexander Gulkarov, Artur Sattarov, Jasur Rahmatov, Raine M. Pesidas Physical Therapy P.C., Rainegale Marie Mendiola Pesidas, P.T., JA Physical Therapy P.C., JEVA Physical Therapy P.C., Joseph Edwin Villacorte Abrenica, P.T., Wellness Physical Therapy Rehabilitation PLLC, Milena Rezende, P.T. a/k/a Milena Reyes, Axis PT, P.C., Mohamed Awad Awad, P.T., Better Hands Physical Therapy, P.C., Kristine May Bitanga Parcon, P.T., Go Flex Rehab Physical Therapy, P.C., Lyn Jonson Ballener, P.T., MT Physical Therapy P.C., Madonna Parungo Tandingan, P.T., Comfort Physical Therapy, PLLC, Melissa C. Cadet, P.T., Finesse Care Physical Therapy, P.C., Ahmed Hamdy Emara, P.T., Life Care Physical Therapy P.C., Ahmed Hamdy Emara, P.T., Atlas PT, P.C., July PT, P.C., Mahmoud Elsayed Elsanaa, P.T., Hands of Hope PT, P.C., Motaz Mahmoud Ebeido, P.T., MMA Physical Therapy P.C., Mazen Mohamed Ahmed Ali Abdel Magid, P.T., Pyramid

Care PT, P.C., and Mohamed Hablas, P.T. (collectively, "Count XXVI Defendants") conspired with each other to violate 18 U.S.C. § 1962(c).

1376.   The Count XXVI Defendants each agreed to participate in a conspiracy to violate 18 U.S.C. § 1962(c) by agreeing to conduct the affairs of MC by means of a pattern of racketeering activity, including numerous instances of mail fraud as set forth in Exhibit 33, and through the preparation and mailing of fraudulent insurance claim documents, including NF-3 forms, to Allstate.

1377.   The purpose of the conspiracy was to obtain, for the Count XXVI Defendants benefit, No-Fault payments from Allstate on behalf of MC, even though MC, as a result of the Count XXVI Defendants' unlawful conduct, was not eligible to collect such No-Fault benefit payments.

1378.   The purpose of the conspiracy was also to cause professional fees and profits collected MC to be channeled for the benefit of Vladimir Geykhman, Alexander Gulkarov, Artur Sattarov, and Jasur Rahmatov.

1379.   The Count XXVI Defendants were aware of these purposes, and agreed to take steps to meet the conspiracy's objectives, including the creation of and mailing of documents and other claim-related materials, including NF-3 forms, containing misrepresentations and/or material omissions.

1380.   Allstate has been injured in its business and property by reason of this conspiratorial conduct whereas Allstate has been induced to make No-Fault claim payments as a result of the Count XXVI Defendants' unlawful conduct described herein.

1381.   By virtue of this violation of 18 U.S.C. § 1962(d), the Count XXVI Defendants are jointly and severally liable to Allstate, and Allstate is entitled to recover from each of the Count

XXVI Defendants three times the damages sustained by reason of the claims submitted by the Defendants, and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

### COUNT XXVII
### VIOLATIONS OF 18 U.S.C. § 1962(c)
### GO FLEX PHYSICAL THERAPY P.C. ENTERPRISE
**(Against Lyn Jonson Ballener, P.T., Vladimir Geykhman, Alexander Gulkarov, Artur Sattarov, Jasur Rahmatov, Better Hands Physical Therapy P.C., Kristine May Bitanga Parcon, P.T., JEVA Physical Therapy P.C., JA Physical Therapy P.C., Joseph Edwin Villacorte Abrenica, P.T., Raine M. Pesidas Physical Therapy P.C., Rainegale Marie Mendiola Pesidas, P.T., Axis PT, P.C., Atlas PT, P.C., Mohamed Awad Awad, P.T., MC Physical Therapy P.C., Michelle Nesas Cuadra, P.T., Wellness Physical Therapy Rehabilitation PLLC, Milena Rezende, P.T. a/k/a Milena Reyes, MT Physical Therapy P.C., Madonna Parungo Tandingan, P.T., July PT, P.C., Mahmoud Elsayed Elsanaa, P.T., Hands of Hope P.T., P.C., Motaz Mahmoud Ebeido, P.T, MMA Physical Therapy P.C., Mazen Mohamed Ahmed Ali Abdel Magid, P.T., Comfort Physical Therapy, PLLC, Melissa C. Cadet, P.T., Pyramid Care PT, P.C., and Mohamed Hablas, P.T.)**

1382.    Allstate re-alleges, re-pleads and incorporates by reference the allegations set forth in paragraphs 1-1031 as if set forth fully herein.

1383.    In furtherance of their operation and management of Go Flex Physical Therapy P.C. ("Go Flex"), Lyn Jonson Ballener, P.T., Vladimir Geykhman, Alexander Gulkarov, Artur Sattarov, Jasur Rahmatov, Better Hands Physical Therapy P.C., Kristine May Bitanga Parcon, P.T., JEVA Physical Therapy P.C., JA Physical Therapy P.C., Joseph Edwin Villacorte Abrenica, P.T., Raine M. Pesidas Physical Therapy P.C., Rainegale Marie Mendiola Pesidas, P.T., Axis PT, P.C., Atlas PT, P.C., Mohamed Awad Awad, P.T., MC Physical Therapy P.C., Michelle Nesas Cuadra, P.T., Wellness Physical Therapy Rehabilitation PLLC, Milena Rezende, P.T. a/k/a Milena Reyes, MT Physical Therapy P.C., Madonna Parungo Tandingan, P.T., July PT, P.C., Mahmoud Elsayed Elsanaa, P.T., Hands of Hope P.T., P.C., Motaz Mahmoud Ebeido, P.T, MMA Physical Therapy P.C., Mazen Mohamed Ahmed Ali Abdel Magid, P.T., Comfort Physical Therapy, PLLC, Melissa C. Cadet, P.T., Pyramid Care PT, P.C., and Mohamed Hablas, P.T. (collectively, "Count XXVII

256

Defendants") intentionally prepared and mailed (or caused to be prepared and mailed) false medical documentation in connection with Allstate insurance claims in furtherance of their scheme to defraud.

1384.   The Count XXVII Defendants employed one or more mailings to demand and/or receive payment from Allstate on certain dates, including, but not limited to, those dates identified in the chart at Exhibit 34.

1385.   Among other things, NF-3 forms, medical billing invoices, medical reports, applications for insurance, and premium checks were routinely delivered to Allstate through the U.S. Mail.

1386.   Policies of insurance were delivered to insureds through the U.S. Mail.

1387.   Payments made by Allstate to Go Flex were delivered through the U.S. Mail.

1388.   As documented above, the Count XXVII Defendants repeatedly and intentionally submitted, or caused to be submitted, NF-3 forms and other claim-related documentation to Allstate related to expenses and/or services that were purportedly performed at Go Flex for the purpose of collecting payment from Allstate under the Personal Injury Protection benefits portion of the Allstate policies and applicable New York No-Fault laws.

1389.   As a result of, and in reasonable reliance upon, the mailing and/or submission of these misleading documents and materially false representations, Allstate, by its agents and employees, issued drafts to Go Flex that would not otherwise have been paid.

1390.   The Count XXVII Defendants' pattern of preparing and mailing (or causing/directing the preparation and mailing of) these documents and other claim-related materials, each appearing legitimate on their face, also prevented Allstate from discovering this

scheme for a long period of time, thus enabling the Count XXVII Defendants to continue without being detected.

1391.   The facts set forth above constitute indictable offenses pursuant to 18 U.S.C. § 1341 (mail fraud).

1392.   By creating and then mailing to Allstate (or directing the creation and subsequent mailing to Allstate) of numerous fraudulent documents and other claim-related materials in an ongoing scheme, the Count XXVII Defendants engaged in a pattern of racketeering activity within the meaning of 18 U.S.C. § 1962(c).

1393.   The activities alleged in this case had the direct effect of causing funds to be transferred from Allstate to Go Flex for the benefit of the Count XXVII Defendants.

1394.   The unlawful activities alleged in this case also had the direct effect of causing these funds, including professional fees and profits, to be channeled to Vladimir Geykhman, Alexander Gulkarov, Artur Sattarov, and Jasur Rahmatov for their own personal use and financial gain.

1395.   Allstate is in the business of writing insurance and paying claims in the State of New York.  Insurance fraud schemes practiced here and elsewhere have a deleterious impact on Allstate's overall financial well-being and adversely affect insurance rates.

1396.   Go Flex constitutes an enterprise engaged in, and the activities of which affect, interstate commerce.

1397.   The Count XXVII Defendants associated with the foregoing enterprise, and participated—both directly and indirectly—in the conduct of this enterprise through a pattern of racketeering activities.

1398.   Allstate is a "person" as defined by 18 U.S.C. § 1961(3), injured in its business or property by reason of the Count XXVII Defendants' conduct.

1399.   The Count XXVII Defendants' conduct in violation of 18 U.S.C. § 1962(c) was the direct and proximate cause of Allstate's injury.

1400.   By virtue of the Count XXVII Defendants' violations of 18 U.S.C. § 1962(c), Allstate is entitled to recover from them three times the damages sustained by reason of the claims submitted by them, and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

## COUNT XXVIII
### VIOLATION 18 U.S.C. § 1962(d)
### GO FLEX PHYSICAL THERAPY P.C. ENTERPRISE
**(Against Lyn Jonson Ballener, P.T., Vladimir Geykhman, Alexander Gulkarov, Artur Sattarov, Jasur Rahmatov, Better Hands Physical Therapy P.C., Kristine May Bitanga Parcon, P.T., JEVA Physical Therapy P.C., JA Physical Therapy P.C., Joseph Edwin Villacorte Abrenica, P.T., Raine M. Pesidas Physical Therapy P.C., Rainegale Marie Mendiola Pesidas, P.T., Axis PT, P.C., Atlas PT, P.C., Mohamed Awad Awad, P.T., MC Physical Therapy P.C., Michelle Nesas Cuadra, P.T., Wellness Physical Therapy Rehabilitation PLLC, Milena Rezende, P.T. a/k/a Milena Reyes, MT Physical Therapy P.C., Madonna Parungo Tandingan, P.T., July PT, P.C., Mahmoud Elsayed Elsanaa, P.T., Hands of Hope P.T., P.C., Motaz Mahmoud Ebeido, P.T., MMA Physical Therapy P.C., Mazen Mohamed Ahmed Ali Abdel Magid, P.T., Comfort Physical Therapy, PLLC, Melissa C. Cadet, P.T., Pyramid Care PT, P.C., and Mohamed Hablas, P.T.)**

1401.   Allstate re-alleges, re-pleads and incorporates by reference the allegations set forth in paragraphs 1-1031 as if set forth fully herein.

1402.   Through their participation in the operation and management of Go Flex Physical Therapy P.C. ("Go Flex"), Lyn Jonson Ballener, P.T., Vladimir Geykhman, Alexander Gulkarov, Artur Sattarov, Jasur Rahmatov, Better Hands Physical Therapy P.C., Kristine May Bitanga Parcon, P.T., JEVA Physical Therapy P.C., JA Physical Therapy P.C., Joseph Edwin Villacorte Abrenica, P.T., Raine M. Pesidas Physical Therapy P.C., Rainegale Marie Mendiola Pesidas, P.T. Axis PT, P.C., Atlas PT, P.C., Mohamed Awad Awad, P.T., MC Physical Therapy P.C., Michelle

Nesas Cuadra, P.T., Wellness Physical Therapy Rehabilitation PLLC, Milena Rezende, P.T. a/k/a Milena Reyes, MT Physical Therapy P.C., Madonna Parungo Tandingan, P.T., July PT, P.C., Mahmoud Elsayed Elsanaa, P.T., Hands of Hope P.T., P.C., Motaz Mahmoud Ebeido, P.T., MMA Physical Therapy P.C., Mazen Mohamed Ahmed Ali Abdel Magid, P.T., Comfort Physical Therapy, PLLC, Melissa C. Cadet, P.T., Pyramid Care PT, P.C., and Mohamed Hablas, P.T. (collectively, "Count XXVIII Defendants") conspired with each other to violate 18 U.S.C. § 1962(c).

1403.   The Count XXVIII Defendants each agreed to participate in a conspiracy to violate 18 U.S.C. § 1962(c) by agreeing to conduct the affairs of Go Flex by means of a pattern of racketeering activity, including numerous instances of mail fraud as set forth in Exhibit 34, and through the preparation and mailing of fraudulent insurance claim documents, including NF-3 forms, to Allstate.

1404.   The purpose of the conspiracy was to obtain, for the Count XXVIII Defendants benefit, No-Fault payments from Allstate on behalf of Go Flex, even though Go Flex, as a result of the Count XXVIII Defendants' unlawful conduct, was not eligible to collect such No-Fault benefit payments.

1405.   The purpose of the conspiracy was also to cause professional fees and profits collected by Go Flex to be channeled for the benefit of Vladimir Geykhman, Alexander Gulkarov, Artur Sattarov, and Jasur Rahmatov.

1406.   The Count XXVIII Defendants were aware of these purposes, and agreed to take steps to meet the conspiracy's objectives, including the creation of and mailing of documents and other claim-related materials, including NF-3 forms, containing misrepresentations and/or material omissions.

1407.   Allstate has been injured in its business and property by reason of this conspiratorial conduct whereas Allstate has been induced to make No-Fault claim payments as a result of the Count XXVIII Defendants' unlawful conduct described herein.

1408.   By virtue of this violation of 18 U.S.C. § 1962(d), the Count XXVIII Defendant sare jointly and severally liable to Allstate, and Allstate is entitled to recover from each of the Count XXVIII Defendants three times the damages sustained by reason of the claims submitted by the Defendants, and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

## COUNT XXIX
### VIOLATIONS OF 18 U.S.C. § 1962(c)
### JEVA PHYSICAL THERAPY P.C. ENTERPRISE
**(Against Joseph Edwin Villacorte Abrenica, P.T., Vladimir Geykhman, Alexander Gulkarov, Artur Sattarov, Jasur Rahmatov, JA Physical Therapy P.C., Better Hands Physical Therapy P.C., Kristine May Bitanga Parcon, P.T., Go Flex Rehab Physical Therapy, P.C., Lyn Jonson Ballener, P.T., Raine M. Pesidas Physical Therapy P.C., Rainegale Marie Mendiola Pesidas, P.T., Axis PT, P.C., Atlas PT, P.C., Mohamed Awad Awad, P.T., MC Physical Therapy, P.C., Michelle Nesas Cuadra, P.T., MT Physical Therapy P.C., Madonna Parungo Tandingan, P.T., Wellness Physical Therapy Rehabilitation PLLC, Milena Rezende, P.T. a/k/a Milena Reyes, July PT, P.C., Mahmoud Elsayed Elsanaa, P.T., Hands of Hope P.T., P.C., Motaz Mahmoud Ebeido, P.T., MMA Physical Therapy P.C., Mazen Mohamed Ahmed Ali Abdel Magid, P.C., Comfort Physical Therapy PLLC, Melissa C. Cadet, P.T., Pyramid Care PT, P.C., and Mohamed Hablas, P.T.)**

1409.   Allstate re-alleges, re-pleads and incorporates by reference the allegations set forth in paragraphs 1-1031 as if set forth fully herein.

1410.   In furtherance of their operation and management of JEVA Physical Therapy P.C. ("JEVA"), Joseph Edwin Villacorte Abrenica, P.T., Vladimir Geykhman, Alexander Gulkarov, Artur Sattarov, Jasur Rahmatov, JA Physical Therapy P.C., Better Hands Physical Therapy P.C., Kristine May Bitanga Parcon, P.T., Go Flex Rehab Physical Therapy, P.C., Lyn Jonson Ballener, P.T., Raine M. Pesidas Physical Therapy P.C., Rainegale Marie Mendiola Pesidas, P.T., Axis PT,

P.C., Atlas PT, P.C., Mohamed Awad Awad, P.T., MC Physical Therapy, P.C., Michelle Nesas Cuadra, P.T., MT Physical Therapy P.C., Madonna Parungo Tandingan, P.T., Wellness Physical Therapy Rehabilitation PLLC, Milena Rezende, P.T. a/k/a Milena Reyes, July PT, P.C., Mahmoud Elsayed Elsanaa, P.T., Hands of Hope P.T., P.C., Motaz Mahmoud Ebeido, P.T., MMA Physical Therapy P.C., Mazen Mohamed Ahmed Ali Abdel Magid, P.C., Comfort Physical Therapy PLLC, Melissa C. Cadet, P.T., Pyramid Care PT, P.C., and Mohamed Hablas, P.T. (collectively, "Count XXIX Defendants") intentionally prepared and mailed (or caused to be prepared and mailed) false medical documentation in connection with Allstate insurance claims in furtherance of their scheme to defraud.

1411.  The Count XXIX Defendants employed one or more mailings to demand and/or receive payment from Allstate on certain dates, including, but not limited to, those dates identified in the chart at Exhibit 35.

1412.  Among other things, NF-3 forms, medical billing invoices, medical reports, applications for insurance, and premium checks were routinely delivered to Allstate through the U.S. Mail.

1413.  Policies of insurance were delivered to insureds through the U.S. Mail.

1414.  Payments made by Allstate to JEVA were delivered through the U.S. Mail.

1415.  As documented above, the Count XXIX Defendants repeatedly and intentionally submitted, or caused to be submitted, NF-3 forms and other claim-related documentation to Allstate related to expenses and/or services that were purportedly performed at JEVA for the purpose of collecting payment from Allstate under the Personal Injury Protection benefits portion of the Allstate policies and applicable New York No-Fault laws.

1416.   As a result of, and in reasonable reliance upon, the mailing and/or submission of these misleading documents and materially false representations, Allstate, by its agents and employees, issued drafts to JEVA that would not otherwise have been paid.

1417.   The Count XXIX Defendants' pattern of preparing and mailing (or causing/directing the preparation and mailing of) these documents and other claim-related materials, each appearing legitimate on their face, also prevented Allstate from discovering this scheme for a long period of time, thus enabling the Count XXIX Defendants to continue without being detected.

1418.   The facts set forth above constitute indictable offenses pursuant to 18 U.S.C. § 1341 (mail fraud).

1419.   By creating and then mailing to Allstate (or directing the creation and subsequent mailing to Allstate) of numerous fraudulent documents and other claim-related materials in an ongoing scheme, the Count XXIX Defendants engaged in a pattern of racketeering activity within the meaning of 18 U.S.C. § 1962(c).

1420.   The activities alleged in this case had the direct effect of causing funds to be transferred from Allstate to JEVA for the benefit of Count XXIX Defendants.

1421.   The unlawful activities alleged in this case also had the direct effect of causing these funds, including professional fees and profits, to be channeled to Vladimir Geykhman, Alexander Gulkarov, Artur Sattarov, and Jasur Rahmatov for their own personal use and financial gain.

1422.   Allstate is in the business of writing insurance and paying claims in the State of New York.  Insurance fraud schemes practiced here and elsewhere have a deleterious impact on Allstate's overall financial well-being and adversely affect insurance rates.

1423.   JEVA constitutes an enterprise engaged in, and the activities of which affect, interstate commerce.

1424.   The Count XXIX Defendants associated with the foregoing enterprise, and participated—both directly and indirectly—in the conduct of this enterprise through a pattern of racketeering activities.

1425.   Allstate is a "person" as defined by 18 U.S.C. § 1961(3), injured in its business or property by reason of the Count XXIX Defendants' conduct.

1426.   Count XXIX Defendants' conduct in violation of 18 U.S.C. § 1962(c) was the direct and proximate cause of Allstate's injury.

1427.   By virtue of the Count XXIX Defendants' violations of 18 U.S.C. § 1962(c), Allstate is entitled to recover from them three times the damages sustained by reason of the claims submitted by them, and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

## COUNT XXX
### VIOLATION 18 U.S.C. § 1962(d)
### JEVA PHYSICAL THERAPY P.C. ENTERPRISE
**(Against Joseph Edwin Villacorte Abrenica, P.T., Vladimir Geykhman, Alexander Gulkarov, Artur Sattarov, Jasur Rahmatov, JA Physical Therapy P.C., Better Hands Physical Therapy P.C., Kristine May Bitanga Parcon, P.T., Go Flex Rehab Physical Therapy, P.C., Lyn Jonson Ballener, P.T., Raine M. Pesidas Physical Therapy P.C., Rainegale Marie Mendiola Pesidas, P.T., Axis PT, P.C., Atlas PT, P.C., Mohamed Awad Awad, P.T., MC Physical Therapy, P.C., Michelle Nesas Cuadra, P.T., MT Physical Therapy P.C., Madonna Parungo Tandingan, P.T., Wellness Physical Therapy Rehabilitation PLLC, Milena Rezende, P.T. a/k/a Milena Reyes, July PT, P.C., Mahmoud Elsayed Elsanaa, P.T., Hands of Hope P.T., P.C., Motaz Mahmoud Ebeido, P.T., MMA Physical Therapy P.C., Mazen Mohamed Ahmed Ali Abdel Magid, P.C., Comfort Physical Therapy PLLC, Melissa C. Cadet, P.T., Pyramid Care PT, P.C., and Mohamed Hablas, P.T.)**

1428.   Allstate re-alleges, re-pleads and incorporates by reference the allegations set forth in paragraphs 1-1031 as if set forth fully herein.

264

1429.   Through their participation in the operation and management of JEVA Physical Therapy P.C. ("JEVA"), Joseph Edwin Villacorte Abrenica, P.T., Vladimir Geykhman, Alexander Gulkarov, Artur Sattarov, Jasur Rahmatov, JA Physical Therapy P.C., Better Hands Physical Therapy P.C., Kristine May Bitanga Parcon, P.T., Go Flex Rehab Physical Therapy, P.C., Lyn Jonson Ballener, P.T., Raine M. Pesidas Physical Therapy P.C., Rainegale Marie Mendiola Pesidas, P.T., Axis PT, P.C., Atlas PT, P.C., Mohamed Awad Awad, P.T., MC Physical Therapy, P.C., Michelle Nesas Cuadra, P.T., MT Physical Therapy P.C., Madonna Parungo Tandingan, P.T., Wellness Physical Therapy Rehabilitation PLLC, Milena Rezende, P.T. a/k/a Milena Reyes, July PT, P.C., Mahmoud Elsayed Elsanaa, P.T., Hands of Hope P.T., P.C., Motaz Mahmoud Ebeido, P.T., MMA Physical Therapy P.C., Mazen Mohamed Ahmed Ali Abdel Magid, P.C., Comfort Physical Therapy PLLC, Melissa C. Cadet, P.T., Pyramid Care PT, P.C., and Mohamed Hablas, P.T. (collectively, "Count XXX Defendants") conspired with each other to violate 18 U.S.C. § 1962(c).

1430.   The Count XXX Defendants each agreed to participate in a conspiracy to violate 18 U.S.C. § 1962(c) by agreeing to conduct the affairs of JEVA by means of a pattern of racketeering activity, including numerous instances of mail fraud as set forth in Exhibit 35, and through the preparation and mailing of fraudulent insurance claim documents, including NF-3 forms, to Allstate.

1431.   The purpose of the conspiracy was to obtain, for the Count XXX Defendants benefit, No-Fault payments from Allstate on behalf of JEVA, even though JEVA, as a result of the Count XXX Defendants' unlawful conduct, was not eligible to collect such No-Fault benefit payments.

1432.   The purpose of the conspiracy was also to cause professional fees and profits collected by JEVA to be channeled for the benefit of Vladimir Geykhman, Alexander Gulkarov, Artur Sattarov, and Jasur Rahmatov.

1433.   The Count XXX Defendants were aware of these purposes, and agreed to take steps to meet the conspiracy's objectives, including the creation of and mailing of documents and other claim-related materials, including NF-3 forms, containing misrepresentations and/or material omissions.

1434.   Allstate has been injured in its business and property by reason of this conspiratorial conduct whereas Allstate has been induced to make No-Fault claim payments as a result of the Count XXX Defendants' unlawful conduct described herein.

1435.   By virtue of this violation of 18 U.S.C. § 1962(d), the Count XXX Defendants are jointly and severally liable to Allstate, and Allstate is entitled to recover from each of the Count XXX Defendants three times the damages sustained by reason of the claims submitted by the Defendants, and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

**COUNT XXXI**
**VIOLATIONS OF 18 U.S.C. § 1962(c)**
**FINESSE CARE PHYSICAL THERAPY P.C. ENTERPRISE**
**(Against Ahmed Hamdy Emara, P.T., Vladimir Geykhman, Artur Sattarov, Jasur Rahmatov, Life Care Physical Therapy P.C., MC Physical Therapy P.C., Michelle Nesas Cuadra, P.T., Raine M. Pesidas Physical Therapy P.C., Rainegale Marie Mendiola Pesidas, P.T., Better Hands Physical Therapy P.C., and Kristine May Bitanga Parcon, P.T.)**

1436.   Allstate re-alleges, re-pleads and incorporates by reference the allegations set forth in paragraphs 1-1031 as if set forth fully herein.

1437.   In furtherance of their operation and management of Finesse Care Physical Therapy P.C. ("Finesse Care"), Ahmed Hamdy Emara, P.T., Vladimir Geykhman, Artur Sattarov, Jasur

266

Rahmatov, Life Care Physical Therapy P.C., MC Physical Therapy P.C., Michelle Nesas Cuadra, P.T., Raine M. Pesidas Physical Therapy P.C., Rainegale Marie Mendiola Pesidas, P.T., Better Hands Physical Therapy P.C., and Kristine May Bitanga Parcon, P.T. (collectively, "Count XXXI Defendants") intentionally prepared and mailed (or caused to be prepared and mailed) false medical documentation in connection with Allstate insurance claims in furtherance of their scheme to defraud.

1438.   The Count XXXI Defendants employed one or more mailings to demand and/or receive payment from Allstate on certain dates, including, but not limited to, those dates identified in the chart at Exhibit 36.

1439.   Among other things, NF-3 forms, medical billing invoices, medical reports, applications for insurance, and premium checks were routinely delivered to Allstate through the U.S. Mail.

1440.   Policies of insurance were delivered to insureds through the U.S. Mail.

1441.   Payments made by Allstate to Finesse Care were delivered through the U.S. Mail.

1442.   As documented above, the Count XXXI Defendants repeatedly and intentionally submitted, or caused to be submitted, NF-3 forms and other claim-related documentation to Allstate related to expenses and/or services that were purportedly performed at Finesse Care for the purpose of collecting payment from Allstate under the Personal Injury Protection benefits portion of the Allstate policies and applicable New York No-Fault laws.

1443.   As a result of, and in reasonable reliance upon, the mailing and/or submission of these misleading documents and materially false representations, Allstate, by its agents and employees, issued drafts to Finesse Care that would not otherwise have been paid.

1444.   The Count XXXI Defendants' pattern of preparing and mailing (or causing/directing the preparation and mailing of) these documents and other claim-related materials, each appearing legitimate on their face, also prevented Allstate from discovering this scheme for a long period of time, thus enabling the Count XXXI Defendants to continue without being detected.

1445.   The facts set forth above constitute indictable offenses pursuant to 18 U.S.C. § 1341 (mail fraud).

1446.   By creating and then mailing to Allstate (or directing the creation and subsequent mailing to Allstate) of numerous fraudulent documents and other claim-related materials in an ongoing scheme, the Count XXXI Defendants engaged in a pattern of racketeering activity within the meaning of 18 U.S.C. § 1962(c).

1447.   The activities alleged in this case had the direct effect of causing funds to be transferred from Allstate to Finesse Care for the benefit of the Count XXXI Defendants.

1448.   The unlawful activities alleged in this case also had the direct effect of causing these funds, including professional fees and profits, to be channeled to Vladimir Geykhman, Artur Sattarov, and Jasur Rahmatov for their own personal use and financial gain.

1449.   Allstate is in the business of writing insurance and paying claims in the State of New York.  Insurance fraud schemes practiced here and elsewhere have a deleterious impact on Allstate's overall financial well-being and adversely affect insurance rates.

1450.   Finesse Care constitutes an enterprise engaged in, and the activities of which affect, interstate commerce.

1451.   The Count XXXI Defendants associated with the foregoing enterprise, and participated—both directly and indirectly—in the conduct of this enterprise through a pattern of racketeering activities.

1452.   Allstate is a "person" as defined by 18 U.S.C. § 1961(3), injured in its business or property by reason of the Count XXXI Defendants' conduct.

1453.   The Count XXXI Defendants' conduct in violation of 18 U.S.C. § 1962(c) was the direct and proximate cause of Allstate's injury.

1454.   By virtue of the Count XXXI Defendants' violations of 18 U.S.C. § 1962(c), Allstate is entitled to recover from them three times the damages sustained by reason of the claims submitted by them, and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

## COUNT XXXII
## VIOLATION 18 U.S.C. § 1962(d)
## FINESSE CARE PHYSICAL THERAPY P.C. ENTERPRISE
**(Against Ahmed Hamdy Emara, P.T., Vladimir Geykhman, Artur Sattarov, Jasur Rahmatov, Life Care Physical Therapy P.C., MC Physical Therapy P.C., Michelle Nesas Cuadra, P.T., Raine M. Pesidas Physical Therapy P.C., Rainegale Marie Mendiola Pesidas, P.T., Better Hands Physical Therapy P.C., and Kristine May Bitanga Parcon, P.T.)**

1455.   Allstate re-alleges, re-pleads and incorporates by reference the allegations set forth in paragraphs 1-1031 as if set forth fully herein.

1456.   Through their participation in the operation and management of Finesse Care Physical Therapy P.C. ("Finesse Care"), Ahmed Hamdy Emara, P.T., Vladimir Geykhman, Artur Sattarov, Jasur Rahmatov, Life Care Physical Therapy P.C., MC Physical Therapy P.C., Michelle Nesas Cuadra, P.T., Raine M. Pesidas Physical Therapy P.C., Rainegale Marie Mendiola Pesidas, P.T., Better Hands Physical Therapy P.C., and Kristine May Bitanga Parcon, P.T. (collectively, "Count XXXII Defendants") conspired with each other to violate 18 U.S.C. § 1962(c).

269

1457.   The Count XXXII Defendants each agreed to participate in a conspiracy to violate 18 U.S.C. § 1962(c) by agreeing to conduct the affairs of Finesse Care by means of a pattern of racketeering activity, including numerous instances of mail fraud as set forth in Exhibit 36, and through the preparation and mailing of fraudulent insurance claim documents, including NF-3 forms, to Allstate.

1458.   The purpose of the conspiracy was to obtain, for the Count XXXII Defendants benefit, No-Fault payments from Allstate on behalf of Finesse Care, even though Finesse Care, as a result of the Count XXXII Defendants' unlawful conduct, was not eligible to collect such No-Fault benefit payments.

1459.   The purpose of the conspiracy was also to cause professional fees and profits collected by Finesse Care to be channeled for the benefit of Vladimir Geykhman, Artur Sattarov, and Jasur Rahmatov.

1460.   The Count XXXII Defendants were aware of these purposes, and agreed to take steps to meet the conspiracy's objectives, including the creation of and mailing of documents and other claim-related materials, including NF-3 forms, containing misrepresentations and/or material omissions.

1461.   Allstate has been injured in its business and property by reason of this conspiratorial conduct whereas Allstate has been induced to make No-Fault claim payments as a result of the Count XXXII Defendants' unlawful conduct described herein.

1462.   By virtue of this violation of 18 U.S.C. § 1962(d), the Count XXXII Defendants are jointly and severally liable to Allstate, and Allstate is entitled to recover from each of the Count XXXII Defendants three times the damages sustained by reason of the claims submitted by the

Defendants, and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

## COUNT XXXIII
### VIOLATIONS OF 18 U.S.C. § 1962(c)
### AXIS PT P.C. ENTERPRISE
**(Against Mohamed Awad Awad, P.T., Vladimir Geykhman, Artur Sattarov, Jasur Rahmatov, Atlas PT, P.C., Go Flex Rehab Physical Therapy, P.C., Lyn Jonson Ballener, P.T., JEVA Physical Therapy P.C., JA Physical Therapy P.C., Joseph Edwin Villacorte Abrenica, P.T., Better Hands Physical Therapy P.C., Kristine May Bitanga Parcon, P.C., Raine M. Pesidas Physical Therapy P.C., Rainegale Marie Mendiola Pesidas, P.T., MC Physical Therapy P.C., and Michelle Nesas Cuadra, P.T.)**

1463.  Allstate re-alleges, re-pleads and incorporates by reference the allegations set forth in paragraphs 1-1031 as if set forth fully herein.

1464.  In furtherance of their operation and management of Axis PT, P.C. ("Axis"), Mohamed Awad Awad, P.T., Vladimir Geykhman, Artur Sattarov, Jasur Rahmatov, Atlas PT, P.C., Go Flex Rehab Physical Therapy, P.C., Lyn Jonson Ballener, P.T., JEVA Physical Therapy P.C., JA Physical Therapy P.C., Joseph Edwin Villacorte Abrenica, P.T., Better Hands Physical Therapy P.C., Kristine May Bitanga Parcon, P.C., Raine M. Pesidas Physical Therapy P.C., Rainegale Marie Mendiola Pesidas, P.T., MC Physical Therapy P.C., and Michelle Nesas Cuadra, P.T. (collectively, "Count XXXIII Defendants") intentionally prepared and mailed (or caused to be prepared and mailed) false medical documentation in connection with Allstate insurance claims in furtherance of their scheme to defraud.

1465.  The Count XXXIII Defendants employed one or more mailings to demand and/or receive payment from Allstate on certain dates, including, but not limited to, those dates identified in the chart at Exhibit 37.

271

1466.   Among other things, NF-3 forms, medical billing invoices, medical reports, applications for insurance, and premium checks were routinely delivered to Allstate through the U.S. Mail.

1467.   Policies of insurance were delivered to insureds through the U.S. Mail.

1468.   Payments made by Allstate to Axis were delivered through the U.S. Mail.

1469.   As documented above, the Count XXXIII Defendants repeatedly and intentionally submitted, or caused to be submitted, NF-3 forms and other claim-related documentation to Allstate related to expenses and/or services that were purportedly performed at Axis for the purpose of collecting payment from Allstate under the Personal Injury Protection benefits portion of the Allstate policies and applicable New York No-Fault laws.

1470.   As a result of, and in reasonable reliance upon, the mailing and/or submission of these misleading documents and materially false representations, Allstate, by its agents and employees, issued drafts to Axis that would not otherwise have been paid.

1471.   The Count XXXIII Defendants' pattern of preparing and mailing (or causing/directing the preparation and mailing of) these documents and other claim-related materials, each appearing legitimate on their face, also prevented Allstate from discovering this scheme for a long period of time, thus enabling the Count XXXIII Defendants to continue without being detected.

1472.   The facts set forth above constitute indictable offenses pursuant to 18 U.S.C. § 1341 (mail fraud).

1473.   By creating and then mailing to Allstate (or directing the creation and subsequent mailing to Allstate) of numerous fraudulent documents and other claim-related materials in an

ongoing scheme, the Count XXXIII Defendants engaged in a pattern of racketeering activity within the meaning of 18 U.S.C. § 1962(c).

1474.   The activities alleged in this case had the direct effect of causing funds to be transferred from Allstate to Axis PT for the benefit of the Count XXXIII Defendants.

1475.   The unlawful activities alleged in this case also had the direct effect of causing these funds, including professional fees and profits, to be channeled to Vladimir Geykhman, Artur Sattarov, and Jasur Rahmatov for their own personal use and financial gain.

1476.   Allstate is in the business of writing insurance and paying claims in the State of New York.  Insurance fraud schemes practiced here and elsewhere have a deleterious impact on Allstate's overall financial well-being and adversely affect insurance rates.

1477.   Count XXXIII Defendants constitutes an enterprise engaged in, and the activities of which affect, interstate commerce.

1478.   The Count XXXIII Defendants associated with the foregoing enterprise, and participated—both directly and indirectly—in the conduct of this enterprise through a pattern of racketeering activities.

1479.   Allstate is a "person" as defined by 18 U.S.C. § 1961(3), injured in its business or property by reason of the Count XXXIII Defendants' conduct.

1480.   The Count XXXIII Defendants' conduct in violation of 18 U.S.C. § 1962(c) was the direct and proximate cause of Allstate's injury.

1481.   By virtue of the Count XXXIII Defendants' violations of 18 U.S.C. § 1962(c), Allstate is entitled to recover from them three times the damages sustained by reason of the claims submitted by them, and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

**COUNT XXXIV**
**VIOLATION 18 U.S.C. § 1962(d)**
**AXIS PT, P.C. ENTERPRISE**
**(Against Mohamed Awad Awad, P.T., Vladimir Geykhman, Artur Sattarov, Jasur**
**Rahmatov, Atlas PT, P.C., Go Flex Rehab Physical Therapy, P.C., Lyn Jonson Ballener,**
**P.T., JEVA Physical Therapy P.C., JA Physical Therapy P.C., Joseph Edwin Villacorte**
**Abrenica, P.T., Better Hands Physical Therapy P.C., Kristine May Bitanga Parcon, P.C.,**
**Raine M. Pesidas Physical Therapy P.C., Rainegale Marie Mendiola Pesidas, P.T., MC**
**Physical Therapy P.C., and Michelle Nesas Cuadra, P.T.)**

1482.   Allstate re-alleges, re-pleads and incorporates by reference the allegations set forth

in paragraphs 1-1031 as if set forth fully herein.

1483.   Through their participation in the operation and management of Axis PT, P.C.

("Axis"), Mohamed Awad Awad, P.T., Vladimir Geykhman, Artur Sattarov, Jasur Rahmatov,

Atlas PT, P.C., Go Flex Rehab Physical Therapy, P.C., Lyn Jonson Ballener, P.T., JEVA Physical

Therapy P.C., JA Physical Therapy P.C., Joseph Edwin Villacorte Abrenica, P.T., Better Hands

Physical Therapy P.C., Kristine May Bitanga Parcon, P.C., Raine M. Pesidas Physical Therapy

P.C., Rainegale Marie Mendiola Pesidas, P.T., MC Physical Therapy P.C., and Michelle Nesas

Cuadra, P.T. (collectively, "Count XXXIV Defendants") conspired with each other to violate 18

U.S.C. § 1962(c).

1484.   The Count XXXIV Defendants each agreed to participate in a conspiracy to violate

18 U.S.C. § 1962(c) by agreeing to conduct the affairs of Axis by means of a pattern of racketeering

activity, including numerous instances of mail fraud as set forth in Exhibit 37, and through the

preparation and mailing of fraudulent insurance claim documents, including NF-3 forms, to

Allstate.

1485.   The purpose of the conspiracy was to obtain, for the Count XXXIV Defendants'

benefit, No-Fault payments from Allstate on behalf of Axis, even though Axis, as a result of the

Count XXXIV Defendants' unlawful conduct, was not eligible to collect such No-Fault benefit payments.

1486.   The purpose of the conspiracy was also to cause professional fees and profits collected by Axis to be channeled for the benefit of Vladimir Geykhman, Artur Sattarov, and Jasur Rahmatov.

1487.   The Count XXXIV Defendants were aware of these purposes, and agreed to take steps to meet the conspiracy's objectives, including the creation of and mailing of documents and other claim-related materials, including NF-3 forms, containing misrepresentations and/or material omissions.

1488.   Allstate has been injured in its business and property by reason of this conspiratorial conduct whereas Allstate has been induced to make No-Fault claim payments as a result of the Count XXXIV Defendants' unlawful conduct described herein.

1489.   By virtue of this violation of 18 U.S.C. § 1962(d), the Count XXXIV Defendants are jointly and severally liable to Allstate, and Allstate is entitled to recover from each of the Count XXXIV Defendants three times the damages sustained by reason of the claims submitted by the Defendants, and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

**COUNT XXXV**
**VIOLATIONS OF 18 U.S.C. § 1962(c)**
**ATLAS PT P.C. ENTERPRISE**
**(Against Mohamed Awad Awad, P.T., Vladimir Geykhman, Artur Sattarov, Jasur Rahmatov, Axis PT, P.C., Wellness Physical Therapy Rehabiltiation PLLC, Milena Rezende, P.T. a/k/a Milena Reyes, Comfort Physical Therapy, PLLC, Melissa C. Cadet, P.T., MMA Physical Therapy P.C., Mazen Mohamed Ahmed Ali Abdel, P.T., Go Flex Rehab Physical Therapy, PLLC, Lyn Jonson Ballener, P.T., JEVA Physical Therapy P.C., Joseph Edwin Villacorte Abrenica, P.T., MT Physical Therapy P.C., Madonna Parungo Tandingan, P.T., MC Physical Therapy P.C., and Michelle Nesas Cuadra, P.T.)**

1490.   Allstate re-alleges, re-pleads and incorporates by reference the allegations set forth in paragraphs 1-1031 as if set forth fully herein.

1491.   In furtherance of their operation and management of Atlas PT, P.C. ("Atlas"), Mohamed Awad Awad, P.T., Vladimir Geykhman, Artur Sattarov, Jasur Rahmatov, Axis PT, P.C., Wellness Physical Therapy Rehabiltiation PLLC, Milena Rezende, P.T. a/k/a Milena Reyes, Comfort Physical Therapy, PLLC, Melissa C. Cadet, P.T., MMA Physical Therapy P.C., Mazen Mohamed Ahmed Ali Abdel, P.T., Go Flex Rehab Physical Therapy, PLLC, Lyn Jonson Ballener, P.T., JEVA Physical Therapy P.C., Joseph Edwin Villacorte Abrenica, P.T., MT Physical Therapy P.C., Madonna Parungo Tandingan, P.T., MC Physical Therapy P.C., and Michelle Nesas Cuadra, P.T. (collectively, "Count XXXV Defendants") intentionally prepared and mailed (or caused to be prepared and mailed) false medical documentation in connection with Allstate insurance claims in furtherance of their scheme to defraud.

1492.   The Count XXXV Defendants employed one or more mailings to demand and/or receive payment from Allstate on certain dates, including, but not limited to, those dates identified in the chart at Exhibit 38.

1493.   Among other things, NF-3 forms, medical billing invoices, medical reports, applications for insurance, and premium checks were routinely delivered to Allstate through the U.S. Mail.

1494.   Policies of insurance were delivered to insureds through the U.S. Mail.

1495.   Payments made by Allstate to Atlas were delivered through the U.S. Mail.

1496.   As documented above, the Count XXXV Defendants repeatedly and intentionally submitted, or caused to be submitted, NF-3 forms and other claim-related documentation to Allstate related to expenses and/or services that were purportedly performed at Atlas for the

purpose of collecting payment from Allstate under the Personal Injury Protection benefits portion of the Allstate policies and applicable New York No-Fault laws.

1497.   As a result of, and in reasonable reliance upon, the mailing and/or submission of these misleading documents and materially false representations, Allstate, by its agents and employees, issued drafts to Atlas that would not otherwise have been paid.

1498.   The Count XXXV Defendants' pattern of preparing and mailing (or causing/directing the preparation and mailing of) these documents and other claim-related materials, each appearing legitimate on their face, also prevented Allstate from discovering this scheme for a long period of time, thus enabling the Count XXXV Defendants to continue without being detected.

1499.   The facts set forth above constitute indictable offenses pursuant to 18 U.S.C. § 1341 (mail fraud).

1500.   By creating and then mailing to Allstate (or directing the creation and subsequent mailing to Allstate) of numerous fraudulent documents and other claim-related materials in an ongoing scheme, the Count XXXV Defendants engaged in a pattern of racketeering activity within the meaning of 18 U.S.C. § 1962(c).

1501.   The activities alleged in this case had the direct effect of causing funds to be transferred from Allstate to Atlas for the benefit of the Count XXXV Defendants.

1502.   The unlawful activities alleged in this case also had the direct effect of causing these funds, including professional fees and profits, to be channeled to Vladimir Geykhman, Artur Sattarov, and Jasur Rahmatov for their own personal use and financial gain.

1503.   Allstate is in the business of writing insurance and paying claims in the State of New York.  Insurance fraud schemes practiced here and elsewhere have a deleterious impact on Allstate's overall financial well-being and adversely affect insurance rates.

1504.   Atlas constitutes an enterprise engaged in, and the activities of which affect, interstate commerce.

1505.   The Count XXXV Defendants associated with the foregoing enterprise, and participated—both directly and indirectly—in the conduct of this enterprise through a pattern of racketeering activities.

1506.   Allstate is a "person" as defined by 18 U.S.C. § 1961(3), injured in its business or property by reason of the Count XXXV Defendants' conduct.

1507.   The Count XXXV Defendants' conduct in violation of 18 U.S.C. § 1962(c) was the direct and proximate cause of Allstate's injury.

1508.   By virtue of the Count XXXV Defendants' violations of 18 U.S.C. § 1962(c), Allstate is entitled to recover from them three times the damages sustained by reason of the claims submitted by them, and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

**COUNT XXXVI**
**VIOLATION 18 U.S.C. § 1962(d)**
**ATLAS PT, P.C. ENTERPRISE**
**(Against Mohamed Awad Awad, P.T., Vladimir Geykhman, Artur Sattarov, Jasur Rahmatov, Axis PT, P.C., Wellness Physical Therapy Rehabilitation PLLC, Milena Rezende, P.T. a/k/a Milena Reyes, Comfort Physical Therapy, PLLC, Melissa C. Cadet, P.T., MMA Physical Therapy P.C., Mazen Mohamed Ahmed Ali Abdel, P.T., Go Flex Rehab Physical Therapy, PLLC, Lyn Jonson Ballener, P.T., JEVA Physical Therapy P.C., Joseph Edwin Villacorte Abrenica, P.T., MT Physical Therapy P.C., Madonna Parungo Tandingan, P.T., MC Physical Therapy P.C., and Michelle Nesas Cuadra, P.T.)**

1509.   Allstate re-alleges, re-pleads and incorporates by reference the allegations set forth in paragraphs 1-1031 as if set forth fully herein.

278

1510.   Through their participation in the operation and management of Atlas PT, P.C. ("Atlas"), Mohamed Awad Awad, P.T., Vladimir Geykhman, Artur Sattarov, Jasur Rahmatov, Axis PT, P.C., Wellness Physical Therapy Rehabilitation PLLC, Milena Rezende, P.T. a/k/a Milena Reyes, Comfort Physical Therapy, PLLC, Melissa C. Cadet, P.T., MMA Physical Therapy P.C., Mazen Mohamed Ahmed Ali Abdel, P.T., Go Flex Rehab Physical Therapy, PLLC, Lyn Jonson Ballener, P.T., JEVA Physical Therapy P.C., Joseph Edwin Villacorte Abrenica, P.T., MT Physical Therapy P.C., Madonna Parungo Tandingan, P.T., MC Physical Therapy P.C., and Michelle Nesas Cuadra, P.T. (collectively, "Count XXXVI Defendants") conspired with each other to violate 18 U.S.C. § 1962(c).

1511.   The Count XXXVI Defendants each agreed to participate in a conspiracy to violate 18 U.S.C. § 1962(c) by agreeing to conduct the affairs of Atlas by means of a pattern of racketeering activity, including numerous instances of mail fraud as set forth in Exhibit 38, and through the preparation and mailing of fraudulent insurance claim documents, including NF-3 forms, to Allstate.

1512.   The purpose of the conspiracy was to obtain, for the Count XXXVI Defendants benefit, No-Fault payments from Allstate on behalf of Atlas, even though Atlas, as a result of the Count XXXVI Defendants' unlawful conduct, was not eligible to collect such No-Fault benefit payments.

1513.   The purpose of the conspiracy was also to cause professional fees and profits collected by Atlas to be channeled for the benefit of Vladimir Geykhman, Artur Sattarov, and Jasur Rahmatov.

1514.   The Count XXXVI Defendants were aware of these purposes, and agreed to take steps to meet the conspiracy's objectives, including the creation of and mailing of documents and

other claim-related materials, including NF-3 forms, containing misrepresentations and/or material omissions.

1515.   Allstate has been injured in its business and property by reason of this conspiratorial conduct whereas Allstate has been induced to make No-Fault claim payments as a result of the Count XXXVI Defendants' unlawful conduct described herein.

1516.   By virtue of this violation of 18 U.S.C. § 1962(d), the Count XXXVI Defendants are jointly and severally liable to Allstate, and Allstate is entitled to recover from each of the Count XXXVI Defendants three times the damages sustained by reason of the claims submitted by the Defendants, and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

**COUNT XXXVII**
**COMMON-LAW FRAUD**
**(Against All Defendants)**

1517.   Allstate re-alleges, re-pleads and incorporates by reference the allegations set forth in paragraphs 1-1031 as if set forth fully herein.

1518.   Defendants Better Hands Physical Therapy P.C., Hands Of Hope P.T., P.C., July PT, P.C., MMA Physical Therapy, P.C., Pyramid Care PT, P.C., Comfort Physical Therapy, PLLC, Atlas PT, P.C., MT Physical Therapy P.C., Life Care Physical Therapy P.C., JA Physical Therapy P.C., Raine M. Pesidas Physical Therapy P.C., Wellness Physical Therapy Rehabilitation PLLC, Hand By Hand PT, P.C., MC Physical Therapy, P.C., Go Flex Rehab Physical Therapy, P.C., JEVA Physical Therapy P.C., Finesse Care Physical Therapy P.C., Axis PT, P.C., Mahmoud Elsayed Elsanaa, P.T., Joseph Edwin Villacorte Abrenica, P.T., Rainegale Marie Mendiola Pesidas, P.T., Milena Rezende, P.T. a/k/a Milena Reyes, Mazen Mohamed Ahmed Ali Abdel Magid, P.T., Kristine May Bitanga Parcon, P.T., Motaz Mahmoud Ebeido, P.T., Melissa C. Cadet,

280

P.T., Madonna Parungo Tandingan, P.T., Mohamed Awad Awad, P.T., Ahmed Hamdy Emara, P.T., Mohamed Hablas, P.T., Michelle Nesas Cuadra, P.T., Lyn Jonson Ballener, P.T., Vladimir Geykhman, Alexander Gulkarov, Artur Sattarov, and Jasur Rahmatov (collectively, "Count XXXVII Defendants") intentionally and knowingly made false and fraudulent statements of material fact to Allstate, and also concealed material facts from Allstate during the course of this scheme and in the course of their submission of bills seeking payment for medical services under New York's No-Fault laws.

1519.  The false and fraudulent statements of material fact and acts of fraudulent concealment include: (a) in every claim, the representation that Better Hands Physical Therapy P.C., Hands of Hope P.T., P.C., July PT, P.C., MMA Physical Therapy, P.C., Pyramid Care PT, P.C., Comfort Physical Therapy, PLLC, Atlas PT, P.C., MT Physical Therapy P.C., Life Care Physical Therapy P.C., JA Physical Therapy P.C., Raine M. Pesidas Physical Therapy P.C., Wellness Physical Therapy Rehabilitation PLLC, Hand By Hand PT, P.C., MC Physical Therapy, P.C., Go Flex Rehab Physical Therapy, P.C., JEVA Physical Therapy P.C., Finesse Care Physical Therapy P.C., and Axis PT, P.C. ("PC Defendants") were properly licensed and therefore eligible to seek and collect No-Fault benefit payments under Insurance Law § 5102(a)(1) and 11 N.Y.C.R.R. § 65-3.16(a)(12) even though it was unlawfully owned and controlled by unlicensed individuals, and (b) in every claim, the representation that the PC Defendants were eligible to seek and collect No-Fault benefit payments directly from Allstate under Insurance Law § 5102(a)(1) and 11 N.Y.C.R.R. § 65-3.16(a)(12) for the physical therapy services purportedly provided to Allstate claimants when, in fact, the PC Defendants were not eligible to seek or collect No-Fault benefit payments for these services because (a) the billed-for services were not medically necessary, (b) the PC Defendants were operated and controlled by, and caused to split fees with,

unlicensed laypersons in violation of New York law, (c) the billed-for services were the result of unlawful referral and kickback arrangements with referring providers, (d) the billed-for services were not actually performed as represented, and (e) the billed-for services were provided by an independent contractor.

1520.   The Count XXXVII Defendants intentionally made the above-described false and fraudulent statements, and purposely concealed material facts for the purpose of inducing Allstate to pay charges submitted by (or on behalf of) the PC Defendants that were not compensable under New York's No-Fault laws.

1521.   Allstate reasonably relied, to its detriment, upon the Count XXXVII Defendants' material misrepresentations concerning the PC Defendants' eligibility to receive No-Fault reimbursement when making payments for medical services purportedly provided to patients through the PC Defendants.

1522.   Allstate has been injured in its business and property by reason of the above-described conduct because Allstate has made No-Fault benefit payments totaling over $1,606,792.15 in connection with fraudulent bills submitted by the Count XXXVII Defendants through the PC Defendants.

## COUNT XXXVIII
## UNJUST ENRICHMENT
### (Against All Defendants)

1523.   Allstate re-alleges, re-pleads and incorporates by reference the allegations set forth in paragraphs 1-1031 as if set forth fully herein.

1524.   As detailed above, Better Hands Physical Therapy P.C., Hands of Hope P.T., P.C., July PT, P.C., MMA Physical Therapy, P.C., Pyramid Care PT, P.C., Comfort Physical Therapy, PLLC, Atlas PT, P.C., MT Physical Therapy P.C., Life Care Physical Therapy P.C., JA Physical

Therapy P.C., Raine M. Pesidas Physical Therapy P.C., Wellness Physical Therapy Rehabilitation PLLC, Hand By Hand PT, P.C., MC Physical Therapy, P.C., Go Flex Rehab Physical Therapy, P.C., JEVA Physical Therapy P.C., Finesse Care Physical Therapy P.C., Axis PT, P.C., Mahmoud Elsayed Elsanaa, P.T., Joseph Edwin Villacorte Abrenica, P.T., Rainegale Marie Mendiola Pesidas, P.T., Milena Rezende, P.T. a/k/a Milena Reyes, Mazen Mohamed Ahmed Ali Abdel Magid, P.T., Kristine May Bitanga Parcon, P.T., Motaz Mahmoud Ebeido, P.T., Melissa C. Cadet, P.T., Madonna Parungo Tandingan, P.T., Mohamed Awad Awad, P.T., Ahmed Hamdy Emara, P.T., Mohamed Hablas, P.T., Michelle Nesas Cuadra, P.T., Lyn Jonson Ballener, P.T., Vladimir Geykhman, Alexander Gulkarov, Artur Sattarov, and Jasur Rahmatov (collectively, "Count XXXVIII Defendants") have engaged in improper, unlawful, and unjust acts, all to the harm and detriment of Allstate.

1525.   The Count XXXVIII Defendants have each been enriched at Allstate's expense through their receipt of payments made by Allstate in connection with No-Fault benefit claims submitted by (or on behalf of) Better Hands Physical Therapy P.C., Hands of Hope P.T., P.C., July PT, P.C., MMA Physical Therapy, P.C., Pyramid Care PT, P.C., Comfort Physical Therapy, PLLC, Atlas PT, P.C., MT Physical Therapy P.C., Life Care Physical Therapy P.C., JA Physical Therapy P.C., Raine M. Pesidas Physical Therapy P.C., Wellness Physical Therapy Rehabilitation PLLC, Hand By Hand PT, P.C., MC Physical Therapy, P.C., Go Flex Rehab Physical Therapy, P.C., JEVA Physical Therapy P.C., Finesse Care Physical Therapy P.C., and Axis PT, P.C. (collectively, "PC Defendants").

1526.   The payments received by the Count XXXVIII Defendants constituted a benefit that they willingly and voluntarily accepted despite their commission of improper, unlawful, and

unjust acts in furtherance of this scheme.  The Count XXXVIII Defendants' retention of Allstate's payments violates fundamental principles of justice, equity and good conscience.

1527.  By reason of the improper, unlawful, and unjust conduct described throughout this Complaint, the Count XXXVIII Defendants have been unjustly enriched in an amount totaling $1,606,792.15, the exact amount to be determined at trial.

## COUNT XXXIX
### DECLARATORY RELIEF UNDER 28 U.S.C. § 2201
### (Against Better Hands Physical Therapy P.C.)

1528.  Allstate re-alleges, re-pleads and incorporates by reference the allegations set forth in paragraphs 1-1031 as if set forth fully herein.

1529.  To be eligible to receive assigned No-Fault benefits, an assignee provider must adhere to all applicable New York statutes that grant the authority to provide medical services in New York.

1530.  In view of its (a) illegal corporate structure, (b) unlawful control by one or more unlicensed layperson, (c) unlawful sharing of professional fees with one or more unlicensed layperson, (d) billing for  services that were not medically necessary, (e) billing for services that were not actually performed as represented, (f) billing for services that were provided by independent contractors rather than employees of Better Hands Physical Therapy P.C., (g) submission of charges in excess of the amounts permitted by the applicable Fee Schedule, and (h) submission of charges for services referred to Better Hands Physical Therapy P.C. pursuant to unlawful referral and kickback arrangements with referring providers, Better Hands Physical Therapy P.C. has, at all relevant times, been operating in violation of one or more New York or local licensing requirements necessary to provide professional physical therapy services (including, but not limited to, New York Insurance Law, New York Education Law, and New York

Business Corporation Law (and other statutory provisions)), and thus has no standing to seek or collect any No-Fault benefit payments from Allstate, including, but not limited to, No-Fault benefits that were assigned to Better Hands Physical Therapy P.C. by its patients.

1531.   Better Hands Physical Therapy P.C. continues to submit assigned No-Fault claims to Allstate demanding payment, and other assigned No-Fault claims remain pending with Allstate.

1532.   Better Hands Physical Therapy P.C. continues to challenge Allstate's prior claim denials.

1533.   Better Hands Physical Therapy P.C. continues to commence litigation against Allstate seeking payment of No-Fault benefits allegedly due and owing.

1534.   A justifiable controversy exists between Allstate and Better Hands Physical Therapy P.C. because Better Hands rejects Allstate's ability to deny such claims.

1535.   Allstate has no adequate remedy at law.

1536.   Better Hands Physical Therapy P.C. will also continue to demand No-Fault benefits payments from Allstate absent a declaration by this Court that its activities are unlawful, and that Allstate has no obligation to pay the pending, previously-denied, and/or any future No-Fault claims submitted by Better Hands Physical Therapy P.C.

1537.   Accordingly, Allstate requests a judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202 declaring that Better Hands Physical Therapy P.C., at all relevant times, was (a) fraudulently incorporated, (b) unlawfully owned, operated, managed, and controlled by one or more unlicensed layperson, (c) engaged in billing for medically unnecessary services, (d) engaged in billing for services that were not actually performed as represented, (e) engaged in the unlawful sharing of fees derived from the provision of professional physical therapy services, (f) engaged in billing for services that were provided by independent contractors rather than

employees of Better Hands Physical Therapy P.C., (g) engaged in the submission of fraudulent charges in excess of the amounts permissible under the applicable Fee Schedule, and (h) engaged in billing for physical therapy services referred to Better Hands Physical Therapy P.C. pursuant to an unlawful financial relationship with the prescribing provider,  and thus has no standing to submit or receive assigned No-Fault benefits.

**COUNT XL**
**DECLARATORY RELIEF UNDER 28 U.S.C. § 2201**
**(Against Hands of Hope P.T., P.C.)**

1538.   Allstate re-alleges, re-pleads and incorporates by reference the allegations set forth in paragraphs 1-1031 as if set forth fully herein.

1539.   To be eligible to receive assigned No-Fault benefits, an assignee provider must adhere to all applicable New York statutes that grant the authority to provide medical services in New York.

1540.   In view of its (a) illegal corporate structure, (b) unlawful control by one or more unlicensed layperson, (c) unlawful sharing of professional fees with one or more unlicensed layperson, (d) billing for  services that were not medically necessary, (e) billing for services that were not actually performed as represented, (f) billing for services that were provided by independent contractors rather than employees of Hands of Hope PT, P.C., (g) submission of charges in excess of the amounts permitted by the applicable Fee Schedule, and (h) submission of charges for services referred to Hands of Hope PT, P.C.pursuant to unlawful referral and kickback arrangements with referring providers, Hands of Hope PT, P.C.has, at all relevant times, been operating in violation of one or more New York or local licensing requirements necessary to provide professional physical therapy services (including, but not limited to, New York Insurance Law, New York Education Law, and New York Business Corporation Law (and other statutory

provisions)), and thus has no standing to seek or collect any No-Fault benefit payments from Allstate, including, but not limited to, No-Fault benefits that were assigned to Hands of Hope PT, P.C.by its patients.

1541.   Hands of Hope PT, P.C. continues to submit assigned No-Fault claims to Allstate demanding payment, and other assigned No-Fault claims remain pending with Allstate.

1542.   Hands of Hope PT, P.C. continues to challenge Allstate's prior claim denials.

1543.   Hands of Hope PT, P.C. continues to commence litigation against Allstate seeking payment of No-Fault benefits allegedly due and owing.

1544.   A justifiable controversy exists between Allstate and Hands of Hope PT, P.C. because Hands of Hope PT, P.C. rejects Allstate's ability to deny such claims.

1545.   Allstate has no adequate remedy at law.

1546.   Hands of Hope PT, P.C. will also continue to demand No-Fault benefits payments from Allstate absent a declaration by this Court that its activities are unlawful, and that Allstate has no obligation to pay the pending, previously-denied, and/or any future No-Fault claims submitted by Hands of Hope PT, P.C.

1547.   Accordingly, Allstate requests a judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202 declaring that Hands of Hope PT, P.C. at all relevant times, was (a) fraudulently incorporated, (b) unlawfully owned, operated, managed, and controlled by one or more unlicensed layperson, (c) engaged in billing for medically unnecessary services, (d) engaged in billing for services that were not actually performed as represented, (e) engaged in the unlawful sharing of fees derived from the provision of professional physical therapy services, (f) engaged in billing for services that were provided by independent contractors rather than employees of Better Hands, (g) engaged in the submission of fraudulent charges in excess of the amounts

permissible under the applicable Fee Schedule, and (h) engaged in billing for physical therapy services referred to Hands of Hope PT, P.C. pursuant to an unlawful financial relationship with the prescribing provider,  and thus has no standing to submit or receive assigned No-Fault benefits.

**COUNT XLI**
**DECLARATORY RELIEF UNDER 28 U.S.C. § 2201**
**(Against July P.T., P.C.)**

1548.   Allstate re-alleges, re-pleads and incorporates by reference the allegations set forth in paragraphs 1-1031 as if set forth fully herein.

1549.   To be eligible to receive assigned No-Fault benefits, an assignee provider must adhere to all applicable New York statutes that grant the authority to provide medical services in New York.

1550.   In view of its (a) illegal corporate structure, (b) unlawful control by one or more unlicensed layperson, (c) unlawful sharing of professional fees with one or more unlicensed layperson, (d) billing for  services that were not medically necessary, (e) billing for services that were not actually performed as represented, (f) billing for services that were provided by independent contractors rather than employees of July P.T., P.C., (g) submission of charges in excess of the amounts permitted by the applicable Fee Schedule, and (h) submission of charges for services referred to July P.T., P.C. pursuant to unlawful referral and kickback arrangements with referring providers, July P.T., P.C. has, at all relevant times, been operating in violation of one or more New York or local licensing requirements necessary to provide professional physical therapy services (including, but not limited to, New York Insurance Law, New York Education Law, and New York Business Corporation Law (and other statutory provisions)), and thus has no standing to seek or collect any No-Fault benefit payments from Allstate, including, but not limited to, No-Fault benefits that were assigned to July P.T., P.C. by its patients.

288

1551.   July P.T., P.C. continues to submit assigned No-Fault claims to Allstate demanding payment, and other assigned No-Fault claims remain pending with Allstate.

1552.   July P.T., P.C. continues to challenge Allstate's prior claim denials.

1553.   July P.T., P.C. continues to commence litigation against Allstate seeking payment of No-Fault benefits allegedly due and owing.

1554.   A justifiable controversy exists between Allstate and July P.T., P.C. because July P.T., P.C. rejects Allstate's ability to deny such claims.

1555.   Allstate has no adequate remedy at law.

1556.   July P.T., P.C. will also continue to demand No-Fault benefits payments from Allstate absent a declaration by this Court that its activities are unlawful, and that Allstate has no obligation to pay the pending, previously-denied, and/or any future No-Fault claims submitted by July P.T., P.C..

1557.   Accordingly, Allstate requests a judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202 declaring that July P.T., P.C., at all relevant times, was (a) fraudulently incorporated, (b) unlawfully owned, operated, managed, and controlled by one or more unlicensed layperson, (c) engaged in billing for medically unnecessary services, (d) engaged in billing for services that were not actually performed as represented, (e) engaged in the unlawful sharing of fees derived from the provision of professional physical therapy services, (f) engaged in billing for services that were provided by independent contractors rather than employees of July P.T., P.C., (g) engaged in the submission of fraudulent charges in excess of the amounts permissible under the applicable Fee Schedule, and (h) engaged in billing for physical therapy services referred to July P.T., P.C. pursuant to an unlawful financial relationship with the prescribing provider, and thus has no standing to submit or receive assigned No-Fault benefits.

**COUNT XLII**
**DECLARATORY RELIEF UNDER 28 U.S.C. § 2201**
**(Against MMA Physical Therapy, P.C.)**

1558.   Allstate re-alleges, re-pleads and incorporates by reference the allegations set forth in paragraphs 1-1031 as if set forth fully herein.

1559.   To be eligible to receive assigned No-Fault benefits, an assignee provider must adhere to all applicable New York statutes that grant the authority to provide medical services in New York.

1560.   In view of its (a) illegal corporate structure, (b) unlawful control by one or more unlicensed layperson, (c) unlawful sharing of professional fees with one or more unlicensed layperson, (d) billing for services that were not medically necessary, (e) billing for services that were not actually performed as represented, (f) billing for services that were provided by independent contractors rather than employees of MMA Physical Therapy, P.C., (g) submission of charges in excess of the amounts permitted by the applicable Fee Schedule, and (h) submission of charges for services referred to MMA Physical Therapy, P.C. pursuant to unlawful referral and kickback arrangements with referring providers, MMA Physical Therapy, P.C. has, at all relevant times, been operating in violation of one or more New York or local licensing requirements necessary to provide professional physical therapy services (including, but not limited to, New York Insurance Law, New York Education Law, and New York Business Corporation Law (and other statutory provisions)), and thus has no standing to seek or collect any No-Fault benefit payments from Allstate, including, but not limited to, No-Fault benefits that were assigned to MMA Physical Therapy, P.C. by its patients.

1561.   MMA Physical Therapy, P.C. continues to submit assigned No-Fault claims to Allstate demanding payment, and other assigned No-Fault claims remain pending with Allstate.

1562.   MMA Physical Therapy, P.C. continues to challenge Allstate's prior claim denials.

1563.   MMA Physical Therapy, P.C. continues to commence litigation against Allstate seeking payment of No-Fault benefits allegedly due and owing.

1564.   A justifiable controversy exists between Allstate and MMA Physical Therapy, P.C. because MMA Physical Therapy, P.C. rejects Allstate's ability to deny such claims.

1565.   Allstate has no adequate remedy at law.

1566.   MMA Physical Therapy, P.C. will also continue to demand No-Fault benefits payments from Allstate absent a declaration by this Court that its activities are unlawful, and that Allstate has no obligation to pay the pending, previously-denied, and/or any future No-Fault claims submitted by MMA Physical Therapy, P.C.

1567.   Accordingly, Allstate requests a judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202 declaring that MMA Physical Therapy, P.C., at all relevant times, was (a) fraudulently incorporated, (b) unlawfully owned, operated, managed, and controlled by one or more unlicensed layperson, (c) engaged in billing for medically unnecessary services, (d) engaged in billing for services that were not actually performed as represented, (e) engaged in the unlawful sharing of fees derived from the provision of professional physical therapy services, (f) engaged in billing for services that were provided by independent contractors rather than employees of MMA Physical Therapy, P.C., (g) engaged in the submission of fraudulent charges in excess of the amounts permissible under the applicable Fee Schedule, and (h) engaged in billing for physical therapy services referred to MMA Physical Therapy, P.C. pursuant to an unlawful financial relationship with the prescribing provider,  and thus has no standing to submit or receive assigned No-Fault benefits.

## COUNT XLIII
## DECLARATORY RELIEF UNDER 28 U.S.C. § 2201
### (Against Pyramid Care PT, P.C.)

1568.   Allstate re-alleges, re-pleads and incorporates by reference the allegations set forth in paragraphs 1-1031 as if set forth fully herein.

1569.   To be eligible to receive assigned No-Fault benefits, an assignee provider must adhere to all applicable New York statutes that grant the authority to provide medical services in New York.

1570.   In view of its (a) illegal corporate structure, (b) unlawful control by one or more unlicensed layperson, (c) unlawful sharing of professional fees with one or more unlicensed layperson, (d) billing for  services that were not medically necessary, (e) billing for services that were not actually performed as represented, (f) billing for services that were provided by independent contractors rather than employees of Pyramid Care PT, P.C., (g) submission of charges in excess of the amounts permitted by the applicable Fee Schedule, and (h) submission of charges for services referred to Pyramid Care PT, P.C. pursuant to unlawful referral and kickback arrangements with referring providers, Pyramid Care PT, P.C. has, at all relevant times, been operating in violation of one or more New York or local licensing requirements necessary to provide professional physical therapy services (including, but not limited to, New York Insurance Law, New York Education Law, and New York Business Corporation Law (and other statutory provisions)), and thus has no standing to seek or collect any No-Fault benefit payments from Allstate, including, but not limited to, No-Fault benefits that were assigned to Pyramid Care PT, P.C. by its patients.

1571.   Pyramid Care PT, P.C. continues to submit assigned No-Fault claims to Allstate demanding payment, and other assigned No-Fault claims remain pending with Allstate.

292

1572.   Pyramid Care PT, P.C. continues to challenge Allstate's prior claim denials.

1573.   Pyramid Care PT, P.C. continues to commence litigation against Allstate seeking payment of No-Fault benefits allegedly due and owing.

1574.   A justifiable controversy exists between Allstate and Pyramid Care PT, P.C. because Pyramid Care PT, P.C. rejects Allstate's ability to deny such claims.

1575.   Allstate has no adequate remedy at law.

1576.   Pyramid Care PT, P.C. will also continue to demand No-Fault benefits payments from Allstate absent a declaration by this Court that its activities are unlawful, and that Allstate has no obligation to pay the pending, previously-denied, and/or any future No-Fault claims submitted by Pyramid Care PT, P.C.

1577.   Accordingly, Allstate requests a judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202 declaring that Pyramid Care PT, P.C., at all relevant times, was (a) fraudulently incorporated, (b) unlawfully owned, operated, managed, and controlled by one or more unlicensed layperson, (c) engaged in billing for medically unnecessary services, (d) engaged in billing for services that were not actually performed as represented, (e) engaged in the unlawful sharing of fees derived from the provision of professional physical therapy services, (f) engaged in billing for services that were provided by independent contractors rather than employees of Pyramid Care PT, P.C., (g) engaged in the submission of fraudulent charges in excess of the amounts permissible under the applicable Fee Schedule, and (h) engaged in billing for physical therapy services referred to Pyramid Care PT, P.C. pursuant to an unlawful financial relationship with the prescribing provider, and thus has no standing to submit or receive assigned No-Fault benefits.

## COUNT XLIV
## DECLARATORY RELIEF UNDER 28 U.S.C. § 2201
### (Against Comfort Physical Therapy, PLLC)

1578.   Allstate re-alleges, re-pleads and incorporates by reference the allegations set forth in paragraphs 1-1031 as if set forth fully herein.

1579.   To be eligible to receive assigned No-Fault benefits, an assignee provider must adhere to all applicable New York statutes that grant the authority to provide medical services in New York.

1580.   In view of its (a) illegal corporate structure, (b) unlawful control by one or more unlicensed layperson, (c) unlawful sharing of professional fees with one or more unlicensed layperson, (d) billing for services that were not medically necessary, (e) billing for services that were not actually performed as represented, (f) billing for services that were provided by independent contractors rather than employees of Comfort Physical Therapy, PLLC, (g) submission of charges in excess of the amounts permitted by the applicable Fee Schedule, and (h) submission of charges for services referred to Comfort Physical Therapy, PLLC pursuant to unlawful referral and kickback arrangements with referring providers, Comfort Physical Therapy, PLLC has, at all relevant times, been operating in violation of one or more New York or local licensing requirements necessary to provide professional physical therapy services (including, but not limited to, New York Insurance Law, New York Education Law, and New York Business Corporation Law (and other statutory provisions)), and thus has no standing to seek or collect any No-Fault benefit payments from Allstate, including, but not limited to, No-Fault benefits that were assigned to Comfort Physical Therapy, PLLC by its patients.

1581.   Comfort Physical Therapy, PLLC continues to submit assigned No-Fault claims to Allstate demanding payment, and other assigned No-Fault claims remain pending with Allstate.

1582.   Comfort Physical Therapy, PLLC continues to challenge Allstate's prior claim denials.

1583.   Comfort Physical Therapy, PLLC continues to commence litigation against Allstate seeking payment of No-Fault benefits allegedly due and owing.

1584.   A justifiable controversy exists between Allstate and Comfort Physical Therapy, PLLC because Comfort Physical Therapy, PLLC rejects Allstate's ability to deny such claims.

1585.   Allstate has no adequate remedy at law.

1586.   Comfort Physical Therapy, PLLC will also continue to demand No-Fault benefits payments from Allstate absent a declaration by this Court that its activities are unlawful, and that Allstate has no obligation to pay the pending, previously-denied, and/or any future No-Fault claims submitted by Comfort Physical Therapy, PLLC.

1587.   Accordingly, Allstate requests a judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202 declaring that Comfort Physical Therapy, PLLC, at all relevant times, was (a) fraudulently incorporated, (b) unlawfully owned, operated, managed, and controlled by one or more unlicensed layperson, (c) engaged in billing for medically unnecessary services, (d) engaged in billing for services that were not actually performed as represented, (e) engaged in the unlawful sharing of fees derived from the provision of professional physical therapy services, (f) engaged in billing for services that were provided by independent contractors rather than employees of Comfort Physical Therapy, PLLC, (g) engaged in the submission of fraudulent charges in excess of the amounts permissible under the applicable Fee Schedule, and (h) engaged in billing for physical therapy services referred to Comfort Physical Therapy, PLLC pursuant to an unlawful financial relationship with the prescribing provider, and thus has no standing to submit or receive assigned No-Fault benefits.

## COUNT XLV
## DECLARATORY RELIEF UNDER 28 U.S.C. § 2201
## (Against Atlas PT, P.C.)

1588.   Allstate re-alleges, re-pleads and incorporates by reference the allegations set forth in paragraphs 1-1031 as if set forth fully herein.

1589.   To be eligible to receive assigned No-Fault benefits, an assignee provider must adhere to all applicable New York statutes that grant the authority to provide medical services in New York.

1590.   In view of its (a) illegal corporate structure, (b) unlawful control by one or more unlicensed layperson, (c) unlawful sharing of professional fees with one or more unlicensed layperson, (d) billing for services that were not medically necessary, (e) billing for services that were not actually performed as represented, (f) billing for services that were provided by independent contractors rather than employees of Atlas PT, P.C., (g) submission of charges in excess of the amounts permitted by the applicable Fee Schedule, and (h) submission of charges for services referred to Atlas PT, P.C. pursuant to unlawful referral and kickback arrangements with referring providers, Atlas PT, P.C. has, at all relevant times, been operating in violation of one or more New York or local licensing requirements necessary to provide professional physical therapy services (including, but not limited to, New York Insurance Law, New York Education Law, and New York Business Corporation Law (and other statutory provisions)), and thus has no standing to seek or collect any No-Fault benefit payments from Allstate, including, but not limited to, No-Fault benefits that were assigned to Atlas PT, P.C. by its patients.

1591.   Atlas PT, P.C. continues to submit assigned No-Fault claims to Allstate demanding payment, and other assigned No-Fault claims remain pending with Allstate.

1592.   Atlas PT, P.C. continues to challenge Allstate's prior claim denials.

1593.   Atlas PT, P.C. continues to commence litigation against Allstate seeking payment of No-Fault benefits allegedly due and owing.

1594.   A justifiable controversy exists between Allstate and Atlas PT, P.C. because Atlas PT, P.C. rejects Allstate's ability to deny such claims.

1595.   Allstate has no adequate remedy at law.

1596.   Atlas PT, P.C. will also continue to demand No-Fault benefits payments from Allstate absent a declaration by this Court that its activities are unlawful, and that Allstate has no obligation to pay the pending, previously-denied, and/or any future No-Fault claims submitted by Atlas PT, P.C.

1597.   Accordingly, Allstate requests a judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202 declaring that Atlas PT, P.C., at all relevant times, was (a) fraudulently incorporated, (b) unlawfully owned, operated, managed, and controlled by one or more unlicensed layperson, (c) engaged in billing for medically unnecessary services, (d) engaged in billing for services that were not actually performed as represented, (e) engaged in the unlawful sharing of fees derived from the provision of professional physical therapy services, (f) engaged in billing for services that were provided by independent contractors rather than employees of Atlas PT, P.C., (g) engaged in the submission of fraudulent charges in excess of the amounts permissible under the applicable Fee Schedule, and (h) engaged in billing for physical therapy services referred to Atlas PT, P.C.pursuant to an unlawful financial relationship with the prescribing provider, and thus has no standing to submit or receive assigned No-Fault benefits.

## COUNT XLVI
### DECLARATORY RELIEF UNDER 28 U.S.C. § 2201
### (Against MT Physical Therapy P.C.)

1598.   Allstate re-alleges, re-pleads and incorporates by reference the allegations set forth in paragraphs 1-1031 as if set forth fully herein.

1599.   To be eligible to receive assigned No-Fault benefits, an assignee provider must adhere to all applicable New York statutes that grant the authority to provide medical services in New York.

1600.   In view of its (a) illegal corporate structure, (b) unlawful control by one or more unlicensed layperson, (c) unlawful sharing of professional fees with one or more unlicensed layperson, (d) billing for  services that were not medically necessary, (e) billing for services that were not actually performed as represented, (f) billing for services that were provided by independent contractors rather than employees of MT Physical Therapy P.C., (g) submission of charges in excess of the amounts permitted by the applicable Fee Schedule, and (h) submission of charges for services referred to MT Physical Therapy P.C. pursuant to unlawful referral and kickback arrangements with referring providers, MT Physical Therapy P.C. has, at all relevant times, been operating in violation of one or more New York or local licensing requirements necessary to provide professional physical therapy services (including, but not limited to, New York Insurance Law, New York Education Law, and New York Business Corporation Law (and other statutory provisions)), and thus has no standing to seek or collect any No-Fault benefit payments from Allstate, including, but not limited to, No-Fault benefits that were assigned to MT Physical Therapy P.C. by its patients.

1601.   MT Physical Therapy P.C. continues to submit assigned No-Fault claims to Allstate demanding payment, and other assigned No-Fault claims remain pending with Allstate.

1602.   MT Physical Therapy P.C. continues to challenge Allstate's prior claim denials.

1603.   MT Physical Therapy P.C. continues to commence litigation against Allstate seeking payment of No-Fault benefits allegedly due and owing.

1604.   A justifiable controversy exists between Allstate and MT Physical Therapy P.C. because MT Physical Therapy P.C. rejects Allstate's ability to deny such claims.

1605.   Allstate has no adequate remedy at law.

1606.   MT Physical Therapy P.C. will also continue to demand No-Fault benefits payments from Allstate absent a declaration by this Court that its activities are unlawful, and that Allstate has no obligation to pay the pending, previously-denied, and/or any future No-Fault claims submitted by MT Physical Therapy P.C.

1607.   Accordingly, Allstate requests a judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202 declaring that MT Physical Therapy P.C., at all relevant times, was (a) fraudulently incorporated, (b) unlawfully owned, operated, managed, and controlled by one or more unlicensed layperson, (c) engaged in billing for medically unnecessary services, (d) engaged in billing for services that were not actually performed as represented, (e) engaged in the unlawful sharing of fees derived from the provision of professional physical therapy services, (f) engaged in billing for services that were provided by independent contractors rather than employees of MT Physical Therapy P.C., (g) engaged in the submission of fraudulent charges in excess of the amounts permissible under the applicable Fee Schedule, and (h) engaged in billing for physical therapy services referred to MT Physical Therapy P.C. pursuant to an unlawful financial relationship with the prescribing provider, and thus has no standing to submit or receive assigned No-Fault benefits.

**COUNT XLVII**
**DECLARATORY RELIEF UNDER 28 U.S.C. § 2201**
**(Against Life Care Physical Therapy P.C.)**

1608.   Allstate re-alleges, re-pleads and incorporates by reference the allegations set forth in paragraphs 1-1031 as if set forth fully herein.

1609.   To be eligible to receive assigned No-Fault benefits, an assignee provider must adhere to all applicable New York statutes that grant the authority to provide medical services in New York.

1610.   In view of its (a) illegal corporate structure, (b) unlawful control by one or more unlicensed layperson, (c) unlawful sharing of professional fees with one or more unlicensed layperson, (d) billing for services that were not medically necessary, (e) billing for services that were not actually performed as represented, (f) billing for services that were provided by independent contractors rather than employees of Life Care Physical Therapy P.C., (g) submission of charges in excess of the amounts permitted by the applicable Fee Schedule, and (h) submission of charges for services referred to Life Care Physical Therapy P.C. pursuant to unlawful referral and kickback arrangements with referring providers, Life Care Physical Therapy P.C. has, at all relevant times, been operating in violation of one or more New York or local licensing requirements necessary to provide professional physical therapy services (including, but not limited to, New York Insurance Law, New York Education Law, and New York Business Corporation Law (and other statutory provisions)), and thus has no standing to seek or collect any No-Fault benefit payments from Allstate, including, but not limited to, No-Fault benefits that were assigned to Life Care Physical Therapy P.C. by its patients.

1611.   Life Care Physical Therapy P.C. continues to submit assigned No-Fault claims to Allstate demanding payment, and other assigned No-Fault claims remain pending with Allstate.

1612.   Life Care Physical Therapy P.C. continues to challenge Allstate's prior claim denials.

1613.   Life Care Physical Therapy P.C. continues to commence litigation against Allstate seeking payment of No-Fault benefits allegedly due and owing.

1614.   A justifiable controversy exists between Allstate and Life Care Physical Therapy P.C. because Life Care Physical Therapy P.C. rejects Allstate's ability to deny such claims.

1615.   Allstate has no adequate remedy at law.

1616.   Life Care Physical Therapy P.C. will also continue to demand No-Fault benefits payments from Allstate absent a declaration by this Court that its activities are unlawful, and that Allstate has no obligation to pay the pending, previously-denied, and/or any future No-Fault claims submitted by Life Care Physical Therapy P.C.

1617.   Accordingly, Allstate requests a judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202 declaring that Life Care Physical Therapy P.C., at all relevant times, was (a) fraudulently incorporated, (b) unlawfully owned, operated, managed, and controlled by one or more unlicensed layperson, (c) engaged in billing for medically unnecessary services, (d) engaged in billing for services that were not actually performed as represented, (e) engaged in the unlawful sharing of fees derived from the provision of professional physical therapy services, (f) engaged in billing for services that were provided by independent contractors rather than employees of Life Care Physical Therapy P.C., (g) engaged in the submission of fraudulent charges in excess of the amounts permissible under the applicable Fee Schedule, and (h) engaged in billing for physical therapy services referred to Life Care Physical Therapy P.C. pursuant to an unlawful financial relationship with the prescribing provider, and thus has no standing to submit or receive assigned No-Fault benefits.

**COUNT XLVIII**
**DECLARATORY RELIEF UNDER 28 U.S.C. § 2201**
**(Against JA Physical Therapy P.C.)**

1618.   Allstate re-alleges, re-pleads and incorporates by reference the allegations set forth in paragraphs 1-1031 as if set forth fully herein.

1619.   To be eligible to receive assigned No-Fault benefits, an assignee provider must adhere to all applicable New York statutes that grant the authority to provide medical services in New York.

1620.   In view of its (a) illegal corporate structure, (b) unlawful control by one or more unlicensed layperson, (c) unlawful sharing of professional fees with one or more unlicensed layperson, (d) billing for services that were not medically necessary, (e) billing for services that were not actually performed as represented, (f) billing for services that were provided by independent contractors rather than employees of JA Physical Therapy P.C., (g) submission of charges in excess of the amounts permitted by the applicable Fee Schedule, and (h) submission of charges for  services referred to JA Physical Therapy P.C. pursuant to unlawful referral and kickback arrangements with referring providers, JA Physical Therapy P.C. has, at all relevant times, been operating in violation of one or more New York or local licensing requirements necessary to provide professional physical therapy services (including, but not limited to, New York Insurance Law, New York Education Law, and New York Business Corporation Law (and other statutory provisions)), and thus has no standing to seek or collect any No-Fault benefit payments from Allstate, including, but not limited to, No-Fault benefits that were assigned to JA Physical Therapy P.C. by its patients.

1621.   JA Physical Therapy P.C. continues to submit assigned No-Fault claims to Allstate demanding payment, and other assigned No-Fault claims remain pending with Allstate.

1622.   JA Physical Therapy P.C. continues to challenge Allstate's prior claim denials.

1623.   JA Physical Therapy P.C. continues to commence litigation against Allstate seeking payment of No-Fault benefits allegedly due and owing.

1624.   A justifiable controversy exists between Allstate and JA Physical Therapy P.C. because JA Physical Therapy P.C. rejects Allstate's ability to deny such claims.

1625.   Allstate has no adequate remedy at law.

1626.   JA Physical Therapy P.C. will also continue to demand No-Fault benefits payments from Allstate absent a declaration by this Court that its activities are unlawful, and that Allstate has no obligation to pay the pending, previously-denied, and/or any future No-Fault claims submitted by JA Physical Therapy P.C.

1627.   Accordingly, Allstate requests a judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202 declaring that JA Physical Therapy P.C., at all relevant times, was (a) fraudulently incorporated, (b) unlawfully owned, operated, managed, and controlled by one or more unlicensed layperson, (c) engaged in billing for medically unnecessary services, (d) engaged in billing for services that were not actually performed as represented, (e) engaged in the unlawful sharing of fees derived from the provision of professional physical therapy services, (f) engaged in billing for services that were provided by independent contractors rather than employees of JA Physical Therapy P.C., (g) engaged in the submission of fraudulent charges in excess of the amounts permissible under the applicable Fee Schedule, and (h) engaged in billing for physical therapy services referred to JA Physical Therapy P.C. pursuant to an unlawful financial relationship with the prescribing provider, and thus has no standing to submit or receive assigned No-Fault benefits.

## COUNT XLIX
### DECLARATORY RELIEF UNDER 28 U.S.C. § 2201
### (Against Raine M. Pesidas Physical Therapy P.C.)

1628.   Allstate re-alleges, re-pleads and incorporates by reference the allegations set forth in paragraphs 1-1031 as if set forth fully herein.

1629.   To be eligible to receive assigned No-Fault benefits, an assignee provider must adhere to all applicable New York statutes that grant the authority to provide medical services in New York.

1630.   In view of its (a) illegal corporate structure, (b) unlawful control by one or more unlicensed layperson, (c) unlawful sharing of professional fees with one or more unlicensed layperson, (d) billing for  services that were not medically necessary, (e) billing for services that were not actually performed as represented, (f) billing for services that were provided by independent contractors rather than employees of Raine M. Pesidas Physical Therapy P.C., (g) submission of charges in excess of the amounts permitted by the applicable Fee Schedule, and (h) submission of charges for  services referred to Raine M. Pesidas Physical Therapy P.C.pursuant to unlawful referral and kickback arrangements with referring providers, Raine M. Pesidas Physical Therapy P.C.has, at all relevant times, been operating in violation of one or more New York or local licensing requirements necessary to provide professional physical therapy services (including, but not limited to, New York Insurance Law, New York Education Law, and New York Business Corporation Law (and other statutory provisions)), and thus has no standing to seek or collect any No-Fault benefit payments from Allstate, including, but not limited to, No-Fault benefits that were assigned to Raine M. Pesidas Physical Therapy P.C. by its patients.

1631.   Raine M. Pesidas Physical Therapy P.C. continues to submit assigned No-Fault claims to Allstate demanding payment, and other assigned No-Fault claims remain pending with Allstate.

1632.   Raine M. Pesidas Physical Therapy P.C. continues to challenge Allstate's prior claim denials.

1633.   Raine M. Pesidas Physical Therapy P.C. continues to commence litigation against Allstate seeking payment of No-Fault benefits allegedly due and owing.

1634.   A justifiable controversy exists between Allstate and Raine M. Pesidas Physical Therapy P.C. because Raine M. Pesidas Physical Therapy P.C. rejects Allstate's ability to deny such claims.

1635.   Allstate has no adequate remedy at law.

1636.   Raine M. Pesidas Physical Therapy P.C. will also continue to demand No-Fault benefits payments from Allstate absent a declaration by this Court that its activities are unlawful, and that Allstate has no obligation to pay the pending, previously-denied, and/or any future No-Fault claims submitted by Raine M. Pesidas Physical Therapy P.C.

1637.   Accordingly, Allstate requests a judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202 declaring that Raine M. Pesidas Physical Therapy P.C., at all relevant times, was (a) fraudulently incorporated, (b) unlawfully owned, operated, managed, and controlled by one or more unlicensed layperson, (c) engaged in billing for medically unnecessary services, (d) engaged in billing for services that were not actually performed as represented, (e) engaged in the unlawful sharing of fees derived from the provision of professional physical therapy services, (f) engaged in billing for services that were provided by independent contractors rather than employees of Raine M. Pesidas Physical Therapy P.C., (g) engaged in the submission of

fraudulent charges in excess of the amounts permissible under the applicable Fee Schedule, and (h) engaged in billing for physical therapy services referred to Raine M. Pesidas Physical Therapy P.C.pursuant to an unlawful financial relationship with the prescribing provider, and thus has no standing to submit or receive assigned No-Fault benefits.

## COUNT L
### DECLARATORY RELIEF UNDER 28 U.S.C. § 2201
### (Against Wellness Physical Therapy Rehabilitation P.C.)

1638.   Allstate re-alleges, re-pleads and incorporates by reference the allegations set forth in paragraphs 1-1031 as if set forth fully herein.

1639.   To be eligible to receive assigned No-Fault benefits, an assignee provider must adhere to all applicable New York statutes that grant the authority to provide medical services in New York.

1640.   In view of its (a) illegal corporate structure, (b) unlawful control by one or more unlicensed layperson, (c) unlawful sharing of professional fees with one or more unlicensed layperson, (d) billing for services that were not medically necessary, (e) billing for services that were not actually performed as represented, (f) billing for services that were provided by independent contractors rather than employees of Wellness Physical Therapy Rehabilitation P.C., (g) submission of charges in excess of the amounts permitted by the applicable Fee Schedule, and (h) submission of charges for services referred to Wellness Physical Therapy Rehabilitation P.C. pursuant to unlawful referral and kickback arrangements with referring providers, Wellness Physical Therapy Rehabilitation P.C. has, at all relevant times, been operating in violation of one or more New York or local licensing requirements necessary to provide professional physical therapy services (including, but not limited to, New York Insurance Law, New York Education Law, and New York Business Corporation Law (and other statutory provisions)), and thus has no

standing to seek or collect any No-Fault benefit payments from Allstate, including, but not limited to, No-Fault benefits that were assigned to Wellness Physical Therapy Rehabilitation P.C. by its patients.

1641.   Wellness Physical Therapy Rehabilitation P.C. continues to submit assigned No-Fault claims to Allstate demanding payment, and other assigned No-Fault claims remain pending with Allstate.

1642.   Wellness Physical Therapy Rehabilitation P.C. continues to challenge Allstate's prior claim denials.

1643.   Wellness Physical Therapy Rehabilitation P.C. continues to commence litigation against Allstate seeking payment of No-Fault benefits allegedly due and owing.

1644.   A justifiable controversy exists between Allstate and Wellness Physical Therapy Rehabilitation P.C. because Wellness Physical Therapy Rehabilitation P.C. rejects Allstate's ability to deny such claims.

1645.   Allstate has no adequate remedy at law.

1646.   Wellness Physical Therapy Rehabilitation P.C. will also continue to demand No-Fault benefits payments from Allstate absent a declaration by this Court that its activities are unlawful, and that Allstate has no obligation to pay the pending, previously-denied, and/or any future No-Fault claims submitted by Wellness Physical Therapy Rehabilitation P.C.

1647.   Accordingly, Allstate requests a judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202 declaring that Wellness Physical Therapy Rehabilitation P.C., at all relevant times, was (a) fraudulently incorporated, (b) unlawfully owned, operated, managed, and controlled by one or more unlicensed layperson, (c) engaged in billing for medically unnecessary services, (d) engaged in billing for services that were not actually performed as

307

represented, (e) engaged in the unlawful sharing of fees derived from the provision of professional physical therapy services, (f) engaged in billing for services that were provided by independent contractors rather than employees of Wellness Physical Therapy Rehabilitation P.C., (g) engaged in the submission of fraudulent charges in excess of the amounts permissible under the applicable Fee Schedule, and (h) engaged in billing for physical therapy services referred to Wellness Physical Therapy Rehabilitation P.C.pursuant to an unlawful financial relationship with the prescribing provider, and thus has no standing to submit or receive assigned No-Fault benefits.

**COUNT LI**
**DECLARATORY RELIEF UNDER 28 U.S.C. § 2201**
**(Against Hand by Hand PT, P.C.)**

1648.   Allstate re-alleges, re-pleads and incorporates by reference the allegations set forth in paragraphs 1-1031 as if set forth fully herein.

1649.   To be eligible to receive assigned No-Fault benefits, an assignee provider must adhere to all applicable New York statutes that grant the authority to provide medical services in New York.

1650.   In view of its (a) illegal corporate structure, (b) unlawful control by one or more unlicensed layperson, (c) unlawful sharing of professional fees with one or more unlicensed layperson, (d) billing for services that were not medically necessary, (e) billing for services that were not actually performed as represented, (f) billing for services that were provided by independent contractors rather than employees of Hand by Hand PT, P.C., (g) submission of charges in excess of the amounts permitted by the applicable Fee Schedule, and (h) submission of charges for services referred to Hand by Hand PT, P.C. pursuant to unlawful referral and kickback arrangements with referring providers, Hand by Hand PT, P.C. has, at all relevant times, been operating in violation of one or more New York or local licensing requirements necessary to

308

provide professional physical therapy services (including, but not limited to, New York Insurance Law, New York Education Law, and New York Business Corporation Law (and other statutory provisions)), and thus has no standing to seek or collect any No-Fault benefit payments from Allstate, including, but not limited to, No-Fault benefits that were assigned to Hand by Hand PT, P.C. by its patients.

1651.   Hand by Hand PT, P.C. continues to submit assigned No-Fault claims to Allstate demanding payment, and other assigned No-Fault claims remain pending with Allstate.

1652.   Hand by Hand PT, P.C. continues to challenge Allstate's prior claim denials.

1653.   Hand by Hand PT, P.C. continues to commence litigation against Allstate seeking payment of No-Fault benefits allegedly due and owing.

1654.   A justifiable controversy exists between Allstate and Hand by Hand PT, P.C. because Hand by Handrejects Allstate's ability to deny such claims.

1655.   Allstate has no adequate remedy at law.

1656.   Hand by Hand PT, P.C. will also continue to demand No-Fault benefits payments from Allstate absent a declaration by this Court that its activities are unlawful, and that Allstate has no obligation to pay the pending, previously-denied, and/or any future No-Fault claims submitted by Hand by Hand PT, P.C.

1657.   Accordingly, Allstate requests a judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202 declaring that Hand by Hand PT, P.C., at all relevant times, was (a) fraudulently incorporated, (b) unlawfully owned, operated, managed, and controlled by one or more unlicensed layperson, (c) engaged in billing for medically unnecessary services, (d) engaged in billing for services that were not actually performed as represented, (e) engaged in the unlawful sharing of fees derived from the provision of professional physical therapy services, (f) engaged

309

in billing for services that were provided by independent contractors rather than employees of Hand by Hand PT, P.C., (g) engaged in the submission of fraudulent charges in excess of the amounts permissible under the applicable Fee Schedule, and (h) engaged in billing for physical therapy services referred to Hand by Hand PT, P.C.pursuant to an unlawful financial relationship with the prescribing provider, and thus has no standing to submit or receive assigned No-Fault benefits.

## COUNT LII
### DECLARATORY RELIEF UNDER 28 U.S.C. § 2201
### (Against MC Physical Therapy, P.C.)

1658.   Allstate re-alleges, re-pleads and incorporates by reference the allegations set forth in paragraphs 1-1031 as if set forth fully herein.

1659.   To be eligible to receive assigned No-Fault benefits, an assignee provider must adhere to all applicable New York statutes that grant the authority to provide medical services in New York.

1660.   In view of its (a) illegal corporate structure, (b) unlawful control by one or more unlicensed layperson, (c) unlawful sharing of professional fees with one or more unlicensed layperson, (d) billing for services that were not medically necessary, (e) billing for services that were not actually performed as represented, (f) billing for services that were provided by independent contractors rather than employees of MC Physical Therapy, P.C., (g) submission of charges in excess of the amounts permitted by the applicable Fee Schedule, and (h) submission of charges for services referred to MC Physical Therapy, P.C. pursuant to unlawful referral and kickback arrangements with referring providers, MC Physical Therapy, P.C. has, at all relevant times, been operating in violation of one or more New York or local licensing requirements necessary to provide professional physical therapy services (including, but not limited to, New

York Insurance Law, New York Education Law, and New York Business Corporation Law (and other statutory provisions)), and thus has no standing to seek or collect any No-Fault benefit payments from Allstate, including, but not limited to, No-Fault benefits that were assigned to MC Physical Therapy, P.C. by its patients.

1661.   MC Physical Therapy, P.C. continues to submit assigned No-Fault claims to Allstate demanding payment, and other assigned No-Fault claims remain pending with Allstate.

1662.   MC Physical Therapy, P.C. continues to challenge Allstate's prior claim denials.

1663.   MC Physical Therapy, P.C. continues to commence litigation against Allstate seeking payment of No-Fault benefits allegedly due and owing.

1664.   A justifiable controversy exists between Allstate and MC Physical Therapy, P.C. because MC Physical Therapy, P.C. rejects Allstate's ability to deny such claims.

1665.   Allstate has no adequate remedy at law.

1666.   MC Physical Therapy, P.C. will also continue to demand No-Fault benefits payments from Allstate absent a declaration by this Court that its activities are unlawful, and that Allstate has no obligation to pay the pending, previously-denied, and/or any future No-Fault claims submitted by MC Physical Therapy, P.C.

1667.   Accordingly, Allstate requests a judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202 declaring that MC Physical Therapy, P.C., at all relevant times, was (a) fraudulently incorporated, (b) unlawfully owned, operated, managed, and controlled by one or more unlicensed layperson, (c) engaged in billing for medically unnecessary services, (d) engaged in billing for services that were not actually performed as represented, (e) engaged in the unlawful sharing of fees derived from the provision of professional physical therapy services, (f) engaged in billing for services that were provided by independent contractors rather than

employees of MC Physical Therapy, P.C., (g) engaged in the submission of fraudulent charges in excess of the amounts permissible under the applicable Fee Schedule, and (h) engaged in billing for physical therapy services referred to MC Physical Therapy, P.C. pursuant to an unlawful financial relationship with the prescribing provider, and thus has no standing to submit or receive assigned No-Fault benefits.

## COUNT LIII
### DECLARATORY RELIEF UNDER 28 U.S.C. § 2201
### (Against Go Flex Rehab Physical Therapy, P.C.)

1668.   Allstate re-alleges, re-pleads and incorporates by reference the allegations set forth in paragraphs 1-1031 as if set forth fully herein.

1669.   To be eligible to receive assigned No-Fault benefits, an assignee provider must adhere to all applicable New York statutes that grant the authority to provide medical services in New York.

1670.   In view of its (a) illegal corporate structure, (b) unlawful control by one or more unlicensed layperson, (c) unlawful sharing of professional fees with one or more unlicensed layperson, (d) billing for services that were not medically necessary, (e) billing for services that were not actually performed as represented, (f) billing for services that were provided by independent contractors rather than employees of Go Flex Rehab Physical Therapy, P.C., (g) submission of charges in excess of the amounts permitted by the applicable Fee Schedule, and (h) submission of charges for  services referred to Go Flex Rehab Physical Therapy, P.C. pursuant to unlawful referral and kickback arrangements with referring providers, Go Flex Rehab Physical Therapy, P.C. has, at all relevant times, been operating in violation of one or more New York or local licensing requirements necessary to provide professional physical therapy services (including, but not limited to, New York Insurance Law, New York Education Law, and New York

Business Corporation Law (and other statutory provisions)), and thus has no standing to seek or collect any No-Fault benefit payments from Allstate, including, but not limited to, No-Fault benefits that were assigned to Go Flex Rehab Physical Therapy, P.C. by its patients.

1671.   Go Flex Rehab Physical Therapy, P.C. continues to submit assigned No-Fault claims to Allstate demanding payment, and other assigned No-Fault claims remain pending with Allstate.

1672.   Go Flex Rehab Physical Therapy, P.C. continues to challenge Allstate's prior claim denials.

1673.   Go Flex Rehab Physical Therapy, P.C. continues to commence litigation against Allstate seeking payment of No-Fault benefits allegedly due and owing.

1674.   A justifiable controversy exists between Allstate and Go Flex Rehab Physical Therapy, P.C. because Go Flex Rehab Physical Therapy, P.C. rejects Allstate's ability to deny such claims.

1675.   Allstate has no adequate remedy at law.

1676.   Go Flex Rehab Physical Therapy, P.C. will also continue to demand No-Fault benefits payments from Allstate absent a declaration by this Court that its activities are unlawful, and that Allstate has no obligation to pay the pending, previously-denied, and/or any future No-Fault claims submitted by Go Flex Rehab Physical Therapy, P.C.

1677.   Accordingly, Allstate requests a judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202 declaring that Go Flex Rehab Physical Therapy, P.C., at all relevant times, was (a) fraudulently incorporated, (b) unlawfully owned, operated, managed, and controlled by one or more unlicensed layperson, (c) engaged in billing for medically unnecessary services, (d) engaged in billing for services that were not actually performed as represented, (e)

engaged in the unlawful sharing of fees derived from the provision of professional physical therapy services, (f) engaged in billing for services that were provided by independent contractors rather than employees of Go Flex Rehab Physical Therapy, P.C., (g) engaged in the submission of fraudulent charges in excess of the amounts permissible under the applicable Fee Schedule, and (h) engaged in billing for physical therapy services referred to Go Flex Rehab Physical Therapy, P.C. pursuant to an unlawful financial relationship with the prescribing provider, and thus has no standing to submit or receive assigned No-Fault benefits.

**COUNT LIV**
**DECLARATORY RELIEF UNDER 28 U.S.C. § 2201**
**(Against JEVA Physical Therapy, P.C.)**

1678.   Allstate re-alleges, re-pleads and incorporates by reference the allegations set forth in paragraphs 1-1031 as if set forth fully herein.

1679.   To be eligible to receive assigned No-Fault benefits, an assignee provider must adhere to all applicable New York statutes that grant the authority to provide medical services in New York.

1680.   In view of its (a) illegal corporate structure, (b) unlawful control by one or more unlicensed layperson, (c) unlawful sharing of professional fees with one or more unlicensed layperson, (d) billing for services that were not medically necessary, (e) billing for services that were not actually performed as represented, (f) billing for services that were provided by independent contractors rather than employees of JEVA Physical Therapy, P.C., (g) submission of charges in excess of the amounts permitted by the applicable Fee Schedule, and (h) submission of charges for  services referred to JEVA Physical Therapy, P.C. pursuant to unlawful referral and kickback arrangements with referring providers, JEVA Physical Therapy, P.C. has, at all relevant times, been operating in violation of one or more New York or local licensing requirements

314

necessary to provide professional physical therapy services (including, but not limited to, New York Insurance Law, New York Education Law, and New York Business Corporation Law (and other statutory provisions)), and thus has no standing to seek or collect any No-Fault benefit payments from Allstate, including, but not limited to, No-Fault benefits that were assigned to JEVA Physical Therapy, P.C. by its patients.

1681.   JEVA Physical Therapy, P.C. continues to submit assigned No-Fault claims to Allstate demanding payment, and other assigned No-Fault claims remain pending with Allstate.

1682.   JEVA Physical Therapy, P.C. continues to challenge Allstate's prior claim denials.

1683.   JEVA Physical Therapy, P.C. continues to commence litigation against Allstate seeking payment of No-Fault benefits allegedly due and owing.

1684.   A justifiable controversy exists between Allstate and JEVA Physical Therapy, P.C. because JEVA Physical Therapy, P.C. rejects Allstate's ability to deny such claims.

1685.   Allstate has no adequate remedy at law.

1686.   JEVA Physical Therapy, P.C. will also continue to demand No-Fault benefits payments from Allstate absent a declaration by this Court that its activities are unlawful, and that Allstate has no obligation to pay the pending, previously-denied, and/or any future No-Fault claims submitted by JEVA Physical Therapy, P.C.

1687.   Accordingly, Allstate requests a judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202 declaring that JEVA Physical Therapy, P.C., at all relevant times, was (a) fraudulently incorporated, (b) unlawfully owned, operated, managed, and controlled by one or more unlicensed layperson, (c) engaged in billing for medically unnecessary services, (d) engaged in billing for services that were not actually performed as represented, (e) engaged in the unlawful sharing of fees derived from the provision of professional physical therapy services, (f)

engaged in billing for services that were provided by independent contractors rather than employees of JEVA Physical Therapy, P.C., (g) engaged in the submission of fraudulent charges in excess of the amounts permissible under the applicable Fee Schedule, and (h) engaged in billing for physical therapy services referred to JEVA Physical Therapy, P.C. pursuant to an unlawful financial relationship with the prescribing provider, and thus has no standing to submit or receive assigned No-Fault benefits.

## COUNT LV
## DECLARATORY RELIEF UNDER 28 U.S.C. § 2201
### (Against Finesse Care Physical Therapy, P.C.)

1688.   Allstate re-alleges, re-pleads and incorporates by reference the allegations set forth in paragraphs 1-1031 as if set forth fully herein.

1689.   To be eligible to receive assigned No-Fault benefits, an assignee provider must adhere to all applicable New York statutes that grant the authority to provide medical services in New York.

1690.   In view of its (a) illegal corporate structure, (b) unlawful control by one or more unlicensed layperson, (c) unlawful sharing of professional fees with one or more unlicensed layperson, (d) billing for services that were not medically necessary, (e) billing for services that were not actually performed as represented, (f) billing for services that were provided by independent contractors rather than employees of Finesse Care Physical Therapy, P.C., (g) submission of charges in excess of the amounts permitted by the applicable Fee Schedule, and (h) submission of charges for services referred to Finesse Care Physical Therapy, P.C. pursuant to unlawful referral and kickback arrangements with referring providers, Finesse Care Physical Therapy, P.C. has, at all relevant times, been operating in violation of one or more New York or local licensing requirements necessary to provide professional physical therapy services

(including, but not limited to, New York Insurance Law, New York Education Law, and New York Business Corporation Law (and other statutory provisions)), and thus has no standing to seek or collect any No-Fault benefit payments from Allstate, including, but not limited to, No-Fault benefits that were assigned to Finesse Care Physical Therapy, P.C. by its patients.

1691.   Finesse Care Physical Therapy, P.C. continues to submit assigned No-Fault claims to Allstate demanding payment, and other assigned No-Fault claims remain pending with Allstate.

1692.   Finesse Care Physical Therapy, P.C. continues to challenge Allstate's prior claim denials.

1693.   Finesse Care Physical Therapy, P.C. continues to commence litigation against Allstate seeking payment of No-Fault benefits allegedly due and owing.

1694.   A justifiable controversy exists between Allstate and Finesse Care Physical Therapy, P.C. because Finesse Care Physical Therapy, P.C. rejects Allstate's ability to deny such claims.

1695.   Allstate has no adequate remedy at law.

1696.   Finesse Care Physical Therapy, P.C. will also continue to demand No-Fault benefits payments from Allstate absent a declaration by this Court that its activities are unlawful, and that Allstate has no obligation to pay the pending, previously-denied, and/or any future No-Fault claims submitted by Finesse Care Physical Therapy, P.C.

1697.   Accordingly, Allstate requests a judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202 declaring that Finesse Care Physical Therapy, P.C., at all relevant times, was (a) fraudulently incorporated, (b) unlawfully owned, operated, managed, and controlled by one or more unlicensed layperson, (c) engaged in billing for medically unnecessary services, (d) engaged in billing for services that were not actually performed as represented, (e) engaged in

the unlawful sharing of fees derived from the provision of professional physical therapy services, (f) engaged in billing for services that were provided by independent contractors rather than employees of Finesse Care Physical Therapy, P.C., (g) engaged in the submission of fraudulent charges in excess of the amounts permissible under the applicable Fee Schedule, and (h) engaged in billing for physical therapy services referred to Finesse Care Physical Therapy, P.C. pursuant to an unlawful financial relationship with the prescribing provider, and thus has no standing to submit or receive assigned No-Fault benefits.

**COUNT LVI**
**DECLARATORY RELIEF UNDER 28 U.S.C. § 2201**
**(Against Axis PT, P.C.)**

1698.   Allstate re-alleges, re-pleads and incorporates by reference the allegations set forth in paragraphs 1-1031 as if set forth fully herein.

1699.   To be eligible to receive assigned No-Fault benefits, an assignee provider must adhere to all applicable New York statutes that grant the authority to provide medical services in New York.

1700.   In view of its (a) illegal corporate structure, (b) unlawful control by one or more unlicensed layperson, (c) unlawful sharing of professional fees with one or more unlicensed layperson, (d) billing for services that were not medically necessary, (e) billing for services that were not actually performed as represented, (f) billing for services that were provided by independent contractors rather than employees of Axis PT, P.C., (g) submission of charges in excess of the amounts permitted by the applicable Fee Schedule, and (h) submission of charges for services referred to Axis PT, P.C. pursuant to unlawful referral and kickback arrangements with referring providers, Axis PT, P.C. has, at all relevant times, been operating in violation of one or more New York or local licensing requirements necessary to provide professional physical therapy

services (including, but not limited to, New York Insurance Law, New York Education Law, and New York Business Corporation Law (and other statutory provisions)), and thus has no standing to seek or collect any No-Fault benefit payments from Allstate, including, but not limited to, No-Fault benefits that were assigned to Axis PT, P.C. by its patients.

1701.   Axis PT, P.C. continues to submit assigned No-Fault claims to Allstate demanding payment, and other assigned No-Fault claims remain pending with Allstate.

1702.   Axis PT, P.C. continues to challenge Allstate's prior claim denials.

1703.   Axis PT, P.C. continues to commence litigation against Allstate seeking payment of No-Fault benefits allegedly due and owing.

1704.   A justifiable controversy exists between Allstate and Axis PT, P.C. because Axisrejects Allstate's ability to deny such claims.

1705.   Allstate has no adequate remedy at law.

1706.   Axis PT, P.C. will also continue to demand No-Fault benefits payments from Allstate absent a declaration by this Court that its activities are unlawful, and that Allstate has no obligation to pay the pending, previously-denied, and/or any future No-Fault claims submitted by Axis PT, P.C.

1707.   Accordingly, Allstate requests a judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202 declaring that Axis PT, P.C., at all relevant times, was (a) fraudulently incorporated, (b) unlawfully owned, operated, managed, and controlled by one or more unlicensed layperson, (c) engaged in billing for medically unnecessary services, (d) engaged in billing for services that were not actually performed as represented, (e) engaged in the unlawful sharing of fees derived from the provision of professional physical therapy services, (f) engaged in billing for services that were provided by independent contractors rather than employees of Axis

PT, P.C., (g) engaged in the submission of fraudulent charges in excess of the amounts permissible under the applicable Fee Schedule, and (h) engaged in billing for physical therapy services referred to Axis PT, P.C. pursuant to an unlawful financial relationship with the prescribing provider, and thus has no standing to submit or receive assigned No-Fault benefits.

## XI.   DEMAND FOR RELIEF

### COUNT I
### VIOLATIONS OF 18 U.S.C. § 1962(c)
### BETTER HANDS PHYSICAL THERAPY P.C. ENTERPRISE
**(Against Kristine May Bitanga Parcon, P.T., Vladimir Geykhman, Alexander Gulkarov, Artur Sattarov, Jasur Rahmatov, Go Flex Rehab Physical Therapy, P.C., JEVA Physical Therapy P.C., Joseph Edwin Villacorte Abrenica, P.T., Raine M. Pesidas Physical Therapy P.C., Rainegale Marie Mendiola Pesidas, P.T., MMA Physical Therapy P.C., Mazen Mohamed Ahmed Ali Abdel Magid, P.T., MT Physical Therapy P.C., Madonna Parunga Tandingan, P.T., Axis PT, P.C., Mohamed Awad Awad, P.T., JA Physical Therapy P.C., MC Physical Therapy, P.C., Michelle Nesas Cuadra, P.T., Finesse Care Physical Therapy, P.C., Ahmed Hamdy Emara, P.T., July PT, P.C., Mahmoud Elsayed Elsanaa, P.T., Hands of Hope P.T., P.C., Motaz Mohamoud Ebeido, P.T., Comfort Physical Therapy, PLLC, Melissa C. Cadet, P.T., Wellness Physical Therapy Rehabilitation PLLC, Milena Rezende, P.T. a/k/a Milena Reyes, Pyramid Care PT, P.C., and Mohamed Hablas, P.T.)**

(a)   AWARD Allstate's actual and consequential damages to be established at trial;

(b)   AWARD Allstate treble damages pursuant to 18 U.S.C. § 1964, interests, costs and attorneys' fees;

(c)   GRANT injunctive relief enjoining the Defendants from engaging in the wrongful conduct alleged in the Complaint; and

(d)   GRANT all other relief this Court deems just.

### COUNT II
### VIOLATION 18 U.S.C. § 1962(d)
### BETTER HANDS PHYSICAL THERAPY, P.C. ENTERPRISE
**(Against Kristine May Bitanga Parcon, P.T., Vladimir Geykhman, Alexander Gulkarov, Artur Sattarov, Jasur Rahmatov, Go Flex Rehab Physical Therapy, P.C., JEVA Physical Therapy P.C., Joseph Edwin Villacorte Abrenica, P.T., Raine M. Pesidas Physical Therapy P.C., Rainegale Marie Mendiola Pesidas, P.T., MMA Physical Therapy P.C., Mazen Mohamed Ahmed Ali Abdel Magid, P.T., MT Physical Therapy P.C., Madonna Parunga**

**Tandingan, P.T., Axis PT, P.C., Mohamed Awad Awad, P.T., JA Physical Therapy P.C., MC Physical Therapy, P.C., Michelle Nesas Cuadra, P.T., Finesse Care Physical Therapy, P.C., Ahmed Hamdy Emara, P.T., July PT, P.C., Mahmoud Elsayed Elsanaa, P.T., Hands of Hope P.T., P.C., Motaz Mohamoud Ebeido, P.T., Comfort Physical Therapy, PLLC, Melissa C. Cadet, P.T., Wellness Physical Therapy Rehabilitation PLLC, Milena Rezende, P.T. a/k/a Milena Reyes, Pyramid Care PT, P.C., and Mohamed Hablas, P.T.)**

(a)   AWARD Allstate's actual and consequential damages to be established at trial;

(b)   AWARD Allstate treble damages, interests, costs and reasonable attorneys' fees;

(c)   GRANT injunctive relief enjoining the Defendants from engaging in the wrongful conduct alleged in the Complaint; and

(d)   GRANT all other relief this Court deems just.

## COUNT III
### VIOLATIONS OF 18 U.S.C. § 1962(c)
### HANDS OF HOPE P.T., P.C. ENTERPRISE

**(Against Motaz Mahmoud Ebeido, P.T., Vladimir Geykhman, Alexander Gulkarov, Artur Sattarov, Jasur Rahmatov, July PT, P.C., Mahmoud Elsayed Elsanaa, P.T., Pyramid Care PT, P.C., Mohamed Hablas, P.T., MMA Physical Therapy, P.C., Mazen Mohamed Ahmed Ali Abdel Magid, P.T., Comfort Physical Therapy, PLLC, Melissa C. Cadet, P.T., Wellness Physical Therapy Rehabilitation, PLLC, Milena Rezende, P.T. a/k/a Milena Reyes, MT Physical Therapy P.C., Madonna Parungo Tandingan, P.T., Raine M. Pesidas Physical Therapy, P.C., Rainegale Marie Mendiola Pesidas, P.T., Better Hands Physical Therapy P.C., Kristine May Bitanga Parcon, P.T., Go Flex Rehab Physical Therapy P.C., Lyn Jonson Ballener, P.T., JEVA Physical Therapy P.C., JA Physical Therapy, P.C., Joseph Edwin Villacorte Abrenica, P.C., MC Physical Therapy, P.C., and Michelle Nesas Cuadra, P.T.)**

(a)   AWARD Allstate's actual and consequential damages to be established at trial;

(b)   AWARD Allstate treble damages pursuant to 18 U.S.C. § 1964, interests, costs and attorneys' fees;

(c)   GRANT injunctive relief enjoining the Defendants from engaging in the wrongful conduct alleged in the Complaint; and

(d)   GRANT all other relief this Court deems just.

## COUNT IV
### VIOLATION 18 U.S.C. § 1962(d)
### HANDS OF HOPE P.T., P.C. ENTERPRISE
**(Against Motaz Mahmoud Ebeido, P.T., Vladimir Geykhman, Alexander Gulkarov, Artur Sattarov, Jasur Rahmatov, July PT, P.C., Mahmoud Elsayed Elsanaa, P.T., Pyramid Care PT, P.C., Mohamed Hablas, P.T., MMA Physical Therapy, P.C., Mazen Mohamed Ahmed Ali Abdel Magid, P.T., Comfort Physical Therapy, PLLC, Melissa C. Cadet, P.T., Wellness Physical Therapy Rehabilitation, PLLC, Milena Rezende, P.T. a/k/a Milena Reyes, MT Physical Therapy P.C., Madonna Parungo Tandingan, P.T., Raine M. Pesidas Physical Therapy, P.C., Rainegale Marie Mendiola Pesidas, P.T., Better Hands Physical Therapy P.C., Kristine May Bitanga Parcon, P.T., Go Flex Rehab Physical Therapy P.C., Lyn Jonson Ballener, P.T., JEVA Physical Therapy P.C., JA Physical Therapy, P.C., Joseph Edwin Villacorte Abrenica, P.C., MC Physical Therapy, P.C., and Michelle Nesas Cuadra, P.T.)**

(a)    AWARD Allstate's actual and consequential damages to be established at trial;

(b)    AWARD Allstate treble damages, interests, costs and reasonable attorneys' fees;

(c)    GRANT injunctive relief enjoining the Defendants from engaging in the wrongful conduct

        alleged in the Complaint; and

(d)    GRANT all other relief this Court deems just.

## COUNT V
### VIOLATIONS OF 18 U.S.C. § 1962(c)
### JULY PT, P.C. ENTERPRISE
**(Against Mahmoud Elsayed Elsanaa, P.T., Vladimir Geykhman, Alexander Gulkarov, Artur Sattarov, Jasur Rahmatov, Hand by Hand PT, P.C., Hands of Hope P.T., P.C., Motaz Mahmoud Ebeido, P.T., Pyramid Care PT, P.C., Mohamed Hablas, P.T., MMA Physical Therapy, P.C., Mazen Mohamed Ahmed Ali Abdel Magid, P.T., MT Physical Therapy, P.C., Madonna Parungo Tandingan, P.T., Comfort Physical Therapy, PLLC, Melissa C. Cadet, P.T., Wellness Physical Therapy Rehabilitation PLLC, Milena Rezende, P.T. a/k/a Milena Reyes, Raine M. Pesidas Physical Therapy P.C., Rainegale Marie Mendiola Pesidas, P.T., Better Hands Physical Therapy P.C., Kristine May Bitanga Parcon, P.T., Go Flex Rehab Physical Therapy, P.C., Lyn Jonson Ballener, P.T., JEVA Physical Therapy P.C., Joseph Edwin Villacorte Abrenica, P.T., MC Physical Therapy, P.C., and Michelle Nesas Cuadra, P.T.)**

(a)    AWARD Allstate's actual and consequential damages to be established at trial;

(b)    AWARD Allstate treble damages pursuant to 18 U.S.C. § 1964, interests, costs and

        attorneys' fees;

(c)      GRANT injunctive relief enjoining the Defendants from engaging in the wrongful conduct

      alleged in the Complaint; and

(d)      GRANT all other relief this Court deems just.

## COUNT VI
### VIOLATION 18 U.S.C. § 1962(d)
### JULY PT, P.C. ENTERPRISE
**(Against Mahmoud Elsayed Elsanaa, P.T., Vladimir Geykhman, Alexander Gulkarov, Artur Sattarov, Jasur Rahmatov, Hand by Hand PT, P.C., Hands of Hope P.T., P.C., Motaz Mahmoud Ebeido, P.T., Pyramid Care PT, P.C., Mohamed Hablas, P.T., MMA Physical Therapy, P.C., Mazen Mohamed Ahmed Ali Abdel Magid, P.T., MT Physical Therapy, P.C., Madonna Parungo Tandingan, P.T., Comfort Physical Therapy, PLLC, Melissa C. Cadet, P.T., Wellness Physical Therapy Rehabilitation PLLC, Milena Rezende, P.T. a/k/a Milena Reyes, Raine M. Pesidas Physical Therapy P.C., Rainegale Marie Mendiola Pesidas, P.T., Better Hands Physical Therapy P.C., Kristine May Bitanga Parcon, P.T., Go Flex Rehab Physical Therapy, P.C., Lyn Jonson Ballener, P.T., JEVA Physical Therapy P.C., Joseph Edwin Villacorte Abrenica, P.T., MC Physical Therapy, P.C., and Michelle Nesas Cuadra, P.T.)**

(a)      AWARD Allstate's actual and consequential damages to be established at trial;

(b)      AWARD Allstate treble damages, interests, costs and reasonable attorneys' fees;

(c)      GRANT injunctive relief enjoining the Defendants from engaging in the wrongful conduct

      alleged in the Complaint; and

(d)      GRANT all other relief this Court deems just.

## COUNT VII
### VIOLATIONS OF 18 U.S.C. § 1962(c)
### MMA Physical Therapy, P.C. ENTERPRISE
**(Against Mazen Mohamed Ahmed Ali Abdel Magid, P.T., Vladimir Geykhman, Alexander Gulkarov, Artur Sattarov, Jasur Rahmatov, Hands of Hope P.T., P.C., Motaz Mahmoud Ebeido, P.T., July PT, P.C., Mahmoud Elsayed Elsanaa, P.T., Pyramid Care PT, P.C., Mohamed Hablas, P.T., Comfort Physical Therapy, P.C., Melissa C. Cadet, P.T., MT Physical Therapy, P.C., Madonna Parungo Tandingan, P.T., Wellness Physical Therapy Rehabilitation PLLC, Milena Rezende, P.T. a/k/a Milena Reyes, Better Hands Physical Therapy P.C., Kristine May Bitanga Parcon, P.T., Atlas PT, P.C., Mohamed Awad Awad, P.T., Raine M Pesidas Physical Therapy P.C., Rainegale Marie Mendiola Pesidas, P.T., Go Flex Rehab Physical Therapy PLLC, Lyn Jonson Ballener, P.T., JEVA Physical Therapy P.C., Joseph Edwin Villacorte Abrenica, P.T., MC Physical Therapy, P.C., and Michelle Nesas Cuadra, P.T.)**

(a)    AWARD Allstate's actual and consequential damages to be established at trial;

(b)    AWARD Allstate treble damages pursuant to 18 U.S.C. § 1964, interests, costs and attorneys' fees;

(c)    GRANT injunctive relief enjoining the Defendants from engaging in the wrongful conduct alleged in the Complaint; and

(d)    GRANT all other relief this Court deems just.

## COUNT VIII
### VIOLATION 18 U.S.C. § 1962(d)
### MMA PHYSICAL THERAPY P.C. ENTERPRISE
**(Against Mazen Mohamed Ahmed Ali Abdel Magid, P.T., Vladimir Geykhman, Alexander Gulkarov, Artur Sattarov, Jasur Rahmatov, Hands of Hope P.T., P.C., Motaz Mahmoud Ebeido, P.T., July PT, P.C., Mahmoud Elsayed Elsanaa, P.T., Pyramid Care PT, P.C., Mohamed Hablas, P.T., Comfort Physical Therapy, P.C., Melissa C. Cadet, P.T., MT Physical Therapy, P.C., Madonna Parungo Tandingan, P.T., Wellness Physical Therapy Rehabilitation PLLC, Milena Rezende, P.T. a/k/a Milena Reyes, Better Hands Physical Therapy P.C., Kristine May Bitanga Parcon, P.T., Atlas PT, P.C., Mohamed Awad Awad, P.T., Raine M Pesidas Physical Therapy P.C., Rainegale Marie Mendiola Pesidas, P.T., Go Flex Rehab Physical Therapy PLLC, Lyn Jonson Ballener, P.T., JEVA Physical Therapy P.C., Joseph Edwin Villacorte Abrenica, P.T., MC Physical Therapy, P.C., and Michelle Nesas Cuadra, P.T.)**

(a)    AWARD Allstate's actual and consequential damages to be established at trial;

(b)    AWARD Allstate treble damages, interests, costs and reasonable attorneys' fees;

(c)    GRANT injunctive relief enjoining the Defendants from engaging in the wrongful conduct alleged in the Complaint; and

(d)    GRANT all other relief this Court deems just.

## COUNT IX
### VIOLATIONS OF 18 U.S.C. § 1962(c)
### PYRAMID CARE PT, P.C. ENTERPRISE
**(Against Mohamed Hablas, P.T., Vladimir Geykhman, Alexander Gulkarov, Artur Sattarov, Jasur Rahmatov, Hands of Hope P.T., P.C., Motaz Mahmoud Ebeido, P.T., July PT, P.C., Mahmoud Elsayed Elsanaa, P.T., MMA Physical Therapy, P.C., Mazen Mohamed Ahmed Ali Abdel Magid, P.T., Go Flex Rehab Physical Therapy, P.C., Lyn**

**Jonson Ballener, P.T., JEVA Physical Therapy P.C., Joseph Edwin Villacorte Abrencia, P.T., MC Physical Therapy, P.C., Michelle Nesas Cuadra, P.T., Better Hands Physical Therapy P.C., Kristine May Bitanga Parcon, P.T., Comfort Physical Therapy, PLLC, Melissa C. Cadet, P.T., Wellness Physical Therapy Rehabilitation P.C., Milena Rezende, P.T. a/k/a Milena Reyes, MT Physical Therapy, P.C., Madonna Parungo Tandingan, P.T., Raine M. Pesidas Physical Therapy P.C., and Rainegale Marie Mendiola Pesidas, P.T.)**

(a)   AWARD Allstate's actual and consequential damages to be established at trial;

(b)   AWARD Allstate treble damages pursuant to 18 U.S.C. § 1964, interests, costs and attorneys' fees;

(c)   GRANT injunctive relief enjoining the Defendants from engaging in the wrongful conduct alleged in the Complaint; and

(d)   GRANT all other relief this Court deems just.

### COUNT X
### VIOLATION 18 U.S.C. § 1962(d)
### PYRAMID CARE PT P.C. ENTERPRISE
**(Against Mohamed Hablas, P.T., Vladimir Geykhman, Alexander Gulkarov, Artur Sattarov, Jasur Rahmatov, Hands of Hope P.T., P.C., Motaz Mahmoud Ebeido, P.T., July PT, P.C., Mahmoud Elsayed Elsanaa, P.T., MMA Physical Therapy, P.C., Mazen Mohamed Ahmed Ali Abdel Magid, P.T., Go Flex Rehab Physical Therapy, P.C., Lyn Jonson Ballener, P.T., JEVA Physical Therapy P.C., Joseph Edwin Villacorte Abrenica, P.T., MC Physical Therapy, P.C., Michelle Nesas Cuadra, P.T., Better Hands Physical Therapy P.C., Kristine May Bitanga Parcon, P.T., Comfort Physical Therapy, PLLC, Melissa C. Cadet, P.T., Wellness Physical Therapy Rehabilitation P.C., Milena Rezende, P.T. a/k/a Milena Reyes, MT Physical Therapy, P.C., Madonna Parungo Tandingan, P.T., Raine M. Pesidas Physical Therapy P.C., and Rainegale Marie Mendiola Pesidas, P.T.)**

(a)   AWARD Allstate's actual and consequential damages to be established at trial;

(b)   AWARD Allstate treble damages, interests, costs and reasonable attorneys' fees;

(c)   GRANT injunctive relief enjoining the Defendants from engaging in the wrongful conduct alleged in the Complaint; and

(d)   GRANT all other relief this Court deems just.

## COUNT XI
### VIOLATIONS OF 18 U.S.C. § 1962(c)
### COMFORT PHYSICAL THERAPY, PLLC ENTERPRISE
**(Against Melissa C. Cadet, P.T., Vladimir Geykhman, Alexander Gulkarov, Artur Sattarov, Jasur Rahmatov, Mohamed Hablas, P.T., Hands of Hope P.T., P.C., Motaz Mahmoud Ebeido, P.T., July PT, P.C., Mahmoud Elsayed Elsanaa, P.T., MMA Physical Therapy, P.C., Mazen Mohamed Ahmed Ali Abdel Magid, P.T., Go Flex Rehab Physical Therapy, P.C., Lyn Jonson Ballener, P.T., JEVA Physical Therapy P.C., Joseph Edwin Villacorte Abrenica, P.T., MC Physical Therapy P.C., Michelle Nesas Cuadra, P.T., Better Hands Physical Therapy P.C., Kristine May Bitanga Parcon, P.T., Wellness Physical Therapy Rehabilitation PLLC, Milena Rezende, P.T. a/k/a Milena Reyes, MT Physical Therapy P.C., Madonna Parungo Tandingan, P.T., Raine M. Pesidas Physical Therapy P.C., and Marie Mendiola Pesidas, P.T.)**

(a)     AWARD Allstate's actual and consequential damages to be established at trial;

(b)     AWARD Allstate treble damages pursuant to 18 U.S.C. § 1964, interests, costs and attorneys' fees;

(c)     GRANT injunctive relief enjoining the Defendants from engaging in the wrongful conduct alleged in the Complaint; and

(d)     GRANT all other relief this Court deems just.

## COUNT XII
### VIOLATION 18 U.S.C. § 1962(d)
### COMFORT PHYSICAL THERAPY PLLC ENTERPRISE
**(Against Melissa C. Cadet, P.T., Vladimir Geykhman, Alexander Gulkarov, Artur Sattarov, Jasur Rahmatov, Mohamed Hablas, P.T., Hands of Hope P.T., P.C., Motaz Mahmoud Ebeido, P.T., July PT, P.C., Mahmoud Elsayed Elsanaa, P.T., MMA Physical Therapy, P.C., Mazen Mohamed Ahmed Ali Abdel Magid, P.T., Go Flex Rehab Physical Therapy, P.C., Lyn Jonson Ballener, P.T., JEVA Physical Therapy P.C., Joseph Edwin Villacorte Abrenica, P.T., MC Physical Therapy P.C., Michelle Nesas Cuadra, P.T., Better Hands Physical Therapy P.C., Kristine May Bitanga Parcon, P.T., Wellness Physical Therapy Rehabilitation PLLC, Milena Rezende, P.T. a/k/a Milena Reyes, MT Physical Therapy P.C., Madonna Parungo Tandingan, P.T., Raine M. Pesidas Physical Therapy P.C., and Marie Mendiola Pesidas, P.T.)**

(a)     AWARD Allstate's actual and consequential damages to be established at trial;

(b)     AWARD Allstate treble damages, interests, costs and reasonable attorneys' fees;

(c)   GRANT injunctive relief enjoining the Defendants from engaging in the wrongful conduct

alleged in the Complaint; and

(d)   GRANT all other relief this Court deems just.

### COUNT XIII
### VIOLATIONS OF 18 U.S.C. § 1962(c)
### MT PHYSICAL THERAPY, PLLC ENTERPRISE
**(Against Madonna Parungo Tandingan, P.T., Vladimir Geykhman, Alexander Gulkarov, Artur Sattarov, Jasur Rahmatov, Comfort Physical Therapy PLLC, Melissa C. Cadet, P.T., Wellness Physical Therapy Rehabilitation PLLC, Milena Rezende, P.T. a/k/a Milena Reyes, Raine M. Pesidas Physical Therapy P.C., Rainegale Marie Mendiola Pesidas, P.T., JA Physical Therapy P.C., Joseph Edwin Villacorte Abrenica, P.T., MMA Physical Therapy, P.C., Mazen Mohamed Ahmed Ali Abdel Magid, P.T., July PT, P.C., Mahmoud Elsayed Elsanaa, P.T., MC Physical Therapy, P.C., Michelle Nesas Cuadra, P.T., Life Care Physical Therapy, P.C., Ahmed Hamdy Emara, P.T., Atlas PT, P.C., Mohamed Awad Awad, P.T., JEVA Physical Therapy P.C., Go Flex Rehab Physical Therapy, P.C., Lyn Jonson Ballener, P.T., Hands of Hope P.T., P.C., Motaz Mahmoud Ebeido, P.T., Pyramid Care PT, P.C., Mohamed Hablas, P.T., Better Hands Physical Therapy P.C., and Kristine May Bitanga Parcon, P.T.)**

(a)   AWARD Allstate's actual and consequential damages to be established at trial;

(b)   AWARD Allstate treble damages pursuant to 18 U.S.C. § 1964, interests, costs and

attorneys' fees;

(c)   GRANT injunctive relief enjoining the Defendants from engaging in the wrongful conduct

alleged in the Complaint; and

(d)   GRANT all other relief this Court deems just.

### COUNT XIV
### VIOLATION 18 U.S.C. § 1962(d)
### MT PHYSICAL THERAPY P.C. ENTERPRISE
**(Against Madonna Parungo Tandingan, P.T., Vladimir Geykhman, Alexander Gulkarov, Artur Sattarov, Jasur Rahmatov, Comfort Physical Therapy PLLC, Melissa C. Cadet, P.T., Wellness Physical Therapy Rehabilitation PLLC, Milena Rezende, P.T. a/k/a Milena Reyes, Raine M. Pesidas Physical Therapy P.C., Rainegale Marie Mendiola Pesidas, P.T., JA Physical Therapy P.C., Joseph Edwin Villacorte Abrenica, P.T., MMA Physical Therapy, P.C., Mazen Mohamed Ahmed Ali Abdel Magid, P.T., July PT, P.C., Mahmoud Elsayed Elsanaa, P.T., MC Physical Therapy, P.C., Michelle Nesas Cuadra, P.T., Life Care Physical Therapy, P.C., Ahmed Hamdy Emara, P.T., Atlas PT, P.C., Mohamed Awad Awad, P.T., JEVA Physical Therapy P.C., Go Flex Rehab Physical Therapy, P.C., Lyn**

**Jonson Ballener, P.T., Hands of Hope P.T., P.C., Motaz Mahmoud Ebeido, P.T., Pyramid Care PT, P.C., Mohamed Hablas, P.T., Better Hands Physical Therapy P.C., and Kristine May Bitanga Parcon, P.T.)**

(a) AWARD Allstate's actual and consequential damages to be established at trial;

(b) AWARD Allstate treble damages, interests, costs and reasonable attorneys' fees;

(c) GRANT injunctive relief enjoining the Defendants from engaging in the wrongful conduct alleged in the Complaint; and

(d) GRANT all other relief this Court deems just.

## COUNT XV
### VIOLATIONS OF 18 U.S.C. § 1962(c)
### LIFE CARE PHYSICAL THERAPY P.C. ENTERPRISE
**(Against Ahmed Hamdy Emara, P.T., Vladimir Geykhman, Artur Sattarov, Jasur Rahmatov, Finesse Care Physical Therapy P.C., Raine M. Pesidas Physical Therapy P.C., Rainegale Marie Mendiola Pesidas, P.T., Wellness Physical Therapy Rehabilitation PLLC, Milena Rezende, P.T. a/k/a Milena Reyes, JA Physical Therapy P.C., Joseph Edwin Villacorte Abrenica, P.T., MT Physical Therapy P.C., Madonna Parungo Tandingan, P.T., MC Physical Therapy, P.C., and Michelle Nesas Cuadra, P.T.)**

(a) AWARD Allstate's actual and consequential damages to be established at trial;

(b) AWARD Allstate treble damages pursuant to 18 U.S.C. § 1964, interests, costs and attorneys' fees;

(c) GRANT injunctive relief enjoining the Defendants from engaging in the wrongful conduct alleged in the Complaint; and

(d) GRANT all other relief this Court deems just.

## COUNT XVI
### VIOLATION 18 U.S.C. § 1962(d)
### LIFE CARE PHYSICAL THERAPY P.C. ENTERPRISE
**(Against Ahmed Hamdy Emara, P.T., Vladimir Geykhman, Artur Sattarov, Jasur Rahmatov, Finesse Care Physical Therapy P.C., Raine M. Pesidas Physical Therapy P.C., Rainegale Marie Mendiola Pesidas, P.T., Wellness Physical Therapy Rehabilitation PLLC, Milena Rezende, P.T. a/k/a Milena Reyes, JA Physical Therapy P.C., Joseph Edwin Villacorte Abrenica, P.T., MT Physical Therapy P.C., Madonna Parungo Tandingan, P.T., MC Physical Therapy, P.C., and Michelle Nesas Cuadra, P.T.)**

(a)      AWARD Allstate's actual and consequential damages to be established at trial;

(b)      AWARD Allstate treble damages, interests, costs and reasonable attorneys' fees;

(c)      GRANT injunctive relief enjoining the Defendants from engaging in the wrongful conduct alleged in the Complaint; and

(d)      GRANT all other relief this Court deems just.

## COUNT XVII
### VIOLATIONS OF 18 U.S.C. § 1962(c)
### JA PHYSICAL THERAPY P.C. ENTERPRISE

**(Against Joseph Edwin Villacorte Abrenica, P.T., Vladimir Geykhman, Alexander Gulkarov, Artur Sattarov, Jasur Rahmatov, JEVA Physical Therapy P.C., Wellness Physical Therapy Rehabilitation PLLC, Milena Rezende, P.T. a/k/a Milena Reyes, Comfort Physical Therapy, PLLC, Melissa C. Cadet, P.T., MT Physical Therapy P.C., Madonna Parungo Tandingan, P.T., Raine M. Pesidas Physical Therapy, P.C., Rainegale Marie Mendiola Pesidas, P.T., Life Care Physical Therapy P.C., Ahmed Hamdy Emara, P.T., MC Physical Therapy P.C., Michelle Nesas Cuadra, P.T., Better Hands Physical Therapy P.C., Kristine May Bitanga Parcon, P.T., Go Flex Rehab Physical Therapy, P.C., Lyn Jonson Ballener, P.T., Axis PT, P.C., Mohamed Awad Awad, P.T., Hands of Hope P.T., P.C., and Motaz Mahmoud Ebeido, P.T.)**

(a)      AWARD Allstate's actual and consequential damages to be established at trial;

(b)      AWARD Allstate treble damages pursuant to 18 U.S.C. § 1964, interests, costs and attorneys' fees;

(c)      GRANT injunctive relief enjoining the Defendants from engaging in the wrongful conduct alleged in the Complaint; and

(d)      GRANT all other relief this Court deems just.

## COUNT XVIII
### VIOLATION 18 U.S.C. § 1962(d)
### JA PHYSICAL THERAPY P.C. ENTERPRISE

**(Against Joseph Edwin Villacorte Abrenica, P.T., Vladimir Geykhman, Alexander Gulkarov, Artur Sattarov, Jasur Rahmatov, JEVA Physical Therapy P.C., Wellness Physical Therapy Rehabilitation PLLC, Milena Rezende, P.T. a/k/a Milena Reyes, Comfort Physical Therapy, PLLC, Melissa C. Cadet, P.T., MT Physical Therapy P.C., Madonna Parungo Tandingan, P.T., Raine M. Pesidas Physical Therapy, P.C., Rainegale Marie Mendiola Pesidas, P.T., Life Care Physical Therapy P.C., Ahmed Hamdy Emara, P.T., MC**

**Physical Therapy P.C., Michelle Nesas Cuadra, P.T., Better Hands Physical Therapy P.C., Kristine May Bitanga Parcon, P.T., Go Flex Rehab Physical Therapy, P.C., Lyn Jonson Ballener, P.T., Axis PT, P.C., Mohamed Awad Awad, P.T., Hands of Hope P.T., P.C., and Motaz Mahmoud Ebeido, P.T.)**

(a)     AWARD Allstate's actual and consequential damages to be established at trial;

(b)     AWARD Allstate treble damages, interests, costs and reasonable attorneys' fees;

(c)     GRANT injunctive relief enjoining the Defendants from engaging in the wrongful conduct alleged in the Complaint; and

(d)     GRANT all other relief this Court deems just.

## COUNT XIX
### VIOLATIONS OF 18 U.S.C. § 1962(c)
### RAINE M. PESIDAS PHYSICAL THERAPY P.C. ENTERPRISE
**(Against Rainegale Marie Mendiola Pesidas, P.T., Vladimir Geykhman, Alexander Gulkarov, Artur Sattarov, Jasur Rahmatov, Life Care Physical Therapy P.C., Ahmed Hamdy Emara, P.T., Comfort Physical Therapy, PLLC, Melissa C. Cadet, P.T., MT Physical Therapy P.C., Madonna Parungo Tandingan, P.T., Wellness Physical Therapy Rehabilitation PLLC, Milena Rezende, P.T. a/k/a Milena Reyes. JA Physical Therapy P.C., Mohamed Awad Awad, P.T., MC Physical Therapy P.C., Michelle Nesas Cuadra, P.T., Better Hands Physical Therapy P.C., Kristine May Bitanga Parcon, P.T., Go Flex Rehab Physical Therapy, P.C., Lyn Jonson Ballener, P.T., JEVA Physical Therapy P.C., Joseph Edwin Villacorte Abrenica, P.T., Finesse Care Physical Therapy P.C., Ahmed Hamdy Emara, P.T., July PT, P.C., Mahmoud Elsayed Elsanaa, P.T., Hands of Hope P.T., P.C., Motaz Mahmoud Ebeido, P.T., MMA Physical Therapy P.C., Mazen Mohamed Ahmed Ali Abdel Magid, P.T., Pyramid Care PT, P.C., Mohamed Hablas, P.T., MC Physical Therapy, P.C., and Michelle Nesas Cuadra, P.T.)**

(a)     AWARD Allstate's actual and consequential damages to be established at trial;

(b)     AWARD Allstate treble damages pursuant to 18 U.S.C. § 1964, interests, costs and attorneys' fees;

(c)     GRANT injunctive relief enjoining the Defendants from engaging in the wrongful conduct alleged in the Complaint; and

(d)     GRANT all other relief this Court deems just.

## COUNT XX
### VIOLATION 18 U.S.C. § 1962(d)
### RAINE M. PESIDAS PHYSICAL THERAPY P.C. ENTERPRISE
**(Against Rainegale Marie Mendiola Pesidas, P.T., Vladimir Geykhman, Alexander Gulkarov, Artur Sattarov, Jasur Rahmatov, Life Care Physical Therapy P.C., Ahmed Hamdy Emara, P.T., Comfort Physical Therapy, PLLC, Melissa C. Cadet, P.T., MT Physical Therapy P.C., Madonna Parungo Tandingan, P.T., Wellness Physical Therapy Rehabilitation PLLC, Milena Rezende, P.T. a/k/a Milena Reyes. JA Physical Therapy P.C., Mohamed Awad Awad, P.T., MC Physical Therapy P.C., Michelle Nesas Cuadra, P.T., Better Hands Physical Therapy P.C., Kristine May Bitanga Parcon, P.T., Go Flex Rehab Physical Therapy, P.C., Lyn Jonson Ballener, P.T., JEVA Physical Therapy P.C., Joseph Edwin Villacorte Abrenica, P.T., Finesse Care Physical Therapy P.C., Ahmed Hamdy Emara, P.T., July PT, P.C., Mahmoud Elsayed Elsanaa, P.T., Hands of Hope P.T., P.C., Motaz Mahmoud Ebeido, P.T., MMA Physical Therapy P.C., Mazen Mohamed Ahmed Ali Abdel Magid, P.T., Pyramid Care PT, P.C., Mohamed Hablas, P.T., MC Physical Therapy, P.C., and Michelle Nesas Cuadra, P.T.)**

(a)    AWARD Allstate's actual and consequential damages to be established at trial;

(b)    AWARD Allstate treble damages, interests, costs and reasonable attorneys' fees;

(c)    GRANT injunctive relief enjoining the Defendants from engaging in the wrongful conduct alleged in the Complaint; and

(d)    GRANT all other relief this Court deems just.

## COUNT XXI
### VIOLATIONS OF 18 U.S.C. § 1962(c)
### WELLNESS PHYSICAL THERAPY REHABILITATION P.C. ENTERPRISE
**(Against Milena Rezende, P.T. a/k/a Milena Reyes, Vladimir Geykhman, Alexander Gulkarov, Artur Sattarov, Jasur Rahmatov, JA Physical Therapy P.C., Joseph Edwin Villacorte Abrenica, P.T., Comfort Physical Therapy, PLLC, Melissa C. Cadet, P.T., MT Physical Therapy P.C., Madonna Parungo Tandingan, P.T., Raine M. Pesidas Physical Therapy, P.C., Rainegale Marie Mendiola Pesidas, P.T., Life Care Physical Therapy, P.C., Ahmed Hamdy Emara, P.T., Atlas PT, P.C., Mohamed Awad Awad, P.T., July PT, P.C., Mahmoud Elsayed Elsanaa, P.T., Hands of Hope P.T., P.C., Motaz Mahmoud Ebeido, P.T., MMA Physical Therapy P.C., Mazen Mohamed Ahmed Ali Abdel Magid, P.T., MC Physical Therapy P.C., Michelle Nesas Cuadra, P.T., Go Flex Rehab Physical Therapy P.C., Lyn Jonson Ballener, P.T., JEVA Physical Therapy P.C., Pyramid Care PT, P.C., Mohamed Hablas, P.T., Better Hands Physical Therapy P.C., and Kristine May Bitanga Parcon, P.T.)**

(a)    AWARD Allstate's actual and consequential damages to be established at trial;

331

(b)  AWARD Allstate treble damages pursuant to 18 U.S.C. § 1964, interests, costs and attorneys' fees;

(c)  GRANT injunctive relief enjoining the Defendants from engaging in the wrongful conduct alleged in the Complaint; and

(d)  GRANT all other relief this Court deems just.

## COUNT XXII
### VIOLATION 18 U.S.C. § 1962(d)
### WELLNESS PHYSICAL THERAPY REHABILITATION P.C. ENTERPRISE
**(Against Milena Rezende, P.T. a/k/a Milena Reyes, Vladimir Geykhman, Alexander Gulkarov, Artur Sattarov, Jasur Rahmatov, JA Physical Therapy P.C., Joseph Edwin Villacorte Abrenica, P.T., Comfort Physical Therapy, PLLC, Melissa C. Cadet, P.T., MT Physical Therapy P.C., Madonna Parungo Tandingan, P.T., Raine M. Pesidas Physical Therapy, P.C., Rainegale Marie Mendiola Pesidas, P.T., Life Care Physical Therapy, P.C., Ahmed Hamdy Emara, P.T., Atlas PT, P.C., Mohamed Awad Awad, P.T., July PT, P.C., Mahmoud Elsayed Elsanaa, P.T., Hands of Hope P.T., P.C., Motaz Mahmoud Ebeido, P.T., MMA Physical Therapy P.C., Mazen Mohamed Ahmed Ali Abdel Magid, P.T., MC Physical Therapy P.C., Michelle Nesas Cuadra, P.T., Go Flex Rehab Physical Therapy P.C., Lyn Jonson Ballener, P.T., JEVA Physical Therapy P.C., Pyramid Care PT, P.C., Mohamed Hablas, P.T., Better Hands Physical Therapy P.C., and Kristine May Bitanga Parcon, P.T.)**

(a)  AWARD Allstate's actual and consequential damages to be established at trial;

(b)  AWARD Allstate treble damages, interests, costs and reasonable attorneys' fees;

(c)  GRANT injunctive relief enjoining the Defendants from engaging in the wrongful conduct alleged in the Complaint; and

(d)  GRANT all other relief this Court deems just.

## COUNT XXIII
### VIOLATIONS OF 18 U.S.C. § 1962(c)
### HAND BY HAND PT, P.C. ENTERPRISE
**(Against Mahmoud Elsayed Elsanaa, P.T., Vladimir Geykhman, Artur Sattarov, Jasur Rahmatov, and July PT, P.C.)**

(a)  AWARD Allstate's actual and consequential damages to be established at trial;

(b)     AWARD Allstate treble damages pursuant to 18 U.S.C. § 1964, interests, costs and attorneys' fees;

(c)     GRANT injunctive relief enjoining the Defendants from engaging in the wrongful conduct alleged in the Complaint; and

(d)     GRANT all other relief this Court deems just.

## COUNT XXIV
### VIOLATION 18 U.S.C. § 1962(d)
### HAND BY HAND PT, P.C. ENTERPRISE
**(Against Mahmoud Elsayed Elsanaa, P.T., Vladimir Geykhman, Artur Sattarov, Jasur Rahmatov, and July PT, P.C.)**

(a)     AWARD Allstate's actual and consequential damages to be established at trial;

(b)     AWARD Allstate treble damages, interests, costs and reasonable attorneys' fees;

(c)     GRANT injunctive relief enjoining the Defendants from engaging in the wrongful conduct alleged in the Complaint; and

(d)     GRANT all other relief this Court deems just.

## COUNT XXV
### VIOLATIONS OF 18 U.S.C. § 1962(c)
### MC PHYSICAL THERAPY P.C. ENTERPRISE
**(Against Michelle Nesas Cuadra, P.T., Vladimir Geykhman, Alexander Gulkarov, Artur Sattarov, Jasur Rahmatov, Raine M. Pesidas Physical Therapy P.C., Rainegale Marie Mendiola Pesidas, P.T., JA Physical Therapy P.C., JEVA Physical Therapy P.C., Joseph Edwin Villacorte Abrenica, P.T., Wellness Physical Therapy Rehabilitation PLLC, Milena Rezende, P.T. a/k/a Milena Reyes, Axis PT, P.C., Mohamed Awad Awad, P.T., Better Hands Physical Therapy, P.C., Kristine May Bitanga Parcon, P.T., Go Flex Rehab Physical Therapy, P.C., Lyn Jonson Ballener, P.T., MT Physical Therapy P.C., Madonna Parungo Tandingan, P.T., Comfort Physical Therapy, PLLC, Melissa C. Cadet, P.T., Finesse Care Physical Therapy, P.C., Ahmed Hamdy Emara, P.T., Life Care Physical Therapy P.C., Ahmed Hamdy Emara, P.T., Atlas PT, P.C., July PT, P.C., Mahmoud Elsayed Elsanaa, P.T., Hands of Hope PT, P.C., Motaz Mahmoud Ebeido, P.T., MMA Physical Therapy P.C., Mazen Mohamed Ahmed Ali Abdel Magid, P.T., Pyramid Care PT, P.C., and Mohamed Hablas, P.T.)**

(a)     AWARD Allstate's actual and consequential damages to be established at trial;

(b)     AWARD Allstate treble damages pursuant to 18 U.S.C. § 1964, interests, costs and attorneys' fees;

(c)     GRANT injunctive relief enjoining the Defendants from engaging in the wrongful conduct alleged in the Complaint; and

(d)     GRANT all other relief this Court deems just.

## COUNT XXVI
### VIOLATION 18 U.S.C. § 1962(d)
### MC PHYSICAL THERAPY P.C. ENTERPRISE
**(Against Michelle Nesas Cuadra, P.T., Vladimir Geykhman, Alexander Gulkarov, Artur Sattarov, Jasur Rahmatov, Raine M. Pesidas Physical Therapy P.C., Rainegale Marie Mendiola Pesidas, P.T., JA Physical Therapy P.C., JEVA Physical Therapy P.C., Joseph Edwin Villacorte Abrenica, P.T., Wellness Physical Therapy Rehabilitation PLLC, Milena Rezende, P.T. a/k/a Milena Reyes, Axis PT, P.C., Mohamed Awad Awad, P.T., Better Hands Physical Therapy, P.C., Kristine May Bitanga Parcon, P.T., Go Flex Rehab Physical Therapy, P.C., Lyn Jonson Ballener, P.T., MT Physical Therapy P.C., Madonna Parungo Tandingan, P.T., Comfort Physical Therapy, PLLC, Melissa C. Cadet, P.T., Finesse Care Physical Therapy, P.C., Ahmed Hamdy Emara, P.T., Life Care Physical Therapy P.C., Ahmed Hamdy Emara, P.T., Atlas PT, P.C., July PT, P.C., Mahmoud Elsayed Elsanaa, P.T., Hands of Hope PT, P.C., Motaz Mahmoud Ebeido, P.T., MMA Physical Therapy P.C., Mazen Mohamed Ahmed Ali Abdel Magid, P.T., Pyramid Care PT, P.C., and Mohamed Hablas, P.T.)**

(a)     AWARD Allstate's actual and consequential damages to be established at trial;

(b)     AWARD Allstate treble damages, interests, costs and reasonable attorneys' fees;

(c)     GRANT injunctive relief enjoining the Defendants from engaging in the wrongful conduct alleged in the Complaint; and

(d)     GRANT all other relief this Court deems just.

## COUNT XXVII
### VIOLATIONS OF 18 U.S.C. § 1962(c)
### GO FLEX PHYSICAL THERAPY P.C. ENTERPRISE
**(Against Lyn Jonson Ballener, P.T., Vladimir Geykhman, Alexander Gulkarov, Artur Sattarov, Jasur Rahmatov, Better Hands Physical Therapy P.C., Kristine May Bitanga Parcon, P.T., JEVA Physical Therapy P.C., JA Physical Therapy P.C., Joseph Edwin Villacorte Abrenica, P.T., Raine M. Pesidas Physical Therapy P.C., Rainegale Marie**

**Mendiola Pesidas, P.T., Axis PT, P.C., Atlas PT, P.C., Mohamed Awad Awad, P.T., MC Physical Therapy P.C., Michelle Nesas Cuadra, P.T., Wellness Physical Therapy Rehabilitation PLLC, Milena Rezende, P.T. a/k/a Milena Reyes, MT Physical Therapy P.C., Madonna Parungo Tandingan, P.T., July PT, P.C., Mahmoud Elsayed Elsanaa, P.T., Hands of Hope P.T., P.C., Motaz Mahmoud Ebeido, P.T., MMA Physical Therapy P.C., Mazen Mohamed Ahmed Ali Abdel Magid, P.T., Comfort Physical Therapy, PLLC, Melissa C. Cadet, P.T., Pyramid Care PT, P.C., and Mohamed Hablas, P.T.)**

(a)     AWARD Allstate's actual and consequential damages to be established at trial;

(b)     AWARD Allstate treble damages pursuant to 18 U.S.C. § 1964, interests, costs and attorneys' fees;

(c)     GRANT injunctive relief enjoining the Defendants from engaging in the wrongful conduct alleged in the Complaint; and

(d)     GRANT all other relief this Court deems just.

## COUNT XXVIII
### VIOLATION 18 U.S.C. § 1962(d)
### GO FLEX PHYSICAL THERAPY P.C. ENTERPRISE
**(Against Lyn Jonson Ballener, P.T., Vladimir Geykhman, Alexander Gulkarov, Artur Sattarov, Jasur Rahmatov, Better Hands Physical Therapy P.C., Kristine May Bitanga Parcon, P.T., JEVA Physical Therapy P.C., JA Physical Therapy P.C., Joseph Edwin Villacorte Abrenica, P.T., Raine M. Pesidas Physical Therapy P.C., Rainegale Marie Mendiola Pesidas, P.T. Axis PT, P.C., Atlas PT, P.C., Mohamed Awad Awad, P.T., MC Physical Therapy P.C., Michelle Nesas Cuadra, P.T., Wellness Physical Therapy Rehabilitation PLLC, Milena Rezende, P.T. a/k/a Milena Reyes, MT Physical Therapy P.C., Madonna Parungo Tandingan, P.T., July PT, P.C., Mahmoud Elsayed Elsanaa, P.T., Hands of Hope P.T., P.C., Motaz Mahmoud Ebeido, P.T., MMA Physical Therapy P.C., Mazen Mohamed Ahmed Ali Abdel Magid, P.T., Comfort Physical Therapy, PLLC, Melissa C. Cadet, P.T., Pyramid Care PT, P.C., and Mohamed Hablas, P.T.)**

(a)     AWARD Allstate's actual and consequential damages to be established at trial;

(b)     AWARD Allstate treble damages, interests, costs and reasonable attorneys' fees;

(c)     GRANT injunctive relief enjoining the Defendants from engaging in the wrongful conduct alleged in the Complaint; and

(d)     GRANT all other relief this Court deems just.

## COUNT XXIX
### VIOLATIONS OF 18 U.S.C. § 1962(c)
### JEVA PHYSICAL THERAPY P.C. ENTERPRISE
**(Against Joseph Edwin Villacorte Abrenica, P.T., Vladimir Geykhman, Alexander Gulkarov, Artur Sattarov, Jasur Rahmatov, JA Physical Therapy P.C., Better Hands Physical Therapy P.C., Kristine May Bitanga Parcon, P.T., Go Flex Rehab Physical Therapy, P.C., Lyn Jonson Ballener, P.T., Raine M. Pesidas Physical Therapy P.C., Rainegale Marie Mendiola Pesidas, P.T., Axis PT, P.C., Atlas PT, P.C., Mohamed Awad Awad, P.T., MC Physical Therapy, P.C., Michelle Nesas Cuadra, P.T., MT Physical Therapy P.C., Madonna Parungo Tandingan, P.T., Wellness Physical Therapy Rehabilitation PLLC, Milena Rezende, P.T. a/k/a Milena Reyes, July PT, P.C., Mahmoud Elsayed Elsanaa, P.T., Hands of Hope P.T., P.C., Motaz Mahmoud Ebeido, P.T., MMA Physical Therapy P.C., Mazen Mohamed Ahmed Ali Abdel Magid, P.C., Comfort Physical Therapy PLLC, Melissa C. Cadet, P.T., Pyramid Care PT, P.C., and Mohamed Hablas, P.T.)**

(a)      AWARD Allstate's actual and consequential damages to be established at trial;

(b)      AWARD Allstate treble damages pursuant to 18 U.S.C. § 1964, interests, costs and attorneys' fees;

(c)      GRANT injunctive relief enjoining the Defendants from engaging in the wrongful conduct alleged in the Complaint; and

(d)      GRANT all other relief this Court deems just.

## COUNT XXX
### VIOLATION 18 U.S.C. § 1962(d)
### JEVA PHYSICAL THERAPY P.C. ENTERPRISE
**(Against Joseph Edwin Villacorte Abrenica, P.T., Vladimir Geykhman, Alexander Gulkarov, Artur Sattarov, Jasur Rahmatov, JA Physical Therapy P.C., Better Hands Physical Therapy P.C., Kristine May Bitanga Parcon, P.T., Go Flex Rehab Physical Therapy, P.C., Lyn Jonson Ballener, P.T., Raine M. Pesidas Physical Therapy P.C., Rainegale Marie Mendiola Pesidas, P.T., Axis PT, P.C., Atlas PT, P.C., Mohamed Awad Awad, P.T., MC Physical Therapy, P.C., Michelle Nesas Cuadra, P.T., MT Physical Therapy P.C., Madonna Parungo Tandingan, P.T., Wellness Physical Therapy Rehabilitation PLLC, Milena Rezende, P.T. a/k/a Milena Reyes, July PT, P.C., Mahmoud Elsayed Elsanaa, P.T., Hands of Hope P.T., P.C., Motaz Mahmoud Ebeido, P.T., MMA Physical Therapy P.C., Mazen Mohamed Ahmed Ali Abdel Magid, P.C., Comfort Physical Therapy PLLC, Melissa C. Cadet, P.T., Pyramid Care PT, P.C., and Mohamed Hablas, P.T.)**

(a)     AWARD Allstate's actual and consequential damages to be established at trial;

(b)     AWARD Allstate treble damages, interests, costs and reasonable attorneys' fees;

(c)     GRANT injunctive relief enjoining the Defendants from engaging in the wrongful conduct

alleged in the Complaint; and

(d)     GRANT all other relief this Court deems just.

## COUNT XXXI
## VIOLATIONS OF 18 U.S.C. § 1962(c)
## FINESSE CARE PHYSICAL THERAPY P.C. ENTERPRISE
**(Against Ahmed Hamdy Emara, P.T., Vladimir Geykhman, Artur Sattarov, Jasur Rahmatov, Life Care Physical Therapy P.C., MC Physical Therapy P.C., Michelle Nesas Cuadra, P.T., Raine M. Pesidas Physical Therapy P.C., Rainegale Marie Mendiola Pesidas, P.T., Better Hands Physical Therapy P.C., and Kristine May Bitanga Parcon, P.T.)**

(a)     AWARD Allstate's actual and consequential damages to be established at trial;

(b)     AWARD Allstate treble damages pursuant to 18 U.S.C. § 1964, interests, costs and

attorneys' fees;

(c)     GRANT injunctive relief enjoining the Defendants from engaging in the wrongful conduct

alleged in the Complaint; and

(d)     GRANT all other relief this Court deems just.

## COUNT XXXII
## VIOLATION 18 U.S.C. § 1962(d)
## FINESSE CARE PHYSICAL THERAPY P.C. ENTERPRISE
**(Against Ahmed Hamdy Emara, P.T., Vladimir Geykhman, Artur Sattarov, Jasur Rahmatov, Life Care Physical Therapy P.C., MC Physical Therapy P.C., Michelle Nesas Cuadra, P.T., Raine M. Pesidas Physical Therapy P.C., Rainegale Marie Mendiola Pesidas, P.T., Better Hands Physical Therapy P.C., and Kristine May Bitanga Parcon, P.T.)**

(a)     AWARD Allstate's actual and consequential damages to be established at trial;

(b)     AWARD Allstate treble damages, interests, costs and reasonable attorneys' fees;

(c)     GRANT injunctive relief enjoining the Defendants from engaging in the wrongful conduct

alleged in the Complaint; and

(d)     GRANT all other relief this Court deems just.

## COUNT XXXIII
### VIOLATIONS OF 18 U.S.C. § 1962(c)
### AXIS PT P.C. ENTERPRISE
**(Against Mohamed Awad Awad, P.T., Vladimir Geykhman, Artur Sattarov, Jasur Rahmatov, Atlas PT, P.C., Go Flex Rehab Physical Therapy, P.C., Lyn Jonson Ballener, P.T., JEVA Physical Therapy P.C., JA Physical Therapy P.C., Joseph Edwin Villacorte Abrenica, P.T., Better Hands Physical Therapy P.C., Kristine May Bitanga Parcon, P.C., Raine M. Pesidas Physical Therapy P.C., Rainegale Marie Mendiola Pesidas, P.T., MC Physical Therapy P.C., and Michelle Nesas Cuadra, P.T.)**

(a)     AWARD Allstate's actual and consequential damages to be established at trial;

(b)     AWARD Allstate treble damages pursuant to 18 U.S.C. § 1964, interests, costs and attorneys' fees;

(c)     GRANT injunctive relief enjoining the Defendants from engaging in the wrongful conduct alleged in the Complaint; and

(d)     GRANT all other relief this Court deems just.

## COUNT XXXIV
### VIOLATION 18 U.S.C. § 1962(d)
### AXIS PT, P.C. ENTERPRISE
**(Against Mohamed Awad Awad, P.T., Vladimir Geykhman, Artur Sattarov, Jasur Rahmatov, Atlas PT, P.C., Go Flex Rehab Physical Therapy, P.C., Lyn Jonson Ballener, P.T., JEVA Physical Therapy P.C., JA Physical Therapy P.C., Joseph Edwin Villacorte Abrenica, P.T., Better Hands Physical Therapy P.C., Kristine May Bitanga Parcon, P.C., Raine M. Pesidas Physical Therapy P.C., Rainegale Marie Mendiola Pesidas, P.T., MC Physical Therapy P.C., and Michelle Nesas Cuadra, P.T.)**

(a)     AWARD Allstate's actual and consequential damages to be established at trial;

(b)     AWARD Allstate treble damages, interests, costs and reasonable attorneys' fees;

(c)     GRANT injunctive relief enjoining the Defendants from engaging in the wrongful conduct alleged in the Complaint; and

(d)     GRANT all other relief this Court deems just.

## COUNT XXXV
### VIOLATIONS OF 18 U.S.C. § 1962(c)
### ATLAS PT P.C. ENTERPRISE
**(Against Mohamed Awad Awad, P.T., Vladimir Geykhman, Artur Sattarov, Jasur Rahmatov, Axis PT, P.C., Wellness Physical Therapy Rehabilitation PLLC, Milena Rezende, P.T. a/k/a Milena Reyes, Comfort Physical Therapy, PLLC, Melissa C. Cadet, P.T., MMA Physical Therapy P.C., Mazen Mohamed Ahmed Ali Abdel, P.T., Go Flex Rehab Physical Therapy, PLLC, Lyn Jonson Ballener, P.T., JEVA Physical Therapy P.C., Joseph Edwin Villacorte Abrenica, P.T., MT Physical Therapy P.C., Madonna Parungo Tandingan, P.T., MC Physical Therapy P.C., and Michelle Nesas Cuadra, P.T.)**

(a)  AWARD Allstate's actual and consequential damages to be established at trial;

(b)  AWARD Allstate treble damages pursuant to 18 U.S.C. § 1964, interests, costs and attorneys' fees;

(c)  GRANT injunctive relief enjoining the Defendants from engaging in the wrongful conduct alleged in the Complaint; and

(d)  GRANT all other relief this Court deems just.

## COUNT XXXVI
### VIOLATION 18 U.S.C. § 1962(d)
### ATLAS PT, P.C. ENTERPRISE
**(Against Mohamed Awad Awad, P.T., Vladimir Geykhman, Artur Sattarov, Jasur Rahmatov, Axis PT, P.C., Wellness Physical Therapy Rehabilitation PLLC, Milena Rezende, P.T. a/k/a Milena Reyes, Comfort Physical Therapy, PLLC, Melissa C. Cadet, P.T., MMA Physical Therapy P.C., Mazen Mohamed Ahmed Ali Abdel, P.T., Go Flex Rehab Physical Therapy, PLLC, Lyn Jonson Ballener, P.T., JEVA Physical Therapy P.C., Joseph Edwin Villacorte Abrenica, P.T., MT Physical Therapy P.C., Madonna Parungo Tandignan, P.T., MC Physical Therapy P.C., and Michelle Nesas Cuadra, P.T.)**

(a)  AWARD Allstate's actual and consequential damages to be established at trial;

(b)  AWARD Allstate treble damages, interests, costs and reasonable attorneys' fees;

(c)  GRANT injunctive relief enjoining the Defendants from engaging in the wrongful conduct alleged in the Complaint; and

(d)  GRANT all other relief this Court deems just.

**COUNT XXXVII**
**COMMON-LAW FRAUD**
**(Against All Defendants)**

(a)     AWARD Allstate its actual damages in an amount to be determined at trial;

(b)     AWARD Allstate its costs, including, but not limited to, investigative costs incurred in the detection of Defendants' illegal conduct;

(c)     AWARD Allstate its costs in defending No-Fault suits filed by Defendants seeking payment of false and fraudulent invoices; and

(d)     GRANT any other relief this Court deems just.

**COUNT XXXVIII**
**UNJUST ENRICHMENT**
**(Against All Defendants)**

(a)     AWARD Allstate's actual and consequential damages to be determined at trial;

(b)     GRANT any other relief this Court deems just.

**COUNT XXXIX**
**DECLARATORY RELIEF UNDER 28 U.S.C. § 2201**
**(Against Better Hands Physical Therapy P.C.)**

(a)     DECLARE that Better Hands Physical Therapy P.C., at all relevant times, has been operated in violation of at least one New York state and/or local licensing requirement necessary to provide and bill for professional physical therapy services in New York;

(b)     DECLARE that Better Hands Physical Therapy P.C.'s activities are unlawful;

(c)     DECLARE that Allstate has no obligation to pay pending, previously-denied and/or future No-Fault insurance claims submitted by Better Hands Physical Therapy P.C.; and

(d)     GRANT all other relief this Court deems just and appropriate.

340

## COUNT XL
### DECLARATORY RELIEF UNDER 28 U.S.C. § 2201
### (Against Hands of Hope P.T., P.C.)

(a)   DECLARE that Hands of Hope P.T., P.C., at all relevant times, has been operated in violation of at least one New York state and/or local licensing requirement necessary to provide and bill for professional physical therapy services in New York;

(b)   DECLARE that Hands of Hope P.T., P.C.'s activities are unlawful;

(c)   DECLARE that Allstate has no obligation to pay pending, previously-denied and/or future No-Fault insurance claims submitted by Hands of Hope P.T., P.C.; and

(d)   GRANT all other relief this Court deems just and appropriate.

## COUNT XLI
### DECLARATORY RELIEF UNDER 28 U.S.C. § 2201
### (Against July P.T., P.C.)

(a)   DECLARE that July P.T., P.C., at all relevant times, has been operated in violation of at least one New York state and/or local licensing requirement necessary to provide and bill for professional physical therapy services in New York;

(b)   DECLARE that July P.T., P.C.'s activities are unlawful;

(c)   DECLARE that Allstate has no obligation to pay pending, previously-denied and/or future No-Fault insurance claims submitted by July P.T., P.C.; and

(d)   GRANT all other relief this Court deems just and appropriate.

## COUNT XLII
### DECLARATORY RELIEF UNDER 28 U.S.C. § 2201
### (Against MMA Physical Therapy, P.C.)

341

(a)     DECLARE that MMA Physical Therapy, P.C., at all relevant times, has been operated in violation of at least one New York state and/or local licensing requirement necessary to provide and bill for professional physical therapy services in New York;

(b)     DECLARE that MMA Physical Therapy, P.C.'s activities are unlawful;

(c)     DECLARE that Allstate has no obligation to pay pending, previously-denied and/or future No-Fault insurance claims submitted by MMA Physical Therapy, P.C.; and

(d)     GRANT all other relief this Court deems just and appropriate.


**COUNT XLIII**
**DECLARATORY RELIEF UNDER 28 U.S.C. § 2201**
**(Against Pyramid Care PT, P.C.)**

(a)     DECLARE that Pyramid Care PT, P.C., at all relevant times, has been operated in violation of at least one New York state and/or local licensing requirement necessary to provide and bill for professional physical therapy services in New York;

(b)     DECLARE that Pyramid Care PT, P.C.'s activities are unlawful;

(c)     DECLARE that Allstate has no obligation to pay pending, previously-denied and/or future No-Fault insurance claims submitted by Pyramid Care PT, P.C.; and

(d)     GRANT all other relief this Court deems just and appropriate.

**COUNT XLIV**
**DECLARATORY RELIEF UNDER 28 U.S.C. § 2201**
**(Against Comfort Physical Therapy, PLLC)**

(a)     DECLARE that Comfort Physical Therapy, PLLC, at all relevant times, has been operated in violation of at least one New York state and/or local licensing requirement necessary to provide and bill for professional physical therapy services in New York;

(b)     DECLARE that Comfort Physical Therapy, PLLC's activities are unlawful;

342

(c)     DECLARE that Allstate has no obligation to pay pending, previously-denied and/or future No-Fault insurance claims submitted by Comfort Physical Therapy, PLLC; and

(d)     GRANT all other relief this Court deems just and appropriate.

## COUNT XLV
### DECLARATORY RELIEF UNDER 28 U.S.C. § 2201
**(Against Atlas PT, P.C.)**

(a)     DECLARE that Atlas PT, P.C., at all relevant times, has been operated in violation of at least one New York state and/or local licensing requirement necessary to provide and bill for professional physical therapy services in New York;

(b)     DECLARE that Atlas PT, P.C.'s activities are unlawful;

(c)     DECLARE that Allstate has no obligation to pay pending, previously-denied and/or future No-Fault insurance claims submitted by Atlas PT, P.C.; and

(d)     GRANT all other relief this Court deems just and appropriate.

## COUNT XLVI
### DECLARATORY RELIEF UNDER 28 U.S.C. § 2201
**(Against MT Physical Therapy P.C.)**

(a)     DECLARE that MT Physical Therapy P.C., at all relevant times, has been operated in violation of at least one New York state and/or local licensing requirement necessary to provide and bill for professional physical therapy services in New York;

(b)     DECLARE that MT Physical Therapy P.C.'s activities are unlawful;

(c)     DECLARE that Allstate has no obligation to pay pending, previously-denied and/or future No-Fault insurance claims submitted by MT Physical Therapy P.C.; and

(d)     GRANT all other relief this Court deems just and appropriate.

## COUNT XLVII
### DECLARATORY RELIEF UNDER 28 U.S.C. § 2201
**(Against Life Care Physical Therapy P.C.)**

(a)     DECLARE that Life Care Physical Therapy P.C., at all relevant times, has been operated in violation of at least one New York state and/or local licensing requirement necessary to provide and bill for professional physical therapy services in New York;

(b)     DECLARE that Life Care Physical Therapy P.C.'s activities are unlawful;

(c)     DECLARE that Allstate has no obligation to pay pending, previously-denied and/or future No-Fault insurance claims submitted by Life Care Physical Therapy P.C.; and

(d)     GRANT all other relief this Court deems just and appropriate.

## COUNT XLVIII
### DECLARATORY RELIEF UNDER 28 U.S.C. § 2201
**(Against JA Physical Therapy P.C.)**

(a)     DECLARE that JA Physical Therapy P.C., at all relevant times, has been operated in violation of at least one New York state and/or local licensing requirement necessary to provide and bill for professional physical therapy services in New York;

(b)     DECLARE that JA Physical Therapy P.C.'s activities are unlawful;

(c)     DECLARE that Allstate has no obligation to pay pending, previously-denied and/or future No-Fault insurance claims submitted by JA Physical Therapy P.C.; and

(d)     GRANT all other relief this Court deems just and appropriate.

## COUNT XLIX
### DECLARATORY RELIEF UNDER 28 U.S.C. § 2201
**(Against Raine M. Pesidas Physical Therapy P.C.)**

(a)     DECLARE that Raine M. Pesidas Physical Therapy P.C., at all relevant times, has been operated in violation of at least one New York state and/or local licensing requirement necessary to provide and bill for professional physical therapy services in New York;

(b)     DECLARE that Raine M. Pesidas Physical Therapy P.C.'s activities are unlawful;

344

(c)    DECLARE that Allstate has no obligation to pay pending, previously-denied and/or future No-Fault insurance claims submitted by Raine M. Pesidas Physical Therapy P.C.; and

(d)    GRANT all other relief this Court deems just and appropriate.

## COUNT L
### DECLARATORY RELIEF UNDER 28 U.S.C. § 2201
### (Against Wellness Physical Therapy Rehabilitation P.C.)

(a)    DECLARE that Wellness Physical Therapy Rehabilitation P.C., at all relevant times, has been operated in violation of at least one New York state and/or local licensing requirement necessary to provide and bill for professional physical therapy services in New York;

(b)    DECLARE that Wellness Physical Therapy Rehabilitation P.C.'s activities are unlawful;

(c)    DECLARE that Allstate has no obligation to pay pending, previously-denied and/or future No-Fault insurance claims submitted by Wellness Physical Therapy Rehabilitation P.C.; and

(d)    GRANT all other relief this Court deems just and appropriate.

## COUNT LI
### DECLARATORY RELIEF UNDER 28 U.S.C. § 2201
### (Against Hand by Hand PT, P.C.)

(a)    DECLARE that Hand by Hand PT, P.C., at all relevant times, has been operated in violation of at least one New York state and/or local licensing requirement necessary to provide and bill for professional physical therapy services in New York;

(b)    DECLARE that Hand by Hand PT, P.C.'s activities are unlawful;

(c)    DECLARE that Allstate has no obligation to pay pending, previously-denied and/or future No-Fault insurance claims submitted by Hand by Hand PT, P.C.; and

(d)    GRANT all other relief this Court deems just and appropriate.

**COUNT LII**
**DECLARATORY RELIEF UNDER 28 U.S.C. § 2201**
**(Against MC Physical Therapy, P.C.)**

(a) DECLARE that MC Physical Therapy, P.C., at all relevant times, has been operated in violation of at least one New York state and/or local licensing requirement necessary to provide and bill for professional physical therapy services in New York;

(b) DECLARE that MC Physical Therapy, P.C.'s activities are unlawful;

(c) DECLARE that Allstate has no obligation to pay pending, previously-denied and/or future No-Fault insurance claims submitted by MC Physical Therapy, P.C.; and

(d) GRANT all other relief this Court deems just and appropriate.

**COUNT LIII**
**DECLARATORY RELIEF UNDER 28 U.S.C. § 2201**
**(Against Go Flex Rehab Physical Therapy, P.C.)**

(a) DECLARE that Go Flex Rehab Physical Therapy, P.C., at all relevant times, has been operated in violation of at least one New York state and/or local licensing requirement necessary to provide and bill for professional physical therapy services in New York;

(b) DECLARE that Go Flex Rehab Physical Therapy, P.C.'s activities are unlawful;

(c) DECLARE that Allstate has no obligation to pay pending, previously-denied and/or future No-Fault insurance claims submitted by Go Flex Rehab Physical Therapy, P.C.; and

(d) GRANT all other relief this Court deems just and appropriate.

**COUNT LIV**
**DECLARATORY RELIEF UNDER 28 U.S.C. § 2201**
**(Against JEVA Physical Therapy, P.C.)**

(a) DECLARE that JEVA Physical Therapy, P.C., at all relevant times, has been operated in violation of at least one New York state and/or local licensing requirement necessary to provide and bill for professional physical therapy services in New York;

346

(b)     DECLARE that JEVA Physical Therapy, P.C.'s activities are unlawful;

(c)     DECLARE that Allstate has no obligation to pay pending, previously-denied and/or future No-Fault insurance claims submitted by JEVA Physical Therapy, P.C.; and

(d)     GRANT all other relief this Court deems just and appropriate.

## COUNT LV
## DECLARATORY RELIEF UNDER 28 U.S.C. § 2201
### (Against Finesse Care Physical Therapy, P.C.)

(a)     DECLARE that Finesse Care Physical Therapy, P.C., at all relevant times, has been operated in violation of at least one New York state and/or local licensing requirement necessary to provide and bill for professional physical therapy services in New York;

(b)     DECLARE that Finesse Care Physical Therapy, P.C.'s activities are unlawful;

(c)     DECLARE that Allstate has no obligation to pay pending, previously-denied and/or future No-Fault insurance claims submitted by Finesse Care Physical Therapy, P.C.; and

(d)     GRANT all other relief this Court deems just and appropriate.

## COUNT LVI
## DECLARATORY RELIEF UNDER 28 U.S.C. § 2201
### (Against Axis PT, P.C.)

(a)     DECLARE that Axis PT, P.C., at all relevant times, has been operated in violation of at least one New York state and/or local licensing requirement necessary to provide and bill for professional physical therapy services in New York;

(b)     DECLARE that Axis PT, P.C.'s activities are unlawful;

(c)     DECLARE that Allstate has no obligation to pay pending, previously-denied and/or future No-Fault insurance claims submitted by Axis PT, P.C.; and

(d)     GRANT all other relief this Court deems just and appropriate.

## <u>JURY TRIAL DEMAND</u>

The plaintiffs demand a trial by jury on all claims.

KING, TILDEN, MCETTRICK & BRINK, P.C.

*/s/ Michael W. Whitcher*
_____
Nathan A. Tilden (NT0571)
ntilden@ktmpc.com
Michael W. Whitcher (MW7455)
mwhitcher@ktmpc.com
Caitlin F. Keresey
ckeresey@ktmpc.com
100 Ring Road West, Suite 211
Garden City, NY 11530
(347) 710-0050

Attorneys for the Plaintiffs,
*Allstate Insurance Company,*
*Allstate Indemnity Company,*
*Allstate Property & Casualty Insurance Company,*
*and Allstate Fire and Casualty Insurance Company*

Dated: June 28, 2024