UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
ALLSTATE INSURANCE COMPANY,
ALLSTATE INDEMNITY COMPANY,
ALLSTATE PROPERTY AND CASUALTY
INSURANCE COMPANY, AND
ALLSTATE FIRE AND CASUALTY
INSURANCE COMPANY,

                    Plaintiffs,

           -against-

VLADIMIR GEYKHMAN, ET AL.,

                    Defendants.
----------------------------------------------------------X

**REPORT AND
RECOMMENDATION**
24 CV 4580 (PKC) (CLP)

**POLLAK**, United States Magistrate Judge:

       Plaintiffs Allstate Insurance Company, Allstate Indemnity Company, Allstate Property and Casualty Insurance Company, and Allstate Fire and Casualty Insurance Company) (together "plaintiffs" or "Allstate"), commenced this action on June 28, 2024.  They seek damages that they allegedly suffered from an insurance fraud scheme where defendants billed Allstate for medically unnecessary physical therapy services and collected insurance payments on fraudulent No-Fault claims.  (See Compl.[1]).

       Currently pending before the Court is Allstate's motion for default judgment and entry of final judgment as to a subset of defendants in this action:  Alexander Gulkarov ("Gulkarov"), Artur Sattarov ("Sattarov"), Jasur Rahmatov ("Rahmatov"), Atlas PT, P.C. ("Atlas"), Axis PT, P.C. ("Axis"), Comfort Physical Therapy, PLLC ("Comfort"), Hand by Hand PT, P.C. ("Hand by Hand"), JA Physical Therapy P.C. ("JA"), JEVA Physical Therapy, P.C. ("JEVA"), MMA Physical Therapy, P.C. ("MMA"), Wellness Physical Therapy Rehabilitation PLLC ("Wellness

---

[1] Citations to "Compl." refer to Plaintiff's Complaint and Demand for Jury Trial, filed June 28, 2024. (ECF No. 1).

PT"), July PT, P.C. ("July PT"), Joseph Edwin Villacorte Abrenica, P.T. ("Abrenica"),

Mahmoud Elsayed Elsanaa, P.T. ("Elsanaa"), Mazen Mohamed Ahmed Ali Abdel Magid, P.T.

("Magid"), Melissa C. Cadet, P.T. ("Cadet"), and Mohamed Awad Awad, P.T. ("Awad")

(collectively, "Defaulting Defendants") (ECF No. 97).[2]  Also pending before this Court is

Allstate's motion for default judgment and entry of final judgment against defendant Vladimir

Geykhman ("Geykhman") (ECF No. 112).[3]  For the reasons set forth below, the Court

respectfully recommends that Allstate's motions for default judgment be granted in part and

denied in part.

BACKGROUND[4]

Allstate alleges that Defaulting Defendants and Geykhman carried out a scheme to

exploit New York's No-Fault insurance laws, which provide for insurance coverage to claimants

involved in automobile accidents.  (Compl. ¶ 11).  As the victim of the scheme, Allstate alleges

that it was fraudulently billed for coverage for physical therapy services.  (Id. ¶ 20).  The scheme

was orchestrated by three categories of defendants.

First, the fraud scheme was carried out through a network of fraudulently incorporated

professional corporations, including July PT, P.C., MMA Physical Therapy, P.C., Comfort

Physical Therapy, PLLC, Atlas PT, P.C., Axis PT, P.C., JA Physical Therapy P.C., Hand by

---

[2] Citations to "Mot." refer to Memorandum in Support of Plaintiffs' Motion for Default Judgment and Entry of Final Judgment as to Defaulting Defendants (ECF No. 97-1).  The Court has considered the attached declarations, including the Declaration of Michael Bruno ("Bruno Decl." ECF Nos. 97-5, 97-6), in assessing damages.

[3] Citations to "Geykhman Mot." refer to Memorandum of Law in Support of Plaintiffs' Motion for Default Judgment (ECF No. 112-1).  The court has considered the attached declarations, including the Declaration of Michael Bruno ("Bruno Geykhman Decl." ECF No. 112-2), in assessing damages.

[4] The following facts are taken from the Complaint ("Comp." ECF No. 1), and are accepted as true for purposes of the instant motions.  See Finkel v. Romanowicz, 577 F.3d 79, 84 (2d Cir. 2009) (finding that, in light of a defendant's default, a court is required to accept all of plaintiff's factual allegations as true and draw all reasonable inferences in its favor).

Hand PT, P.C., and JEVA Physical Therapy P.C. (collectively, the "PC Defendants").[5]  (Id. ¶ 1).
These clinics operated in several locations in the New York area, and were implicated in one of
the largest no-fault insurance frauds in New York history.  (Id. ¶ 6); see also United States v.
Gulkarov, No. 1:22 CR 20 (S.D.N.Y.).  It is alleged that the PC Defendants collected payments
from Allstate for medically unnecessary claims for physical therapy services.  (Id. ¶¶ 2, 5).
These claims were necessarily fraudulent because the clinics involved in the scheme were never
eligible to collect No-Fault payments as they were owned and controlled by non-licensed
individuals in violation of New York law.  (Id. ¶ 4).

The second category of defendants consists of licensed physical therapists that nominally
owned the PC Defendants: Mahmoud Elsayed Elsanaa, P.T., Joseph Edwin Villacorte Abrenica,
P.T., Mazen Mohamed Ahmed Ali Abdel Magid, P.T., Melissa C. Cadet, P.T., and Mohamed
Awad Awad, P.T. (collectively, "Nominal Owner Defendants").[6]  (Id. ¶ 3).  The Nominal Owner
Defendants allowed their physical therapist licenses to be used to create the false appearance that
the PC Defendants were owned and operated in compliance with applicable licensing
requirements.  (Id. ¶ 216).

The final category of defendants are non-licensed laypersons who were really in control
of these No-Fault clinics and the medical providers they staffed.  This category includes

---

[5] These are the remaining professional corporation defendants in this action.  Allstate entered into a
stipulation of dismissal with defendants Finesse Care Physical Therapy P.C. and Life Care Physical Therapy P.C.
(See ECF No. 107).  Allstate issued a notice of voluntary dismissal as to defendants Hands of Hope P.T., P.C.,
Pyramid Care PT, P.C., Better Hands Physical Therapy, P.C., Go Flex Physical Therapy, P.C., MC Physical
Therapy, P.C., Raine M. Pesidas Physical Therapy P.C., and MT Physical Therapy P.C.  (See ECF Nos. 88, 103,
110).  Plaintiffs provided the Court with a status report regarding the completion of settlement agreements as to all
non-defaulting defendants on February 3, 2025.  (See ECF No. 111).

[6] These are the remaining nominal owner defendants in this action.  Allstate entered into a stipulation of
dismissal with Ahmed Hamdy Emara P.T. and Milena Rezende, P.T. a/k/a Milena Reyes.  (See ECF Nos. 107, 109).
Allstate also issued a notice of voluntary dismissal as to Nominal Owner Defendants Motaz Mahmoud Ebeido, P.T.,
Mohamed Hablas P.T., Kristine May Bitanga Parcon, P.T., Lyn Jonson Ballener, P.T., Michelle Nesas Cuadra, P.T.,
Rainegal Marie Mendiola Pesidas, P.T., and Madonna Parungo Tandingan, P.T.  (See ECF Nos. 88, 103, 110).
Plaintiffs provided the Court with a status report regarding the completion of settlement agreements as to all non-
defaulting defendants on February 3, 2025.  (See ECF No. 111).

Alexander Gulkarov, Vladimir Geykhman, Artur Sattarov, and Jasur Rahmatov (collectively, the "Management Defendants").  (Id. ¶¶ 7-8.)  The Management Defendants controlled the operation of the PC Defendants and the professional fees they received.  (Id.)  The Management Defendants then conspired to launder the proceeds from the scheme by using numerous shell companies to disguise the unlawful transactions to look like legitimate payments.  (Id. ¶¶ 8-11.)  The shell companies were also used to facilitate an unlawful patient referral scheme that ordered and billed for medically unnecessary physical therapy services.  (Id. ¶ 10.)  Under the direction of Management Defendants, the PC Defendants allegedly subjected their patients to unnecessary and duplicative services, which they then billed to Allstate.  (Id. ¶ 277.)  Such services included testing unemployed or retired patients for workplace functioning metrics (id. ¶¶ 277-280), and conducting medically unnecessary range of motion and muscle testing.  (Id. ¶¶ 281-286.)

Based on the Complaint's allegations that the billed-for physical therapy services were not medically necessary, that the PC Defendants were operated and controlled by unlicensed laypersons, that the billed-for services were the result of unlawful referral and kickback arrangements with referring providers, that the billed-for services were not actually performed as represented, and that the billed-for services were provided by an independent contractor, Allstate brings fifty-six counts against the defendants in this action.  (See generally Compl.).

Counts 1 through Count 36 bring federal RICO claims alleging substantive violations, 18 U.S.C. § 1962(c), and conspiracy, 18 U.S.C. § 1962(d), based on the operation and management of enterprises through a pattern of mail fraud racketeering activity.  These claims are brought in eighteen groups against the enterprises that make up each allegedly fraudulently incorporated professional corporation:  Better Hands Physical Therapy, Hands of Hope P.T., July PT, MMA Physical Therapy, Pyramid Care PT, Comfort Physical Therapy, MT Physical Therapy, Life

4

Care Physical Therapy, JA Physical Therapy, Raine M. Pesidas Physical Therapy, Wellness Physical Therapy Rehabilitation, Hand by Hand PT, MC Physical Therapy, Go Flex Physical Therapy, Jeva Physical Therapy, Finesse Care Physical Therapy, Axis PT, and Atlas PT.  (Id. ¶¶ 1032-1516).  Of these eighteen alleged enterprises, the claims related to ten of them have been settled and dismissed from this action.  (See supra 2-4).  Eight remain at issue:  the Atlas Enterprise (Compl. ¶ 674), the Axis Enterprise (id. ¶ 667), the Hand by Hand Enterprise (id. ¶ 632), the Comfort Enterprise (id. ¶ 590), the JA Enterprise (id. ¶ 611), the JEVA Enterprise (id. ¶ 653), the July PT Enterprise (id. ¶ 569), and the MMA Enterprise.  (Id. ¶ 576).

A subset of defendants consisting of Management Defendants, Nominal Owner Defendants, and PC Defendants are named as individual defendants in each enterprise count. (Id.)  However, the individual PC Defendant is not named as a defendant in its corresponding RICO enterprise counts.  For example, RICO Counts 35 and 36, brought against the Atlas PT P.C. enterprise, do not name Atlas as a defendant.  However, Atlas is named as an individual defendant in the RICO counts brought against the MMA Physical Therapy, P.C. Enterprise (id. ¶¶ 1112, 1131), JEVA Physical Therapy P.C. Enterprise (id. ¶¶ 1410, 1429), and Axis PT P.C. Enterprise (id. ¶¶ 1464, 1483).  There is also significant overlap and repetition among the Management Defendants and Nominal Owner Defendants for the counts associated with each RICO enterprise grouping.  For example, Management Defendant Geykhman is named in the RICO counts against each enterprise still at issue in the instant default judgment motions.  (Id. ¶¶ 569, 576, 590, 611, 632, 653, 667, 674).

Against all defendants, Allstate brings Count 37 for common law fraud and Count 38 for unjust enrichment.  (Id. ¶¶ 1517-1527).  Finally, Counts 39 through 56 seek declaratory relief under 28 U.S.C. § 2201 against each of the PC Defendants in the form of a declaratory judgment

that Allstate has no obligation to pay any No-Fault insurance claims submitted by the PC Defendants, that the professional corporations were fraudulently incorporated, and that their activities are unlawful.  (Id. ¶¶ 1528-1707).

Defaulting Defendants and Geykhman have failed to appear or contest Allstate's allegations.  On August 28, 2024, Allstate requested certificates of default as to Atlas PT, P.C., (ECF No. 49), Axis PT, P.C. (ECF No. 50), JEVA Physical Therapy P.C. (ECF No. 51), Mahmoud Elsayed Elsanaa, P.T. (ECF No. 52),[7] July PT, P.C. (ECF No. 53), Pyramid Care PT P.C. (ECF No. 54), Mohamed Hablas, P.T. (ECF No. 55), Mohamed Awad Awad, P.T. (ECF No. 56), MMA Physical Therapy P.C. (ECF No. 57), Melissa C. Cadet, P.T. (ECF No. 58), Mazen Mohamed Ahmed Ali Abdel Magid, P.T. (ECF No. 59), Joseph Edwin Villacorte Abrenica, P.T. (ECF No. 61), Jasur Rahmatov (ECF No. 62), JA Physical Therapy P.C. (ECF No. 63), Hand by Hand PT, P.C. (ECF No. 64), Comfort Physical Therapy, PLLC (ECF No. 65), Artur Sattarov (ECF No. 66), and Alexander Gulkarov (ECF No. 67).  The Clerk of Court entered a default against all of the defendants listed above on August 29, 2024 (ECF Nos. 68-85), and plaintiffs were directed by the Court to move for default judgment by October 29, 2024.  (See Docket Order, dated August 30, 2024).  On September 18, 2024, Allstate requested a certificate of default as to Wellness PT (ECF No. 89), which the Clerk of Court entered on September 24, 2024.[8]

---

[7] It appears that Allstate twice moved for entry of default against defendant Mahmoud Elsayed Elsanaa, P.T.  (See ECF Nos. 52 and 60).

[8] Following the clerk's entry of default, Allstate filed a letter motion requesting an order vacating the default entered against Wellness PT because it came to an out-of-court agreement to settle the action.  (See ECF No. 108).  The motion to vacate entry of default against Wellness PT was granted on February 6, 2025, and the Court directed Allstate to file a notice of voluntary dismissal by February 13, 2025.  (See Docket Order, dated February 6, 2025).  While plaintiffs have failed to file a notice of voluntary dismissal on the docket as ordered, the Court, for purposes of considering the instant two motions, will exempt Wellness PT from consideration of Allstate's allegations as that party is not currently in default.  Allstate is ordered to file a notice of voluntary dismissal as to Wellness PT.

Allstate thereafter filed a motion for default judgment (ECF No. 97), which was later referred to the undersigned by the Honorable Pamela K. Chen, United States District Judge.[9] (See Docket Order, dated October 30, 2024).  Allstate's motion for default judgment as to the Defaulting Defendants requests judgment as to all fifty-six counts, including the RICO substantive and conspiracy provisions, common law claims for fraud and unjust enrichment, and requests for declaratory judgment.  Defaulting Defendants have not appeared in this action and have not moved to set aside the default.

Defendant Geykhman has also failed to appear or contest Allstate's allegations.  On October 3, 2024, Allstate requested an extension of time to serve defendant Geykhman, which the Court granted the following day.  (ECF No. 92).  Geykhman was served on November 20, 2024, at his place of residence in Brooklyn, New York.  (ECF No. 99).  Allstate requested a certificate of default as to Geykhman on December 16, 2024 (ECF No. 104), which the Clerk of Court entered in on December 18, 2024.  (ECF No. 105).  The Court then directed Allstate to file a motion for default judgment as to Geykhman.  (See Docket Order, dated December 18, 2024). Geykhman has not moved to set aside the default.

Allstate thereafter filed a motion for default judgment against Geykhman (ECF No. 112), which was later referred to the undersigned by District Judge Chen.[10]  (See Docket Order, dated February 18, 2025). In moving for default judgment against Geykhman, Allstate seeks judgment on the thirty-six RICO counts (Counts 1 through 36) and the two common law fraud and unjust enrichment claims (Count 37 and Count 38).

---

[9] Citations to "Mot." refer to Plaintiff's Memorandum in Support of Plaintiffs' Motion for Default Judgment and Entry of Final Judgment as to Defaulting Defendants (ECF No. 97-1).
[10] Citations to "Geykhman Mot." refer to Plaintiff's Memorandum of Law in Support of Plaintiffs' Motion for Default Judgment (ECF No. 112-1).

<u>DISCUSSION</u>

I.   <u>Default Judgment</u>

Rule 55(a) of the Federal Rules of Civil Procedure provides that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Rule 55 sets forth a two-step process for the entry of default judgment. <u>See</u> <u>Enron Oil Corp. v. Diakuhara</u>, 10 F.3d 90, 95-96 (2d Cir. 1993). First, the Clerk of Court enters the default pursuant to Rule 55(a) by notation of the party's default on the Clerk's record of the case. <u>See id.</u> Second, after the Clerk of Court enters a default against a party, if that party fails to appear or otherwise move to set aside the default pursuant to Rule 55(c), the court may enter a default judgment. <u>See</u> Fed. R. Civ. P. 55(b). Where the amount of damages owed requires a judicial finding, a default judgment may be entered once the court has conducted a hearing or made a referral to determine the question of damages. <u>See</u> Fed. R. Civ. P. 55(b)(2).

The Second Circuit has noted that a court determining whether to grant a default judgment should be guided by the same factors applicable to a motion to set aside entry of default. <u>See</u> <u>Pecarsky v. Galaxiworld.com, Ltd.</u>, 249 F.3d 167, 170–71 (2d Cir. 2001); <u>see also</u> <u>Enron Oil Corp.</u>, 10 F.3d at 96. These three factors are comprised of "(1) the willfulness of the default; (2) the existence of any meritorious defense; and (3) prejudice to the non-defaulting party." <u>United States v. Veeraswamy</u>, 765 F. Supp. 3d 168, 187-88 (E.D.N.Y. 2025) (quoting <u>Bricklayers & Allied Craftworkers Loc. 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Const., LLC</u>, 779 F.3d 182, 186 (2d Cir. 2015)).

The Second Circuit has cautioned that since a default judgment is an extreme remedy, it should only be entered as a last resort. <u>See</u> <u>Meehan v. Snow</u>, 652 F.2d 274, 277 (2d Cir. 1981); <u>see also</u> <u>Sheet Metal, Air, Rail & Transp. Workers Loc. Union No. 137 v. Frank Torrone & Sons,</u>

8

Inc., No. 14 CV 2224, 2018 WL 4771897, at *4 (E.D.N.Y. Oct. 3, 2018).  While the Second

Circuit has recognized the "push on a trial court to dispose of cases that, in disregard of the rules,

are not processed expeditiously [and] . . . delay and clog its calendar," it has held that the district

court must balance that interest with its responsibility to "[afford] litigants a reasonable chance to

be heard."  Enron Oil Corp. v. Diakuhara, 10 F.3d at 95-96.  Thus, in light of the "oft-stated

preference for resolving disputes on the merits," default judgments are "generally disfavored,"

and "doubt[s] should be resolved in favor of the defaulting party."  (Id.); see also Erwin

DeMarino Trucking Co. v. Jackson, 838 F. Supp. 160, 162 (S.D.N.Y. 1993) (noting that courts

must "supervise default judgments with extreme care to avoid miscarriages of justice").

Furthermore, "[Rule 55(b)] states that a judgment by default 'may' be entered under specified

circumstances, not that it must."  (Id.)  Accordingly, plaintiffs are not entitled to a default

judgment as a matter of right simply because a party is in default.  See, e.g., id.

  The burden is on the plaintiff to establish his entitlement to recovery.  See Greyhound

Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158-59 (2d Cir. 1992), cert. denied,

506 U.S. 1080 (1993).  When a default judgment is entered, the defendant is deemed to have

admitted all well-pleaded allegations in the complaint pertaining to liability, but not as to

damages.  (Id.)  Thus, for the purposes of an inquest, the court "accept[s] as true all of the factual

allegations of the complaint, except those relating to damages," and the plaintiff is "entitled to all

reasonable inferences from the evidence offered."  Au Bon Pain Corp. v. Artect, Inc., 653 F.2d

61, 65 (2d Cir. 1981).  While a court must ensure that there is a basis for the damages specified

in a default judgment, a hearing is not necessary, and the court may instead rely on "detailed

affidavits or documentary evidence."  Fustok v. Conticommodity Servs., Inc., 122 F.R.D. 151,

156 (S.D.N.Y. 1988) (collecting cases), aff'd, 873 F.2d 38 (2d Cir. 1989).

Here, considering the first default judgment factor, it is beyond dispute that Defaulting Defendants and Geykhman are in willful default.  On October 29, 2024, Allstate filed their motion for default judgment against Defaulting Defendants, and indicated in the accompanying certificate of service that physical copies of the motion and supporting papers were served.  (ECF No. 97 at 4-6).  On February 18, 2025, Allstate filed their motion for default judgment against Geykhman, and indicated in the accompanying certificate of service that physical copies of the motion and supporting papers were served.  (ECF No. 112 at 3).  Allstate has also complied with the Servicemembers Civil Relief Act.  (Mot. at 3; Geykhman Mot. at 3).  However, despite proper service, neither Defaulting Defendants nor Geykhman have responded to the Complaint or retained an attorney to represent them in this action.  Neither Defaulting Defendants nor Geykhman have responded to contest Allstate's motion for default judgment or submitted any evidence relating to the calculation of damages.

Furthermore, as to the PC Defendants subset of Defaulting Defendants who are fraudulently incorporated professional corporations, their failure to obtain counsel necessarily constitutes a failure to defend because a corporation cannot proceed *pro se* in federal court.  See Bravado Int'l Grp. Merch. Servs., Inc. v. Ninna, Inc., 655 F. Supp. 2d 177, 188 (E.D.N.Y. 2009) (noting that "it is well-established that a corporation may not appear in the Second Circuit unless represented by counsel" (citing Shapiro, Bernstein & Co. v. Cont'l Record Co., 386 F.2d 426, 427 (2d Cir. 1967) (per curiam))); see also Grace v. Bank Leumi Trust Co. of N.Y., 443 F.3d 180, 192 (2d Cir. 2006); Jones v. Niagara Frontier Transp. Auth., 722 F.2d 20, 22 (2d Cir. 1983) (discussing the rationale for requiring corporations, as "artificial" entities, to appear only through counsel).

With respect to the second default judgment factor, the Court is unable to determine if there are any meritorious defenses to the allegations in the Complaint because the Defaulting Defendants and Geykhman have failed to appear or present evidence of such a defense.  "A defense is meritorious if it is good at law so as to give the factfinder some determination to make."  Am. Alliance Ins. Co. v. Eagle Ins. Co., 92 F.3d 57, 61 (2d Cir. 1996).  While a "defendant need not establish his defense conclusively . . . he must present evidence of facts that, if proven at trial, would constitute a complete defense."  S.E.C. v. McNulty, 137 F.3d 732, 740 (2d Cir. 1998) (internal citations omitted).  Courts in this district have found that a court is unable to make a determination whether a defendant has a meritorious defense when that defendant fails to answer a complaint, thereby weighing in favor of granting a default judgment.  See Sola Franchise Corp. v. Solo Salon Studios Inc., No. 14 CV 0946, 2015 WL 1299259, at *6 (E.D.N.Y. Mar. 23, 2015) (collecting cases).  Therefore, the second factor weighs in favor of granting default judgment as to both Defaulting Defendants and Geykhman.

Finally, under the third default judgment factor, Allstate would be prejudiced if the motion for default were denied because "there are no additional steps available to secure relief in this Court."  Allstate Ins. Co. v. Abramov, No. 16 CV 1465, 2020 WL 1172697, at *5 (E.D.N.Y. Feb. 21, 2020), report and recommendation adopted, No. 16 CV 1465, 2020 WL 1166498 (E.D.N.Y. Mar. 11, 2020) (collecting cases).

Accordingly, the Court finds that all three factors permit entry of default judgment against the Defaulting Defendants and Geykhman and respectfully recommends that they be deemed to have defaulted.  Next, the Court considers whether Allstate has stated a plausible claim for liability against the defendants and, if so, what damages and other relief should be awarded.

II.    <u>Liability</u>

Allstate alleges that it is entitled to a default judgment on the Complaint's RICO, common law fraud, and unjust enrichment claims against Defaulting Defendants and Geykhman. While a defendant in default is deemed to have admitted the well-pleaded allegations in the complaint pertaining to liability, a court must determine whether the facts alleged in the complaint are sufficient to establish liability.  See <u>Labarbera v. ASTC Lab'ys Inc.</u>, 752 F. Supp. 2d 263, 270 (E.D.N.Y. 2010).

For the reasons below, I find that Allstate's Complaint sets forth facts, which, if true, establish their claim that certain Defaulting Defendants and Geykhman should be held liable for substantive RICO violations, RICO conspiracy violations, and common law fraud.  (<u>See</u> Compl. Counts 1 through 37).  It is respectfully recommended that the unjust enrichment claim be denied as duplicative of the common law fraud claim.  (<u>See</u> Compl. Count 38).  The elements required to establish each of these claims are set forth below.

A.    <u>Substantive RICO Claims</u>

Allstate currently alleges eight substantive RICO Claims that correspond with the fraudulently incorporated professional corporations that make up the PC Defendants.[11]  (Compl. at pp. 200, 205, 216, 231, 246, 261, 271, 275 (Counts 5, 7, 11, 17, 23, 29, 33, 35)); <u>see</u> <u>also</u> Exhibits 3-12 ("Claim Billed Charts"), attached to Mot., ECF Nos. 97-7, 97-8).  These RICO claims are alleged against all Defaulting Defendants, grouped by the different PC Defendant enterprises, and Geykhman, for his role as a Management Defendant in control of the PC Defendants.  (Compl. ¶¶ 569-75 (July PT Enterprise), 576-82 (MMA Enterprise), 590-96

---

[11] While the Complaint brought eighteen substantive RICO claims against multiple defendants (<u>see</u> Compl. at pp. 189-280), many of the defendants have settled with Allstate.  (<u>See</u> <i>supra</i> 6-7).  The Court only addresses the liability of Geykhman and the Defaulting Defendants that remain in this action.

(Comfort Enterprise), 611-17 (JA Enterprise), 632-38 (Hand by Hand Enterprise), 653-59 (JEVA Enterprise), 667-73 (Axis Enterprise), 674-80 (Atlas Enterprise)).  As explained below, Allstate's RICO claims cast too wide a net for liability, and only the Management Defendants in control of the individual PC Defendant enterprises and the Nominal Owner Defendants who effectuated that fraudulent control may be found liable.

"To sustain a RICO claim under 18 U.S.C. § 1962(c), a plaintiff must show '(1) that the defendant (2) through the commission of two or more acts (3) constituting a 'pattern' (4) of 'racketeering activity' (5) directly or indirectly invests in, or maintains and interest in, or participates in (6) an 'enterprise' (7) the activities of which affect interstate or foreign commerce.'"  Williams v. Affinion Grp., LLC, 889 F.3d 116, 123–24 (2d Cir. 2018) (quoting Moss v. Morgan Stanley, Inc., 719 F.2d 5, 17 (2d Cir. 1983)); see also Allstate Ins. Co. v. Aminov, No. 11 CV 2391, 2014 WL 527834, at *5 (E.D.N.Y. Feb. 7, 2014).  The Court will consider each factor in turn.

### 1.    Individual Defendants and RICO Enterprises

RICO, by its terms, applies to "any person employed by or associated with any enterprise engaged in" acts prohibited by the statute.  18 U.S.C. § 1962(c).  The statute defines "person" as "any individual or entity capable of holding a legal or beneficial interest in property," 18 U.S.C. § 1961(3), and "enterprise" as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4).  "The existence of an 'enterprise'—one existing 'separate and apart from the pattern of activity in which it engages'—is a necessary element of a section 1962(c) violation."  D'Addario v. D'Addario, 901 F.3d 80, 99 (2d Cir. 2018) (quoting United States v. Turkette, 452 U.S. 576, 583 (1981)).  The Second Circuit has clarified that a RICO enterprise "is proved by evidence of an ongoing organization, formal or informal, and by evidence that the

13

various associates function as a continuing unit." United States v. Applins, 637 F.3d 59, 73 (2d Cir. 2011). A RICO enterprise "is oftentimes more readily proven by what it does, rather than by abstract analysis of its structure." (Id.) (quotation marks omitted). Indeed, "RICO charges may be proven even when the enterprise and predicate acts are functionally equivalent, and the proof used to establish them coalesce." United States v. Ferguson, 758 F.2d 843, 853 (2d Cir. 1985) (quotation marks omitted and alterations adopted).

Courts have read the definitions and prohibitions of RICO to require a distinction between the individual defendants and the alleged enterprise. See, e.g., Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A., 30 F.3d 339, 344 (2d Cir. 1994) (noting that "the person and the enterprise referred to must be distinct" to satisfy Section 1962). This distinctness requirement may be satisfied by a "formal legal distinction between [the] 'person' and [the] 'enterprise' (namely incorporation)." Cedric Kushner Promotions. Ltd. v. King, 533 U.S. 158, 165 (2001); accord Palatkevich v. Choupak, No. 12 CV 1682, 2014 WL 1509236, at *15 (E.D.N.Y. Jan. 24, 2014) (explaining that "a natural person named as the defendant 'person' is inherently distinct from a corporate entity 'enterprise' for which he acts as an agent; in such a case, the distinctness requirement is met"). "A corporate entity can be sued as a RICO 'person' or named as a RICO 'enterprise,' . . . but the same entity cannot be both the RICO person and the enterprise." U1it4less, Inc. v. Fedex Corp., 871 F.3d 199, 205 (2d Cir. 2017) (internal citations omitted). In other words, a RICO enterprise cannot "consist[] merely of a corporate defendant associated with its own employees or agents carrying on the regular affairs of the defendant." (Id. at 206).

Furthermore, a RICO defendant will not be liable for mere participation in a racketeering act, and instead needs to participate in the "operation or management" of an enterprise to sustain

14

liability under the statute.  See D'Addario v. D'Addario, 901 F.3d at 103; see also Reves v. Ernst & Young, 507 U.S. 170, 183 (1993) (holding that "one is not liable under [Section 1962(c)] unless one has participated in the operation or management of the enterprise itself").  "While the 'operation or management' test presents a 'relatively low hurdle for plaintiffs to clear, . . . especially at the pleading stage,' RICO plaintiffs must plausibly allege that each defendant played '*some* part in directing the enterprise's affairs' if the RICO claim is to survive a motion to dismiss."  D'Addario v. D'Addario, 901 F.3d 80 at 103 (quoting First Cap. Asset Mgmt., Inc. v. Satinwood, Inc., 385 F.3d 159, 176 (2d Cir. 2004)).

### a.    The RICO Enterprises

There are eight RICO enterprises at issue in Allstate's motions for default judgment, each corresponding with a PC Defendant currently in default:  the Atlas Enterprise (Compl. ¶ 674), the Axis Enterprise (id. ¶ 667), the Comfort Enterprise (id. ¶ 590), the JA Enterprise (id. ¶ 611), the Hand by Hand Enterprise (id. ¶ 632), the JEVA Enterprise (id. ¶ 653), the July PT Enterprise (id. ¶ 569), and the MMA Enterprise.  (Id. ¶ 576).  Allstate alleges that a combination of Defaulting Defendants participated in the operation and management of each PC Defendant Enterprise, with the exception of the PC Defendant for which the enterprise is named.  For example Allstate alleges that Management Defendants Geykhman, Sattarov, and Rahmatov, PC Defendants Axis, Comfort, MMA, and JEVA, and Nominal Owner Defendants Awad, Cadet, Magid, and Abrenica participated in the operation and management of the Atlas Enterprise.  (Compl. ¶ 674).  Absent from the list of participants in the Atlas Enterprise is defendant Atlas PC itself.  Allstate has similarly alleged that a combination of Defaulting Defendants participated in each of the other PC Defendant enterprises.

As a preliminary matter, Allstate has successfully pleaded that the PC Defendant enterprises are "enterprises" and that the other Defaulting Defendants and Geykhman are

"persons" under RICO. The Complaint adequately alleges that the Nominal Owner Defendants and Management Defendants (including Geykhman) are natural persons, and that the PC Defendants are corporate entities. (Compl. ¶¶ 46-51, 52-56, 62-66, 67-72, 84-88, 105, 111, 117, 123). Other courts in this district considering similar tripartite groupings of defendants in the no-fault insurance fraud context have found that these types of allegations are sufficient to demonstrate that a RICO enterprise exists. See, e.g. Allstate Ins. Co. v. Yehudian, No. 14 CV 4826, 2018 WL 1767873, at *8 (E.D.N.Y. Feb. 15, 2018), report and recommendation adopted, 2018 WL 1686106 (E.D.N.Y. Mar. 31, 2018); Allstate Ins. Co. v. Smirnov, No. 12 CV 1246, 2014 WL 4437287, at *7 (E.D.N.Y. July 21, 2014), report and recommendation adopted, 2014 WL 4437291 (E.D.N.Y. Sept. 8, 2014); Liberty Mut. Ins. Co. v. Excel Imaging, P.C., 879 F. Supp. 2d 243, 274-275 (E.D.N.Y. 2012).

b.    The PC Defendants' Liability

However, Allstate's Complaint suffers from a major pleading defect as to its allegation that certain individual Defaulting Defendants are liable for RICO violations. Specifically, Allstate has included in its allegations that the PC Defendants are RICO persons liable for participating in the other PC Defendant enterprises—for example, it is alleged that PC Defendant JEVA should be found liable for the Atlas PC Enterprise. This claim is not supported by the Complaint's factual allegations or caselaw. Second, Allstate has failed to allege that the PC Defendants named in the RICO counts satisfy the Second Circuit's "operation or management" test. An analysis of Allstate's specific allegations regarding the Atlas Enterprise is representative of these pleading defects.

First, Allstate alleges that other PC Defendants, such as Axis, Comfort, MMA, and JEVA, participated as RICO "persons" in the Atlas Enterprise. However, Allstate fails to allege how these other PC Defendants were intertwined with or participated in the operations of the

Atlas Enterprise.  The Second Circuit has observed that the "rimless hub-and-spoke" structure weighs against a finding of RICO association-in-fact.  See D'Addario v. D'Addario, 901 F.3d at 101.  A conspiracy with a hub-and-spoke structure exists where one entity or individual or group thereof (the hub) transacts similarly with several other entities or individuals (the spokes) pursuant to a scheme that typically is designed by the hub.  See United States v. Apple, Inc., 791 F.3d 290, 314 (2d Cir. 2015). "Rimless" means that there is no connection among the other various "spokes" operating in the conspiracy with the hub.  See D'Addario, 901 F.3d at 101. "That each defendant agreed to join forces with [Management Defendants] to defraud [Allstate] in a particular way does not support an inference that they all agreed to join forces with each other to pursue a goal of defrauding [Allstate] . . . in a variety of ways."  (Id.)  In this case, Allstate's failure to plead facts that connect the operations of each PC Defendant Enterprise means that the other PC Defendants cannot be held liable as RICO "persons," even for the RICO counts in which the entity is not named as the RICO enterprise.

Indeed, courts in this circuit have been careful to limit substantive RICO liability to defendants who are persons.  See e.g. Gov't Emps. Ins. Co. v. Parkway Med. Care, P.C., No. 15 CV 3670, 2017 WL 1133282, at *10-11 (E.D.N.Y. Feb. 21, 2017), report and recommendation adopted, No. 15 CV 3670, 2017 WL 1131901 (E.D.N.Y. Mar. 24, 2017) (finding all defaulting defendants liable for common law fraud but just management defendants liable for substantive RICO violations); Allstate Ins. Co. v. Lyons, 843 F. Supp. 2d 358, 369 (E.D.N.Y. 2012) (observing that "the PCs are not included as RICO defendants; rather, all of the RICO defendants are natural persons").

Second, even if Allstate had alleged facts showing that the PC Defendants were operating in concert with each other, Allstate fails to allege that the PC Defendants meet the Second

17

Circuit's "operation or management" test, which requires a RICO person to play some part in directing the affairs of an enterprise.  See D'Addario v. D'Addario, 901 F.3d at 103.  Again, the allegations surrounding the Atlas Enterprise are instructive of the insufficiencies related to the RICO claims against the PC Defendants.  In the Complaint, Allstate describes the process through which Defaulting Defendants and Geykhman participated in racketeering activity, and alleges connections between the individual defendants and the various alleged RICO enterprises. (Compl. ¶¶ 674-80; see also, e.g., Compl. ¶¶ 569-75 (July PT Enterprise), 632-38 (Hand by Hand Enterprise)).  However, with respect to the allegations regarding the Atlas Enterprise, the Complaint does not allege any specific facts as to how any of the other PC Defendants played a role in directing the affairs of the Atlas Enterprise or "caused Atlas to falsely certify that it was eligible to be reimbursed under New York's No-Fault Laws."  (Compl. ¶ 1012).

Accordingly, the Court finds that the allegations in the Complaint are not sufficient to establish liability on the part of the PC Defendants for RICO violations and respectfully recommends that default judgment not enter against the PC Defendants on Allstate's RICO claims.

                    c.    Management Defendants' and Nominal Defendants' Liability

With respect to the subset of Defaulting Defendants comprised of the Management Defendants and the Nominal Owner Defendants, the Complaint distinguishes between the roles played by the Management Defendants—Geykhman Sattarov, and Rahmatov—and the other Defaulting Defendants.[12]  Again, the claims relating to the Atlas Enterprise are illustrative of the claims relating to all of the alleged enterprises.  Specifically, the Complaint alleges that

---

[12] Management Defendant Gulkarov is named elsewhere in the Complaint as directing the management and operation of other PC Defendant Enterprises.  (See, e.g. Compl. ¶¶ 653-59, 947-65 (describing the JEVA Enterprise)).

18

"Geykhman . . . induced Atlas to cede over the operation and management of Atlas" and "worked with Sattarov and Rahmatov to launder the proceeds of this scheme." (Id. ¶ 1005). The Complaint further specifies that "Geykhman, Sattarov, and Rahmatov were never lawfully entitled to participate in, or in any way direct, the operation and management of Atlas." (Compl. ¶ 1013). This language clearly satisfies the "operation or management" test identified by the Second Circuit in D'Addario v. D'Addario for purposes of finding the Management Defendants—Geykhman, Sattarov and Rahmatov—liable for RICO violations for their involvement in the Atlas Enterprise. 901 F.3d at 103.

As for the Nominal Owner Defendants, Allstate alleges that each licensed physical therapist participated in their respective alleged RICO enterprise by billing for services through their PCs, holding themselves out as the sole officer, director, and shareholder of their PC, signing or lending their name to corporate and ownership documents, treatment records and invoices, and allowing the Management Defendants to siphon off the professional fees collected by their respective PCs. (Compl. ¶¶ 50-51, 55-56, 65-66, 71-72, 87-88). These allegations are sufficient to demonstrate that the Nominal Owner Defendants—Awad in the case of Atlas Enterprise and Cadet, Magid, Abrenica, and Elsanaa for the role they played in furthering the other alleged RICO enterprises—played a role in directing the affairs of the enterprises.[13] See Liberty Mut. Ins. Co. v. Excel Imaging, P.C., 879 F. Supp. 2d 243, 275 (E.D.N.Y. 2012) (finding allegations that defendants who were either medical professionals who "agreed to serve as the 'paper' owners" of a medical services corporation, or were the actual owners and operators of the corporation and did not have medical licenses, were held sufficient to support a RICO claim).

---

[13] Allstate alleges that Awad was the nominal owner for the Atlas and Axis Enterprises (Compl. ¶¶ 67-72), Cadet was the nominal owner for the Comfort Enterprise (id. ¶¶ 62-66), Magid was the nominal owner for the MMA Enterprise (id. ¶¶ 52-56), Abrenica was the nominal owner of the JA and JEVA Enterprises (id. ¶¶ 84-88), and Elsanaa was the nominal owner for the July and Hand by Hand Enterprises (id. ¶¶ 46-51).

Without their active participation in perpetrating the fraud, the RICO enterprises alleged in the Complaint would not have been successful.

Thus, the Court finds that Allstate has sufficiently alleged that the Management Defendants (Geykhman, Gulkarov, Sattarov, and Rahmatov) and Nominal Owner Defendants (Abrenica, Elsanaa, Magid, Cadet, and Awad) (together "RICO Defendants") participated in the affairs of the various enterprises, satisfying the first and sixth elements of a RICO claim.

2.    Predicate Acts

Having established that the Complaint adequately alleges the existence and independence of both the RICO Defendants and the several enterprises through which the scheme was purportedly carried out, the Court now turns to the allegation that those predicate acts constituted racketeering activity.

"Racketeering activity" is defined by statute to refer to enumerated acts like mail fraud and money laundering, which are alleged in this case.  See 18 U.S.C. § 1961(1).  Plaintiffs suing under RICO must show that each defendant participated in at least two predicate acts of racketeering within a ten-year period.  18 U.S.C. § 1961(5).  "The predicate acts must be related, and either amount to or pose a threat of continuing criminal activity."  Allstate Ins. Co. v. Nazarov, No. 11 CV 6187, 2015 WL 5774459, at *13 (E.D.N.Y. Sept. 30, 2015) (quoting Spool v. World Child Int'l Adoption Agency, 520 F.3d 178, 183 (2d Cir. 2008)) (alterations adopted). The continuity requirement can be satisfied by a "closed-ended pattern," which has been defined as a series of related predicate acts extending over a substantial period of time, with the general requirement that the predicate acts span at least two years.  (Id.)  To show a defendant's "participation" in the racketeering activity, a plaintiff need only demonstrate that defendant played some part in the operation of the enterprise, even if not the predominant one.  See Reves v. Ernst & Young, 507 U.S. 170, 179 (1993) (explaining that "the word 'participate' makes clear

20

that RICO liability is not limited to those with primary responsibility for the enterprise's affairs, just as the phrase 'directly or indirectly' makes clear that RICO liability is not limited to those with a formal position in the enterprise").  Courts in this circuit have noted that "[t]he participation requirement is a 'relatively low hurdle for plaintiffs to clear, especially at the pleading stage.'"  Allstate Ins. Co. v. Nazarov, 2015 WL 5774459 at *13.

To satisfy these requirements, Allstate alleges that the RICO Defendants engaged in thousands of acts of mail fraud over the course of more than two years.[14]  (Compl. ¶¶ 552-680).  Rule 9 of the Federal Rules of Civil Procedure requires that all allegations of fraud must be stated "with particularity" as to the circumstances surrounding the fraud.  Fed R. Civ. P. 9(b).  This requires a plaintiff to "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent."  Lerner v. Fleet Bank. N.A., 459 F.3d 273, 290 (2d Cir. 2006) (internal quotations omitted).  Thus, to successfully state a claim for mail fraud, a plaintiff must allege with particularity "(1) the existence of a scheme to defraud, (2) defendant's knowing or intentional participation in the scheme, and (3) the use of interstate mails or transmission facilities in furtherance of the scheme."  Allstate Ins. Co. v. Nazarov, 2015 WL 5774459, at *12 (quoting Government Emps. Ins. Co. v. Hollis Med. Care, P.C., No. 10 CV 4341, 2011 WL

---

[14] Plaintiffs also allege throughout the Complaint that the RICO Defendants engaged in numerous acts of money laundering through shell companies.  (See Compl. ¶¶ 222-253).  A valid claim of domestic money laundering requires a plaintiff to show that "defendant (1) engaged in a financial transaction that in fact involved the proceeds of a specified unlawful activity, (2) knew that the transaction involved such proceeds, and (3) either intended to promote the carrying on of a specified unlawful activity or knew the transaction was designed to conceal or disguise the nature, location, source, ownership, or control of the proceeds."  Tymoshenko v. Firtash, No. 11 CV 2794, 2015 WL 5505841, at *6 (S.D.N.Y. Sept. 18, 2015) (internal quotations and citations omitted).  Such allegations do not fall within the ambit of Rule 9 of the Federal Rules of Civil Procedure, and thus, the pleading standard for money laundering is lower than the standard for fraud.  (Id.)  Plaintiffs claim that the RICO Defendants issued numerous false billing records and engaged in related acts of money laundering in a series of kickback relationships.  (Compl. ¶ 241).  The money laundering scheme described in the Complaint, which provided the cover for the healthcare fraud conducted through each PC Defendant Enterprise, also satisfies RICO's predicate act element.

5507426, at *7 (E.D.N.Y. Nov. 9, 2011)).  To fairly allege the "use of interstate mails," a plaintiff need only allege that the scheme was such that "use of the mails will follow in the ordinary course of business, or that such use can reasonably be foreseen, even though not actually intended."  Abramovich v. Oliva, No. 11 CV 1755, 2012 WL 3597444, at *10 (E.D.N.Y. Aug. 20, 2012) (quoting United States v. Tocco, 135 F.3d 116, 124 (2d Cir. 1998)).

Plaintiffs allege sufficient facts, which are taken as true in the context of a default, for the Court to find that the RICO Defendants engaged in two or more acts that constitute a "pattern" of mail fraud.  The Complaint alleges specific instances in which RICO Defendants mailed or caused to be mailed thousands of fraudulent and fictitious insurance claims in the process of defrauding Allstate over the course of more than two years.  (Compl. ¶¶ 552-680).  Plaintiffs have met their burden of alleging that two predicate acts were committed in the ten years preceding this action.  See 18 U.S.C. § 1961(5) (defining a "pattern" of racketeering activity as "at least two acts . . . the last of which occurred within ten years . . . after the commission of a prior act of racketeering activity").  For purposes of default judgment, courts in this circuit have found a closed-ended pattern where the enterprise "submitted bills for reimbursement to which it was not entitled over a period exceeding two years."  Gov't Employees Ins. Co. v. Scheer, No. 13 CV 4039, 2014 WL 4966150, at *7 (E.D.N.Y. Aug. 18, 2014), report & recommendation adopted, 2014 WL 4966137 (E.D.N.Y. Sept. 30, 2014).  Plaintiffs have also provided specific examples of how RICO Defendants carried out their fraud through individual claimants.  (Compl. ¶¶ 313-551).  The voluminous billing records that plaintiffs have attached to the Complaint clearly demonstrate that each of the RICO Defendants are responsible for many fraudulent billing claims.  (See Compl. Exs. 3-56).  Indeed, the Complaint alleges that some defendants, including Geykhman, Elsanaa, Magid, Cadet, and Abrenica, have been criminally

charged in connection with this scheme.  (Compl. ¶ 173).  Several of them have confessed to crimes arising from the unlawful operation and control of physical therapy providers.  (Compl. ¶¶ 174-213).  As discussed above, taking plaintiffs' factual allegations as true in the context of this default, such a pattern of activity alone clearly satisfies the predicate act element of RICO.

        3.      Interstate Commerce

Finally, to state a valid RICO claim, Allstate must demonstrate that the activities of the enterprise affected interstate commerce.  This burden is extremely low and RICO plaintiffs need only show "a minimal effect on interstate commerce."  DeFalco v. Bernas, 244 F.3d 286, 309 (2d. Cir 2001).

Plaintiffs have adequately alleged that the acts detailed in the Complaint affected interstate commerce.  Here, the enterprises engaged in a scheme to submit fraudulent claims to plaintiffs, all of whom are national insurance companies with principal places of business in Northbrook, Illinois.  (Compl. ¶¶ 33-34).  Several courts have found that identical facts are sufficient to establish the necessary impact on interstate commerce.  See, e.g., Allstate Ins. Co. v. Nazarov, 2015 WL 5774459, at *14 (finding that allegations of mail fraud and money laundering as part of a widespread scheme to defraud plaintiff affected interstate commerce); State Farm Mut. Auto. Ins. Co. v. Grafman, 655 F. Supp. 2d 212, 230 (E.D.N.Y. 2009) (finding that allegations of the submission of fraudulent claims to a national insurance company in Bloomington, Illinois was sufficient to demonstrate an effect on interstate commerce).

Taken together, plaintiffs have sufficiently pleaded a claim for relief under RICO against the RICO Defendants:  Gulkarov, Sattarov, Rahmatov, Geykhman, Abrenica, Elsanaa, Magid, Cadet, and Awad.

B.    RICO Conspiracy Claims

Plaintiffs also allege that the RICO Defendants violated RICO, 18 U.S.C. § 1962(d), by carrying on a conspiracy to engage in an unlawful enterprise.  (Compl. at pp. 203, 208, 219, 234, 249, 264, 274, 278 (Counts 6, 8, 12, 18, 24, 30, 34, 36)).  To state a conspiracy claim under section 1962(d), a plaintiff must allege that the defendants "agree[d] to conduct or to participate in the conduct of [an] enterprise's affairs through a pattern of racketeering activity."  United States v. Zemlyansky, 908 F.3d 1, 11 (2d Cir. 2018) (quoting United States v. Pizzonia, 577 F.3d 455, 462 (2d Cir. 2009)).  "A conspirator must intend to further an endeavor which, if completed, would satisfy all of the elements of a substantive criminal offense[.]"  Salinas v. United States, 522 U.S. 52, 65 (1997).  More specifically, the pleading must allege:  (a) "an agreement to join a racketeering scheme," (b) "the defendant's knowing engagement in the scheme with the intent that its overall goals be effectuated," and (c) "that the scheme involved, or by agreement between any members of the conspiracy was intended to involve, two or more predicate acts of racketeering."  Zemlyansky, 908 F.3d at 11; see also Allstate Ins. Co. v. Batsiyan, No. 05 CV 5933, 2008 WL 11434462, at *8 (E.D.N.Y. Mar. 12, 2008) (holding that "[t]o plead a RICO conspiracy, a claimant must plead facts establishing the existence of an agreement, as well as facts demonstrating that the defendants understood the scope of the enterprise and knowingly agreed to further its aims through the commission of the offenses").

Allstate has sufficiently alleged the elements necessary to state a claim of RICO conspiracy against the RICO Defendants, which requires that there be proof that a defendant agreed to participate in the affairs of a RICO enterprise through a pattern of racketeering activity.  See Salinas v. United States, 522 U.S. 52, 63-65 (1997) (holding that a RICO conspiracy defendant does not need to explicitly agree to commit two or more predicate acts, and that it is sufficient if he knew of the general criminal object of the scheme and agreed to participate).

24

Here, Allstate has alleged that the RICO Defendants agreed to participate in this scheme and that they had knowledge of the roles of the others in committing the predicate acts. (Compl. ¶¶ 569-574, 576-581, 590-595, 611-616, 632-637, 653-658, 667-672, 674-679). However, for the same reasons set forth above, the allegations in the Complaint as to the PC Defendants fail to satisfy the pleading requirement that the PC Defendants agreed to participate in the affairs of the RICO enterprises or that they had knowledge of the roles of the other PC Defendants in other enterprises involved in the scheme.

Accordingly, I respectfully recommend that the District Court grant plaintiffs' default judgment motion in part and find the RICO Defendants—Gulkarov, Sattarov, Rahmatov, Geykhman, Abrenica, Elsanaa, Magid, Cadet, and Awad—liable for a RICO conspiracy in violation of 18 U.S.C. § 1962(d).

C.    Joint and Several Liability Under RICO

Allstate also seeks to hold the RICO Defendants named in each RICO claim jointly and severally liable for all of the fraudulent billing claims submitted by each enterprise. (Mot. at 22-23; Geykhman Mot. at 20-21).

"Joint and several liability is rooted in the principle that a wrongdoer is liable for the reasonably foreseeable acts of his fellow wrongdoers[.]" United States v. Philip Morris USA, 316 F. Supp. 2d 19, 26 (D.D.C. 2004) (citing Paper Sys. Inc. v. Nippon Paper Indus. Co., 281 F. 3d 629, 633 (7th Cir. 2002)). The Second Circuit has endorsed joint and several liability in a criminal RICO case, United States v. Fruchter, 411 F.3d 377, 384 (2d Cir. 2005), but has not considered the issue in the civil RICO context. See Allstate Ins. Co. v. New Century Pharmacy Inc., No. 19 CV 5702, 2021 WL 7830141, at *12 (E.D.N.Y. Aug. 13, 2021). Still, "district courts in this Circuit routinely find defendants jointly and severally liable in relation to civil RICO claims." Allstate Ins. Co. v. Nazarov, 2015 WL 5774459, at *17 (collecting cases).

25

"Because the alleged RICO scheme[s] involve[] repeated fraudulent acts by multiple defendants, 'plaintiffs are entitled to recover once for every fraudulent act, and each defendant who participated in the fraudulent act is jointly and severally liable for the amount of damage caused.'" Allstate Ins. Co. v. New Century Pharmacy Inc., 2021 WL 7830141, at *12 (quoting Allstate Ins. Co. v. Williams, No. 13 CV 2893, 2014 WL 6900121, at *10 (E.D.N.Y. Dec. 5, 2014)).

A defendant in default is jointly and severally liable only for the damages arising out of the RICO enterprise with which it was associated. See, e.g., Allstate Ins. Co. v. Nazarov, 2015 WL 5774459, at *17 (holding that "the Subject Defendants . . . participated in RICO enterprises to submit numerous fraudulent bills to Plaintiffs, such that each defendant contributed to the RICO Enterprise of which it was a part, and should be held jointly and severally liable with the other participants in the particular scheme"). Therefore, the RICO Defendants should be held "jointly and severally liable for the entire amount of damages resulting from the RICO violations associated with each of the respective schemes that they participated in." Allstate Ins. Co. v. Abutova, No. 13 CV 3494, 2017 WL 1185222, at *9 (E.D.N.Y. Feb. 15, 2017) (citations and quotations omitted), report and recommendation adopted, 2017 WL 1184107 (E.D.N.Y. Mar. 29, 2017).

It is therefore respectfully recommended that, for their RICO violations, the RICO Defendants be held jointly and severally liable for plaintiffs' RICO damages resulting from the enterprises that they were involved in. Since the PC Defendants are not liable under RICO, the Court next turns to an analysis of Allstate's common law claims.

### D.    State Common Law Fraud

Allstate moves for default judgment on the state common law fraud claims it brings against each defendant in this action. (Mot. at 15-19; Geykhman Mot. at 14-19). This includes

each member of Defaulting Defendants, which includes PC Defendants, and Defendant Geykhman.

Under New York law, a party bringing an action for common law fraud must allege the following:  "(1) a material representation or omission of fact; (2) made with knowledge of its falsity; (3) with scienter or an intent to defraud; (4) upon which the plaintiff reasonably relied; and (5) [that] such reliance caused damage to the plaintiff."  Gov't Emps. Ins. Co. v. Scheer, 2014 WL 4966150, at *6 (quotation marks omitted).[15]  "Intent is demonstrated when it is clear that a scheme, viewed broadly, is necessarily going to injure." Gov't Emps. Ins. Co. v. Parkway Med. Care, P.C., 2017 WL 1133282, at *7 (quotation marks omitted).  A plaintiff's reasonable reliance is established when "he has no independent means of ascertaining the truth" because the information is "peculiarly within defendant's knowledge."  Lazard Freres & Co. v. Protective Life Ins. Co., 108 F.3d 1531, 1542 (2d Cir. 1997).

Accepting plaintiff's allegations as true for purposes of these motions, Allstate has established that Defaulting Defendants and Geykhman have made material misrepresentations or omissions of fact, that they made these material misrepresentations with knowledge of their falsity and with intent to defraud, and that Allstate's reasonable reliance on these representations led it to suffer damages.

---

[15] While Allstate does not specify in its complaint or memoranda of law supporting either motion whether it brings its common law claims in this action under diversity or supplemental jurisdiction, New York law applies in this action under both options.  In a diversity case, Second Circuit courts apply the substantive law of the forum state, which is New York in this case.  See Omega Engineering, Inc. v. Omega, S.A., 432 F.3d 437, 443 (2d Cir. 2005).  On the other hand, a federal court exercising supplemental jurisdiction over state law claims applies the choice of law rules of the forum state.  See Rogers v. Grimaldi, 875 F.2d 994, 1002 (2d Cir. 1989).  "Under the law of New York, the forum state, the first step in a choice of law analysis is to determine whether an actual conflict exists between the laws of the jurisdictions involved."  Forest Park Pictures v. Universal Tel. Network, Inc., 683 F.3d 424, 433 (2d Cir. 2012).  Where an actual conflict exists, "New York courts seek to apply the law of the jurisdiction with the most significant interest in, or relationship to, the dispute."  Lazard Freres & Co. v. Protective Life Ins. Co., 108 F.3d 1531, 1539 (2d Cir. 1997) (quotation marks omitted).  I find that New York has the most significant relationship to the dispute as the alleged fraud was committed in that state.

First, the Complaint alleges that each defendant, including PC Defendants, violated New York law through their scheme to create, prepare, and submit false and fraudulent treatment records, invoices, and other documentation to Allstate.  (Compl. ¶¶ 552-680).  According to the Complaint, the PC Defendants repeatedly submitted No-Fault claims that materially misrepresented their eligibility for payment under New York's No-Fault law.  (Compl. ¶¶ 21-26, 30-32, 172, 215, 556, 563-564, 570-571, 577-578, 584-585, 591-592, 598-599, 605-606, 612-613, 619-620, 626-627, 633-634, 640-641, 647-648, 654-655, 661-662, 668-669, 675-676, 689-69, 708-710, 717-719, 727-729, 746-748, 765-767, 784-786, 803-805, 822-824, 831-833, 843-845, 860-862, 879-881, 898-980, 907-909, 919-921, 936-938, 955-957, 964-966, 976-978, 993-995, 1012-1014, 1023-1030).  Each submitted claim was a misrepresentation because the PC Defendants were in fact controlled by Management Defendants, who were operating these professional corporations in violation of New York law because they were not licensed physical therapists.  (Id. ¶¶ 215-312).

To the second and third factors, the Complaint further alleges that each defendant knew the representations were false and were made with the intent to defraud Allstate out of monies that defendants were not eligible to receive.  (Id. ¶¶ 36-128).  To the fourth and fifth factors, Allstate has sufficiently alleged that it reasonably relied on these false representations when making payments to the PC Defendants.  (Id. ¶¶ 1023-30).  If it had known that it was being defrauded, Allstate would not have made these payments, which were then funneled to the Defaulting Defendants and Geykhman.  (Id.)  The pattern of fraudulent conduct injured Allstate by causing it to pay claims to each PC Defendant.  (Id. ¶ 1031).

The Court finds that plaintiffs have adequately alleged a common law fraud claim that is sufficient to warrant entry of default judgment in plaintiffs' favor.  These "uncontroverted

allegations, without more, establish the defendant's liability on [the] asserted cause of action." Allstate Ins. Co. v. Tapper, No. 14 CV 5410, 2015 WL 6869702, at *5 (E.D.N.Y. Nov. 9, 2015) (quoting Mateo v. Universal Language Corp., No. 13 CV 2495, 2015 WL 5655689, at *4 (E.D.N.Y. Sept. 4, 2015)).  Moreover, courts in this circuit have found professional corporations liable for common law fraud in actions that also bring RICO claims against RICO "persons." See, e.g., Gov't Emps. Ins. Co. v. Parkway Med. Care, P.C., 2017 WL 1133282, at *18 (E.D.N.Y. Feb. 21, 2017).

Accordingly, it is respectfully recommended that a default judgment be entered against all Defaulting Defendants—including PC Defendants Atlas, Axis, Comfort, Hand by Hand, JA, JEVA, MMA, and July—and Geykhman for Allstate's common law fraud claims.

E.      Unjust Enrichment Claim

Under New York law, a party alleging an action for unjust enrichment must allege:  (1) the defendant were enriched; (2) the enrichment was at the expense of the plaintiffs; and (3) the circumstances were such that equity and good conscience require the defendant to make restitution.  See Pauwels v. Deloitte LLP, 83 F.4th 171, 186 (2d Cir. 2023).  Unjust enrichment is "a New York common law quasi-contract cause of action."  Myun-Uk Choi v. Tower Rsch. Cap. LLC, 890 F.3d 60, 69 (2d Cir. 2018).  These claims are intended to "protect[] a plaintiff only in those circumstances where she has no other recourse in tort or contract."  Gov't Emps. Ins. Co. v. Armengol, No. 20 CV 6052, 2022 WL 432320, at *7 (E.D.N.Y. Jan. 19, 2022); see Clark–Fitzpatrick, Inc. v. Long Island R. Co., 70 N.Y.2d 382, 388 (1987) (observing that "the existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi contract for events arising out of the same subject matter").  As the New York Court of Appeals has explained, an unjust enrichment claim "is available only in unusual situations when, though the defendant has not breached a contract nor committed a

recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff." Corsello v. Verizon N.Y., Inc., 18 N.Y.3d 777, 790 (2012) (internal citations omitted) (holding that "[a]n unjust enrichment claim is not available where it simply duplicates, or replaces, a conventional contract or tort claim"); see also Hughes v. Ester C Co., 330 F. Supp. 3d 862, 877 (E.D.N.Y. 2018) (finding that "[u]njust enrichment claims should be dismissed where the violative conduct alleged is conterminous with a conventional tort or contract claim, regardless of whether the tort or contract claim is dismissed.") (quotation marks omitted). Indeed, courts in this circuit have dismissed unjust enrichment claims when they were based off the same set of facts as a fraud claim. See Spinnato v. Unity of Omaha Life Ins. Co., 322 F. Supp. 3d 377, 404-05 (E.D.N.Y. 2018) (dismissing unjust enrichment claim because it was based on the same set of facts as a fraud claim); Allstate Ins. Co. v. Nazarov, 2015 WL 5774459, at *16 (denying unjust enrichment claim on plaintiff's motion for default judgment motion where plaintiff established defendant's liability for common law fraud based on the same set of facts).

Here, Allstate alleges that defendants were unjustly enriched at its expense. However, since Allstate's unjust enrichment claim is based on the same transactions as their claim for common law fraud, the claim is duplicative. As a result, Allstate is not entitled to a judgment on its claims for unjust enrichment. Therefore, it is respectfully recommended that the motion for default judgment on the unjust enrichment claim be denied.

## III.  Damages

Turning to the calculation of damages, plaintiffs seek to recover treble damages for all RICO claims, along with compensatory damages for the common law fraud claims, and prejudgment interest on all claims. Mot. at 21-24; Geykhman Mot. at 19-22.

A.     Legal Standard

Once a court determines that default judgment should enter, the plaintiff must still establish its entitlement to the damages sought.  See Flaks v. Koegel, 504 F.2d 702, 707 (2d Cir. 1974) (holding that "[w]hile a default judgment constitutes an admission of liability, the quantum of damages remains to be established by proof unless the amount is liquidated or susceptible of mathematical computation"); Wing v. East River Chinese Rest., 884 F. Supp. 663, 669 (E.D.N.Y. 1995) (explaining that "[a]lthough the default establishes a defendant's liability, unless the amount of damages is certain, the court is required to make an independent determination of the sum to be awarded").  Unlike the question of liability, a defaulting defendant is not deemed to have admitted all well-pleaded allegations concerning damages.  See Jeremiah v. 5 Towns Jewish Times, Inc., No. 22 CV 5942, 2023 WL 6593997, at *3 (E.D.N.Y. Aug. 9, 2023), report and recommendation adopted, 2023 WL 5703698 (E.D.N.Y. Sept. 5, 2023).  Thus, the plaintiff must still prove damages in a manner that provides defendants with an opportunity to contest the claimed damages.  See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d at 158.

When a court enters a default judgment and the amount of damages sought does not consist of a sum certain, the court is permitted to "conduct hearings" or make referrals as necessary.  Fed. R. Civ. P. 55(b)(2)(B).  While "the court must ensure that there is a basis for the damages specified in a default judgment, it may, but need not, make the determination through a hearing."  United States v. Richardson, No. 17 CV 2982, 2018 WL 4138934, at *2 (E.D.N.Y. Feb. 13, 2018), report and recommendation adopted, 2018 WL 4119518 (E.D.N.Y. Aug. 29, 2018) (quotation marks omitted).  The submission of supporting affidavits is sufficient to determine damages in No-Fault insurance fraud cases in which the defendant's liability has been established.  See, e.g., Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., Div. of

Ace Young Inc., 109 F.3d 105, 111 (2d Cir. 1997); Allstate Ins. Co. v. Aminov, No. 11 CV 2391, 2014 WL 527834, at *7 (E.D.N.Y. Feb. 7, 2014).  Typically, detailed affidavits describing damages calculations and payment summaries are sufficient for a reviewing court to determine damages.  See Allstate Ins. Co. v. Nazarov, 2015 WL 5774459, at *17 (noting that "[i]n similar cases, courts have found such documentation [an affidavit from Allstate's Michael Bruno and copies of payment summaries] sufficient to support a damages award[.]"); Allstate Ins. Co. v. Williams, 13 CV 2893, 2014 WL 6900121, at *9 (E.D.N.Y. Dec. 5, 2014) (same); Allstate Ins. Co. v. Aminov, 2014 WL 527834, at *7 (same); Allstate Ins. Co. v. Howell No. 09 CV 4660, 2013 WL 5447152, at *7 (E.D.N.Y. Sept. 30, 2013) (same); Allstate Ins. Co. v. Smirnov, No. 12 CV 1246, 2013 WL 5407224, at *15 (E.D.N.Y. Aug. 21, 2013) (same).

Here, Allstate has filed detailed affidavits and submitted some documentation in support of their damages request.  (See, e.g., Bruno Decl., Bruno Geykhman Decl.).  However, Allstate's submissions in this case leave the Court uncertain as to how it arrived at its requested damages amounts, and the precise judgments to be entered against each Defaulting Defendant and Defendant Geykhman.  Indeed, Allstate's proposed order against Defaulting Defendants includes judgments against defendants in this action that have already settled.  (See ECF No. 97-4).  For the reasons detailed below, the Court finds that the records provided are insufficient and respectfully recommends that an award of damages be denied at this time, and that plaintiffs be permitted to refile their application for damages supplemented according to the findings of this Report and Recommendation.

B.    RICO Damages

Allstate seeks RICO damages based upon the itemized payments made to Defaulting Defendants and Geykhman.  Allstate includes a request for treble damages for each RICO claim asserted.  (Compl. at pp. 320-339).  Pursuant to 18 U.S.C. § 1964(c), an injured party is

automatically entitled to recover "threefold the damages" it sustains for a RICO violation. "Courts have found that an award of treble damages is appropriate in No-Fault billing cases involving RICO fraud claims, even in the context of a default." Allstate Ins. Co. v. Afanasyev, No. 12 CV 2423, 2016 WL 1156769, at *12 (E.D.N.Y. Feb. 11, 2016), report and recommendation adopted sub nom, Allstate Insurance Co. v. Afanasyev, 2016 WL 1189284 (E.D.N.Y. Mar. 22, 2016) (collecting cases). "These damages may be recovered independently of any enterprise liability." (Id.) (citing 4 K& D Corp. v. Concierge Auditions, LLC, 2 F. Supp. 3d 525, 536 n.4 (S.D.N.Y. 2014)).

Allstate has submitted spreadsheets itemizing each payment made by Allstate to the PC Defendants on account of the fraudulent billings, along with declarations from Michael Bruno and Michael Whitcher detailing how the payment records were maintained by Allstate in the ordinary course of business. (See ECF Nos. 97-5, 97-6, 97-7, 97-8; ECF Nos. 112-2, 112-3). These spreadsheets list the claim numbers submitted by each enterprise, check number, payor name, payee name, the dates of payment, and the amounts paid. (See Exs. 10-45, attached to Bruno Decl.; Exs. 3-12, attached to Michael Whitcher Decl.). However, it is unclear how the totals described in the submitted declarations correspond to the "payments totaling $1,606,792.15 in connection with the PC Defendants' No-Fault claims." (Mot. at 21; Geykhman Mot. at 19). Indeed, the tables provided in the Bruno Declaration do not clearly explain how these "Actual RICO Damages" totals—numbering around a million dollars for each defendant— are calculated. (Bruno Decl. ¶¶ 205-08). Furthermore, as discussed above, the Court finds that Allstate's Complaint successfully alleges RICO claims against only the RICO Defendants, and not the PC Defendants. As a result, the plaintiffs' request for trebled RICO damages must be adjusted to reflect the Court's findings as to the defendants liable for each alleged enterprise.

Accordingly, it is respectfully recommended that plaintiffs' request for RICO damages be denied at this time and that Allstate be permitted to file a new damages application with adjusted damages calculations. This filing should also provide a detailed explanation of the methodology used in reaching the totals described in plaintiffs' request as well as breakdowns regarding the joint and several liability of each RICO Defendant as to the enterprises they were involved in.

C.    Common Law Fraud Damages and Pre and Post Judgment Interest

Allstate's requests for common law fraud damages and pre and post judgment interest suffer from a similar lack of specificity. Given the Court's determination that the allegations against the PC Defendants are insufficient to warrant a finding of RICO liability, to the extent that plaintiffs seek to recover damages for common law fraud violations against the PC Defendants, plaintiffs must update their damages calculation to specify what amounts are sought for the fraud claims. It is unclear from Allstate's current submissions how much each defendant is liable for in connection with these claims. For example, Allstate brings RICO and common law fraud claims against all defendants but only calculates "State Law Damages" for the PC Defendants. (See Bruno Decl. ¶ 208). Therefore, Plaintiffs are directed to provide further damages submissions consistent with the findings of this Report and Recommendation.

Moreover, Allstate's request for prejudgment interest also suffers from imprecision. Without specifying whether they are requesting prejudgment interest as to their RICO or common law fraud claims, plaintiffs seek an award of prejudgment interest on all of the damages requested. (Mot. at 23-24; Geykhman Mot. at 21-22).

Under New York law, an award of prejudgment interest on damages awarded for fraud is mandatory. See Manufacturers Hanover Trust Co. v. Drysdale Sec. Corp., 801 F.2d 13, 28 (2d Cir. 1986); see also Barkley v. United Homes, LLC, 848 F. Supp. 2d 248, 269 (E.D.N.Y. 2012). Under New York State law, the method for calculating prejudgment interest is set forth in N.Y.

CPLR §§ 5001, 5004, which provides that interest shall be calculated at the non-compounded rate of 9% per annum, and that "[i]nterest shall be computed from the earliest ascertainable date the cause of action existed." Whether prejudgment interest "is awarded under federal or state law, federal courts have ordinarily looked to state law in determining the appropriate interest rate." Chubb & Son Inc. v. Kelleher, No. 92 CV 4484, 2010 WL 5978913, at *9 (E.D.N.Y. Oct. 22, 2010), report and recommendation adopted, No. 92 CV 4484, 2011 WL 839553 (E.D.N.Y. Mar. 7, 2011) (citing SEC v. Musella, 748 F. Supp. 1028, 1032 (S.D.N.Y. 1998), aff'd, 898 F.2d 138 (2d Cir. 1990)). Courts in this circuit have consistently awarded prejudgment interest at the 9% statutory rate authorized by New York C.P.L.R. § 5004. See, e.g., id.; Gov't Emps. Ins. Co. v. Gateva, No. 12 CV 4236, 2014 WL 1330846, at *10 (E.D.N.Y. Mar. 30, 2014). In awarding prejudgment interest on the compensatory damages awarded under the state fraud claim, the Court has determined that the 9% state statutory rate, which was used by the plaintiffs, should apply to the fraud damages.

As opposed to New York law, which provides mandatory prejudgment interest, the federal RICO statute "does not contain any provisions concerning the award of prejudgment interest." Abou-Khadra v. Mahshie, 4 F.3d 1071, 1084 (2d Cir. 1993). Indeed, "[w]hether to award prejudgment interest in cases arising under federal law has in the absence of a statutory directive been placed in the sound discretion of the district courts." Lodges 743 & 1746, Int'l Ass'n of Machinists & Aerospace Workers, AFL-CIO v. United Aircraft Corp., 534 F.2d 422, 446 (2d Cir. 1975) (collecting cases). As the federal RICO statute is silent as to the subject of prejudgment interest, the district court has discretion as to whether to award such interest. (Id.); see also Allstate Ins Co. v. Aminov, 2014 WL 527834, at *9 (stating that "[b]ecause RICO is essentially compensatory and contains no provision barring prejudgment interest, any such award

is within the sound discretion of the district court").  However, where treble RICO damages are adequate to compensate plaintiffs, courts in this district have found that an award of prejudgment interest "would generally be inappropriate."  Chubb & Son Inc. v. Kelleher, 2010 WL 5978913, at *8 (citing TWA v. Hughes, 449 F.2d 51, 80 (2d Cir. 1971) rev'd on other grounds, 409 U.S. 363 (1973)) (collecting cases); see also Bingham v. Zolt, 810 F. Supp. 100, 102 (S.D.N.Y. 1993) (stating that where "the Court trebles the damages pursuant to the RICO statute . . . awarding prejudgment interest will probably be unnecessary").

Plaintiffs request prejudgment interest at a rate of 9% computed from the first day of the year following the date on which the payments were made by plaintiffs on all of the fraudulent claims.  (Mot. at 23-24; Geykhman Mot. at 21-22) (citing Gov't Emps. Ins. Co. v. MC Physical Therapy, P.C., No. 23 CV 03536, 2024 WL 4648143, at *9 (E.D.N.Y. Sept. 12, 2024)).  Plaintiffs submitted their proposed interest calculations in an exhibit to the Declaration of Michael W. Whitcher in Support of Plaintiffs' Motion for Default Judgment as to both Defaulting Defendants and Defendant Geykhman.  (ECF No. 97-8 at 199-200; ECF No. 112-3, Ex. 3).

Given the overall inscrutability of Allstate's damages submissions, and the Court's assessment of the success of Allstate's claims against various defendants, it is unclear how prejudgment interest should apply in this case.  Indeed, even had the Court approved all of Allstate's damages requests, plaintiffs have not provided a clear mechanism for the Court to calculate how much prejudgement interest is due on the date that judgment is entered.  Therefore, the Court respectfully recommends that Allstate's request for prejudgment interest be denied subject to a submission of a clearer breakdown of prejudgment interest.  Specifically,

additional briefing on the question of whether an award of prejudgment interest on trebled RICO damages is appropriate would aid the Court in arriving at the proper damages determination.

IV.    <u>Declaratory Judgment Against PC Defendants</u>

Allstate also seeks a declaratory judgment as to the PC Defendants pursuant to 28 U.S.C. §§ 2201, 2202 (<u>See</u> Counts 39 through 56; Mot. at 21 (requesting declaration that Allstate has no obligation to pay pending, previously denied, and future No-Fault claims submitted by PC Defendants); Compl. ¶¶ 1548-57, 1558-67, 1578-87, 1588-97, 1618-27, 1648-57, 1678-87, 1698-707).

A party seeking a declaratory judgment must allege that there is a "substantial controversy, between parties with adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." <u>Niagara Mohawk Power Corp. v. Tonawanda Band of Seneca Indians</u>, 94 F.3d 747, 752 (2d Cir. 1996) (quotations and emphasis omitted).

The Court declines to recommend entry of a declaratory judgment at this time. While Allstate argues that "[w]ithout a declaration, Atlas, Axis, Comfort, Hand by Hand, JA, JEVA, July PT, MMA . . . and their agents will continue pursuing collection of No-Fault payments from Allstate," (Mot. at 21), Allstate has not provided any detail as to how the Defaulting PC Defendants are currently pursuing payments following the initiation of this action. Allstate has also not provided information as to any outstanding No-Fault claims from PC Defendants. Indeed, the PC Defendants are in default and have not responded to the Complaint, filed an appearance, or responded to Allstate's numerous filings in this action. If the PC Defendants were "in fact continuing to seek payment from Allstate, the Court would expect [Allstate's briefing to cite to] some evidence of such an effort, either through demand letters, evidence of actual arbitrations or similar proceedings for collections or affirmative litigation brought against Allstate." <u>Allstate Ins. Co. v. New Century Pharmacy Inc.</u>, 2021 WL 7830141, at *7 (citing

Allstate Ins. Co. v. Abramov, 2020 WL 1172697, at *16) (alterations adopted).  With only the conclusory claims in the Complaint and motion for default judgment that PC Defendants "will continue" to pursue claims, Allstate has not pleaded or provided the facts necessary to show such filings have been or are being made.

"The absence of such evidence suggests that there is no actual justiciable controversy between the parties over the bills submitted by [PC Defendants] to Plaintiffs, and absent such actual controversy, it would be inappropriate . . . to issue an advisory opinion on a hypothetical dispute[.]"  Allstate Ins. Co. v. Abramov, 2020 WL 1172697, at *16.  Recent decisions in this district have denied similar claims for declaratory relief against a defaulting defendant absent information about the status of pending state court collection actions because premature issuance of declaratory judgment may encroach on pending state court litigation related to these claims. Allstate Ins. Co. v. New Century Pharmacy Inc., 2021 WL 7830141, at *8 n.3 (E.D.N.Y. Aug. 13, 2021) (collecting cases); cf Gov't Emps. Ins. Co. v. Landow, No. 21 CV 1440, 2022 WL 939717, at *11 (E.D.N.Y. Mar. 29, 2022) (observing that 1,000 arbitration and state civil court claims were filed after the federal action commenced when allowing request for declaratory judgment relief to move forward).

Accordingly, the Court respectfully recommends that Allstate's request for declaratory relief be denied without prejudice to renew if it can submit the appropriate evidence necessary for this Court to find that such relief is warranted.

## CONCLUSION

Accordingly, the Court respectfully recommends that plaintiffs' motion for default judgment be granted in part and denied in part.  Default Judgment should be granted as to Allstate's RICO claims (Counts 5, 6, 7, 8, 11, 12, 17, 18, 23, 24, 29, 30, 33, 34, 35, 36) against Defendants Gulkarov, Sattarov, Rahmatov, Geykhman, Abrenica, Elsanaa, Magid, Cadet, and

Awad.  Those same counts should be denied as to Defendants July PT, MMA, Comfort, JA, Hand by Hand, JEVA, Axis, and Atlas.  Default Judgment should be granted as to Allstate's common law fraud claim (Count 37) and denied as to its unjust enrichment claim (Count 38) as to all Defaulting Defendants and Defendant Geykhman.  Allstate's request for declaratory judgment should be denied without prejudice.  Allstate's request for damages should be denied without prejudice to renew subject to an updated damages submission consistent with the findings of this Report and Recommendation.

Any objections to this Report and Recommendation must be filed with the Clerk of the Court, with a copy to the undersigned, within fourteen (14) days of receipt of this Report.  See 28 U.S.C. 636(b)(1); Fed. R. Civ. P. 72(b)(2); see also Fed. R. Civ. P. 6(a) (providing the method for computing time).  Failure to file objections within the specified time waives the right to appeal the district court's order.  See, e.g., Caidor v. Onondaga Cnty, 517 F.3d 601, 604 (2d Cir. 2008).

Plaintiff is Ordered to serve this Report and Recommendation on defendants and file proof of service on the docket on or before **September 9, 2025**.  The Clerk is directed to send copies of this Report and Recommendation to the parties either electronically through the Electronic Case Filing (ECF) system or by mail.

**SO ORDERED.**

Dated: Brooklyn, New York
      September 7, 2025              /s/ Cheryl L. Pollak
                                     Cheryl L. Pollak
                                     United States Magistrate Judge
                                     Eastern District of New York